AG, CLOSED, MHT-ClerkB

# U.S. District Court
## Alabama Middle District (Montgomery)
### CRIMINAL DOCKET FOR CASE #: 2:06-cr-00173-MHT-WC-3
### Internal Use Only

Case title: USA v. Muskelly et al                Date Filed: 07/11/2006

Assigned to: Honorable Myron H.
Thompson
Referred to: Honorable Wallace Capel,
Jr

**Defendant**

**Taneshia Michelle Lawson** (3)            represented by  **Federal Defender**
*TERMINATED: 01/25/2007*                                  Federal Defenders
                                                          Middle District of Alabama
                                                          201 Monroe Street, Suite 1960
                                                          Montgomery, AL 36104
                                                          334-834-2099
                                                          Fax: 834-0353
                                                          Email: ECFCMALM@fd.org
                                                          *LEAD ATTORNEY*
                                                          *Designation: Public Defender or*
                                                          *Community Defender Appointment*

                                                          **Christine A. Freeman**
                                                          Federal Defenders
                                                          Middle District of Alabama
                                                          201 Monroe Street, Suite 1960
                                                          Montgomery, AL 36104
                                                          334-834-2099
                                                          Fax: 834-0353
                                                          Email: christine_freeman@fd.org
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Public Defender or*
                                                          *Community Defender Appointment*

                                                          **Patricia Vanessa Kemp**
                                                          Federal Defenders
                                                          Middle District of Alabama
                                                          201 Monroe Street, Suite 407
                                                          Montgomery, AL 36104

334.834.2099
Fax: 334.834.0353
Email: patricia_kemp@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pending Counts**                                                    **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                                                 **Disposition**

18:371 CONSPIRACY TO DEFRAUD
THE UNITED STATES - NMT                                               DISMISSED ON GOVERNMENT'S
$250,000; [*]; NMT 5Y; B; NMT 3Y                                      MOTION
SUP REL; G-LINES; VWPA; $100 SA
(1)

18:641 & 18:2 PUBLIC MONEY,
PROPERTY OR RECORDS; AIDING
& ABETTING - NMT $250,000; [*];                                      DISMISSED ON GOVERNMENT'S
NMT 10Y; B; NMT 3Y SUP REL;                                          MOTION
G-LINES; VWPA; $100 SA
(2)

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                                        **Disposition**

None

---

**Plaintiff**

**USA**                                    represented by   **Christopher A. Snyder**
                                                            U. S. Attorney's Office
                                                            One Court Square
                                                            Suite 201
                                                            Montgomery, AL 36104
                                                            334-223-7280
                                                            Fax: 334-223-7135
                                                            Email: christopher.a.snyder@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

Louis V. Franklin, Sr.
U.S. Attorney's Office
PO Box 197
Montgomery, AL 36101-0197
334-223-7280
Fax: 223-7560
Email: louis.franklin@usdoj.gov
*ATTORNEY TO BE NOTICED*

Verne H. Speirs
U.S. Attorney's Office
PO Box 197
Montgomery, AL 36101-0197
334-223-7280
Fax: 223-7560
Email: verne.speirs@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/11/2006 | 1 | INDICTMENT as to Unique C. Muskelly (1) count(s) 1, 2, Monica Pearl Woodall (2) count(s) 1, 2, Taneshia Michelle Lawson (3) count(s) 1, 2, Rufus Nathanial Biggs, Jr (4) count(s) 1, 2. (ag, ) (Entered: 07/13/2006) |
| 07/11/2006 | 2 | *SEALED*     Limits of Punishment as to Unique C. Muskelly, Monica Pearl Woodall, Taneshia Michelle Lawson, Rufus Nathanial Biggs, Jr. (ag, ) (Entered: 07/13/2006) |
| 07/13/2006 | 5 | WARRANT Issued as to Taneshia Michelle Lawson. (ag, ) (Entered: 07/13/2006) |
| 07/14/2006 | | ***Set/Clear Flags as to Unique C. Muskelly, Monica Pearl Woodall, Taneshia Michelle Lawson, Rufus Nathanial Biggs, Jr (ag, ) (Entered: 07/14/2006) |
| 07/25/2006 | | Case unsealed as to Taneshia Michelle Lawson pursuant to notice of arrest from USMS (ag, ) (Entered: 07/25/2006) |
| 07/25/2006 | | Arrest of Taneshia Michelle Lawson (sql, ) (Entered: 07/25/2006) |
| 07/25/2006 | 7 | CJA 23 Financial Affidavit by Taneshia Michelle Lawson (sql, ) (Entered: 07/25/2006) |
| 07/25/2006 | | ORAL MOTION to Appoint Counsel by Taneshia Michelle Lawson. (sql, ) (Entered: 07/25/2006) |
| 07/25/2006 | | ORDER (ORAL) granting [] Oral Motion to Appoint Counsel: Appointed Federal Defender for Taneshia Michelle Lawson as to Taneshia Michelle Lawson (3). by Judge Delores R. Boyd on 7/25/2006. (sql, ) (Entered: |

| | | |
|---|---|---|
| | | 07/25/2006) |
| 07/25/2006 | ◑8 | WAIVER of Speedy Trial by Taneshia Michelle Lawson (sql, ) (Entered: 07/25/2006) |
| 07/25/2006 | ◑9 | Minute Entry for proceedings held before Judge Delores R. Boyd :Arraignment as to Taneshia Michelle Lawson (3) Count 1,2 held on 7/25/2006, Initial Appearance as to Taneshia Michelle Lawson held on 7/25/2006, Plea entered by Taneshia Michelle Lawson (3) Count 1,2. by Taneshia Michelle Lawson Not Guilty on counts 1,2. (Recording Time FTR: 3:12 - 3:29 pm.) (sql, ) (Entered: 07/25/2006) |
| 07/25/2006 | ◑10 | ORDER Setting Conditions of Release as to Taneshia Michelle Lawson (3) $25,000 non-surety . Signed by Judge Delores R. Boyd on 7/25/2006. (sql, ) (Entered: 07/25/2006) |
| 07/25/2006 | ◑11 | Non-surety Bond Entered as to Taneshia Michelle Lawson in amount of $ 25,000, (sql, ) (Entered: 07/25/2006) |
| 07/26/2006 | ◑12 | ORDER ON ARRAIGNMENT as to Taneshia Michelle Lawson, incorporating ORDER TO CONTINUE - Ends of Justice, setting Pretrial Conference set for 8/21/2006 @ 11:00 AM in Courtroom 4A before Honorable Delores R. Boyd, setting Jury Selection and Trial for 11/6/2006 10:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson, directing that Pretrial Motions are due by 8/16/2006 and that Discovery is due by 8/9/2006. Signed by Judge Delores R. Boyd on 7/26/2006. (ag, ) (Entered: 07/26/2006) |
| 07/31/2006 | ◑13 | Arrest Warrant Returned Executed in case as to Taneshia Michelle Lawson. Defendant arrested on 7/25/06. (ws, ) (Entered: 08/01/2006) |
| 08/15/2006 | ◑33 | ORDER as to Taneshia Michelle Lawson resetting Jury Selection/Trial now set for 11/6/06 to 10/30/2006 @ 10:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson. Signed by Judge Myron H. Thompson on 8/15/2006. (ag, ) (Entered: 08/15/2006) |
| 08/21/2006 | ◑38 | Minute Entry for proceedings held before Judge Delores R. Boyd :Pretrial Conference as to Taneshia Michelle Lawson held on 8/21/2006 (Recording Time 11:21 - 11:23 am.) (sql, ) (Entered: 08/21/2006) |
| 08/21/2006 | ◑39 | PRETRIAL CONFERENCE ORDER as to Taneshia Michelle Lawson setting Jury Selection/Trial (ETT 2 days) for 10/30/2006 @ 10:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson ; Voir Dire due by 10/23/2006 ; Proposed Jury Instructions due by 10/23/2006 ; Motions in Limine due by 10/23/2006 ; Notice of Intent to Change Plea due by noon on 10/18/2006. Signed by Judge Delores R. Boyd on 8/21/2006. (ag, ) (Entered: 08/21/2006) |
| 09/08/2006 | ◑53 | NOTICE OF ATTORNEY APPEARANCE: Christine A. Freeman appearing for Taneshia Michelle Lawson (Freeman, Christine) (Entered: 09/08/2006) |

| | | |
|---|---|---|
| 10/19/2006 | 🔵80 | NOTICE *of Diminished Mental Capacity Defense* as to Taneshia Michelle Lawson (Freeman, Christine) (Entered: 10/19/2006) |
| 10/23/2006 | 🔵86 | NOTICE of Availability of Jury List and Juror Profiles for October 30, 2006, Criminal Jury Term before Judge Myron H. Thompson as to Taneshia Michelle Lawson. (ag, ) (Entered: 10/23/2006) |
| 10/23/2006 | 🔵87 | MOTION to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony re 80 Notice (Other) by USA as to Taneshia Michelle Lawson. (Attachments: # 1 Exhibit A)(Snyder, Christopher) Modified on 10/24/2006 (ag, )(Exhibit A Sealed Pursuant to Order #96) (Entered: 10/23/2006) |
| 10/23/2006 | 🔵88 | MOTION to Continue trial *(Conditional Motion)* by USA as to Taneshia Michelle Lawson. (Snyder, Christopher) (Entered: 10/23/2006) |
| 10/23/2006 | 🔵89 | Proposed Voir Dire by USA as to Taneshia Michelle Lawson (Snyder, Christopher) (Entered: 10/23/2006) |
| 10/23/2006 | 🔵90 | Proposed Voir Dire by Taneshia Michelle Lawson (Freeman, Christine) (Entered: 10/23/2006) |
| 10/23/2006 | 🔵91 | Proposed Jury Instructions by Taneshia Michelle Lawson (Freeman, Christine) (Entered: 10/23/2006) |
| 10/23/2006 | 🔵92 | MOTION to Seal Document *87-2* by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 10/23/2006) |
| 10/23/2006 | 🔵93 | Proposed Jury Instructions by USA as to Taneshia Michelle Lawson (Snyder, Christopher) (Entered: 10/23/2006) |
| 10/24/2006 | 🔵94 | BRIEF/RESPONSE in Support by USA as to Taneshia Michelle Lawson re 92 MOTION to Seal Document *87-2* (Snyder, Christopher) (Entered: 10/24/2006) |
| 10/24/2006 | 🔵95 | ORDER as to Taneshia Michelle Lawson that 87 MOTION to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony re 80 Notice (Other) is set for submission on October 25. 2006, with all briefs due by said date . Signed by Judge Myron H. Thompson on 10/24/2006. (ag, ) (Entered: 10/24/2006) |
| 10/24/2006 | 🔵96 | ORDER granting 92 Motion to Seal Document as to Taneshia Michelle Lawson (3). Signed by Judge Myron H. Thompson on 10/24/2006. (ag, ) (Entered: 10/24/2006) |
| 10/24/2006 | 🔵97 | *SEALED*    EXPARTE MOTION for Subpoenas Duces Tecum and MOTION to Seal by Taneshia Michelle Lawson. (Attachments: # 1 Proposed Order)(ag, ) (Entered: 10/24/2006) |
| 10/25/2006 | 🔵98 | *SEALED*    ORDER granting 97 Exparte Motion as to Taneshia Michelle Lawson (3)and granting 97 Sealed Motion as to Taneshia |

| | | |
|---|---|---|
| | | Michelle Lawson (3). Signed by Judge Delores R. Boyd on 10/25/2006. (ag, ) (Entered: 10/25/2006) |
| 10/25/2006 | | ***Set/Clear Flags as to Taneshia Michelle Lawson (ag, ) (Entered: 10/25/2006) |
| 10/26/2006 | 99 | RESPONSE to Motion by Taneshia Michelle Lawson re 87 MOTION to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony re 80 Notice (Other) (Freeman, Christine) (Entered: 10/26/2006) |
| 10/26/2006 | 100 | NOTICE of Intent to Use Evidence by Taneshia Michelle Lawson *Amended 12.2(b) Notice* (Freeman, Christine) (Entered: 10/26/2006) |
| 10/26/2006 | 101 | MOTION for Leave to File by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 10/26/2006) |
| 10/27/2006 | 103 | RESPONSE to Motion by USA as to Taneshia Michelle Lawson re 101 MOTION for Leave to File (Snyder, Christopher) (Entered: 10/27/2006) |
| 10/27/2006 | 104 | MOTION in Limine *to Exclude Defendant's Newly Identified Expert Testimony Regarding Confessions* by USA as to Taneshia Michelle Lawson. (Snyder, Christopher) (Entered: 10/27/2006) |
| 10/29/2006 | 105 | Proposed Voir Dire by USA as to Taneshia Michelle Lawson (Snyder, Christopher) (Entered: 10/29/2006) |
| 10/29/2006 | 106 | MOTION to Dismiss *and objection to venire* by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 10/29/2006) |
| 10/29/2006 | 107 | AFFIDAVIT by Taneshia Michelle Lawson 106 MOTION to Dismiss *and objection to venire* filed by Taneshia Michelle Lawson, (Freeman, Christine) (Entered: 10/29/2006) |
| 10/30/2006 | 108 | NOTICE OF ATTORNEY APPEARANCE: Patricia Vanessa Kemp appearing for Taneshia Michelle Lawson (Kemp, Patricia) (Entered: 10/30/2006) |
| 10/30/2006 | 109 | RESPONSE to Motion by Taneshia Michelle Lawson re 104 MOTION in Limine *to Exclude Defendant's Newly Identified Expert Testimony Regarding Confessions* (Freeman, Christine) (Entered: 10/30/2006) |
| 10/30/2006 | 110 | OPINION AND ORDER as to Taneshia Michelle Lawson granting 87 MOTION to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony re 80 Notice (Other) and Defendant Taneshia Michelle Lawson's evidence of diminished mental capacity is excluded at trial. Signed by Judge Myron H. Thompson on 10/30/2006. (ag, ) (Entered: 10/30/2006) |
| 10/30/2006 | 111 | NOTICE *of no opposition to Government's request for additional voir dire* as to Taneshia Michelle Lawson re 105 Proposed Voir Dire (Freeman, Christine) (Entered: 10/30/2006) |

| 10/30/2006 | 112 | NOTICE OF ATTORNEY APPEARANCE Louis V. Franklin, Sr appearing for USA. (Franklin, Louis) (Entered: 10/30/2006) |
| 10/30/2006 | 113 | NOTICE OF ATTORNEY APPEARANCE Verne H. Speirs appearing for USA. (Speirs, Verne) (Entered: 10/30/2006) |
| 10/30/2006 | 114 | ORDER as to Taneshia Michelle Lawson denying as moot 87 Motion to Strike Defendant Taneshia Michelle Lawson's notice of diminished capacity defense as untimely and denying as moot 88 MOTION to Continue trial and granting 101 MOTION to permit filing to the extent defendant Lawson moves the court to permit the filing of her response to the government's motion to strike approximately one hour late; (2) Defendant Lawson's motion to permit filing 101 is denied as moot to the extent defendant Lawson moves the court to permit the filing of her amended notice of diminished capacity defense, as further set out in order. Signed by Judge Myron H. Thompson on 10/30/2006. (ag, ) (Entered: 10/30/2006) |
| 10/30/2006 | 115 | AFFIDAVIT by Taneshia Michelle Lawson (ag, ) (Entered: 10/30/2006) |
| 10/30/2006 | | VOIR DIRE BEGUN before Judge Myron H. Thompson on 10/30/2006 as to Taneshia Michelle Lawson (3) on Cts 1, 2 (Court Reporter Mitchell Reisner.) (ag, ) (Entered: 10/30/2006) |
| 10/30/2006 | | JURY SELECTION held before Judge Myron H. Thompson as to Taneshia Michelle Lawson on 10/30/2006 (see final trial entry for pdf) (Court Reporter Mitchell Reisner.) (ag, ) (Entered: 10/30/2006) |
| 11/01/2006 | 116 | RESPONSE to Motion by USA as to Taneshia Michelle Lawson re 106 MOTION to Dismiss *and objection to venire (Limited Response)* (Snyder, Christopher) (Entered: 11/01/2006) |
| 11/01/2006 | | Set/Reset Hearings as to Taneshia Michelle Lawson: Motion Hearing set for 11/1/2006 08:30 AM in Courtroom 2FMJ before Honorable Myron H. Thompson. (ag, ) (Entered: 11/01/2006) |
| 11/01/2006 | 117 | Minute Entry for Oral Arguments re 104 MOTION in Limine to Exclude Defendant's Newly Identified Expert Testimony Regarding Confessions held before Judge Myron H. Thompson on 11/1/2006 (Court Reporter Mitchell Reisner.) (Attachments: # 1 Defendant's Exhibit List) (ag, ) (Entered: 11/01/2006) |
| 11/01/2006 | 118 | ORDER as to Taneshia Michelle Lawson the the objection and motion to dismiss 106 regarding the composition of the venire and method of venire selection are referred to the United States Magistrate Judge assigned to this case . Signed by Judge Myron H. Thompson on 11/1/2006. (ag, ) (Entered: 11/01/2006) |
| 11/01/2006 | | MOTION as to Taneshia Michelle Lawson REFERRED to Magistrate Judge per dn 118: 106 MOTION to Dismiss *and objection to venire* (snc) (Entered: 11/06/2006) |

| | | |
|---|---|---|
| 11/01/2006 | ◯ | MOTION as to Taneshia Michelle Lawson REFERRED to Magistrate Judge (pursuant to dn 118: 106 MOTION to Dismiss *and objection to venire* (snc) (Entered: 01/12/2007) |
| 11/02/2006 | ◯119 | *SEALED*    EXPARTE Application (MOTION) and MOTION to Seal by Taneshia Michelle Lawson. (Attachments: # 1 Proposed Order)(ag, ) (Entered: 11/02/2006) |
| 11/02/2006 | ◯120 | *SEALED*    EXPARTE Application (MOTION) and MOTION to Seal by Taneshia Michelle Lawson. (Attachments: # 1 Proposed Order)(ag, ) (Entered: 11/02/2006) |
| 11/02/2006 | ◯121 | MOTION to File Ex-Parte Petition for Writ of Habeas Corpus Ad Testificandum under Seal by Taneshia Michelle Lawson. (ag, ) (Entered: 11/02/2006) |
| 11/02/2006 | ◯122 | *SEALED*    EXPARTE Petition (MOTION) for Writ of Habeas Corpus Ad Testificandum and SEALED MOTION by Taneshia Michelle Lawson. (Attachments: # 1 Proposed Order)(ag, ) (Entered: 11/02/2006) |
| 11/02/2006 | ◯123 | *SEALED*    ORDER granting 119 Exparte Motion and 119 Sealed Motion as to Taneshia Michelle Lawson (3). Signed by Judge Delores R. Boyd on 11/2/2006. (ag, ) (Entered: 11/02/2006) |
| 11/02/2006 | ◯124 | *SEALED*    ORDER granting 120 Exparte Motion and 120 Sealed Motion as to Taneshia Michelle Lawson (3). Signed by Judge Delores R. Boyd on 11/2/2006. (ag, ) (Entered: 11/02/2006) |
| 11/03/2006 | ◯125 | ORDER granting 121 Motion to File Ex-Parte Petition for Writ of Habeas Corpus Ad Testificandum Under Seal as to Taneshia Michelle Lawson (3) and directing the clerk to place under Seal the Ex-Parte Petition for Writ of Habeas Corpus Ad Testificandum. Signed by Judge Delores R. Boyd on 11/3/2006. (ag, ) (Entered: 11/03/2006) |
| 11/03/2006 | ◯126 | *SEALED*    ORDER granting 122 Exparte Motion and 122 Sealed Motion as to Taneshia Michelle Lawson (3), directing the clerk to issue a Writ of Habeas Corpus Ad Testificandum, addressed to the Pickens County Jail, Carrollton, Alabama, commanding them to deliver the said Roderick Lomax to any US Marshal or Deputy US Marshal and directing said Marshal or Deputy to bring said prisoner before this Court on 11/6/06 @ 9:00 a.m., and to return said prisoner to official when the Court shall have finished with him. Signed by Judge Delores R. Boyd on 11/3/2006. (ag, ) (Entered: 11/03/2006) |
| 11/03/2006 | ◯127 | *SEALED*    EXPARTE Application IFP for Subpoenas (MOTION) and MOTION to Seal by Taneshia Michelle Lawson. (Attachments: # 1 Proposed Order)(ag, ) (Entered: 11/03/2006) |
| 11/03/2006 | ◯128 | *SEALED*    Writ of Habaes Corpus Ad Testificandum Issued for Roderick Lomax as to Taneshia Michelle Lawson (ag, ) (Entered: 11/03/2006) |

| 11/03/2006 | 129 | MOTION in Limine *to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity* by USA as to Taneshia Michelle Lawson. (Attachments: # 1 Exhibit)(Snyder, Christopher) (Entered: 11/03/2006) |
| 11/03/2006 | 130 | NOTICE of Intent to Use Evidence by USA as to Taneshia Michelle Lawson *(Rule 404(b) Notice and Proffer of Evidence)* (Snyder, Christopher) (Entered: 11/03/2006) |
| 11/03/2006 | 131 | *SEALED*    ORDER granting 127 Exparte Application (Motion) and 127 Motion to Seal as to Taneshia Michelle Lawson (3). Signed by Judge Delores R. Boyd on 11/3/2006. (ag, ) (Entered: 11/03/2006) |
| 11/03/2006 | 132 | ORDER that defendant Taneshia Michelle Lawson show cause, if any there be, in writing by 8:00 a.m. on 11/6/06, as to why the government's motion in limine 129 should not be granted. Signed by Judge Myron H. Thompson on 11/3/2006. (ag, ) (Entered: 11/03/2006) |
| 11/04/2006 | 133 | Proposed Jury Instructions by USA as to Taneshia Michelle Lawson (Snyder, Christopher) (Entered: 11/04/2006) |
| 11/05/2006 | 134 | MOTION in Limine *in Opposition to 404(b)* by Taneshia Michelle Lawson as to Unique C. Muskelly, Monica Pearl Woodall, Taneshia Michelle Lawson, Rufus Nathanial Biggs, Jr. (Freeman, Christine) (Entered: 11/05/2006) |
| 11/05/2006 | 135 | NOTICE *of Exhibit* by Taneshia Michelle Lawson (Attachments: # 1)(Freeman, Christine) Modified on 11/6/2006 to delete additional defendants linked in error (ag, ). (Entered: 11/05/2006) |
| 11/05/2006 | 136 | NOTICE *of Objection to Proposed Instructions* as to Taneshia Michelle Lawson (Freeman, Christine) (Entered: 11/05/2006) |
| 11/05/2006 | 137 | BRIEF/RESPONSE in Opposition by Taneshia Michelle Lawson re 129 MOTION in Limine *to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity* (Freeman, Christine) (Entered: 11/05/2006) |
| 11/05/2006 | 138 | MOTION to Continue trial *Conditionally* by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 11/05/2006) |
| 11/06/2006 | 139 | MOTION for Reconsideration *of Court's order* by Taneshia Michelle Lawson. (Freeman, Christine)(Treated as a motion to reconsider both orders and opinions entered on 10/30/06 Doc. 110 and 11/6/06 Doc. 141) Modified on 11/7/2006 (ag, ). (Entered: 11/06/2006) |
| 11/06/2006 | 140 | TRANSCRIPT of November 1, 2006 Motion Hearing (PDF available for court use only) as to Taneshia Michelle Lawson before Judge Myron Thompson. Court Reporter: Mitchell Reisner. (snc) (Entered: 11/06/2006) |
| 11/06/2006 | 141 | OPINION AND ORDER as to Taneshia Michelle Lawson granting 104 MOTION in Limine to Exclude Defendant's Newly Identified Expert Testimony Regarding Confessions. Signed by Judge Myron H. Thompson |

| | | |
|---|---|---|
| | | on 11/6/2006. (ag, ) (Entered: 11/06/2006) |
| 11/06/2006 | ❍142 | Minute Entry for Hearing Out of Jury Presence & Jury Trial held before Judge Myron H. Thompson as to Taneshia Michelle Lawson on 11/6/2006. (Court Reporter Mitchell Reisner.) (ag, ) (Entered: 11/06/2006) |
| 11/06/2006 | ❍ | ORAL ORDER granting 134 MOTION in Limine . Entered by Judge Myron H. Thompson on 11/6/2006. (ag, ) (Entered: 11/06/2006) |
| 11/06/2006 | ❍ | ORAL ORDER rescinding Oral Order granting 134 Motion in Limine. Signed by Judge Myron H. Thompson on 11/6/2006. (ag, ) (Entered: 11/06/2006) |
| 11/06/2006 | ❍ | Oral MOTION to Continue trial by Taneshia Michelle Lawson. (ag, ) (Entered: 11/06/2006) |
| 11/06/2006 | ❍143 | ORDER denying 138 Conditional MOTION to Continue trial because of Rule 404(b) evidence. Signed by Judge Myron H. Thompson on 11/6/2006. (ag, ) (Entered: 11/06/2006) |
| 11/06/2006 | ❍144 | ORDER TO CONTINUE - Ends of Justice as to Taneshia Michelle Lawson granting Oral MOTION to Continue trial filed by Taneshia Michelle Lawson and setting Jury Selection & Trial for 2/5/2007 @ 10:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson. Signed by Judge Myron H. Thompson on 11/6/2006. (ag, ) (Entered: 11/06/2006) |
| 11/06/2006 | ❍145 | ORDER as to Taneshia Michelle Lawson setting Motion Hearing for 1/5/2007 @ 10:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson re 134 MOTION in Limine, directing that the government is allowed until 11/20/06, to submit to the court any supplementary Rule 404(b) evidence if it has such and Defendant Lawson is allowed until 12/11/06, to submit to the court her evidentiary response, further directing that Defendant Lawson is allowed unitl 12/11/06, to file any motions challenging the admissibilty of the government's Rule 404(b) evidence, on a basis other than Rule 404(b) evidence, on a basis other than Rule 404(b)--for example, a motion challenging the photo line-up, as further set out, and that the governement's is allowed until 12/15/06, to submit a supplemental brief on the motion in limine and any subsequent related motions, and defendant Lawson is allowed until 12/28/06, to do the same . Signed by Judge Myron H. Thompson on 11/6/2006. (ag, ) (Entered: 11/06/2006) |
| 11/06/2006 | ❍146 | ORDER that Defendant Taneshia Michelle Lawson's motion for reconsideration is treated as a motion to reconsider both orders and opinions entered on 10/30/06 Doc. 110 and 11/6/06 Doc. 141 and that Defendant Lawson is allowed until 11/20/06, to submit to the court her new, "keyed" expert psychiatric testimony and the government is allowed until 12/11/06, to submit to the court its own expert psychiatric testimony and Defendant Lawson is allowed until 12/15/06, to submit a supplemental brief, and the government is allowed until 12/28/06, to do |

| | | |
|---|---|---|
| | | the same and setting Motion Hearing for 1/5/2007 10:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson as to Taneshia Michelle Lawson re 139 MOTION for Reconsideration *of Court's order* . *Signed by Judge Myron H. Thompson on 11/6/2006. (ag, ) (Entered: 11/06/2006)* |
| 11/06/2006 | ◑147 | ORDER as to Taneshia Michelle Lawson setting Motion Hearing for 1/5/2007 @ 10:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson re 129 MOTION in Limine *to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity, directing that any supplemental briefs are due 12/28/06 . Signed by Judge Myron H. Thompson on 11/6/2006. (ag, ) (Entered: 11/06/2006)* |
| 11/20/2006 | ◑148 | NOTICE of Intent to Use Evidence by Taneshia Michelle Lawson *and Notice of Keyed Expert Evidence* (Attachments: # 1)(Freeman, Christine) Modified on 11/21/2006 to Seal ATTACHMENT pursuant to Order 150(ag, ) (Entered: 11/20/2006) |
| 11/20/2006 | ◑149 | MOTION to Seal Document *[attached to DE 148]* by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 11/20/2006) |
| 11/21/2006 | ◑150 | ORDER granting 149 Motion to Seal Document as to Taneshia Michelle Lawson (3). Signed by Judge Myron H. Thompson on 11/21/2006. (ag, ) (Entered: 11/21/2006) |
| 12/04/2006 | ◑ | Case as to Unique C. Muskelly, Monica Pearl Woodall, Taneshia Michelle Lawson, Rufus Nathanial Biggs, Jr Reassigned to Judge Wallace Capel, Jr. Judge Delores R. Boyd no longer assigned to the case. (war, ) (Entered: 12/04/2006) |
| 12/04/2006 | ◑ | MOTION as to Taneshia Michelle Lawson REFERRED to Magistrate Judge Capel unopen reassignment of case (pursuant to 106 referral order: 106 MOTION to Dismiss *and objection to venire* (snc) (Entered: 01/12/2007) |
| 12/06/2006 | ◑157 | ORDER as to Taneshia Michelle Lawson setting Final Pretrial Conference for 1/12/2007 @ 09:00 AM in Courtroom 5A before Honorable Wallace Capel Jr.. Signed by Judge Wallace Capel Jr. on 12/6/2006. (ag, ) (Entered: 12/06/2006) |
| 12/08/2006 | ◑162 | MOTION for Extension of Time to File *Expert Report (Unopposed)* by USA as to Taneshia Michelle Lawson. (Snyder, Christopher) (Entered: 12/08/2006) |
| 12/11/2006 | ◑163 | ORDER as to Taneshia Michelle Lawson granting 162 MOTION for Extension of Time to File *Expert Report (Unopposed)* filed by USA; the government is allowed unitl 12/19/06 to submit to the court its own expert psychiatric testimony; the defendant is now allowed until 12/27/06 to submit a supplemental brief and the government is now allowed until 1/3/07 to do the same re: 139 MOTION for Reconsideration *of Court's order* filed by Taneshia Michelle Lawson. Signed by Judge Myron H. Thompson on 12/11/06. (ws, ) (Entered: 12/11/2006) |

| 12/11/2006 | 164 | MOTION to Exclude *Proposed Cross-Racial Identification* by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 12/11/2006) |
| 12/11/2006 | | Motion pending before Judge Myron Thompson, rather than Judge Capel, as to Taneshia Michelle Lawson: 164 MOTION to Exclude *Proposed Cross-Racial Identification* (snc) (Entered: 01/12/2007) |
| 12/13/2006 | 165 | MOTION for Extension of Time to File *Response to Motions in Limine* by USA as to Taneshia Michelle Lawson. (Snyder, Christopher) (Entered: 12/13/2006) |
| 12/15/2006 | 166 | ORDER granting 165 Motion for Extension of Time to File as to Taneshia Michelle Lawson (3) and that the government is now allowed until 12/19/06, to submit to the court its response and supplemental brief, and defendant Taneshia Michelle Lawson is now allowed until 12/27/06, to do the same. Signed by Judge Myron H. Thompson on 12/15/2006. (ag, ) (Entered: 12/15/2006) |
| 12/19/2006 | 167 | NOTICE *of Expert Testimony* by USA as to Taneshia Michelle Lawson re 163 Order,,, Terminate Motions,,, 146 Order,,,, Set Hearings,,, (Attachments: # 1 Exhibit 1 -- Expert Report)(Snyder, Christopher) (Entered: 12/19/2006) |
| 12/19/2006 | 168 | MOTION to Seal by USA as to Taneshia Michelle Lawson. (Snyder, Christopher) (Entered: 12/19/2006) |
| 12/20/2006 | 169 | RESPONSE to Motion by USA as to Taneshia Michelle Lawson re 134 MOTION in Limine, 164 MOTION to Exclude *Proposed Cross-Racial Identification* (Snyder, Christopher) (Entered: 12/20/2006) |
| 12/20/2006 | 170 | MOTION for Leave to File *Response to Motions in Limine (DE 169) (Unopposed)* by USA as to Taneshia Michelle Lawson. (Snyder, Christopher) (Entered: 12/20/2006) |
| 12/20/2006 | 171 | ORDER granting 168 Motion to Seal as to Taneshia Michelle Lawson (3). Signed by Judge Myron H. Thompson on 12/20/2006. (ag, ) (Entered: 12/20/2006) |
| 12/20/2006 | 172 | ORDER granting 170 Motion for Leave to File as to Taneshia Michelle Lawson (3). Signed by Judge Myron H. Thompson on 12/20/2006. (ag, ) (Entered: 12/20/2006) |
| 12/21/2006 | 173 | *SEALED*    EXPARTE MOTION APPLICATION (MOTION) IN FORMA PAUPERIS FOR SUBPOENA DUCES TECUM and MOTION to Seal by Taneshia Michelle Lawson. (Attachments: # 1 Proposed Order)(ag, ) (Entered: 12/21/2006) |
| 12/21/2006 | 174 | *SEALED*    EXPARTE APPLICATION (MOTION) IN FORMA PAUPERIS FOR SUBPOENA DUCES TECUM and MOTION to Seal by Taneshia Michelle Lawson. (Attachments: # 1 Proposed Order)(ag, ) (Entered: 12/21/2006) |

| 12/21/2006 | 🌐175 | *SEALED*     ORDER granting 173 Exparte Motion and granting 173 Motion to Seal as to Taneshia Michelle Lawson (3). Signed by Judge Wallace Capel Jr. on 12/21/2006. (ag, ) (Entered: 12/21/2006) |
|---|---|---|
| 12/21/2006 | 🌐176 | *SEALED*     ORDER granting 174 Exparte Motion and granting 174 Motion to Seal as to Taneshia Michelle Lawson (3). Signed by Judge Wallace Capel Jr. on 12/21/2006. (ag, ) (Entered: 12/21/2006) |
| 12/28/2006 | 🌐177 | REPLY TO RESPONSE to Motion by Taneshia Michelle Lawson re 134 MOTION in Limine, 164 MOTION to Exclude *Proposed Cross-Racial Identification* (Freeman, Christine) (Entered: 12/28/2006) |
| 12/28/2006 | 🌐178 | MOTION in Limine by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 12/28/2006) |
| 12/29/2006 | 🌐179 | ORDER as to Taneshia Michelle Lawson setting Motion Hearing re 178 MOTION in Limine filed by Taneshia Michelle Lawson for 1/5/2007 @ 10:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson, and directing the government to file a response by 1/3/07. Signed by Judge Myron H. Thompson on 12/29/2006. (ag, ) Modified on 12/29/2006 to complete order(ag, ). (Entered: 12/29/2006) |
| 12/29/2006 | 🌐180 | NOTICE of Filing of Exhibit as to Taneshia Michelle Lawson CD(s) located in binder with case file. (ag, ) (Entered: 12/29/2006) |
| 01/03/2007 | 🌐181 | BRIEF/RESPONSE in Support by USA as to Taneshia Michelle Lawson re 87 MOTION to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony re 80 Notice (Other), 139 MOTION for Reconsideration *of Court's order* (Attachments: # 1 Exhibit A# 2 Exhibit B)(Snyder, Christopher) (Entered: 01/03/2007) |
| 01/04/2007 | 🌐 | Set/Reset Hearings as to Taneshia Michelle Lawson: Telephone Conference set for 1/4/2007 @ 11:30 AM in by telephone before Honorable Myron H. Thompson. (ag, ) (Entered: 01/04/2007) |
| 01/04/2007 | 🌐182 | Minute Entry for Telephone Conference regarding potential conflict regarding Dr. Theron Covin held before Judge Myron H. Thompson as to Taneshia Michelle Lawson 1/4/2007 (Court Reporter Mitchell Reisner.) (ag, ) (Entered: 01/04/2007) |
| 01/05/2007 | 🌐183 | RESPONSE to Motion by USA as to Taneshia Michelle Lawson re 178 MOTION in Limine (Snyder, Christopher) (Entered: 01/05/2007) |
| 01/05/2007 | 🌐 | ORAL MOTION to Continue 1/5/07 Motions in Limine Hearing by Taneshia Michelle Lawson. (ag, ) (Entered: 01/08/2007) |
| 01/05/2007 | 🌐 | ORAL MOTION to Continue trial by Taneshia Michelle Lawson. (ag, ) (Entered: 01/08/2007) |
| 01/05/2007 | 🌐186 | Minute Entry for Motions Hearing as to Taneshia Michelle Lawson re 134 MOTION in Limine, 129 MOTION in Limine *to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity,* 178 *MOTION* |

| | | |
|---|---|---|
| | | *in Limine, 164 MOTION to Exclude Proposed Cross-Racial Identification, and 139 MOTION for Reconsideration of Court's order held on 1/5/2007 before Judge Myron H. Thompson (Court Reporter Mitchell Reisner.) (Attachments: # 1 Witness List# 2 Government's Exhibit List# 3 Defendant's Exhibit List) (ag, ) (Entered: 01/08/2007)* |
| 01/06/2007 | ⊚184 | MOTION to Continue trial *Unopposed* by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 01/06/2007) |
| 01/06/2007 | ⊚185 | MOTION to Continue *404(b) Hearing - Unopposed* by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 01/06/2007) |
| 01/08/2007 | ⊚187 | ORDER as to Taneshia Michelle Lawson denying as moot 178 MOTION in Limine, and that 139 Motion to Reconsider and 129 Motion in Limine to exclude school records and lay testimony regarding mental capacity are under submission, granting 185 MOTION to Continue *404(b) Hearing - Unopposed* filed by Taneshia Michelle Lawson, resetting Motions Hearing re 134 Motion in Limine to exclude Rule 404(b) evidence and 164 Motion in Limine to exclude cross-racial identification for 2/2/2007 @ 10:30 AM in Courtroom 2FMJ before Honorable Myron H. Thompson. Signed by Judge Myron H. Thompson on 1/8/2007. (ag, ) (Entered: 01/08/2007) |
| 01/08/2007 | ⊚188 | ORDER TO CONTINUE - Ends of Justice as to Taneshia Michelle granting 184 MOTION to Continue trial *Unopposed* filed by Taneshia Michelle Lawson and resetting Jury Selection now set for 2/5/07 to 3/12/2007 @ 10:00 AM in Courtroom 2A before Hon. Chief Judge Mark E. Fuller and resetting Jury Trial now set for 2/5/07 to 3/19/2007 @ 09:00 AM in Courtroom 2FMJ before Honorable Myron H. Thompson. Signed by Judge Myron H. Thompson on 1/8/2007. (ag, ) (Entered: 01/08/2007) |
| 01/08/2007 | ⊚189 | NOTICE *of Defendant's Position* as to Taneshia Michelle Lawson (Freeman, Christine) (Entered: 01/08/2007) |
| 01/09/2007 | ⊚190 | NOTICE *of United States' Position Statement Regarding Potential Conflict* by USA as to Taneshia Michelle Lawson (Snyder, Christopher) (Entered: 01/09/2007) |
| 01/09/2007 | ⊚191 | OPINION as to Taneshia Michelle Lawson . Signed by Judge Myron H. Thompson on 1/9/2007. (ag, ) (Entered: 01/09/2007) |
| 01/11/2007 | ⊚192 | TRANSCRIPT of Proceedings (PDF available for court use only) as to Taneshia Michelle Lawson held on 1/5/2007 before Judge Myron H. Thompson. Court Reporter: Mitchell Reisner. (ag, ) (Entered: 01/11/2007) |
| 01/12/2007 | ⊚193 | Minute Entry for proceedings held before Judge Wallace Capel Jr.:Pretrial Conference as to Taneshia Michelle Lawson held on 1/12/2007 (Recording Time FTR: 9:08 - 9:17.) (war, ) (Entered: 01/12/2007) |
| 01/12/2007 | ⊚194 | ORDER as to Taneshia Michelle Lawson that on or before 1/19/07, counsel for defendant, shall file a supplemental brief to 106 MOTION to Dismiss *and objection to venire presenting new challenges not previously* |

|  |  | raised in that motion and that on or before 1/26/07, plaintiff shall file a response to the new challenges raised in defendant's supplemental brief. Signed by Judge Wallace Capel Jr. on 1/12/2007. (ag, ) (Entered: 01/12/2007) |
|---|---|---|
| 01/19/2007 | ◷195 | MOTION for Extension of Time to File *Memorandum - Unopposed* by Taneshia Michelle Lawson. (Freeman, Christine) (Entered: 01/19/2007) |
| 01/22/2007 | ◷196 | ORDER granting 195 Motion for Extension of Time to File as to Taneshia Michelle Lawson (3), directing that on or before 2/9/07, counsel for defendant, shall file a supplemental brief to her client's Motion to Dismiss and Objection to Venire Doc. 106, thereafter, on or before 2/20/07, plaintiff shall file a response to the new challenges raised in Defendant's supplemental brief. Signed by Judge Wallace Capel Jr. on 1/22/2007. (ag, ) (Entered: 01/22/2007) |
| 01/22/2007 | ◷197 | ORDER as to Taneshia Michelle Lawson setting On-The-Record Status Conference for 1/25/2007 @ 08:30 AM by telephone before Honorable Myron H. Thompson, directing that the government arrange for the conference. Signed by Judge Myron H. Thompson on 1/22/2007. (ag, ) (Entered: 01/22/2007) |
| 01/24/2007 | ◷198 | MOTION to Dismiss *Indictment* by USA as to Taneshia Michelle Lawson. (Attachments: # 1 Text of Proposed Order)(Snyder, Christopher) (Entered: 01/24/2007) |
| 01/25/2007 | ◷199 | Minute Entry for Status Conference (telephone) held before Judge Myron H. Thompson as to Taneshia Michelle Lawson on 1/25/2007. (Court Reporter Mitchell Reisner.) (ag, ) (Entered: 01/25/2007) |
| 01/25/2007 | ◷ | Set/Reset Hearings as to Taneshia Michelle Lawson: Status Conference set for 1/25/2007 10:45 AM by telephone before Honorable Myron H. Thompson. (ag, ) (Entered: 01/25/2007) |
| 01/25/2007 | ◷200 | Minute Entry for Status Conference held before Judge Myron H. Thompson as to Taneshia Michelle Lawson on 1/25/2007. (Court Reporter Mitchell Reisner.) (ag, ) (Entered: 01/25/2007) |
| 01/25/2007 | ◷201 | ORDER as to Taneshia Michelle Lawson (1) All pending motions in this criminal action, with the exception of the government's motion to dismiss the indictment, are denied without prejudice and with leave to renew in Criminal Action No. 2:07cr10-MHT. (2) The motions hearing currently scheduled for 2/2/07 is canceled. Signed by Judge Myron H. Thompson on 1/25/2007. (ag, ) (Entered: 01/25/2007) |
| 01/25/2007 | ◷202 | ORDER granting 198 Motion to Dismiss the Indictment as to Taneshia Michelle Lawson (3). Signed by Judge Myron H. Thompson on 1/25/2007. (ag, ) (Entered: 01/25/2007) |
| 01/25/2007 |  | ***Case Terminated as to Taneshia Michelle Lawson pursuant to Order 202. (ag, ) (Entered: 01/25/2007) |

FILED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JUL 1 1 2006

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

|                                                           |     |                            |
| --------------------------------------------------------- | --- | -------------------------- |
| UNITED STATES OF AMERICA                                  | )   |                            |
|                                                           | )   |                            |
| v.                                                        | )   | CR. NO. 2:06CR173-MHT      |
|                                                           | )   | [18 U.S.C. § 371;          |
| UNIQUE C. MUSKELLY,                                       | )   | 18 U.S.C. § 641;           |
| MONICA PEARL WOODALL,                                     | )   | 18 U.S.C. § 2]             |
| TANESHIA MICHELLE LAWSON, and                             | )   |                            |
| RUFUS NATHANIAL BIGGS, JR.                                | )   | **INDICTMENT**             |
|                                                           | )   |                            |

The Grand Jury charges:

## INTRODUCTION

1.      At all times relevant to this Indictment, Defendant **MONICA PEARL
WOODALL** lived in an apartment within the Middle District of Alabama. Defendants
**UNIQUE C. MUSKELLY** and **TANESHIA MICHELLE LAWSON** were Woodall's
friends and frequent visitors to this apartment.  Woodall's apartment was adjacent to a second
apartment, where the victim, K.B., received Social Security checks in the mail.   The
mailboxes for both apartments were also located adjacent to one another.

2.      Additionally, at all times relevant to this Indictment, Defendant **RUFUS
NATHANIAL BIGGS, JR.** was an employee of the Quik Pawn Shop in Montgomery,
Alabama.

## COUNT 1 – CONSPIRACY

## THE CONSPIRACY AND ITS OBJECTS

3.     From on or about October 1, 2003 through on or about November 1, 2003, the exact dates being unknown to the Grand Jury, in the Middle District of Alabama, and elsewhere, the defendants,

### UNIQUE C. MUSKELLY,
### MONICA PEARL WOODALL,
### TANESHIA MICHELLE LAWSON, and
### RUFUS NATHANIAL BIGGS, JR.,

did combine, conspire, confederate, and agree among themselves and each other, and other persons both known and unknown to the Grand Jury, to embezzle, steal, purloin, and knowingly convert to their own use money and things of value of the United States in an amount in excess of $1,000, and to receive, conceal, and retain the same with the intent to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined and converted, contrary to Title 18, United States Code, Section 641.

## MANNER AND MEANS OF THE CONSPIRACY

4.     It was part of the conspiracy that Muskelly, Woodall, Lawson, and Biggs agreed to cash U.S. Treasury checks for Social Security payments, which none of the defendants were entitled to.

## OVERT ACTS

5.     In order to effect the object of the conspiracy, Muskelly, Woodall, and Lawson did a number of overt acts, including:

-2-

    a..    Stealing Social Security checks from K.B.'s mailbox in or about October, 2003;

    b.    Traveling to the Quik Pawn Shop in Montgomery, Alabama in order to cash the Social Security checks on or about two occasions; October 3, 2003 and October 31, 2003;

    c.    Cashing two Social Security checks on or about October 3, 2003 at the Quik Pawn Shop;

    d.    Cashing two more Social Security checks on or about October 31, 2003 also at the Quik Pawn Shop; and

    e.    Dividing the proceeds of the Social Security checks among themselves and with Defendant Biggs in or about October, 2003.

6.    In order to effect the object of the conspiracy, Biggs did a number of overt acts, including:

    a.    Cashing the Social Security checks at the Quik Pawn Shop on or about two occasions; October 3, 2003 and October 31, 2003; and

    b.    Accepting a portion of the proceeds from the Social Security checks in or about October, 2003.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2 – THEFT OF GOVERNMENT PROPERTY

7.    The allegations set forth in paragraphs 1 through 6 of Count 1 of this Indictment are hereby realleged as if set forth herein.

8.    From on or about October 1, 2003 through on or about November 1, 2003, the exact dates being unknown to the Grand Jury, in the Middle District of Alabama, and elsewhere,

**UNIQUE C. MUSKELLY,**
**MONICA PEARL WOODALL,**
**TANESHIA MICHELLE LAWSON, and**
**RUFUS NATHANIAL BIGGS, JR.,**

defendants herein, did, while aiding and abetting and while being aided and abetted by each

other and other persons both known and unknown to the Grand Jury, embezzle, steal, purloin,

and knowingly convert to their own use money and things of value of the United States that

is, approximately $2,193 belonging to the United States, and did receive, conceal, and retain

the same with the intent to convert it to their use and gain, knowing it to have been

embezzled, stolen, purloined and converted.

All in violation of Title 18 United States Code, Sections 641 and 2.

A TRUE BILL:

_Jarnee Davis Williams_
Foreperson

_____
CHRISTOPHER A. SNYDER
Assistant United States Attorney

-4-

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
_____*Northern*_____ DIVISION

UNITED STATES OF AMERICA )
)
v )
) CR. NO. *2:06CR173-MHT*
*Taneshia Lawson* )
)

## WAIVER OF SPEEDY TRIAL ACT RIGHTS

I, *Taneshia Lawson*, defendant in the above styled case, do

hereby waive my rights to a speedy trial as established in 18 U.S.C. § 3161 et seq. I

certify to the court that I am waiving these rights knowingly, voluntarily, and intelligently

after receiving a full and complete explanation of my rights given to me by my attorney

and,

**WITH FULL KNOWLEDGE OF MY RIGHTS, I HEREBY EXPRESSLY
WAIVE MY RIGHTS TO A SPEEDY TRIAL.**

*7/25/2006*
**DATE**

*Taneshia Lawson*
**DEFENDANT**

*Patricia Kemp*
**ATTORNEY FOR DEFENDANT**

MIDDLE DISTRICT OF ALABAMA

**DATE:** 7-25-2006

☑ INITIAL APPEARANCE
❏ BOND HEARING
❏ DETENTION HEARING      **Digital Recording** 3:12 to 3:23 pm
❏ PRELIMINARY (EXAMINATION) (HEARING)     3:24 – 3:29 pm
❏ REMOVAL HEARING [RULE 5]
❏ ARRAIGNMENT

PRESIDING MAG. JUDGE ___Delores Boyd___    **DEPUTY CLERK:** sql

CASE NO. 2:06CR173-MHT    **DEFT. NAME:** Taneshia Michelle LAWSON

AUSA: ___Snyder___    **DEFT. ATTY:** ___Kemp___
     Type Counsel: ( )Retained; ( ) Panel CJA; ( ) Waived; (◯) CDO

PTSO: ~~Martin~~ Thweatt

USPO: _____

Defendant _____ does ___✓___ does NOT need an interpreter

Interpreter present ___✓___ NO _____ YES   Name: _____

---

✓   Date of Arrest 7-25-06 or ❏ Arrest Rule 5
✓   Deft. First Appearance. Advised of rights/charges. ❏Prob/Sup Rel Violator
✓   Deft. First Appearance with Counsel
❏   Deft. First Appearance without Counsel
✓   Requests appointed Counsel
✓   Financial Affidavit executed ❏ to be obtained by PTSO
✓   ORDER appointing Community Defender Organization Oval
❏   Panel Attorney Appointed; ❏to be appointed - prepare voucher
❏   Deft. Advises he will retain counsel. Has retained _____
❏   ❏Government's ORAL Motion for Detention Hearing ❏ to be followed by written motion;
       ❏ Government's WRITTEN motion for Detention Hearing filed
❏   Detention Hearing ❏held; ❏ set for _____ at _____
❏   ORDER OF TEMPORARY DETENTION PENDING HEARING entered
❏   ORDER OF DETENTION PENDING TRIAL entered
✓   Release order entered. Deft advised of conditions of release
✓   BOND EXECUTED (M/D AL charges) $ 25,000 . Deft released
❏   BOND EXECUTED (R.40 charges) - deft to report to originating district as ordered
❏   Bond not executed. Deft to remain in Marshal's custody
❏   Deft. ORDERED REMOVED to originating district
❏   Waiver of ❏preliminary hearing; ❏ Waiver of Rule 40 Hearing
❏   Court finds PROBABLE CAUSE. Defendant bound over to the Grand Jury.
✓   ARRAIGNMENT ☑ HELD. Plea of NOT GUILTY entered. ❏Set for _____
     DISCOVERY DISCLOSURE DATE: 7-25-06
   NOTICE to retained Criminal Defense Attorney handed to counsel
   Identity/Removal Hearing set for _____
   Waiver of Speedy Trial Act Rights executed

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:06-CR-00173-MHT |
| | ) | |
| TANESHIA MICHELLE LAWSON | ) | |

## ORDER ON ARRAIGNMENT

On July 25, 2006, the defendant, TANESHIA MICHELLE LAWSON, appeared in person and in open court with counsel and was arraigned in accordance with the provisions of Rule 10 of the Federal Rules of Criminal Procedure.

**PLEA.** The defendant entered a plea of NOT GUILTY. Counsel for the defendant is requested to contact the U.S. Attorney immediately if the defendant intends to engage in plea negotiations. If the defendant decides to change this plea, the parties shall file a notice of intent to plead guilty or otherwise notify the clerk's office at or before the pretrial conference and then this action will be set on a plea docket.

**PRELIMINARY SENTENCING GUIDELINES INFORMATION.** The court no longer requires the United States Probation Office to provide preliminary sentencing guideline information to defendants. However, in difficult or complex cases defendants may request the United States Probation Office to provide Sentencing Guideline calculation assistance with the understanding that any estimate is tentative only and is not binding on the United States Probation Office, the parties or the court. The court expects that requests for Sentencing Guideline calculation assistance shall be the exception and that defendants will not make such requests a matter of routine. A request for Sentencing Guideline calculation assistance shall be made to the United States Probation Office not later than **10 days** from the date of this order.

**PRETRIAL CONFERENCE.** An initial pretrial conference is hereby set for **11:00 a.m. on August 21, 2006,** District Courtroom 4A, Frank M. Johnson, Jr. United States Courthouse Complex, One Church Street, Montgomery, Alabama. **Not later than three (3) days prior to the date of the pretrial conference, counsel shall confer about the issues and matters to be discussed at the pretrial conference as set forth in this order.** Counsel who want in-custody defendants to attend must notify the Magistrate Judge within three days of the conference date so that an order to produce can be issued to the United States Marshal.

At the pretrial conference defense counsel and counsel for the government shall be fully prepared to discuss all pending motions, the status of discovery, possible stipulations, and the estimated length of the trial.  The defense counsel and counsel for the government shall be fully prepared to provide a definite commitment as to the final disposition of this case - by trial, plea or other non-trial disposition.  If resolution of a dispositive motion will affect the nature of this commitment, counsel must be fully prepared to discuss this type of resolution.  If the case is for plea, the notice of intent to enter a plea should be filed at the time of the pretrial conference.  If counsel require additional time for plea negotiations, counsel should be prepared to inform the court about the date when those negotiations will be completed.

**TRIAL.**  At arraignment, the parties agreed that due to the nature of this case, the need for adequate time for discovery and the need for counsel to have adequate time for trial preparation, the case should be set for trial before **District Judge Myron H. Thompson on the trial term beginning on November 6, 2006, unless otherwise ordered by the court.**

In setting this case for trial on the term indicated above, the court recognizes that the Speedy Trial Act places limits on the court's discretion, and that under the act, the trial of a defendant must commence within 70 days of the date of the indictment or the date of the defendant's first appearance before a judicial officer, whichever is later.  18 U.S.C. § 3161(c)(1).  In determining whether a case should be set after the expiration of the 70-days period, a court must consider among other factors "[w]hether the failure to [set the case at a later date] . . . would be likely to . . . result in a miscarriage of justice."  18 U.S.C. § 3161(h)(8)(B)(I).  The court also must consider "whether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  18 U.S.C. § 3161(h)(8)(B)(iv).  Based on the nature of this case, the parties' need for adequate time for discovery and the need for counsel to have adequate time for trial preparation, the court finds that the ends of justice served by setting this case on this trial term outweigh the best interest of the public and the defendant in a speedy trial.  Any requested voir dire questions and jury instructions must be filed no later than **one week before jury selection**.

**PRETRIAL MOTIONS.**  All pretrial motions under Fed.R.Crim.P. 12(b) and (d), 14 and 16, all notices under Fed.R.Crim.P. 12.1, 12.2 and 12.3, and any motion to compel pursuant to this court's standing order on discovery must be filed no later than **August 16, 2006.**  No motion filed after this date will be considered unless filed with leave of court. Unless otherwise ordered by the court, the continuance of the trial of a case will not extend the time for filing pretrial motions.  **THE CONFERENCING REQUIREMENT SET**

2

**FORTH IN THE STANDING ORDER ON CRIMINAL DISCOVERY SHALL BE MET BEFORE THE COURT WILL CONSIDER ANY DISCOVERY MOTION. THE COURT WILL NOT GRANT MOTIONS TO ADOPT MOTIONS FILED BY OTHER DEFENDANTS.**

Motions to suppress must allege specific facts which, if proven, would provide a basis of relief. This court will summarily dismiss suppression motions which are supported only by general or conclusory assertions founded on mere suspicion or conjecture. **All grounds upon which the defendant relies must be specifically stated in the motion in separately numbered paragraphs in a section of the motion which is labeled "Issues Presented.". Grounds not stated in the "Issues Presented" section of the motion will be deemed to have been waived.** See generally United States v. Richardson, 764 F.2d 1514, 1526-27 (11th Cir. 1985).

The government shall file a response to **all** motions filed by the defendant **on or before five days prior to the date set for a hearing** on the motion or, **if no hearing is necessary, on or before ten (10) days after the date of the pretrial conference.**

**DISCOVERY.** All discovery in this action shall be conducted according to the requirements of this court's Standing Order on Criminal Discovery. A copy of the standing order is attached and also may be found at http://www.almd.uscourts.gov/. The government provided initial disclosures to defendant at arraignment. Disclosures by the defendant, as required by ¶ 4 of the Standing Order on Criminal Discovery shall be provided on or before **August 9, 2006**.

**JENCKS ACT STATEMENTS.** The government agrees to provide defense counsel with all Jencks Act statements no later than the day scheduled for the commencement of the trial.[1]

**MANDATORY APPEARANCE OF COUNSEL.** Counsel of record for all parties are ORDERED to appear at all future court proceedings in this criminal case. Those attorneys who find it impossible to be in attendance (especially at the pretrial conference, jury selection, or trial) must make arrangements to have substitute counsel appear on behalf of their clients. Any attorney who appears as substitute counsel for a defendant shall have full authorization from the defendant to act on his or her behalf and be fully prepared to proceed. Substitute counsel shall not be counsel for a co-defendant unless permitted by the court after proper motion. Any counsel who wishes to have substitute counsel appear must obtain permission of the court in advance.

---

[1] In certain complex cases, the government may agree to earlier production.

   **NOTE:  Except in extraordinary circumstances or circumstances in which the Constitution would require it, the court will not entertain motions to withdraw filed by counsel who appear at arraignment unless the motions are filed within seven days of the date of this order.   Failure to obtain fees from a client is not an extraordinary circumstance.**

   Done this 26th day of July, 2006.


                              **/s/ Delores R. Boyd**
                              DELORES R. BOYD
                              UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CR. MISC. #534

STANDING ORDER ON CRIMINAL DISCOVERY

It is the court's policy to rely on the standard discovery procedure as set forth in this Order as the sole means of the exchange of discovery in criminal cases except in extraordinary circumstances. This Order is intended to promote the efficient exchange of discovery without altering the rights and obligations of the parties, but at the same time eliminating the practice of routinely filing perfunctory and duplicative discovery motions.

INITIAL DISCLOSURES:

(1) Disclosure by the Government. At arraignment, or on a date otherwise set by the court for good cause shown, the government shall tender to defendant the following:

(A) Fed. R. Crim. P. 16(a) Information. All discoverable information within the scope of Rule 16(a) of the Federal Rules of Criminal Procedure.

(B) Brady Material. All information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment, without regard to materiality, within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963).

(C) Giglio Material. The existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective witnesses, within the scope of *United States v. Giglio*, 405 U.S. 150 (1972).

(D) Testifying informant's convictions. A record of prior convictions of any alleged informant who will testify for the government at trial.

(E) Defendant's identification. If a line-up, show-up, photo spread or similar, procedure was used in attempting to identify the defendant, the exact procedure and participants shall be described and the results, together with any pictures, and photographs, shall be disclosed.

(F) Inspection of vehicles, vessels, or aircraft. If any vehicle, vessel, or aircraft, was allegedly utilized in the commission of any offenses charged, the government shall permit the defendant's counsel and any expert selected by the defense to inspect it, if it is in the custody of any governmental authority.

5

(G) Defendant's latent prints. If latent fingerprints, or prints of any type, have been, identified by a government expert as those of the defendant, copies thereof shall be provided.

(H) Fed. R. Evid.404(b). The government shall advise the defendant of its intention to introduce evidence in its case in chief at trial, pursuant to Rule 404(b) of the Federal Rules of Evidence.

(I) Electronic Surveillance Information. If the defendant was an aggrieved person as defined in 18 U.S.C. § 2510(11), the government shall so advise the defendant and set forth the detailed circumstances thereof.

(2) Obligations of the Government.

(A) The government shall anticipate the need for, and arrange for the transcription of the grand jury testimony of all witnesses who will testify in the government's case in chief, if subject to Fed. R. Crim. P. 26.2 and 18 U.S.C. 3500. Jencks Act materials and witnesses' statements shall be provided as required by Fed. R. CRIM. P. 26.2 and 18 U.S.C. ' 3500. However, the government, and where applicable, the defendant, are requested to make such materials and statements available to the other party sufficiently in advance as to avoid any delays or interruptions at trial. The court suggests an early disclosure of Jencks Act materials.

(B) The government shall advise all government agents and officers involved in the case to preserve all rough notes.

(C) The identification and production of all discoverable evidence or information is the personal responsibility of the Assistant United States Attorney assigned to the case and may not be delegated without the express permission of the court.

(3) Disclosures to U.S. Probation. At arraignment, or on a date otherwise designated by the court upon good cause shown, the government shall tender to the U.S. Probation Office all essential information needed by U.S. Probation to accurately calculate the sentencing guideline range for the defendant, including, but not limited to, information regarding the nature of the offense (offense level), the nature of the victim and the injury sustained by the victim, defendant's role in the offense, whether defendant obstructed justice in the commission of the crime, defendant's criminal history, and any information regarding defendant's status as a career offender/armed career criminal. In addition, in order to comply with the requirements of the Anti-Terrorism Act, the government shall produce to the U.S. Probation Office information regarding the victims of defendant's alleged criminal activity, including, but not limited to, the identity of the victim by name, address, and phone number, and the nature and extent of the victim's loss or injury.

(4) Disclosures by the Defendant. If defendant accepts or requests disclosure of discoverable

information pursuant to Fed. R. CRIM. P. 16(a)(1)(C), (D), or (E), defendant, on or before a date set by the court, shall provide to the government all discoverable information within the scope of Fed. R. Crim. P. 16(b).

SUPPLEMENTATION. The provisions of Fed. R. CRIM. P. 16(c) are applicable. It shall be the duty of counsel for all parties to immediately reveal to opposing counsel all newly discovered information, evidence, or other material within the scope of this Rule, and there is a continuing duty upon each attorney to disclose expeditiously.

MOTIONS FOR DISCOVERY. No attorney shall file a discovery motion without first conferring with opposing counsel, and no motion will be considered by the court unless it is accompanied by a certification of such conference and a statement of the moving party's good faith efforts to resolve the subject matter of the motion by agreement with opposing counsel. No discovery motions shall be filed for information or material within the scope of this Rule unless it is a motion to compel, a motion for protective order or a motion for an order modifying discovery. See Fed. R. CRIM. P. 16(d). Discovery requests made pursuant to Fed. R. CRIM. P. 16 and this Order require no action on the part of this court and shall not be filed with the court, unless the party making the request desires to preserve the discovery matter for appeal.

Done this 4th day of February, 1999.

/s/ W. Harold Albritton
CHIEF UNITED STATES DISTRICT JUDGE

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

/s/ Ira De Ment
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA       )
                               )
        v.                     )    CRIMINAL ACTION NO.
                               )      2:06cr173-MHT
TANESHIA MICHELLE LAWSON       )

ORDER

It is ORDERED that the jury selection and trial of
this case, now set for November 6, 2006, are reset for
October 30, 2006, at 10:00 a.m. at the Frank M. Johnson,
Jr. United States Courthouse Complex, Courtroom 2FMJ, One
Church Street, Montgomery, Alabama 36104.

DONE, this the 15th day of August, 2006.


        /s/ Myron H. Thompson
     UNITED STATES DISTRICT JUDGE

## MINUTES

### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF ALABAMA

☑ **Northern**      ❑ **Southern**      ❑ **Eastern**

| | | | | |
|---|---|---|---|---|
| **HON.** Delores Boyd | | **AT** Montgomery | | **, Alabama** |
| **DATE COMMENCED** 8/21/2006 | | @ 11:21 | | ☑ a.m. ❑ p.m |
| **DATE COMPLETED** 8/21/2006 | | @ 11:23 | | ☑ a.m. ❑ p.m |

**CASE NO.** 2:06CR173-MHT

UNITED STATES OF AMERICA                **VS.**        TANESHIA MICHELLE LAWSON

**Plaintiff(s)**                                              **Defendant(s)**

### APPEARANCES

**Plaintiff(s)/Government**                        **Defendant (s)**

Snyder                                                      Freeman

### COURT OFFICIALS PRESENT:

**Ctrm Clerk:** S. Q. Long, Jr.            **Crt Rptr:**

**Law Clerk:**                                      **Interpreter :**

**USPO/USPTS:**                                **Other:**

### PROCEEDINGS:

❑ **Motion Hearing :**
❑ **Status Conference**        ❑ **Oral Argument**        ❑ **Evidentiary Hrg.**
❑ **Revocation**                  ❑ **Scheduling Conf.**     ❑ **Show Cause**
❑ **Settlement Conference**  ❑ **Telephone Conf.**      ❑ **Sentencing**
❑ **Non-Jury Trial**             ❑ **Revocation/Prtrl/SupvRel/Prob**
❑ **Other**

☑                                    **Pretrial Conference**

Pending Motions: None

Discovery Status: Complete        Plea Status Prob

Trial Status/Length: 1-1½ Days    Trial Term: 10-30-06

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA       )
                               )
        v                      )        2:06-CR-173-MHT
                               )
TANESHIA MICHELLE LAWSON       )

**PRETRIAL CONFERENCE ORDER**

A pretrial conference was held on August 21, 2006, before the undersigned

Magistrate Judge. Present at this conference were Federal Defender Christine A. Freeman,

standing in for Assistant Federal Defender Patricia Kemp, counsel for the defendant, and

Assistant United States Attorney Christopher Synder, counsel for the government. As a

result of the conference, it is

ORDERED as follows:

1. Jury selection is set for October 30, 2006. The trial of this case is set for the trial

term commencing on October 30, 2006, before United States District Judge Myron H.

Thompson and is expected to last two trial days.

2. There are no motions currently pending.

3. Proposed voir dire questions shall be filed on or before October 23, 2006.

Counsel should not include questions seeking information which is provided in the jury

questionnaire.

4. All motions in limine shall be filed on or before October 23, 2006. Motions in

limine must be accompanied by a brief. Failure to file a brief will result in denial of the

motion.

 5. Proposed jury instructions shall be filed on or before October 23, 2006.

 6. The court will not consider a plea pursuant to Rule 11(c) (1)(A) or (C) unless notice is filed on or before noon on October 18, 2006. The government and defendant are informed that if a defendant waits until the last minute to enter a plea, and if that plea, for whatever reason, is not accepted by the court, the defendant and the government will be expected to be prepared to go to trial on October 30, 2006. The court will not continue the trial of this case as to any defendant because a defendant's plea was not accepted. In other words, the defendant and the government should not wait until the last minute for a defendant to enter a guilty plea, and both the defendant and the government should all be ready to go to trial on October 30, 2006, as to all defendants, even though a particular guilty plea was not accepted by the court.

 Done this 21st day of August, 2006..

     **/s/ Delores R. Boyd**
     DELORES R. BOYD
     UNITED STATES MAGISTRATE JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

## NOTICE OF DIMINISHED MENTAL CAPACITY DEFENSE

**COMES NOW** the Defendant, Taneshia Lawson, by and through undersigned counsel,

Christine Freeman, and pursuant to Fed. R. Crim. P. 12.2, informs the government and this Court

that at trial she may rely upon a defense of diminished mental capacity.

Dated this 19th day of October 2006.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Christopher Snyder, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

> s/Christine A. Freeman
> **CHRISTINE A. FREEMAN**
> **TN BAR NO.: 11892**
> Attorney for Taneshia M. Lawson
> Federal Defenders
> Middle District of Alabama
> 201 Monroe Street, Suite 407
> Montgomery, AL 36104
> TEL: (334) 834-2099
> FAX: (334) 834-0353
> E-Mail: Christine_Freeman@fd.org

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA    )
                            )
    v.                      )    CRIMINAL ACTION NO.
                            )      2:06cr173-MHT
TANESHIA MICHELLE LAWSON    )


ORDER

It is ORDERED that the motion to strike (doc. no. 87)

is set for submission, without oral argument, on October

25, 2006, with all briefs due by said date.

DONE, this the 24th day of October, 2006.


                    /s/ Myron H. Thompson
                UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

## DEFENDANT'S RESPONSE TO MOTION TO STRIKE

**NOW COMES** the defendant, Taneshia Lawson, by and through undersigned counsel, and makes the following response to the Motion to Strike filed by the Government (D.E. 87-1).

1. Government counsel is correct that defense counsel did not provide notice of a defense of mental defect during the pretrial conferences in this matter at the initial appearance on July 25, 2006 or the pretrial conference on August 21, 2006. The following describes the events of this case and why defense counsel requests this Court to permit the notice and presentation of the challenged evidence on behalf of Ms. Lawson, and deny the Motion to Strike.

2. The indictment in this case was filed on July 11, 2006 and charges Ms. Lawson and three codefendants with committing two offenses from October 1, 2003 through November 1, 2003. The offense charged in Count 1 is conspiracy to violate 18 U.S.C. § 641 by committing theft of money and things of value of the United States in an amount over $1,000, in violation of 18 U.S.C. § 371. The offense charged in Count 2 is theft of $2,193 of money and things of value belonging to the United States, in violation of 18 U.S.C. §§ 641

and 2. (D.E. 1).

3.     The Indictment alleges that all four defendants entered into a conspiracy to cash Social Security checks and that the three female defendants "did a number of overt acts" in order to effect the object of the conspiracy, including stealing the checks, traveling to the Quik Pawn Shop in Montgomery twice to cash the checks, cashing two checks on two different days, and dividing the proceeds.  (D.E. 1).

4.     Ms. Lawson was arrested, arraigned, and released on a non-surety bond on this indictment on July 25, 2006.  (D.E. 9 - 13).   The Order on Arraignment was entered on July 26, directed that all pretrial motions and notices, including notices under F.R.Cr.P. 12.2, be filed by August 16, 2006,  and set this case for a pretrial conference on August 21, 2006. (D.E. 12).

5.     Discovery was received from the government on or about August 2, 2006. Reports  included in this discovery  indicate these charges arose in October 2003, when four Social Security checks mailed to a neighbor of the defendant Monica Woodall were taken from the neighbor's mail.  Each check was in an amount around $552 and less than $1,000.

6.      Assuming accounts asserted in these reports are accurate, defense counsel would expect proof at trial to include testimony that two checks were cashed by the defendant Unique Muskelly on or about October 3, 2003; a  third check was cashed on or about October 31, 2003 by Ms. Muskelly; and the fourth check was cashed on or about October 31, 2003 by Ms. Lawson.   All checks were accepted and cashed by Rufus Biggs,

2

the fourth defendant in this case, who was then working as a cashier at a Quik Pawn shop. Ms. Woodall drove the people cashing the checks to the Quik Pawn. There are inconsistent statements as to which defendant(s) committed the physical removal of each check from Ms. Woodall's neighbor's mail and which individuals, including defendants and non-defendants, received portions of the proceeds of each check.

7.      The reports included in the government's discovery further indicate that all four defendants, including Ms. Lawson, apparently signed written rights waivers and gave incriminating statements to law enforcement officers.

8.      Based upon an initial review of the discovery in this matter, and with Ms. Lawson's apparent approval, defense counsel initiated negotiations for a pretrial resolution of this matter with government counsel. Such discussions included brief conversations on August 21, September 6, September 19, September 25 and October 4.

9.      Defense counsel became concerned regarding the defendant's mental status when coworkers informed counsel that the defendant had indicated she had left a job at Sonic due to an inability to count change.

10.     Defense counsel orally notified Government counsel at some time during the week of October 2, 2006 (most likely on October 4, 5 or 6) that defense counsel had concerns about the defendant's mental status; had therefore arranged for a mental evaluation; and would provide Government counsel with the report of that evaluation immediately.

11.     Ms. Lawson was evaluated on October 6; report of the evaluation was faxed

3

to defense counsel's office on October 12 and sent to government counsel by October 13.

12.     On October 19, Ms. Lawson filed a Notice under F.R.Cr.P. 12.2(b).  (D.E. 77).

While the notice was inartfully captioned "Notice of Diminished Mental Capacity Defense,"

the notice was intended to comply with the requirement of F.R.Cr.P. 12.2(b) that written

notice be provided of an intent "to introduce expert evidence relating to a mental disease or

defect or other mental condition of the defendant bearing on . . . the issue of guilt . . ."

Notice of the expert and his testimony had already been provided to government counsel,

through the faxing of the above-described report on October 12 or 13.[1]

13.     Rule 12.2(b) is <u>not</u> limited to affirmative defenses, and the notice was not

intended to limit the proposed expert testimony to an affirmative defense.  As discussed

below, this evidence will have relevance to several different issues which affect

determination of guilt.

14.     The mental evaluation report is filed under seal with this Court (D.E. 87-2, 96)

and consists of fifteen un-numbered pages.   Fax page numbers from 03 to 17 are shown in

the upper right corner of each page and will be used to reference the report's contents.

15.     The report  indicates that Ms. Lawson is now twenty-two years old, left school

in tenth grade, and is five months pregnant with her third child.  (Report, pp. 3, 4).  Her full

---

[1]Defense counsel has also informed government counsel of the ongoing attempt to obtain additional records relating to Ms. Lawson's mental limitations, including the identity and fact of a second expert evaluation of Ms. Lawson on October 24; that report has not yet been received by defense counsel.

scale IQ score was measured at 66 on the Wechsler Adult Intelligence Scale (WAIS-III). (Report, p. 6). "Her over all level of cognitive functioning places [her] within the upper limits of the mild range of mental retardation." (Report, p. 7). Her spelling and reading level are at grades 4 and 3, respectively. (Report, p. 7). A test given to measure any possible malingering indicated that Ms. Lawson "was properly motivated to try to do her best during testing and was trying to put forth good effort during the interview and testing session . . ." (Report, pp. 8 - 9).

16. Ms. Lawson was observed to have "an oddness concerning her behavior. She seems to be inattentive, daydreaming, and in another world, seemingly preoccupied more than normally expected." (Report, p. 5).She could not perform simple problems in arithmetic without pencil and paper. She did not identify the current president. She does not know the name of the state governor, or the number of weeks or days in a year, or current news. (Report, p. 5). She appeared anxious, depressed and scared. (Report, p. 6).

17. The personality assessment of Ms. Lawson indicated that she "appears to be easily frighten[ed]; "may be frequently phobic;" "tends to have trouble making decisions and worries about what others will think of the decisions she has made." (Report, p. 7). "She is likely to give up quickly when things go wrong for her and to avoid conflict whenever possible." She is suspicious of offers to help her. She is "extremely introverted, shy, and bashful . . . . easily embarrassed and intimidated in social situations." (Report, p. 8).

18. As the government has conceded, each of the charges pending against Ms.

5

Lawson is a crime of "specific intent," requiring the government to prove that Ms. Lawson

acted with the specific intent required to commit these inchoate offenses.  (D.E. 87-1, fn 11).

To sustain a conviction on Count 1, the government must prove at least the degree of

criminal intent necessary to show intent to enter into an agreement to commit the substantive

offense, the felony of theft from the United States of over $1,000.  18 U.S.C. § 641.  To

sustain a conviction on Count 2, on either direct action or on a theory of aiding and abetting,

the government must prove at least the degree of criminal intent necessary to show intent to

assist in the commission of the substantive offense of theft from the United States of $2,193.

19.     "If a subjective state of mind is an element of a crime, evidence regarding the

existence or absence of that state of mind is evidence relevant to whether a crime was in fact

committed.  Psychiatric evidence which negates *mens rea* thus negates an element of the

offense rather than constituting a justification or excuse," and is thus admissible.  *United*

*States v. Westcott*, 83 F.3d 1354, 1358 (11th Cir. 1996), citing *United States v. Cameron*, 907

F.2d 1051, 1065 (11th Cir. 1990).   Psychological evidence is relevant to *mens rea* when a

defendant is charged with a specific intent crime.  *Cameron*, 907 F.2d at 1063, n. 20; *United*

*States v. Peralta*, 930 F.Supp. 1523, 1525 (S.D. Fla. 1996).

20.     Evidence of mental retardation is relevant to determination of whether a

defendant charged with conspiracy has the charged "conspiratorial understanding and

purpose. . . . In particular, the evidence might help the jury to assess whether, or to what

degree, it could infer the requisite specific intent from [the defendant's] commission of the

6

charged acts." *United States v. Childress*, 58 F.3d 693, 728 - 730 (D.C. Cir. 1995) (holding evidence of the limitations of a defendant with an I.Q. of 71 to be "highly relevant" to assessment of his capacity to "entertain, specific intent to further the purposes of the conspiracy.") While Ms. Lawson's mental limitations may not "excuse" her personal activity in cashing one $552 check, they are relevant to the determination of whether she had the specific intent to further the purposes of either a conspiracy or a substantive felony theft to steal and cash four such checks.  *Childress*, 58 F.3d at 730.

21.     Ms. Lawson's mental limitations will also be important in assessing what inferences of intent may be drawn from her participation in any overt acts, such as riding to the Quik Pawn Shop with Ms. Muskelly and Ms. Woodall.  Courselle, Watt, Sheen, "Suspects, Defendants, and Offenders with Mental Retardation in Wyoming," 1 *Wyoming L.Rev.* 1, 55 (2001) (some "people with mental retardation have an impaired understanding of the wrongness of an act . . .")

22.     In addition, evidence of mental retardation will be relevant to the jury's determination of the accuracy and weight to be given to evidence of  inculpatory statements alleged to have been made by Ms. Lawson.  See Garcia, Steele, "Mentally Retarded Offenders in the Criminal Justice and Mental Retardation Services Systems in Florida," 41 *Ark. L. Rev.* 809, 824 (1988) ("These writers have had the experience, on several occasions, of having a mentally retarded adult 'confess' to a rule infraction or crime s/he did not commit, simply to escape the pressure involved in being questioned."); Appelbaum, Zaitchik,

7

"Mental Health Professionals Play Critical Role in Presentencing Evaluations," 19 *Mental and Physical Disability Law Reporter* 677 (1995) ("For offenders with mental retardation, some research suggests that they are viewed as more easily coerced into committing crimes and into confessing to criminal behavior."); Courselle, Watt, Sheen, "Suspects, Defendants, and Offenders with Mental Retardation in Wyoming," 1 *Wyoming L.Rev.* 1, 20 - 22 (2001) (describing mentally retarded persons' limitations in communication skills and abstract understanding of such concepts as blameworthiness and causation).

23.     In arranging for mental evaluation of Ms. Lawson almost four weeks before the scheduled trial date and filing the Rule 12.2 notice, defense counsel intended no inconvenience to the Court or government, nor any "eleventh-hour effort to create jury distraction." (D.E. 87-1, p. 8).   Rather, counsel is attempting to insure that Ms. Lawson's rights are fully protected and that the government and the Court are fully aware of the circumstances of the defendant.   See Courselle, Watt, Sheen, "Suspects, Defendants, and Offenders with Mental Retardation in Wyoming," 1 *Wyoming L.Rev.* 1, 34 (2001) ("defendants with mental retardation will be best served if the court is aware of and . . . make[s] appropriate accommodations to ensure that the defendant does not wind up being steamrolled by a system he or she does not understand.")

24.     Additionally, counsel acknowledges that, as observed by Judge Bazelon, "retardation frequently goes undetected."   *United States v. Masthers*, 539 F.2d 721, 728 (D.C. Cir. 1976) (reversing district court order which denied evidentiary hearing to movant

seeking to vacate his guilty plea on the grounds of incompetence at the time the plea was entered). To the extent counsel has contributed to this problem by delayed recognition, counsel apologizes to the Court and opposing counsel. See Courselle, Watt, Sheen, "Suspects, Defendants, and Offenders with Mental Retardation in Wyoming," 1 *Wyoming L.Rev.* 1, 7, 8 (2001) (noting that there is a low rate of referral of defendants with mental retardation for pretrial evaluation, reflecting "a relatively common failure to recognize the 'existence and magnitude of the disability' and that underrecognition of the disability compromises the defendants' constitutional interests. . . . Even when an attorney is aware of the disability, appropriately accommodating the disability to protect the individual's rights presents additional challenges.")

25.    This Court has both the authority to establish a schedule of deadlines for defendants to file motions and requests prior to trial and the authority to grant relief from non-compliance with such schedule. *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990). Rule 12.2(b), Federal Rules of Criminal Procedure, also permits this Court to, "for good cause, allow the defendant to file a late notice, grant the parties additional trial-preparation time, or make other appropriate orders." Under the unique circumstances of this case, undersigned defense counsel respectfully requests that such relief be granted to Ms. Lawson in this case and that the Motion to Strike be denied. As noted in the Government's alternative motion, defendant does not oppose the government's request for a continuance. (D.E. 88).

9

**WHEREFORE**, the Defendant respectfully prays that this Court permit Ms. Lawson to file notice pursuant to F.R.Cr.P. 12.2(b) and permit the introduction of evidence on Ms. Lawson's mental state at the relevant times and its impact on her intent to join the charged conspiracy or to commit and/or aid and abet the charged substantive offense. Defendant further requests that this Court deny the Motion to Strike.

<div style="margin-left:40%">

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite

201, Montgomery, Alabama 36104.

<div style="text-align: right">

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

</div>

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

## AMENDED NOTICE PURSUANT TO RULE 12.2(b)

**COMES NOW** the Defendant, Taneshia Lawson, by and through undersigned counsel and pursuant to F.RCr.P. 12.2 (b), and informs Government counsel and this Court of her intent "to introduce expert evidence relating to a mental disease or defect or other mental condition of the defendant bearing on . . . the issue of guilt . . ." Notice of the expert and his testimony has already been provided to government counsel, through the faxing of the expert's report to Government counsel  on October 12 or 13, 2006.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite

201, Montgomery, Alabama 36104.

s/Christine A. Freeman
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO.  2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA MICHELLE LAWSON** | ) | |
| | ) | |

---

### United States' Motion in Limine to Exclude Defendant's Newly Identified Expert Testimony Regarding Confessions

---

The United States moves to exclude Defendant Teneshia Lawson's newly proffered potential grounds for expert testimony.  In her response the Government's Motion to Strike, or in the Alternative, in Limine, filed only yesterday in the early morning, Lawson argued that "evidence of mental retardation will be relevant to the jury's determination of the accuracy and weight to be given to evidence of inculpatory statements alleged to have been made by Ms. Lawson."[1]

To support this theory, Lawson cites to two law review articles, which essentially argue that incidents of false confessions are higher amongst mentally handicapped suspects.  Without conceding its prior objections to Lawson's notice of psychological evidence, the United States objects.

Defendant has provided no expert disclosure or expert report, which supports such a proposition, as is required under Rule 16(b)(1)(C).  The only report so far disclosed to

---

[1] Doc. 99 at 7-8.

the Government evaluates Lawson's current mental health. Moreover, even if disclosure

and a report were to have been provided for such testimony, the United States still would

have requested a hearing under Rule 702 and *Daubert*. Any such testimony should

therefore be excluded.

Respectfully submitted this 27th day of October, 2006,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2006, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **CASE NO: 2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA M. LAWSON** | ) | |

## DEFENDANT'S OBJECTION TO COMPOSITION OF THE VENIRE AND METHOD OF VENIRE SELECTION, AND MOTION TO DISMISS DUE TO COMPOSITION OF THE JURY VENIRE AND SUBSTANTIAL FAILURE TO COMPLY WITH THE JURY SELECTION AND SERVICE ACT

**COMES NOW** the Defendant, Taneshia Lawson, by and through undersigned counsel, and states this objection to the composition of the venire and method of venire selection, and further moves this court to dismiss this Indictment due to improper composition of the Grand and Petit jury venires, and the underrepresentation of African-Americans on said venires, and substantial non-compliance with the Jury Selection and Service Act, 28 U.S.C. § 1861, et seq..

The composition of the Grand and Petit Jury Venires violates the Jury Selection and Service Act, 18 USC §1861 et seq, and the Defendant's Fifth and Sixth Amendments rights to trial by an impartial jury representing a fair cross section of the community, the guarantee of due process, and equal protection.

This Motion is supported by the attached Affidavit. A signed and notarized original Affidavit will be filed on October 30. Defendant requests that a hearing on this motion be

1

conducted, if necessary, after the trial in this matter.

Dated this 29th day of October, 2006.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite

201, Montgomery, Alabama 36104.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

2

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

### <u>AFFIDAVIT</u>

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF MONTGOMERY | ) |

I, CHRISTINE A. FREEMAN, state the following:

1.      I am employed as Executive Director of the Federal Defender Program for the Middle District of Alabama.

2.      On Friday, October 27, 2006 at approximately 4:00 p.m., I received from the Clerk's office approximately 75 juror questionnaires submitted by the members of the jury venire in this case.

3.      A review of these questionnaires indicates there is substantial disparity between the number of African-Americans over the age of 18 who live within the judicial circuit served by this Court who are registered to vote, and the number of African-Americans represented within the Grand and Petit jury venires in this matter.

4.      My initial research indicates that within the judicial district served by the United States District Court for the Middle District of Alabama, the percentage of African-Americans over the age of 18 who are registered to vote is approximately 31%.

5.      Of the 75 juror questionnaires provided to the undersigned, only 17, or 22% are African Americans.  Eleven questionnaires of jurors who have responded to the jury summons were not provided. If these additional jurors are all Caucasian jurors, the percentage of African Americans on this venire will be 19.7%.

6.      On information and belief, the records established in other challenges to the Grand and Petit jury venires in this district have shown a pattern and history of juror selection procedures which do not comply with the Jury Selection and Service Act, 18 U.S.C. §1861 et seq. or with the Local Rules of this Court, and which result in a substantial disparity between the expected percentage of African-Americans based on population and voter registration and the actual percentage of African Americans called for and qualified for jury service.  See *United States v. Clay*, 159 F.Supp. 2d 1357 (M.D. 2001) and motion pending in *United States v. Leon Carmichael, Sr.,* Case No. 2:03-cr-259-T (D.E. 400, 794).

7.      This  under-representation of African Americans on the Grand and Petit jury venire violates Ms. Lawson's Fifth and Sixth Amendments rights, by violating Ms. Lawson's right to be tried by an impartial jury representing a fair cross section of the community and her rights to due process and equal protection.

8.      This  under-representation of African Americans also violates Ms. Lawson's rights under the Jury Selection and Service Act, 18 U.S.C.  §1861 et seq.

/S/ Christine A. Freeman
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**

2

The foregoing was sworn to and subscribed before me this 30th day of October 2006, by a person known to me to be Christine A. Freeman.

_____
NOTARY PUBLIC
My Commission expires:_

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

## DEFENDANT'S RESPONSE TO MOTION IN LIMINE

**NOW  COMES**   the defendant, Taneshia Lawson, by and through undersigned counsel, and respectfully asks that the Government's Motion in Limine (D.E. 104) be denied:

1.      Government counsel asks the Court "to exclude Defendant Taneshia Lawson's newly proffered potential grounds for expert testimony."  Although conceding that Ms. Lawson has disclosed an evaluation report on Ms. Lawson's "mental health," the Government contends that a separate disclosure and report are required if defendant is to be permitted to argue that a false confession is more likely from a mentally handicapped suspect.

2.      Theron Covin will not be presented as an expert in false confessions, but will testify as to tests he administered and his training and experience upon which he relies in describing Ms. Lawson's IQ and in concluding that she is mentally retarded.   Both parties are permitted to argue, and jurors are permitted to draw, reasonable inferences from the facts in evidence.

3.      The Sixth Amendment right to present a defense and the Fifth Amendment Due Process clause require that a criminal defendant be permitted a meaningful opportunity to present a complete defense.  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted

directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Clause or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") See also, 476 U.S. at 688 (the circumstances surrounding the making of a confession are often relevant not only to its voluntariness, but also to its credibility); *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense"); Fed.R.Evid. 102 ("These rules shall be construed ... to the end that the truth may be ascertained and proceedings justly determined."). Ms. Lawson's limited mental abilities relate directly to whether or not the government can prove beyond a reasonable doubt that she had the specific intent to conspire to steal and/or to steal three checks, in addition to the check she herself wrongfully cashed.

4.     The government seeks a selective application of its view of procedural requirements. Although the events charged in this indictment occurred in 2003 and fingerprint reports were requested by the investigating agent before 2005, the government requested additional fingerprint examinations of the physical evidence on October 24, 2006 and provided notice to defense counsel of both a new fingerprint expert and a new fingerprint report on October 27, 2006, three days before jury selection. Nonetheless, defense counsel does not object to the resulting evidence, which assists Ms. Lawson, and in fact will seek its introduction.

2

5.      All parties are to be expected to continue investigation and preparation of their cases throughout the pretrial period and to notify opposing counsel of new information. Defense counsel notified government counsel of the issue (Ms. Lawson's intellectual abilities) it was continuing to investigate even before the evaluation of that issue was complete.  Defense counsel provided the report on that issue immediately to government counsel, within twenty-four hours of its acquisition by defense counsel.  The government is fully aware of the fact and evidence defendant seeks to present, does not apparently contest the accuracy of that evidence, but merely seeks to exclude it, based upon an interpretation of the rules that it does not itself meet.

**WHEREFORE**, the Defendant respectfully prays that this Court deny the Government's Motion in Limine.

Respectfully submitted,

<u>s/Christine A. Freeman</u>
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

3

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite

201, Montgomery, Alabama 36104.

<div align="right">

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

</div>

4

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA    )
                            )
       v.                   )   CRIMINAL ACTION NO.
                            )     2:06cr173-MHT
TANESHIA MICHELLE LAWSON    )       (WO)


OPINION AND ORDER

Defendant Taneshia Michelle Lawson was indicted on
two counts, one for conspiracy to commit theft of
government property and the other for theft of government
property, for having allegedly cashed someone else's
Social Security check as her own in 2003.  This criminal
case is before the court on the government's motion _in
limine_ to exclude psychiatric testimony reflecting, among
other things, that Lawson is "within the upper limits of
the mild range of mental retardation."  Psych. Report at
5.  Lawson argues that, because of her mental retardation
and other attendant mental-health difficulties, she did

not have the <u>mens rea</u> (that is, the specific intent) required to steal government property or conspire to do so.  She adds that, while with this evidence she does seek to put before the jury the condition of her mental health, she does not assert the affirmative defense of insanity.  For the reasons that follow, the government's motion will be granted.

I.

As stated, Lawson has been indicted on two counts of conspiracy and theft of government property for having allegedly cashed someone else's Social Security check. She filed notices, pursuant to Fed. R. Crim. P. 12.2(b),[1]

_____

1.  Fed.R.Crim.P. 12.2 provides, in part, that:

"(a) Notice of an Insanity Defense.  A defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided for filing a pretrial motion, or at any later time the court sets, and file a copy of the notice with the clerk.  A defendant who
(continued...)

2

informing the government and this court that at trial she

may rely upon "a defense of diminished mental capacity."[2]

_____

1. (...continued)
   fails to do so cannot rely on an
   insanity defense. The court may, for
   good cause, allow the defendant to file
   the notice late, grant additional
   trial-preparation time, or make other
   appropriate orders.

   "(b) Notice of Expert Evidence of a
   Mental Condition. If a defendant
   intends to introduce expert evidence
   relating to a mental disease or defect
   or any other mental condition of the
   defendant bearing on either (1) the
   issue of guilt or (2) the issue of
   punishment in a capital case, the
   defendant must--within the time provided
   for filing a pretrial motion or at any
   later time the court sets--notify an
   attorney for the government in writing
   of this intention and file a copy of the
   notice with the clerk. The court may,
   for good cause, allow the defendant to
   file the notice late, grant the parties
   additional trial-preparation time, or
   make other appropriate orders."

2. Lawson filed her first notice "pursuant to Fed.
R. Crim. P. 12.2, inform[ing] the government and this
Court that at trial she may rely upon a defense of
diminished mental capacity." In her second notice she
clarified that her earlier filing was intended to give
(continued...)

The government responded with a motion to exclude any psychiatric evidence as inadmissible to support a 'diminished mental capacity' defense.

---

2.   (...continued)
notice of expert testimony pursuant to Rule 12.2(b).  <u>See</u> <u>supra</u> note 1.

On July 26, 2006, the magistrate judge issued an order on arraignment that required that Lawson file "all notices under Fed.R.Crim.P. ... 12.2 ... no later than August 16, 2006."  With trial set for October 30, Lawson's first notice was not filed until October 19, and her second notice was not filed until October 26.  Both notices are, therefore, on their face untimely. Therefore, in addition to the current motion before the court, the government filed a motion to strike Lawson's first notice as untimely, and Lawson's second notice was accompanied by a motion to permit its late filing for good cause.

However, Rule 12.2 permits a late filing for "good cause," and Lawson states that there is "good cause" for filing the notices late, in that defense counsel first learned of Lawson's possible mental limitations somewhat recently, at which point counsel arranged for a psychological evaluation.

Because by this order the court has disallowed Lawson's expert testimony of diminished mental capacity, the court has, in a separate order entered today, denied as moot both the government's motion to strike and Lawson's motion to permit late filing.

4

II.

At the outset, it is important to distinguish between two kinds of mental-health-related defenses: (1) the insanity defense, and (2) the defense of diminished mental capacity.  The insanity defense is an <u>affirmative defense</u> as that term is traditionally understood in the criminal law.  It presupposes that the government can prove the elements of the offense beyond a reasonable doubt, but it then affirmatively excuses the defendant's otherwise criminal behavior.  The defendant's conduct is said to have met all the elements of the offense, but on account of a mental disease or defect the defendant is relieved of responsibility for it.  Under the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4247, a defendant is entitled to a special verdict of not guilty by reason of insanity if, after the government proves all the elements of the charged offense beyond a reasonable doubt, the defendant then proves by clear and convincing evidence that, "as a result of a severe mental

5

disease or defect, [she] was unable to appreciate the nature and quality or wrongfulness of his acts." 18 U.S.C. § 17.

The defense of diminished mental capacity, in contrast, is not an affirmative defense at all, but rather a <u>defense theory</u> that challenges the government's ability to prove a necessary element--specifically, the <u>mens rea</u> element--of the offense. Where the law requires that a defendant have a mental state of 'specific intent' in order to be guilty of the offense, evidence that the defendant suffered from diminished mental capacity at the time of the offense, if believed by the factfinder, serves to negate the <u>mens rea</u> element of the crime. If successful, the diminished-mental-capacity approach defeats the government's effort to prove every element of the offense beyond a reasonable doubt, by demonstrating that the defendant did not, at the time of the offense, have the specific intent required to commit the crime.

The Eleventh Circuit has recognized this distinction
and has summarized it as follows:  "'Affirmative defense'
evidence of mental impairment, when specifically
recognized and defined by the legislature, must be raised
by the defendant and can 'justify' or 'excuse' conduct
that is otherwise criminal."  United States v. Cameron,
907 F.2d 1051, 1063 (11th Cir. 1990) (internal citation
omitted).  "Psychological evidence that aids the trier in
determining the defendant's specific state of mind with
regard to the actions she took at the time the charged
offense was committed, by contrast," the court added, "is
not an affirmative defense but is evidence that goes
specifically to whether the prosecution has carried its
burden of proving each essential element of the crime--at
least when specific intent is at issue."  Id.


                              III.

     In Cameron, the Eleventh Circuit held that the
Insanity Defense Reform Act, which codifies and limits

                              7

the insanity defense in federal criminal trials, does not operate to prohibit the defendant from introducing psychiatric evidence to rebut the mental-state element of the offense charged. 907 F.2d at 1066. The <u>Cameron</u> court determined that, although the statute, in defining the affirmative defense of insanity, states that "mental disease or defect does not <u>otherwise</u> constitute a defense," 18 U.S.C. § 17(a) (emphasis added), this statement limits only the definition of the affirmative defense, and does not limit the defendant's right to defeat the mental-state element of the offense by asserting psychiatric or mental infirmities. The Eleventh Circuit's reading of statute is in line with that of her sister circuits. <u>See</u> <u>United States v. Dupre</u>, 462 F.3d 131, 137 & n.8 (2d Cir. 2006); <u>United States v. Brown</u>, 326 F.3d 1143, 1147 (10th Cir. 2003); <u>United States v. Worrell</u>, 313 F.3d 867, 874 (4th Cir. 2002); <u>United States v. Schneider</u>, 111 F.3d 197, 201 (1st Cir. 1997); <u>United States v. Bartlett</u>, 856 F.2d 1071, 1081-82

(8th Cir. 1988); <u>United States v. Twine</u>, 853 F.2d 676, 679 (9th Cir. 1988); <u>United States v. Pohlot</u>, 827 F.2d 889, 890 (3d Cir. 1987).

In this case, Lawson has informed the United States and the court that she may rely upon a defense of diminished mental capacity. Under the precedent of this circuit, as established in <u>Cameron</u>, she is not categorically prohibited from employing that defense. The government concedes that the offenses with which Lawson is charged are specific-intent crimes. Therefore, if Lawson is able to marshal evidence that, because of a mental infirmity, she lacked the specific intent to commit these crimes at they were committed, then that evidence is admissible for consideration by the jury. The burden remains with the government at all times to prove beyond a reasonable doubt that Lawson had the <u>mens rea</u>, specific intent, required by law as an element of the crimes.

IV.

Although the diminished-mental-capacity defense is theoretically possible, the government argues that it should not be allowed in this case because Lawson's psychiatric evidence does not support it. In support of its argument, the government has submitted to the court a copy of Lawson's psychological evaluation.

A.

The Eleventh Circuit, in holding that psychiatric evidence is admissible to negate specific intent, was careful to place strict limits on the kind of evidence that could support such a defense theory. Psychiatric evidence tending to negate specific intent must show not merely that the defendant was unable to reflect properly on, or control, her actions or motivations; "a lack of conscious self-reflection does not mean a lack of intent. Cameron, 907 F.2d at 1066 n.30. Rather, the psychiatric evidence must focus on the defendant's specific state of

mind at the time of the offense and show that, because of the defendant's mental condition, she did not have the specific intent necessary to commit the crimes charged. Id. at 1067.

"Only in the rare case" will a defendant be so incapacitated by mental disease or defect so as to negate the <u>mens rea</u> element of the crime.  <u>Cameron</u>, 907 F.2d at 1066.  Indeed, as Judge Becker stated on behalf of the Third Circuit Court of Appeals, "Only in the rare case ... will <u>even a legally insane defendant</u> actually lack the requisite mens rea purely because of mental defect." <u>United States v. Pohlot</u>, 827 F.2d 889, 900 (3rd Cir. 1987) (emphasis added).  He explained that:

> "Mental illness rarely, if ever, renders a person incapable of understanding what he or she is doing.  Mental illness does not, for example, alter the perception of shooting a person to that of shooting a tree.  Similarly, a man who commits murder because he feels compelled by demons still possesses the mens rea required for murder.  The government's burden of proving mens rea is therefore considerably less onerous than its previous burden of proving sanity."

_Id_. (citation and quotation marks omitted).  The court knows of no reason why these observations on mental illness should not apply with equal force to someone who is "within the upper limits of the mild range of mental retardation," Psych. Report at 5, as Lawson is.

It is easy to understand why psychiatric evidence must be limited.  If the defendant were permitted to introduce evidence of general mental-health maladies in an attempt to negate the mens rea element of a specific intent crime, this would be little more than a backdoor entrance for a form of insanity defense excluded by Insanity Defense Reform Act.  Cameron, 907 F.2d at 1066. The jury, rather than focusing on whether the defendant formed the requisite specific intent, could be misled into excusing criminal conduct based on evidence that the defendant suffered from mental abnormalities not excused by the statute.

Recently, the Supreme Court recognized that this was a risk inherent in the insanity-and-mens rea dichotomy.

12

In <u>Clark v. Arizona</u>, 548 U.S. ___, 126 S.Ct. 2709 (2006), the Court upheld the State of Arizona's rule categorically prohibiting the defense from introducing evidence of mental illness to negate the <u>mens rea</u> element of the offense.  In part, the Court stated that the State was justified in excluding such evidence based on the

> "potential of mental-disease evidence to mislead jurors ... through the power of this kind of evidence to suggest that a defendant suffering from a recognized mental disease lacks cognitive, moral, volitional, or other capacity, when that may not be the case at all. ... [I]t is very easy to slide from evidence that an individual with a professionally recognized mental disease is very different, into doubting that he has the capacity to form <u>mens rea</u>, whereas that doubt may not be justified."

126 S.Ct. at 2734-35.  The Court's holding, of course, does not affect the general admissibility of such evidence under the federal statute; it simply approves the State of Arizona's rule excluding it in its state criminal proceedings.  But the Court's commentary on the tendency of mental-health evidence to mislead the jury

13

does speak to the trial court's gatekeeping function in excluding psychiatric evidence not directly focused on the <u>mens rea</u> element of the charged offense.

"Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of <u>mens rea</u>, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, ... district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of <u>mens rea</u>." <u>Cameron</u>, 907 F.2d at 1067 (internal quotation marks omitted). "[S]uch evidence should be evaluated outside the presence of the jury." <u>Id</u>.

## B.

As stated, Lawson argues that, because of her mental retardation and other attendant mental difficulties, she

14

did not, at the time of the offense, have the specific intent required to steal government property or conspire to do so, and that the expert testimony she intends to introduce will assist the jury in determining whether that is so.

The court, having reviewed the psychological report, agrees with the government that its contents do not support a legally acceptable theory of lack of <u>mens rea</u>. The general focus of the psychological report is on Lawson's limited cognitive abilities in terms of arithmetic and vocabulary, and her limited understanding of the world around her. The report concludes that she has an IQ low enough to place her "within the upper limits of the mild range of mental retardation." Psych. Report at 5. The report also makes note of some other mental-health difficulties, such as her low self-esteem, difficulty in making decisions, anxiety and phobias, and introversion.

Nothing in the report indicates that Lawson suffered from any mental disease or defect that would support the conclusion that she lacked, at the time of the offense, the specific intent to steal and convert Social Security checks or conspire with others to do so. In fact, while the report reflects that she is "within the upper limits of the mild range of mental retardation," Psych. Report at 5, it also states that she explained to her examiner "that she was on the streets and needed money," and "[t]he need for money was the cause of her cashing the check." Id. at 1. This appreciation, as articulated by Lawson in the report, of the specific intent behind her conduct completely defeats her mens rea defense theory.

Lawson cites United States v. Childress, 58 F.3d 693 (D.C. Cir. 1995) (per curiam), where the D.C. Circuit Court of Appeals found that the defendant, who was retarded, had "presented evidence of mental incapacity severe enough that it might well be highly relevant to [his] capacity to entertain, and whether he did in fact

16

entertain, specific intent to further the purposes of the conspiracy."  58 F.3d at 729.

This court agrees that a defendant's mental retardation could, in certain circumstances, negate the mens rea element of a specific intent crime, insofar as, for example, the criminal activity was too complex for the defendant to intend specifically to carry it out.  But in Childress, the case was remanded because the district court had imposed a "categorical bar on evidence regarding mental capacity," and the court of appeals deemed it proper that the district court "assess[] ... the reliability and probity of the evidence" prior to excluding it.  Id. at 730.

This court, in contrast to the trial court in Childress, imposes no categorical bar on the diminished-mental-capacity defense.  Rather, the court has reviewed the psychological report and finds that it is not nearly probative enough on the issue of Lawson's mental state at the time of the offense to warrant consideration by a

17

jury.  The report offers no opinion on whether, because of Lawson's low IQ, she lacked the specific intent to commit the crimes with which she is charged.  In other words, the  report, which is all the parties have submitted as evidence, is not "adequately keyed to the issue of whether  [s]he entertained the <u>mens rea</u> required for proof of the crime."  <u>Childress</u>, 58 F.3d at 729.

In fact, with her general and broad reliance on the expert's conclusion that she is "within the upper limits of the mild range of mental retardation," Psych. Report at 5, and suffers from other attendant mental-health difficulties, Lawson is asking this court to march down the same improper path the trial court did in <u>Childress</u>, albeit from the opposite direction.  She asks that this court essentially impose a 'categorical allowance' on evidence of mental retardation. A 'categorical allowance' is just as improper as a 'categorical bar,' for both are unkeyed to the issue of whether the defendant had the <u>mens rea</u> required for proof of the crime.

18

Furthermore, the nature of the crime charged here does not appear to require the workings of a sophisticated mind.  It is not difficult to conceive of a person with mild retardation specifically intending to agree with others to steal a Social Security check, and then doing so.

In sum, because Lawson has given the court no indication that she intends to introduce evidence that directly bears on whether she possessed the requisite mental state for the crimes with which she is charged; because her general psychiatric evidence of her low IQ or other cognitive difficulties would present an inherent danger that it would distract the jury from focusing on the actual presence or absence of mens rea; and because such general psychiatric evidence would easily slide into wider usage that opens up the jury to theories of defense more akin to justification when no such defense is

19

properly before the court, the court holds that she should

not be permitted to introduce such evidence.[3]

_____

3. Judge Becker aptly notes in <u>Pohlot</u> that the concept of diminished capacity has two strains:

> "The first variant of what courts have called 'diminished capacity' defenses inappropriately is the evidentiary doctrine which we have already noted is not a defense at all but merely a rule of evidence; specifically, the admission of evidence of mental abnormality to negate mens rea.
>
> "A second strain of diminished capacity permits a defendant to show not only that he lacked the mens rea in the particular case but also that he lacked the <u>capacity</u> to form the mens rea. Whether a defendant has the capacity to form mens rea is, of course, logically connected to whether the defendant possessed the requisite mens rea. Commentators have agreed, however, that only in the most extraordinary circumstances could a defendant actually lack the capacity to form mens rea as it is normally understood in American law. ... Even the most psychiatrically ill have the capacity to form intentions, and the existence of intent usually satisfies any mens rea requirement. Commentators have therefore argued that permitting evidence and arguments about a defendant's capacity to form mens rea
>
> <div align="right">(continued...)</div>

* * *

Accordingly, it is ORDERED that the government's motion in limine to exclude psychiatric testimony (doc. no. 87) is granted.  Defendant Taneshia Michelle Lawson's evidence of diminished mental capacity is excluded at trial.

DONE, this the 30th day of October, 2006.


                    /s/ Myron H. Thompson
             UNITED STATES DISTRICT JUDGE

_____

    3.    (...continued)
          distracts and confuses the jury from
          focusing on the actual presence or
          absence of mens rea."

827 F.2d at 903-04 (citations omitted).

    This court has given Lawson the benefit of the doubt and assumed that she was attempting to assert the defense of the first strain.  In fact, because her report speaks in such general terms about her retardation and other mental-health difficulties, and because it is not keyed to the crimes charged, it could be reasonably understood that she is asserting only the second strain.  Without a doubt, her circumstances are not so "extraordinary" as to support the conclusion that she "actually lack[s] the capacity to form mens rea as it is normally understood in American law."  Id. at 903.

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA      )
                              )
        v.                    )   CRIMINAL ACTION NO.
                              )      2:06cr173-MHT
TANESHIA MICHELLE LAWSON      )


ORDER

It is ORDERED as follows:

(1) The government's motion to strike defendant Taneshia Michelle Lawson's notice of diminished capacity defense as untimely (doc. no. 87) is denied as moot.

(2) The government's conditional motion to continue trial (doc. no. 88) is denied as moot.

It is further ORDERED as follows:

(1) Defendant Tanenshia Michelle Lawson's motion to permit filing (doc. no. 101) is granted to the extent defendant Lawson moves the court to permit the filing of her response to the government's motion to strike approximately one hour late.

(2) Defendant Lawson's motion to permit filing (doc. no. 101) is denied as moot to the extent defendant Lawson moves the court to permit the filing of her amended notice of diminished capacity defense, pursuant to Fed. R. Crim. P. 12.2(a), approximately 70 days past the deadline for such notices as set out in the magistrate judge's order on arraignment.

DONE, this the 30th day of October, 2006.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 OCT 30  A 9: 47

UNITED STATES OF AMERICA )
)
V. )   CASE NO: 2:06-cr-173-MHT
)
TANESHIA M. LAWSON )

## AFFIDAVIT

STATE OF ALABAMA )
)
COUNTY OF MONTGOMERY )

I, CHRISTINE A. FREEMAN, state the following:

1.      I am employed as Executive Director of the Federal Defender Program for the Middle District of Alabama.

2.      On Friday, October 27, 2006 at approximately 4:00 p.m., I received from the Clerk's office approximately 75 juror questionnaires submitted by the members of the jury venire in this case.

3.      A review of these questionnaires indicates there is substantial disparity between the number of African-Americans over the age of 18 who live within the judicial circuit served by this Court who  are registered to vote,  and the number of African-Americans represented within the Grand and Petit jury venires in this matter.

4.      My initial research indicates that within the judicial district served by the United States District Court for the Middle District of Alabama, the percentage of African-Americans over the age of 18 who are registered to vote is approximately 31%.

5.     Of the 75 juror questionnaires provided to the undersigned, only 17, or 22% are African Americans.  Eleven questionnaires of jurors who have responded to the jury summons were not provided. If these additional jurors are all Caucasian jurors, the percentage of African Americans on this venire will be 19.7%.

6.     On information and belief, the records established in other challenges to the Grand and Petit jury venires in this district have shown a pattern and history of juror selection procedures which do not comply with the Jury Selection and Service Act, 18 U.S.C. §1861 et seq. or with the Local Rules of this Court, and which result in a substantial disparity between the expected percentage of African-Americans based on population and voter registration and the actual percentage of African Americans called for and qualified for jury service.  See *United States v. Clay*, 159 F.Supp. 2d 1357 (M.D. 2001) and motion pending in *United States v. Leon Carmichael, Sr.,* Case No. 2:03-cr-259-T (D.E. 400, 794).

7.     This  under-representation of African Americans on the Grand and Petit jury venire violates Ms. Lawson's Fifth and Sixth Amendments rights, by violating Ms. Lawson's right to be tried by an impartial jury representing a fair cross section of the community and her rights to due process and equal protection.

8.     This  under-representation of African Americans on the jury venires also violates Ms. Lawson's rights under the Jury Selection and Service Act, 18 U.S.C. §1861 et seq.

**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**

2

The foregoing was sworn to and subscribed before me this 30th day of October 2006, by a person known to me to be Christine A. Freeman.

Rosetta W. Griggs
NOTARY PUBLIC
My Commission expires: 11-6-07

## CERTIFICATE OF SERVICE

I hereby certify that I will hand-deliver a copy of the foregoing in Court on October 30, 2006, to the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

3

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO.  2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA MICHELLE LAWSON** | ) | |
| | ) | |

---

### United States' Limited Response to Lawson's Motion for Dismissal of Jury and Objection to Composition of the Jury

---

The United States opposes Defendant Taneshia Michelle Lawson's Motion for Dismissal of Jury based upon the Jury Selection & Service Act, (the Jury Act),[1] and upon the Fifth and Sixth Amendments.  The Court should not defer resolution of this matter until after trial; based upon the grounds and facts as Lawson has presented them in her affidavit,[2] Lawson cannot state a valid claim in her Motion.

## I.  Lawson's "Historic" Jury Act and Constitutional Claims Are Time-Barred.

Essentially, Lawson has identified two sets of facts to support both her (1) Jury Act claims and (2) constitutional (Fifth and Sixth Amendment) claims.  The first set of facts relates to the history of jury selection issues in this District.[3]  Because Lawson's counsel knew that such issues were litigated or pending in the District, however,

---

[1] 28 U.S.C. §1867 et seq.

[2] The United States concedes none of the facts as they are presented in Lawson's Motion and Affidavit.  It is merely assuming they are true for the purpose of this limited response.

[3] *See* Lawson Aff'd at ¶ 6 (Docs. #107, 115).

Lawson's Motion is untimely under both the Jury Act as well as the Fifth and the Sixth Amendments.

## A.    Lawson's "Historic" Jury Act Claims Are Strictly Time-Barred.

First, the Jury Act.  If Lawson wanted to file a motion dealing with Jury Act based upon the "historic" issues in this District, then the Jury Act specifically requires that Lawson file her motion "before the void dire examination begins, or within seven days <u>after [she] discovered, by the exercise of diligence</u>, the grounds therefore, <u>whichever is earlier</u>."[4]  This timeliness requirement "is to be strictly construed, and failure to comply precisely with its terms forecloses a challenge under the Act."[5]  Lawson, through her attorneys, knew about the issues surrounding the jury challenges in this district for some time.[6] Lawson therefore failed timely object in order to meet the strict requirement of the Jury Act.  Her "historic" Jury Act claim must there be denied as time-barred.

## B.    Lawson's "Historic" Constitutional Claims Are Also Time-Barred.

Furthermore, if Lawson wanted to file a motion based upon violations of her Constitutional rights, the time to do that was prior to her pretrial conference.  The arraignment order in this case, dated July 26, 2006, specifically stated that "[a]ll pretrial

---

[4] 28 U.S.C. § 1867(a).

[5] *United States v. Bearden*, 659 F.2d 590, 595 (5th Cir. Unit B 1981); *see also Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir.1982) (Decisions by a Unit B panel of the former Fifth Circuit are binding precedent in the Eleventh Circuit.).

[6] Lawson Aff'd at ¶ 6 (Docs. #107, 115) (noting the historic problems in this district and citing *United States v. Clay*, 159 F.2d 1357 (M.D. Ala. 2001) and *United States v. Carmichael*, Case No. 2:03-cr-259-MHT).

motions under Fed. Rule 12(b) . . . <u>must</u> be filed no later than August 16, 2006."[7]  Rather than filing a pretrial motion, however, Lawson chose to wait until the evening before trial to raise these issues.  Lawson's "historic" constitutional claims are untimely and should therefore be denied.

## II.    Lawson's Individual Jury Claim Is Not Warranted Under the Constitution or the Jury Act.

The second set of facts that Lawson presents relate to the composition of her individual petite jury pool.  Obviously, Lawson could not have discovered her jury pool's composition prior to Friday, October 27, 2006, and thus would not be time-barred on this portion of her claim.  The composition of an individual jury pool, however, is not a basis for relief under the Jury Act or the Constitution.

First, under the Jury Act, Courts have specifically stated that the fact a single panel has fewer African-Americans than the percentage in the population is not a basis for relief.  For example, in *United States v. Meredith*,[8] the Fourth Circuit affirmed a decision, denying a Jury Act challenged based upon the composition of a single jury pool.  The Circuit noted:

> When the [district] court asked defendants for a specific showing of
> noncompliance with the Act, defendants stated only that the number of blacks

---

[7] Doc. #12; *see also Brooks v. United States*, 416 F.2d 1044 (5th Cir. 1969) (no abuse of discretion for trial court who denied constitutional jury challenge based upon the lack of a pretrial filing); *see also Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit rendered prior to October 12, 1981); *Davis v. United States*, 411 US 233, 238 (1973) (holding that objections to composition of grand jury must be raised pretrial.)

[8] 824 F.2d 1418, 1424, n.3 (4th Cir. 1987).

-3-

on the jury panel was disproportionately low. The court properly found this fact insufficient to support a challenge to the array. When the court asked defendants for a specific showing of noncompliance with the Act, defendants stated only that the number of blacks on the jury panel was disproportionately low. The court properly found this fact insufficient to support a challenge to the array.[9]

Such a finding only makes sense, when one considers that the Jury Act "provides for the dismissal of an indictment only when there has been a <u>substantial failure</u> to comply with the statutory provisions in selecting the grand or petit jury."[10]  Because the composition of an individual jury pool is not a basis for relief under the Jury Act, Lawson's motion should be denied.

Likewise, while it is true that the Sixth Amendment guarantees Lawson "the right to a jury selected from a group representing a fair cross-section of the community, <u>no requirement exists that petit juries actually chosen</u> must mirror the community and reflect the various distinctive groups in the population."[11]  In other words, "a violation of the fair cross-section requirement cannot be premised upon proof of underrepresentation in a single jury" or jury pool.[12]  Similarly, in order to prove a violation of the Fifth Amendment,

---

[9] *Id.*.

[10] *Bearden*, 659 F.2d at 600 (citing  28 U.S.C. § 1867(a)). The "substantial failure" requirement applies to all portions of the Act, except the fair cross section requirement found in 28 U.S.C. § 1861. The requirements for a Jury Act fair cross section-claim are identical to a Sixth Amendment cross-section claim.  *United States v. Pepe*, 747 F.2d 632, 649 n.17 (11th Cir. 1984) (citations omitted) ("The test for a sixth amendment fair cross-section violation applies in determining a violation of the statutory fair cross-section requirement.")

[11] *United States v. Green,* 742 F.2d 609, 611 (11th Cir 1984) (citing *Taylor v. Louisiana,* 419 U.S. 522, 538 (1975)).

[12] *United States v. Miller*, 771 F.2d 1219, 1228 (9th Cir. 1985) (citing *Taylor*, 419 U.S. at 538 and *Duren v. Missouri*, 439 U.S. 357 (1979)); *see also Foster v. Sparks*, 506 F.2d 805, 834 (5th Cir. 1975)

Lawson must show, among other things, that the alleged violation resulted in the "substantial underrepresentation" . . . "over a significant period of time".[13] The numbers that Lawson's can legitimately provide–essentially from one jury pool–are insufficient. Her motion and objection should therefore be denied.

## III. Conclusion

Lawson's claims of "historic" jury violations in this District should have been filed long ago. To attempt to raise them the day before jury selection is improper both under the Jury Act and under the rules of this Court. Moreover, because her "historic" claims cannot be considered, her claims regarding her individual jury pool are insufficient to sustain a claim under either the Jury Act or the Constitution.[14]

Respectfully submitted this 1st day of November, 2006,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

---

("[P]roof confined to a single venire is itself of dubious value because fortuity can account for any disproportion that may appear on a particular venire."); *United States v. Holstick*, 875 F.Supp. 795, 800 (M.D. Ala. 1994) (Thompson, J.) ("The fact that, as a result of chance in the selection of a trial jury, a defendant does not reach a black juror or a group of black jurors on the venire list does not violate the sixth amendment." )

[13] *Castaneda v. Partida,* 430 U.S. 482, 494(1977); *United States ex rel. Barksdale v. Blackburn*, 639 F.2d 1115, 1121-22 (5th Cir 1981)

[14] This Motion has been filed in response to Lawson's Motion, filed the day before trial. The United States does not concede other substantive arguments, if permitted to have a more through breifing schedule. Thus, to the extent that the Court were to disagree with the United States' currently elaborated grounds, then the United States would request leave to file a more complete brief.

One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on November 1, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

-6-

# <u>MINUTES</u>

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

HON.   <u>MYRON H. THOMPSON,</u>   JUDGE          AT MONTGOMERY  ALABAMA

DATE COMMENCED  <u>November 1, 2006</u>          AT  8:35   A.M./P.M.

DATE COMPLETED  <u>November 1, 2006</u>          AT  9:12  A.M./P.M.

UNITED STATES OF AMERICA                    Criminal Action
                                            2:06cr173-MHT
        VS.

TANESHIA MICHELLE LAWSON

---

| <u>PLAINTIFF/GOVERNMENT</u> | APPEARANCES | <u>DEFENDANT(S)</u> |
|---|---|---|
| AUSA Christopher Synder | X | Atty Christine A. Freeman |
| | X | Atty Pamela V. Kemp |
| | X | |
| | X | |
| | X | |

<u>COURT OFFICIALS PRESENT:</u>

| Anthony Green, | Daniel Korobkin, | Mitchell Reisner, |
|---|---|---|
| Courtroom Clerk | Law Clerk | Court Reporter |

---

<u>PROCEEDINGS:</u>

( )  NONJURY TRIAL
(x)  OTHER PROCEEDING:      ORAL ARGUMENT


8:35 a.m.                   Court commenced regarding [104] Motion in
                           Limine to Exclude Defendant's Newly
                           Identified Expert Testimony regarding
                           Confessions. Oral arguments heard. Matter
                           taken under advisement.
9:12 a.m.                   Hearing concluded.

| | | | | | | |
|---|---|---|---|---|---|---|
| GOVERNMENT'S EXHIBITS <br><br> ORAL ARGUMENTS [104] MOTION IN LIMINE | | | | | UNITED STATES OF AMERICA <br><br> v <br><br> TANESHIA MICHELLE LAWSON <br> 2:06cr173-MHT | |
| | | | | | JUDGE MYRON H. THOMPSON <br> MITCHELL REISNER, COURT REPORTER | |
| ADMITTED | DATE OFFERED | DATE IDENTIFIED | NO | WITNESS | OBJ | DESCRIPTION |
| YES | 11/1/06 | 11/1/06 | 1 | | | Warning of Rights |
| YES | 11/1/06 | 11/1/06 | 2 | | | Statement |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | *Exhibits located in binder w/ case file |

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA      )
                              )
     v.                       )    CRIMINAL ACTION NO.
                              )      2:06cr173-MHT
TANESHIA MICHELLE LAWSON      )

ORDER

It is ORDERED that the objection and motion to dismiss (doc. no. 106) regarding the composition of the venire and method of venire selection are referred to United States Magistrate Judge assigned to this case.

DONE, this the 1st day of November, 2006.


       /s/ Myron H. Thompson
     UNITED STATES DISTRICT JUDGE

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:06-cr-173-MHT |
| | ) | |
| TANESHIA MICHELLE LAWSON | ) | |
| | ) | |

### United States' Motion to In Limine to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity

The United States supplements its oral motion filed in Court on November 1, 2006, and moves to exclude: (1) Defendant Taneshia Michelle Lawson's school records, provided to the Government on November 1, 2006,[1] and (2) any lay testimony about Lawson's mental capacity, other than testimony about Lawson's mental state at the time of the offense.[2] The school records are either irrelevant or would need separate impermissible testimony to make them relevant. The general lay testimony is also irrelevant. Both sets of evidence should be excluded.

---

[1] Defense counsel provided an original, and more legible copy, of the school records November 1, 2006, at the Court's oral argument session at 8:30 a.m. Counsel had previously provided a facsimile copy of the same the day before at approximately 5:10 p.m.

[2] On October 31, 2006, Lawson's counsel orally notified the Government that it intended to call a records custodian to introduce the documents. Additionally, this the oral argument on November 1, 2006, the Court inquired from the Government whether it objected to lay testimony relating Lawson's mental capacity. This in limine motion is an attempt to clarify the United States' position on this matter.

I.     **Lawson School Records Are Irrelevant or Otherwise Inadmissible.**

The school records that Lawson would like to introduce, attached collectively as

Exhibit 1, appear to consist of (a) administrative paperwork, (b) grade transcripts/report

cards, and (3) standardized tests.[3] The administrative paperwork and report cards are

irrelevant. The standardized tests cannot become relevant without impermissible expert

testimony.

A.     **Lawson's Administrative Paperwork Is Completely Irrelevant to this Case.**

The administrative school records that Lawson would like to introduce consist of

student profiles and enrollment documents,[4] attendance records,[5] class schedules,[6]

immunization records,[7] school lunch applications,[8] and physical fitness tests.[9]

Additionally, there are two documents in this subset, which do not even relate to the

_____

[3] The Government has Bates numbered these records sequentially from Lawson000001 to Lawson000033. The documents are not in the same order as they were provided to the Government; they have been sorted and reordered for ease of review.

[4] *See* Lawson02-04.

[5] *See* Lawson05-07.

[6] *See* Lawson08-11.

[7] *See* Lawson12-13.

[8] *See* Lawson14.

[9] *See* Lawson15.

defendant; they are under the name Andre Lawson and do not contain Tanehsia Lawson's birth date.[10]

None of these documents bear any relation to the charges in this case and are completely irrelevant. Fed.R.Evid. 401 provides that evidence is "relevant" if it has "any tendency to make the existence of any (material) fact . . . more probable or less probable than it would be (otherwise) . . . ." "This definition has been construed to impose two requirements, both of which must be met before evidence is admitted: (1) [Relevancy, *i.e.*,] [t]he evidence must be probative of the proposition it is offered to prove [relevancy], and (2) [materiality, *i.e.*,] the proposition to be proved must be one that is of consequence to the determination of the action."[11]  Lawson is supposedly offering these records in an effort to establish that she did not have the intent to steal or the intent to agree to steal on the dates alleged in the Indictment.  These administrative documents have nothing to do with Lawson's ability to form an intent; they are irrelevant.[12]  Two documents are not even Lawson's actual records.  The administrative documents must therefore be excluded.

---

[10] *See* Lawson16-17.

[11] *United States v. Glasser*, 773 F.2d 1553, 1560 (11th Cir. 1985) (citations omitted).

[12] And, even if they did, they still should be excluded because they are not legally relevant. *See* Fed. R. Evid. 403.

**B.    Lawson's Grade Transcripts Are Also Irrelevant to this Case.**

Lawson's introduction of her junior high school and high school grade transcripts[13] should also be prohibited.  The transcripts, which show Lawson's grades from the third through the ninth grade, took place between four and ten years prior to the offense in 2003.  Lawson, again, would like to proffer these documents to demonstrate that she could not have possessed the necessary intent to steal or to agree to steal.

These documents are irrelevant to this case.  Lawson's grades, at best, are only marginally probative of Lawson's intelligence and not probative of her ability to form the intent to steal.  There are a host of reasons why people obtain average to poor grades, none of which have to do with intelligence.  They include including lack of motivation, lack of interest, or problems at home, to name a few.  This is especially true here in which Lawson must show that the evidence tends to negate her "specific intent <u>at the time of the charged offense</u>."[14]  Similarly, Lawson's grades prior to the offense are not probative of her intent to steal four to ten years later when the offense occurred.  Such a conclusion only makes sense when one considers that other areas of evidentiary law tend to give less weight to or

---

[13] *See* Lawson18-26.

[14]*Cf. United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) (concluding the same in reference to expert testimony).

-4-

to exclude evidence that is distant in time from the relevant issue.[15] Lawson's grade transcripts should be excluded.[16]

### C.    Lawson's Standardized Test Scores Are Irrelevant Without Impermissible Testimony.

Finally, Lawson's attempt to introduce her standardized test scores[17] should also be prohibited. Each of these are titled "Stanford Achievement Test Series" with "Otis-Lennon School Ability Test," which, according to the document, was administered to Lawson between the ages of 10 and 14. Similar to the grade transcripts just mentioned, this evidence is irrelevant because it is too remote in time.[18]

Lawson's attorney, however, has argued that some of these test scores, measure IQ, and thus are relevant to negate Lawson's intent to steal or intent to agree to steal. It is unclear from the face of the report which test scores are supposed to measure IQ, although Lawson's counsel has indicated to the Government that she believes the Otis-Lennon School Ability Test does. Lawson's attorney also has indicated to the Government that she intends to introduce these documents through a school records' custodian.

---

[15] *See, e.g.*, Fed. R. Evid. 609(b) (imposing a ten year limit on the relevancy of prior felony convictions); *United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. Unit A 1980) (citing *United States v. Hitsman*, 604 F.2d 443, 448 (5th Cir. 1979) and other pre-spilt 5th Circuit cases, which note in the Rule 404(b)/"extrinsic evidence" context that "expiration of the considerable length of time . . . deplete[s] the extrinsic offense of any relevance which could have outweighed the peril of jury prejudice. . . .")

[16] Furthermore, to the extent that the documents were even marginally logically relevant, they should still be excluded because they run the risk of "confusion of the issues, or misleading the jury" under Fed. R. Evid. 403.

[17] *See* Lawson27-32.

[18] Additionally, documents Lawson000032 and 000033 are identical and thus not legally relevant because they are cumulative.

The implicit assumption in Lawson's argument is that IQ tests tend to stay consistent, so therefore, they are relevant to negate her specific intent at the time of the offense. A records custodian, however, while able to read what the document says, would at best only be able to give a general description about the name and nature of the test. Expert testimony would be required for the proposition that (1) the Otis-Lennon School Test is actually an IQ test and (2) functions like an IQ test. Likewise expert testimony would be required to show that (3) if Lawson achieved a score on the Otis-Lennon School Test in one year (say, 1995), then she was very likely to have had the same score at the time of the offense (2003). The expert would then have to (4) conclude that because Lawson had a low Otis-Lennon test score, approximately five to ten years ago, then she would not be able to form the intent to commit the crime in 2003.

Lawson, however, has provided no expert disclosure or expert report, which supports any of these four propositions, as is required under Fed. R. Crim. P. 16(b)(1)©. The only report so far disclosed to the Government evaluates Lawson's current mental health, not the school records. Moreover, even if disclosure and a report were to have been provided for such testimony, the United States still would have requested a hearing under Fed. R. Evid. 702 and *Daubert*. A cursory review of Lawson's Otis-Lennon test scores reveals a 21 point variance in scores thus calling into question the proposition that scores from this test stay the same over a period of decades. Any such testimony relating to Lawson's standardized test scores should therefore be excluded.

**II.    Lay Testimony, Which Does Not Relate to Lawson's Intent at the Time of the Crime, Is Inadmissible.**

For reasons stated above in Parts IA through IC, the United States also objects to any lay testimony regarding Lawson's alleged mental condition, other than her mental condition at the time of the offense.  As the Court noted in oral argument, in *Clark v. Arizona*, 548 U.S. __, 126 S.Ct. 2709 (2006), the Supreme Court interpreted Arizona law to draw a distinction between lay and expert mental testimony.  The United States agrees that, as a general proposition, the two are different.  In the opinion of the United States, however, nothing in *Clark*, however, casts doubt on the Eleventh Circuit's general proposition that in order to introduce evidence to negate a specific intent crime, the evidence must be relevant to the period charged in the Indictment.  Therefore, lay testimony regarding Lawson's alleged mental condition, which was not during or related to the relevant period of the Indictment, should be excluded.

**III.    Conclusion**

Now that the Court has excluded most[19] of Lawson's expert testimony relating to negating of her specific intent, Lawson has apparently shifted tactics.  She intends to distract the jury with irrelevant documents from her school and with lay testimony.  None of this testimony relates to whether she had the intent to steal or the intent to agree to steal in the Fall of 2003.  The documents and testimony should therefore be excluded.

Respectfully submitted this 3rd day of November, 2006,

---

[19] The remaining potential expert testimony is currently subject of the United States' second Motion in Limine.  *See* Doc # 104.

-7-

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

-8-

# FEDERAL DEFENDERS

## MIDDLE DISTRICT OF ALABAMA
### FEDERAL DEFENDER PROGRAM, INC.
### 201 MONROE STREET, SUITE 407
### MONTGOMERY, AL 36104
TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

October 31, 2006

**VIA FACSIMILE & HAND DELIVERY**

Chris Snyder, Esquire
Assistant U. S. Attorney
One Court Square, Suite 201
Montgomery, AL 36104

**Re:   Taneshia Lawson'S School Records**

Mr. Snyder:

Please find enclosed school records that were recently received by our office from schools Taneshia Lawson formerly attended. In particular, these school records are from Carver High School, McIntyre Junior High School, Houston Hill Junior High School, and Patterson elementary School. If you need any additional information, please contact me at (334) 834-2099.

Sincerely,

Christine Freeman
Attorney for Taneshia Lawson

Lawson01

Carver Senior High School 99-00                                    Date Run:10/25/06    10:08AM

**Student Profile - LAWSON, TANESHA**                                    Page:    1

| | | |
|---|---|---|
| Student ID: | 340749943    Previous #: | 0 |

☐ Internet Access    ☐ Foreign Exchange
☐ Vocational          ☐ Homeless
☐ Gifted              ☐ Immigrant
☐ Title I Indicator
☐ NELB

First Name:    TANESHA
Middle Name:
Last Name:    LAWSON
Nickname:
Address:    651 HOLT ST             Entry Date:    08/30/99  E
651 HOLT ST             Withdrawal Date: 11/16/99  WA1
MONTGOMERY AL  36104    Grade:    09        Gender:  F
Phone:    (334) 000-0000
SSN:    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            Home Room:    97        MCCLOUD, VIRGINIA
Lives With:                     Date of Birth:    August  3, 1984    Age: 22
Birthplace:    CHICAGO IL       Bus 1 / Bus 2:        /
Citizenship:                    Transport Code: NT    Geo Code:
Migrant:                        Birth Certificate:
Locker Numb:        Combin:
Lunch Code:        LEP:         Parking Number:
Language:                ☐ Esl  Counselor:    *Not on File*
School Zone:                    Program 504:
State Number:                   Mother's Maiden:
Alternate #:                    Resident District:
Impact Aid:                     Previous School:
Address To:                     Next School:

**Guardian Information**
Name:    DELORES LAWSON
Address:    651 HOLT S
MONTGOMERY AL  36108
Relation:
Telephone: 000-0000
Education:
Employer:
Mother's Maiden Name:
**Emergency Information**
Contact:                Relation:            Phone:            Wk:

Doctor(s):                    Phone:

STIOffice © 1997-2006, Software Technology Inc.

Lawson02

McIntyre Middle School

**Student Profile - LAWSON, TANESHA**

Date Run: 8/10/99    9:26AM
Page:    1

| | |
|---|---|
| Student ID:    340749943 | Entry Date: |
| First Name:    TANESHA | Withdrawal Date: |
| Middle Name: | Grade:    08 |
| Last Name:    LAWSON | |
| Nickname: | Gender:    F |
| Address:    651 HOLT ST S | Home Room:    *Not on File* |
| | Date of Birth:    August 3, 1984 |
| MONTGOMERY AL  36104 | Age:    15 |
| Phone:    (334) 000-0000 | Bus 1  /  Bus 2:    / |
| SSN:    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 | Transport Code: NT |
| Lives With: | Geo Code: |
| Birthplace:    CHICAGO IL | Counselor:    *Not on File* |
| Locker Numb:    Combin: | Parking Number: |
| Lunch Code: 1 | Birth Certificate: |
| Language: | Esl | Citizenship: |
| School Zone: | Program 504: |

**Guardian Information**

| | |
|---|---|
| Name:    DELORES LAWSON | |
| Address:    651 HOLT S | 2302 MILL ST |
| MONTGOMERY AL  36108 | 36108 |
| Relation: | |
| Telephone:    000-0000 | |
| Education: | |
| Employer: | |
| Mother's Maiden Name: | |

**Emergency Information**

Contact:    Relation:    Phone:    000-0000

Doctor(s):    Phone:

SSTS/2000 (c) 1995 by Software Technology Inc.

Lawson03

Lawson04

Document 129-2    Filed 11/09/2006    Page 4 of 33

School: _____ Grade _____ Year 19___
Days Absent _____
Days Tardy _____
SUBJECT _____

School _____ Grade _____ Year 19___
Days Absent _____
Days Tardy _____
SUBJECT _____

## RECORD OF ATTENDANCE

| Name of School | Teacher | Grade | Date Entered | Date of Withdrawal |
|---|---|---|---|---|
| Paterson | T. Black | 3 | 3-1-93 | |
| " | Z. Brown | 4 | 8-25 | |
| Paterson | M. Calhoun | 5 | 8-24-94 | |

## COMMENTS

Promoted to 4th grade - T. Black 3-17-93
Promoted to 5th Grade (94-95)
Promoted to 6th grade (95-96)
Promoted to 7th grade (3-96)

REVIEW REQUESTED BY: _____    ATTACHMENTS, IF ANY _____

RECORD RELEASED TO: _____    DATE _____    RECORD RELEASED TO: _____

PARENTAL
REVIEW
RECORD

Montgomery Public Schools operate a minimum of 175 days per year.

STANFORD Achievement Test Series, Eighth Edition

ALABAMA STATEWIDE TESTING PROGRAM

Otis-Lennon School Ability Test

| SCORE TYPE | Total Rdg | Total Math | Total Lang | Sci-ence | Soc Sci | List-ening | Basic Batt | Compl Batt |
|---|---|---|---|---|---|---|---|---|
| NAT'L PR | | | | | | | | |
| NAT'L STANINE | | | | | | | | |

Carver Senior High School 99-00                                          Date Run: 10/26/00    1.29PM

Page: 1

**Attendance Report**

---

Student: TANESHA LAWSON          340749943    Grade: 09   DOB: 8/03/84   Ethnicity: B   Gender: F
Parent: DELORES LAWSON /
Address: 651 HOLT ST
          651 HOLT ST
          MONTGOMERY AL 36104
Home Room: 97          MCCLOUD, VIRGINIA                Phone: 000-0000

---

Term 1                                          By Attendance Period

| Date | Day | Actn Code | Class | 1 | 2 | 3 | 4 |
|------|-----|-----------|-------|---|---|---|---|
| 8/30/99 | Mon | Ent E | E-Entry | | | | |
| 9/14/99 | Tue | Abs 1 | E 1-ILLNESS | 1 | 1 | 1 | 1 |
| 9/15/99 | Wed | Abs 1 | E 1-ILLNESS | 1 | 1 | 1 | 1 |
| 9/17/99 | Fri | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 9/22/99 | Wed | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 9/23/99 | Thu | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 9/24/99 | Fri | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 9/27/99 | Mon | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 9/28/99 | Tue | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 9/29/99 | Wed | Abs 2 | U 2-UNEXCUSED ABS | 2 | 2 | 2 | 2 |
| 9/30/99 | Thu | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/01/99 | Fri | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/04/99 | Mon | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/05/99 | Tue | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/06/99 | Wed | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/07/99 | Thu | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/08/99 | Fri | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/12/99 | Tue | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/13/99 | Wed | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/14/99 | Thu | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/15/99 | Fri | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/18/99 | Mon | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/19/99 | Tue | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/20/99 | Wed | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/21/99 | Thu | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/22/99 | Fri | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/25/99 | Mon | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/26/99 | Tue | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/27/99 | Wed | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 10/28/99 | Thu | Abs 2 | U 2-UNEXCUSED ABS | | | | |

STIOffice © 1997-2006, Software Technology Inc.

Lawson05

Carver Senior High School 99-00

Date Run: 10/26/06    1:29PM

Page: 2

**Attendance Report**

---

| Student: TANESHA LAWSON | 340749943 | Grade: 09 | DOB: 8/03/84 | Ethnicity: B | Gender: F |
|---|---|---|---|---|---|

Parent: DELORES LAWSON /

Address: 651 HOLT ST

651 HOLT ST

MONTGOMERY AL 36104

Home Room: 97    MCCLOUD, VIRGINIA    Phone: 000-0000

---

| 10/29/99 Fri | Abs 2 | U 2-UNEXCUSED ABS | | | | |
|---|---|---|---|---|---|---|

Term 2                                          By Attendance Period

| Date Day | Actn Code | Class | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| 11/01/99 Mon | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 11/02/99 Tue | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 11/03/99 Wed | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 11/04/99 Thu | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 11/05/99 Fri | Abs 2 | U 2-UNEXCUSED ABS | | | | |
| 11/08/99 Mon | Abs 2 | U 2-UNEXCUSED ABS | 2 | 2 | 2 | 2 |
| 11/09/99 Tue | Abs 2 | U 2-UNEXCUSED ABS | 2 | 2 | 2 | 2 |
| 11/10/99 Wed | Abs 2 | U 2-UNEXCUSED ABS | 2 | 2 | 2 | 2 |
| 11/16/99 Tue | WD WA1 | WA1-Trans wi Sy | | | | |

| Days Present: | 15.00 | Absence: 38.00 | Tardies: 0 | 6 | 6 | 6 | 6 |
|---|---|---|---|---|---|---|---|

STIOffice © 1997-2006, Software Technology Inc.

Lawson07

SCHOOL _____ ATTENDANCE RECORD

Student's Name (Last) _Lawson_ (First) _Ioeula_    Date of Birth _8-3-84_

Student's Social Security No. _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_

Parent's Name _Delores Lawson_    Home Phone _8262-8606_

Address _651 Holt St._

Age _14_  Grade _8_

Teacher/Section _____  M _of_ F

Father's Work Phone _____    Mother's Work Phone _____

| 1998-99 | Beginning Date | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | Ending Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Mo. | 8-31-98 | 31 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 20 | 9-28-99 |
| 2nd Mo. | 9-28-98 | 29 | 30 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 10-27-98 |
| 3rd Mo. | 10-28-98 | 28 | 29 | 30 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 11-30-98 |
| 4th Mo. | 12-1-98 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 1-11-99 |
| 5th Mo. | 1-12-99 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 11 | 2-9-99 |
| 6th Mo. | 2-10-99 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 10 | 3-10-99 |
| 7th Mo. | 3-11-99 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 13 | 14 | 4-14-99 |
| 8th Mo. | 4-15-99 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 5 | 6 | 7 | 8 | 9 | 10 | 5-12-99 |
| 9th Mo. | 5-13-99 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8-3-99 |

X = Absent
CO = Checkout
○ = Tardy
O = New Pupil
W = Withdrawn
T = Transferred

CODE:
1X=Illness
2X=Unexcused Absence
3X=Poverty
4X=Truant
5X=Weather

6X=Neglect
7X=Legal
8X=Permission
9X=Suspension

HOLIDAYS:
Labor Day
Veterans Day
Thanksgiving
Christmas/New Year
Birthdays: King/Lee
Spring Holidays

9-7-98
11-11-98
11-25-27-98
12-21-98-1-1-99
1-18-99
3-29-4-2-99

Inservice:
Weather
Make-up Day
1st Sem.
2nd Sem.

10-12-98
2-15-99
5-31-99
8-31-98-1-22-99
1-25-99-6-3-99
PA 001-07

Carver Senior High School 99-00          Term 1 Schedule
Date Run: 10/26/06    1:24PM    340749943    LAWSON, TANESHA

| Per | Course No. Course Description | Teacher Name | Room | Days Met |
|-----|-------------------------------|--------------|------|----------|
| 1 | 516609.01 PHYSICAL EDUCATION | V. MCCLOUD | 97 | MTWHF |
| 2 | 1021009.02 STUDY SKILLS IN MATH | A. DIXON | 207 | MTWHF |
| 3 | 1001009.02 STUDY SKILLS IN ENG | K. ALSTON | 21A | MTWHF |
| 4 | 566609.10 PHY SCIENCE | B. SANKEY | 216 | MTWHF |

Home Room: 97        V. MCCLOUD                Room: 97      Phone: 000-0000
Guardian: DELORES LAWSON                       651 HOLT ST
DOB: 8/03/84  Age: 22    Grade: 09  Gender: F   MONTGOMERY AL 36104
        LAWSON, TANESHA

Carver Senior High School 99-00          Term 2 Schedule
Date Run: 10/26/06    1:24PM    340749943    LAWSON, TANESHA

| Per | Course No. Course Description | Teacher Name | Room | Days Met |
|-----|-------------------------------|--------------|------|----------|
| 1 | 516609.01 PHYSICAL EDUCATION | V. MCCLOUD | 97 | MTWHF |
| 2 | 1021009.02 STUDY SKILLS IN MATH | A. DIXON | 207 | MTWHF |
| 3 | 1001009.02 STUDY SKILLS IN ENG | K. ALSTON | 21A | MTWHF |
| 4 | 566609.10 PHY SCIENCE | B. SANKEY | 216 | MTWHF |

Home Room: 97        V. MCCLOUD                Room: 97      Phone: 000-0000
Guardian: DELORES LAWSON                       651 HOLT ST
DOB: 8/03/84  Age: 22    Grade: 09  Gender: F   MONTGOMERY AL 36104
        LAWSON, TANESHA

Lawson08

Carver Senior High School 99-00          Term 3 Schedule
Date Run:10/26/06    1:24PM      340749943    LAWSON, TANESHA

| Per | Course No.Course Description | Teacher Name | Room | Days Met |
|-----|------------------------------|--------------|------|----------|
| 1 | 639612.02 THEATRE ARTS I | M. TAYLOR | 7 | MTWHF |
| 2 | 45083509.16 WORLD HIST/GEO 1500+ | L. SEALS | 112 | MTWHF |
| 3 | 710009.15 ENGLISH 9 | B. WILLIAMS | 212 | MTWHF |
| 4 | 465009.11 INTRODUCTORY ALGEBRA | A. SUMMERLIN | 204 | MTWHF |

Home Room: 97       V. MCCLOUD              Room: 97      Phone: 000-0000
Guardian: DELORES LAWSON                    651 HOLT ST
DOB: 8/03/84  Age: 22   Grade:09  Gender:F   MONTGOMERY AL 36104
          LAWSON, TANESHA

Carver Senior High School 99-00          Term 4 Schedule
Date Run:10/26/06    1:24PM      340749943    LAWSON, TANESHA

| Per | Course No.Course Description | Teacher Name | Room | Days Met |
|-----|------------------------------|--------------|------|----------|
| 1 | 639612.02 THEATRE ARTS I | M. TAYLOR | 7 | MTWHF |
| 2 | 45083509.16 WORLD HIST/GEO 1500+ | L. SEALS | 112 | MTWHF |
| 3 | 710009.15 ENGLISH 9 | B. WILLIAMS | 212 | MTWHF |
| 4 | 465009.11 INTRODUCTORY ALGEBRA | A. SUMMERLIN | 204 | MTWHF |

Home Room: 97       V. MCCLOUD              Room: 97      Phone: 000-0000
Guardian: DELORES LAWSON                    651 HOLT ST
DOB: 8/03/84  Age: 22   Grade:09  Gender:F   MONTGOMERY AL 36104
          LAWSON, TANESHA

Lawson09

*McINTYRE JUNIOR HIGH SCHOOL*
*1220 Hugh Street*
*Montgomery, Alabama 36108*
*(334)269-3755*

## *EIGHTH GRADE COURSE OF STUDY*

PLEASE GIVE FULL LEGAL NAME- NO NICKNAMES OR INITIALS
STUDENT'S FULL NAME Lawson    Tarsha    Michelle
                          Last        First         Middle

Student's Social Security Number 3 4 0 7 7 4 5 7 9 Sex (Circle one) Male (Female)

Ethnic Code: __White, non-Hispanic  √Black, non-Hispanic  __Hispanic  __Other

Father's Name  N A
                Last            First            Middle

Mother's Name Lawson    Delorse    Dee
                Last            First            Middle

Legal Guardian's Name Lawson    Delorse    Dee
                        Last            First            Middle

Student lives with (Circle One) Father  (Mother)  Both Parents  Legal Guardian

Student's Address  65 So. Hull St

Telephone N P _____ _____ _____ 762-7660 ____
          (Home)      (Mother's Work)  (Father's Work)    (Emergency)

Date of Birth 08 03 84    Place of Birth Chicago
             Month Day Year                City    State

School Last Attended McIntyre Jr High
                    If this school is not in Montgomery, Alabama give the address:
Address_____ Phone_____

### *Required Subjects*
*Mathematics:* Select only one. Introductory Algebra is a prerequisite to Algebra I.
____ Integrated Mathematics 8 (8162)  √ Introductory Algebra ____ Algebra I (8190)
Science 8 (8200)                    Language Arts 8 (8100)
Social Studies 8 (8170)            Health and Physical Education 8

### *Exploratory Subjects*
Students will have an opportunity to select four (4) electives during the year. Please rank your selections by placing 1 by your first choice. Indicate your second through fourth choices by writing the numbers 2,3,and 4 by those choices. Many classes have pre-requisites; beginning classes must be taken before any advanced class can be taken.
Band is offered for the entire year only.

____ Exploration in Technology 8 (8620)    ____ Advanced Art 8
____ Choral Music 8                         1 Computer Applications 8
____ French (8317)                          ____ Speech & Drama 8
____ Spanish (8220)                         4 Creative Writing 8
3 Art 8                                     ____ Advanced Band 8 (8230)
____ Keyboarding 8 (8288)                   2 Managing Family Life and Technology 8

Fees are charged for some exploratory courses. Please do not send payment at this time. Fees will be payable per semester (except band):
Art $10.00          Band $20.00          Technology $10.00          Music/Drama $10.00
Keyboarding $10.00        Managing Family Life and Technology $10.00

Please indicate special services in which the student has been enrolled previously:
_____ LD    _____ Speech/Hearing    _____ Gifted    _____ MR
Special Education Records will be required for placement.
Some students will be scheduled into a Reading Enrichment or Math Enrichment class based on S.A.T. results.

Lawson10

SEVENTH GRADE SCHEDULE

NAME _LAWSON_____, _Tanesha_____
       LAST NAME            FIRST NAME

SOC. SEC.# _340_-_74_-_9943_

PARENTS/GUARDIAN NAME _Delores Lawson_

ADDRESS _2302 Mill St._

ZIP _36108_____    TELEPHONE # _—_

PARENTS/GUARDIAN WORK #_____

SEX _F___    RACE _B___    DATE OF BIRTH _8-3-84_

AGE _13___    LAST SCHOOL ATTENDED _Houston Hill_

LAST YEAR'S HOMEROOM SEC._____

PLEASE INDICATE YOUR CHOICES

REGULAR ENGLISH_____    OR    BASIC ENGLISH_√_____

GEN. MATH _____ OR BASIC MATH _√__ OR INTRO. ALG _____

SCIENCE _√_ X    WORLD GEOGRAPHY    X

HEALTH/PHYSICAL ED.    X

PLEASE SELECT FOUR CHOICES, TWO OF THEM WILL BE CHOSEN.

USE (1) FOR YOUR FIRST CHOICE, (2) FOR YOUR SECOND CHOICE
(3) FOR YOUR THIRD CHOICE AND (4) FOR YOUR FOURTH CHOICE.

_____ PHYSICAL ED/WEIGHTLIFTING EXPLORATORY
_3_____ PHOTOGRAPHY/CRAFT
_1_____ BEG. SPEECH/ THEATRE ARTS
_____ FINE ARTS EXPLORATORY
_____ BEG. BAND
_4_____ BEG. CHORAL
_2_____ LIBRARY MEDIA
_____ ORIENTATION TO LIFE AND WORK

STUDENT'S SIGNATURE _Tanesha Lawson_

PARENT'S SIGNATURE _Delores Lawson_

DATE_8/26/97_____

Lawson11

(Date Next Vaccine Due)

| 5 | 12 | 2009 |
|---|----|------|
| Month | Day | Year |

# STATE OF ALABAMA
## CERTIFICATE OF IMMUNIZATION

Required for attendance in Day Care, Head Start, and Kindergarten through Twelfth grades. An expiration date is required for the form to be valid. THE ORIGINAL FORM SHOULD BE GIVEN TO THE STUDENT UPON TRANSFER OR GRADUATION. Vaccines must be listed separately. Asterisk indicates vaccines were given in combination with other vaccines (e.g., DTP/Hib, DTaP/Hib, HepB/Hib).

| LAWSON, TANESHA M | 08/03/84 | Dolores Lawson |
|---|---|---|
| CHILD | DATE OF BIRTH | PARENT OR GUARDIAN |

**Diphtheria/Tetanus/Pertussis (DTP), Diphtheria/Tetanus (DT), Diphtheria/Tetanus/acellular Pertussis (DTaP), or Tetanus/Diphtheria (Td):**
At least one dose required on admission. Additional doses at appropriate age. Must have a total of 5 doses to be complete unless the 4th dose was given after the 4th birthday. A medical exemption is required for children less than 7 years of age who are not given pertussis vaccine. **CIRCLE VACCINE GIVEN.**

| DTP, DT, DTaP, Td<br>10/23/84 DTP | DTP, DT, DTaP, Td<br>01/03/85 DTP | DTP, DT, DTaP, Td<br>03/05/85 DTP | DTP, DT, DTaP, Td<br>08/12/86 DTP | DTP, DT, DTaP, Td<br>08/31/88 DTP | DTP, DT, DTaP, (Td)<br>5/12/99 |
|---|---|---|---|---|---|
| Mo Day Yr | Mo Day Yr | Mo Day Yr | Mo Day Yr | Mo Day Yr | Mo Day Yr |

**Haemophilus influenzae type b (Hib):**
At least one dose required on admission to Day Care and Head Start. Additional doses at appropriate age. Not required for children older than 5 years of age (please record prior doses for historical information).

| | | | |
|---|---|---|---|
| Mo Day Yr | Mo Day Yr | Mo Day Yr | Mo Day Yr |

**Oral Polio Vaccine (OPV) or Inactivated Poliomyelitis Vaccine (IPV):**
At least one dose required on admission. Additional doses at appropriate age. Must have 4 doses to be complete unless the 3rd dose was given after the 4th birthday. **CIRCLE VACCINE GIVEN.**

| OPV, IPV<br>10/23/84 OPV | OPV, IPV<br>01/03/85 OPV | OPV, IPV<br>03/05/85 OPV | OPV, IPV<br>08/12/86 OPV | 05/12/93 OPV |
|---|---|---|---|---|
| Mo Day Yr | Mo Day Yr | Mo Day Yr | Mo Day Yr | |

**Measles/Mumps/Rubella (MMR):**
First dose due at 12-15 months of age. A second dose of measles-containing vaccine is required for all students Kindergarten through Twelfth grades. Specify vaccine given as second dose.

| 06/12/86 | 05/12/93 | XXX      XXXX<br>(MMR, MR, Measles) |
|---|---|---|
| Mo Day Yr | Mo Day Yr | |

---

**THESE VACCINES NOT REQUIRED FOR SCHOOL ENTRY. Please record for historical information. Do not expire this certificate for these vaccines.**

**Hepatitis B**

| 5/12/99 | | |
|---|---|---|
| Mo Day Yr | Mo Day Yr | Mo Day Yr |

**Varicella (Chicken Pox)**          Other: Specify Vaccine (not to include TB skin test)

| 5/12/99 | | | |
|---|---|---|---|
| Mo Day Yr | Mo Day Yr | Mo Day Yr | Mo Day Yr |

MONTGOMERY COUNTY HEALTH DE

# STATE OF ALABAMA
# CERTIFICATE OF IMMUNIZATION

Lawson, Tarsha
NAME OF CHILD

8 / 3 / 84
MO. DAY YEAR
DATE OF BIRTH

A second dose of measles-containing vaccine is required for entry into Kindergarten, First and Sixth Grades.

## MEASLES (RUBEOLA) IMMUNITY
### CHECK ONE– DATES REQUIRED

☑ RECEIVED TWO (2) DOSES OF MEASLES-CONTAINING VACCINE AFTER THE FIRST BIRTHDAY.

DOSE #2

DATE
5 / 12 / 93
MO. DAY YEAR

(MMR) MR, MEASLES VACCINE
(Circle One)

☐ HAS LABORATORY PROOF OF MEASLES IMMUNITY.

Type of Test: _____
Results: _____

DATE
/ /
MO. DAY YEAR

☐ HAS BEEN DIAGNOSED BY OUR CLINIC AS HAVING MEASLES (RUBEOLA) DISEASE ON

DATE
/ /
MO. DAY YEAR

I certify that the child/person has met the above stated requirements and is in compliance with rules set forth by the Alabama State Board of Health.

Montgomery County Health Department
515 W. Jeff Davis Avenue
Montgomery, AL 36104
Authorized Medical Signature

Sept 2 1995
Date

Montgomery County Health Department
515 W. Jeff Davis Avenue
Montgomery, AL 36104
Physician or Private Physician/Clinic
(205)263-6871

ADPH-IMM-90/Rev. 2-95

Lawson13

## APPLICATION FOR FREE AND REDUCED-PRICE SCHOOL MEALS

**1** Print **STUDENT INFORMATION**   **2** List the child's **FOOD STAMP** or **AFDC** case number, if any.

NAME   GRADE   NAME OF SCHOOL   FOOD STAMP NUMBER OR AFDC NUMBER

*Lawson  Michele  6th  Paterson Ele.*   *78502*
LAST   FIRST   MI

SSN *340 - 74 - 9943*   TEACHER/HOME ROOM *Mrs. Blank*

**3** FOSTER CHILD: List the child's MONTHLY personal use income. Write "0" if the child has no personal use income. $ _____

**4** HOUSEHOLD MEMBERS AND MONTHLY INCOME: If you gave food stamp or AFDC case number for the child, skip to PART 5.

MONTHLY INCOME CONVERSION   WEEKLY x 4.33   EVERY 2 WEEKS x 2.15   TWICE A MONTH x 2

| NAMES OF HOUSEHOLD MEMBERS (If more space is needed, use back.) LAST   FIRST | Gross MONTHLY Earnings (BEFORE DEDUCTIONS) Job 1 | Job 2 | MONTHLY Welfare Payments Child Support, Alimony | MONTHLY Payments from Pension, Retirement Social Security | Any Other MONTHLY Income |
|---|---|---|---|---|---|
| 1 | $ | $ | $ | $ | $ |
| 2 | $ | $ | $ | $ | $ |
| 3 | $ | $ | $ | $ | $ |
| 4 | $ | $ | $ | $ | $ |
| 5 | $ | $ | $ | $ | $ |

FOR HOUSEHOLDS OF 6 OR MORE MEMBERS, CONTINUE ON BACK OF FORM

**5** SIGNATURE AND SOCIAL SECURITY NUMBER: I certify that all of the above information is true and correct and that all income is reported. I understand that this information is being given for the receipt of Federal funds; that school officials may verify the information on the application; and that deliberate misrepresentation of the information may subject me to prosecution under applicable State and Federal laws.

x *DeLores Lawson*   x *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*
Signature of Adult Household Member   Social Security Number *

*334 834-4352   277-9360*   *DeLores Lawson*
HOME TELEPHONE NO.   WORK TELEPHONE NO.   PRINTED NAME

*567 Watts St.   Montg AL 36104*   *9-2-95*
STREET/APT. NO.   CITY/STATE/ZIP   DATE

**6** RACE: Please check the racial or ethnic identity of your child(ren). You are not required to answer this question.

____ White, not Hispanic   _✓_ Black, not Hispanic ____ Hispanic ____ Asian/Pacific Islander ____ American Indian/Alaskan Native

**7** OTHER BENEFITS:   You do not have to complete this part to get free and reduced-price meals.
MEDICAID: [✓] Yes, school officials may give my name and address to the Medicaid office so that they can send me information about getting Medicaid benefits for my children.

VOCATIONAL [ ] Yes, school officials may use this information to allow my child to receive vocational education/JTPA services provided
EDUCATION   by the school district.

THE INFORMATION ON THIS FORM MAY BE USED ONLY TO ASSIST IN THE DETERMINATION OF ELIGIBILITY FOR THE PROGRAMS THAT I HAVE INDICATED. I UNDERSTAND THAT I WILL BE RELEASING INFORMATION THAT WILL SHOW THAT I AM APPLYING FOR FREE AND REDUCED-PRICED BENEFITS UNDER THE NATIONAL SCHOOL LUNCH PROGRAM. OFFICIALS FROM THE MEDICAID PROGRAM MAY VERIFY MY NAME AND ADDRESS. SCHOOL OFFICIALS MAY VERIFY ALL THE INFORMATION ON THIS FORM. I GIVE UP MY RIGHTS TO CONFIDENTIALITY FOR THESE PURPOSES ONLY.

I certify that I am the parent/guardian of the children for whom application is being made.

x *DeLores Lawson*   *9-2-95*
Signature of Parent/Guardian   Date

---

FOR SCHOOL USE ONLY   DO NOT WRITE BELOW THIS LINE

MONTHLY INCOME CONVERSION   WEEKLY x 4.33   EVERY 2 WEEKS x 2.15   TWICE A MONTH x 2

TOTAL HOUSEHOLD SIZE: _____   MONTHLY INCOME $ _____   FOOD STAMP _____   AFDC/ADC _____

ELIGIBILITY DETERMINATION:   APPROVED FREE _____ APPROVED REDUCED PRICE _____ DENIED _____ TEMPORARY FREE _____ TEMPORARY REDUCED _____

REASON FOR DENIAL: INCOME TOO HIGH _____ INCOMPLETE APPLICATION _____ OTHER _____   TEMPORARY UNTIL: _____   UNTIL: _____   UNTIL: _____

CHANGE IN STATUS: _____   DATE WITHDRAWN: _____
(REASON)   (DATE)

SIGNATURE OF DETERMINING OFFICIAL

Lawson14

Lawson15

Number of Other Children in Family: _____ Older: _____ Younger: _____

| Year | Change in Address (Mailing Address) | | Schools Attended | Date Entered | Left | Receipt of Required Documents |
|---|---|---|---|---|---|---|
| | | | Kennedy / Riddle | 8-31-98 | 6-3-99 | Immunization Certificate _____ |
| | | | | | | Date of Expiration _____ |

**Extra-Curricular Activities**

| | Year in School | | |
|---|---|---|---|
| (✓) SCHOOL ACTIVITIES | 6 | 7 | 8 |
| Baseball (Interscholastic) | | | |
| Basketball (Interscholastic) | | | |
| Football (Interscholastic) | | | |
| Golf (Interscholastic) | | | |
| Tennis (Interscholastic) | | | |
| Track (Interscholastic) | | | |
| Volleyball (Interscholastic) | | | |
| Wrestling (Interscholastic) | | | |
| Yearbook | | | |
| Band | | | |
| Cheerleader | | | |
| Chorus | | | |
| Dramatics | | | |
| National Honor Society | | | |
| School Paper | | | |
| Student Council | | | |

Documentation of Parental Understanding of Graduation Requirements _____

**Parental Review Board**

| Review Requested By: | Date of Review | Attachments if Any |
|---|---|---|
| | | |
| | | |
| | | |

**Physical Fitness—Cumulative Record—State of Alabama**

| TEST ITEM | Grade 6 RAW SC | % TLE SC | Grade 7 RAW SC | % TLE SC | Grade 8 RAW SC | % TLE SC |
|---|---|---|---|---|---|---|
| V-SIT REACH | | | | | 3.3 | 52.7 |
| CURL–UPS | | | | | 26 | 61 |
| PULL–UPS | | | | | 0 | 0 |
| ONE MILE (WALK/RUN) | | | | | 13:30 | 10.7 |
| SHUTTLE RUN | | | | | .14 | 0.7 |

STANDARDIZED TEST RECORD

**Scoliosis Testing**

| Grade | Date | Referred to Physician |
|---|---|---|
| 6 _____ | | ☐ Yes  ☐ No |
| 7 _____ | | ☐ Yes  ☐ No |
| 8 _____ | | ☐ Yes  ☐ No |

Record Released To: _____

Date _____

COPY

DISABILITY DETERMINATION SERVICE
Post Office Box 830300
Birmingham, AL 35283-0300

DELORIS D LAWSON
567 WATTS ST
MONTGOMERY AL 36104

LAWSEO7 361045908 1897 06 08/22/97
NELSON SENDER OF NEW ADDRESS
LAWSON MILL ST
2302
MONTGOMERY AL 36108-2638

36104-4423 33

Lawson16

GRADE SEVEN

INDIVIDUAL REPORT FOR

SYSTEM: MONTGOMERY COUNTY
SCHOOL: MCINTYRE JUNIOR HIGH
SYSTEM-SCHOOL CODES: 051-0450

TEST DATE: 05/98

NAME: ANDRE LAWSON
STUDENT ID: 416170097
DATE OF BIRTH: 09/22/82
SERVICES:

## MODE OF DISCOURSE: NARRATIVE

### FOCUSED HOLISTIC SCORES

| LEVEL I (Not Rated) | (2-3 points) | LEVEL II (4-5 points) | LEVEL III (6-7 points) | LEVEL IV (8 points) |
|---|---|---|---|---|
| | ✓ | | | |

**LEVEL I (2-3 points):**
Responses at Level I show limited success in attempting to address the writing task. The writer indicates some understanding of the writing task, but the response is often partially out of mode and/or off topic. There is little sense of audience and purpose, minimal author involvement, and weak organization. This response is distinguished by the use of inappropriate, repetitive, vague vocabulary.

**LEVEL I (Not Rated):**
Responses are:
NR¹ = Blank
NR² = Insufficient
NR³ = Out of mode or off topic
NR⁴ = Refusal/incomprehensible/foreign language/illegible

**LEVEL II:**
Responses at Level II represent thoughtful attempts to address the writing task. Responses are occasionally partially out of mode and/or off topic. The writer displays some sense of audience and purpose with strong author involvement and weak author control. Some success with organization and clarity is indicated by evidence that the writer is following a plan. Topic development may be sparse but evident. Responses that are primarily in mode and on topic, the presence of an organizational plan, and the use of basic-functional vocabulary set Level II responses apart from Level I responses.

**LEVEL III:**
Responses at Level III represent good, solid writing. The writer addresses the writing task appropriately by writing in mode and on topic without straying. A sense of audience and purpose is evident in the response which has been carefully and fully developed. The writer displays a sense of author control, presenting well-developed ideas that flow smoothly from one to the next. Organization of the response as evidenced by a sense of overall completeness, the use of a variety of sentence structures and formations, and the use of meaningful, precise vocabulary set the Level III response apart from the Level II response.

**LEVEL IV:**
Responses at Level IV are precise, consistent, and elaborated. The writer successfully addresses and controls the writing task with a strong sense of audience and purpose. It is obvious to the reader that a Level IV response is following a plan that includes a sophisticated strategy. The response displays clear and coherent ideas, logical progression, and overall completeness. The refined, creative presentation and the use of powerful, expressive vocabulary set this response apart from the Level III response.

*NOTE: A score of "1" on the Focused Holistic Scale is not possible because of the scoring guidelines.*

### ANALYTIC SCORES

| WRITING MECHANICS SCORE: Level II | SENTENCE FORMATION SCORE: Level II | GRAMMAR AND USAGE SCORE: Level II |
|---|---|---|
| Responses at this level show: <br><br> • Some or no errors in mechanics and <br><br> • No use of advanced techniques | Responses at this level show: <br><br> • Some or no errors in sentence formation and <br><br> • No variety in sentence structure or formation | Responses at this level show: <br><br> • Some or no errors in grammar and usage and <br><br> • Appropriate, basic-functional word choice |

COPY 1

PROCESS NO. 19854288-3659-01969-1

Lawson17

**Transcript Report**

School:  Carver Senior High School 99-00

Address: 2001 West Fairview Avenue
Montgomery AL  36108

Phone:  (334)269-3636

Date Run:10/25/06   10:11AM   Page: 1

ACT: 11885 SAT: 11885

Fax: 334-269-3847

Student: LAWSON, TANESHA

Address: 651 HOLT ST
MONTGOMERY AL  36104

Phone:  (334) 000-0000

DOB:      8/03/1984   ID: 340749943

Guardian: DELORES LAWSON

Student Withdrawn on 11/16/1999

**TERM 1/99-00**
Grade: 9-Carver Senior High Schoc

| —— Course —— | Grd | Credit |
|---|---|---|
| PHYSICAL EDUCATIOI | | 0.000 |
| PHY SCIENCE | | 0.000 |
| STUDY SKILLS IN ENG | | 0.000 |
| STUDY SKILLS IN MAT | | 0.000 |

Term GPA:          Credits:

**TERM 4/99-00**
Grade: 9-Carver Senior High Schoc

| —— Course —— | Grd | Credit |
|---|---|---|
| ENGLISH 9 | *** | 0.000 |
| WORLD HIST/GEO 15C | *** | 0.000 |

Term GPA:          Credits:

Total Credits:      GPA:      Standard:      Weighted:

Rank:   0

of:   0

Registrar:_____    Principal:_____

| Carver Senior High School 99-00<br>2001 West Fairview Avenue<br>Montgomery, AL 36108<br>(334)269-3636 | **Grade Report for 1999-2000 Academic Year**<br><br>Date Run: 10/25/06  10:07AM |
|---|---|

| To the Guardian of:<br>LAWSON, TANESHA<br>651 HOLT ST<br>651 HOLT ST<br>MONTGOMERY, AL 36104 | Id: 340749943      Grade: 09<br>HR: 97       MCCLOUD, VIRGINIA<br><br>Yearly Abs: 38.0  Tdy: 0    GP Abs:   0.0  Tdy: 0 |
|---|---|

**1ST NINE WE**

| Course | Pd Teacher(s) | GP1 EXA SM1 | | | | Credit |
|---|---|---|---|---|---|---|
| 516609.01  PHYSICAL EDUCATI( | 1  MCCLOUD, V. | 63 | | | | |
| 566609.10  PHY SCIENCE | 4  SANKEY, B. | 7 | | | | |
| 1001009.02  STUDY SKILLS IN EN | 3  ALSTON, K. | 73 | | | | |
| 1021009.02  STUDY SKILLS IN M/ | 2  DIXON, A. | 18 | | | | |

Grading Period: 4  4TH NINE WEEKS

| Course | Pd Teacher(s) | GP4 — | EXA — | SM2 — | | Credit |
|---|---|---|---|---|---|---|
| 710009.15  ENGLISH 9 | 3  WILLIAMS, B. | 0 | 0 | *** | | |
| 45083509.16 WORLD HIST/GEO 1! | 2  SEALS, L. | NA  NA | NA  NA | *** | | |

YTD: Credits:   0.000 GPA: W  0.0000 U  0.0000
Cum: Credits:   0.000 GPA: W  0.0000 U  0.0000

Parent/Guardian Signature

Lawson19

MONTGOMERY PUBLIC SCHOOLS

SECONDARY REPORT CARD

**STUDENT NAME:** LAWSON, TANESHA
DELORES LAWSON
567 WATTS ST
MONTGOMERY          AL 36104

**STUDENT ID NO:** 34749943
**GRADE:** 07
**HOME ROOM:** GYM-3
**SEX:** F
**SCHOOL NAME:** HOUSTON HILL JR. HIGH
215 HALL STREET
MONTGOMERY

**MARKING PERIOD:** 4
**DATE:** 05/29/97

| COURSE NAME | COURSE SECTION | TEACHER | | | | | |
|---|---|---|---|---|---|---|---|
| EG. GRAM./READING 7 | 007120-02 | ASFAW | 2 3 | D | D | D | F |
| EM. ENG. | | | 7 3 | F | E | E | F |
| IFE SCIENCE 7 | 007140-07 | BROWN MS | 6 3 | F | E | F | F |
| PHYSICAL EDUCATION | 007160-06 | BARFOOT | | | | | |
| ULT. APPR. TO S STU | 007160-06 | BARFOOT | 4 3 | Q | Q | D | D |
| FATHERBAJ | | ASFAW | | | | | |
| EM MATH 7 | 007171-01 | ASFAW | | | | | |
| INE ARTS | | | | | | | |

TOTAL: 12
22

| CODE | COMMENTS |
|---|---|
| 1 | EFFORT NEEDS IMPROVEMENT |
| 2 | CONDUCT NEEDS IMPROVEMENT |
| 3 | |

Parent/Guardian Signature ==========>

| | | P.A. |
|---|---|---|
| 2 | S | .07 |
| | | .14 |

Lawson20

| McIntyre Middle School 98-99 | Grade Report for 1998-1999 Academic Year |
|---|---|
| 1220 Hugh St | |
| Montgomery, AL 36108-2699 | Date Run: 8/09/99    1:59PM |
| 269-3755 | |

To the Guardian of:     Id: 340749943    Grade: 08
LAWSON, TANESHA      HR: 2214    CARTER, LORETTA
651 HOLT ST S
MONTGOMERY, AL 36104    Yearly Abs:  9.0  Tdy:     GP Abs:  3.0 Tdy:

| Course | Pd | Teacher | 1ST NINE WEEKS GRD — | | 2ND NINE WEEKS GRD — | | 3RD NINE WEEKS GRD — | | Credit |
|---|---|---|---|---|---|---|---|---|---|
| 270708.01 HEALTH & PHY. ED. 8 | 01 | PRICE, J. | 60 | F | 80 | C | 70 | D | |
| 491908.01 COMPUTER APP 8 | 02 | ADAMS, D. | 81 | C | 80 | C | 75 | C | |
| 710008.08 LANGUAGE ARTS 8 | 06 | FAIR, K. | 62 | F | 60 | F | 56 | F | |
| 717008.02 INTEGRATED MATH | 5 | HILL, G. | 70 | D | 73 | C | 68 | D | |
| 719008.06 SCIENCE 8 | 04 | LLOYD, F. | 54 | F | 56 | F | 70 | D | |
| 817008.05 SOCIAL STUDIES 8 | 03 | CARTER, L. | 60 | F | 64 | D | 64 | D | |

Grading Period: 4  4TH NINE WEEKS

| Course | Pd | Teacher | GRD — | | CON AVG — | FIN | Credit |
|---|---|---|---|---|---|---|---|
| 270708.01 HEALTH & PHY. ED. 8 | 01 | PRICE, J. | 90 | B | A | 75 | |
| 491908.01 COMPUTER APP 8 | 02 | ADAMS, D. | 65 | D | C | 75 | |
| 710008.08 LANGUAGE ARTS 8 | 06 | FAIR, K. | 47 | F | B | 56 | |
| 717008.02 INTEGRATED MATH | 5 | HILL, G. | 71 | D | C | 71 | |
| 719008.06 SCIENCE 8 | 04 | LLOYD, F. | 76 | C | D | 64 | |
| 817008.05 SOCIAL STUDIES 8 | 03 | CARTER, L. | 70 | D | C | 65 | |

YTD: Credits:  0.00  GPA: W  1.1667
Cum: Credits:  0.00  GPA: W  1.1667

*Carter*

**Announcements**

Promoted to _____
Retained in _____
Summer School required for promotion Yes ( )

_____
Parent/Guardian Signature

Lawson21

# CUMULATIVE RECORD — (GRADES 6-8) — MONTGOMERY PUBLIC SCHOOL SYSTEM

PA 019-98

GRADE SCALE

A 100-91  D 72-64
B 90-82  F 63- 0
C 81-73

* Grades based on goals of IEP (Individualized Education Program).

CONFIDENTIAL: In accordance with the Family Rights and Privacy Act of 1974 (PL 93-380) the information may not be released to a third party unless the appropriate authorization is obtained.

Name _____
Address _____
Father _____
Mother _____
Guardian _____

SSN _____

Student: TANESHA LAWSON
651 HOLT S TS
MONTGOMERY AL  36104
ID: 340749943  Gender: F
School: Mcintyre Middle School

Guardian: DELORES LAWSON
651 HOLT S
MONTGOMERY AL  36108

Date of Birth
Ethnicity: B  DOB: 8/03/84
Entry Date: 8/31/98  Phone: 000-0000  Trans Code: NT

---

LAWSON, TANESHA
Gd:8  Hr: 2214          98-99
Course          Fin  —
HEALTH & PHY 75  C
COMPUTER AP 75  C
LANGUAGE ART 56  F
INTEG MATH    71  D
SCIENCE 8     64  D
SOCIAL STUDI  65  D

Cred
0.00
0.00
0.00
0.00
0.00
0.00

C: 1.1667  T: 1.1667  Cr Cum:
On Roll: 175  Abs: 14  Tdy:
Mcintyre Middle School

---

LAWSON, TANESHA M
Gd:8  Hr:          99-99
Course        Grd
ENGLISH 8      0
ENGLISH 8      0

Mcintyre Middle School Summe

---

School _____  Grade ____  Year 19
Days Absent
Day Tardy
Check-outs
SUBJECT

School _____  Grade ____  Year 19
Days Absent
Day Tardy
Check-outs
SUBJECT

School _____  Grade ____  Year 19
Days Absent
Day Tardy
Check-outs
SUBJECT

School _____  Grade ____  Year 19
Days Absent
Day Tardy
Check-outs
SUBJECT

School _____  Grade ____  Year 19
Days Absent
Day Tardy
Check-outs
SUBJECT

School _____  Grade ____  Year 19
Days Absent
Day Tardy
Check-outs
SUBJECT

340749943

Lawson22

MONTGOMERY PUBLIC SCHOOLS

SECONDARY REPORT CARD

E A SAFE SUMMER,
MER SCHOOL STARTS
6/0...

LAWSON, TANESHA

DELORES LAWSON
651 HOLT ST S
MONTGOMERY                    AL 36108

STUDENT ID: 340749943     BIRTH DATE: 05/28/98

McINTYRE JR. HIGH
1220 HUGH STREET
MONTGOMERY

GRADE 07    HOME ROOM 77    SEX F

MMAR/LITERATURE 7  007910-05  WASHINGTON

IC MATH 7  007211-01  STEWART

S. ED/HEALTH 7  007410-08  PRICE

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| | 1.00 | 1.80 | 1.83 | 1.60 |

Parent/Guardian Signature

Lawson23

Nar:

NAME: LAWSON, TANESHA
ADDRESS: 2302 MILL ST
FATHER: RAY IKE
MOTHER: DELORES LAWSON
GUARDIAN:

SS#: 340749943
MONTGOMERY 36108
BIRTHPL: CHICAGO , IL USA
RACE: BLACK - NON HISPANIC

APT:

DATE-OF-BIRTH: 08/03/84
SEX: F

2302 MILL ST
36108

MCINTYRE JR. HIGH
LAWSON, TANESHA
SEM:2 97-98 GR:07 ENTER:00/26/97 WR:77

340749943

| | | |
|---|---|---|
| 07/010 GRAMMAR/LITERATURE 7 | 0.00 | D(069) |
| 07/118 SOC. STUDIES 7TH | 0.00 | D(062) |
| 07/211 BASIC MATH 7 | 0.00 | C(081) |
| 07/310 LIFE SCIENCE 7 | 0.00 | C(073) |
| 07/410 PHYS. ED/HEALTH 7 | 0.00 | C(073) |
| 07/700 READING 7TH | 0.00 | C(077) |

YTD-ABS    19.0  YTD-TDY    1  YTD-CHK    0
YTD-GPA     0.00  SEM-CRD    0.00

Guardian:

School ___ Grade ___ Year 19 ___
Days Absent ___
Days Tardy ___
Check-outs ___
SUBJECT ___

Learning disabilities program (below grade level)

CONFIDENTIAL: In accordance with the Family Rights and Privacy Act of 1974 (PL 93-380) this information may not be released to a third party unless the appropriate authorization is obtained.

| GRADE SCALE | |
|---|---|
| A 100-91 | D 72-64 |
| B 90-82 | F 63- 0 |
| C 81-73 | |

PA 02890

Name      : LAWSON, TANESHA
Address   : 567 WATTS ST                         APT # :
Mother    :
Father    :
Guardian  :

SSN #         : 340749943
City          : MONTGOMERY, AL   36104
Birthplace    : ,
Date of Birth : 08/03/84
Race : 2         Sex : F

HOUSTON HILL JR. HIGH
LAWSON, TANESHA                          340749943
SEX:2 96-97 GR:07 ENTER:08/27/96 WH:GYM-3

YTD-ABS    36.0  YTD-TDY   22  YTD-CHK    0
YTD-GPA   4.370  SEM-CAD    0.00

00/120  REG. BAND/READING 7        F   .00   .00   .00   F
00/121  LIFE SCIENCE 7             F   .00   .00   .00   F
00/114  PHYSICAL EDUCATION 7       F   .00   .00   .00   F
00/115  APPR TO S.STU              F   .00   .00   .00   F
00/150  CULT APPR 7                F   .00   .00   .00   F
00/120  MATHEMATICS 7              F   .00   .00   .00   F
00/121  REM MATH 7                 F   .00   .00   .00   F
00/220  FINE ARTS 7                F   .00   .00   .00   F

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

**School**
Days Absent
Days Tardy
Check-outs
SUBJECT _____ Grade ___ Year 19 ___

PA 025-90

·ning disabilities program (below grade level)

·IFIDENTIAL: In accordance with the Family Rights and Privacy Act of 1974 (PL 93-380) this information
may not be released to a third party unless the appropriate authorization is obtained.

| GRADE SCALE | |
|---|---|
| A  100-91 | D  72-64 |
| B  90-82 | F  63- 0 |
| C  81-73 | |

Name: Lawson, Tanesha Michelle

SSN: 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    Date of Birth: 08/03/84

Address: 585 North Union Circle    Montg, Al    Zip: 36104    Birthplace: ____    Race: B    Sex: F

Father: ____    Address: (same as above)

Mother: Debris Lawson    Address: ____

Guardian: ____

**School: Paterson    Grade: 3    Year 19 92-93**

Days Absent: 8    Days Tardy: entered 3-1-93

| SUBJECT | | |
|---|---|---|
| Math | M-O | |
| Science | N-O | |
| Soc. Studies | N-O | |
| Reading | N-O | |
| Spelling | N-O | |
| English | N-O | |
| Handwriting | N-O | |
| Music | S-S | |
| Health | S-S | |
| P.E. | S-S | |
| Art | S-S | |
| Conduct | B | |

**School: Paterson    Grade: 4    Year 19 93-94**

Days Absent: 5    Days Tardy: 19

| SUBJECT | | |
|---|---|---|
| Math | F | |
| Science | F | |
| Social Studies | F | |
| Reading | F | |
| Spelling | | |
| English | | |
| Handwriting | | |
| Health | | |
| Music | | |
| P.E. | | |
| Art | | |
| Conduct | | BB |
| E.S. | | |
| L.A. | | |

**School: Patterson    Grade: 5    Year 19 94-95**

Days Absent: 12    Days Tardy: 9

| SUBJECT | | |
|---|---|---|
| Math | 99/F | |
| Science | 78/F | |
| Social Studies | 84/F | |
| Reading | 98/F | |
| Spelling | 98/F | |
| English | 89/F | |
| Handwriting | 98/F | |
| Health | 98/F | |
| Music | S/E | |
| P.E. | S/E | |
| Art | S/E | |
| Conduct | C | |

**School: Patterson    Grade: 6    Year 19 95-96**

Days Absent: 12    Days Tardy: ____

| SUBJECT | | |
|---|---|---|
| Math | 55/E | |
| Science | 79/C | |
| Soc. Studies | 72/C | |
| Reading | 55/E | |
| Eng | 69/D | |
| Spelling | 84/B | |
| Handwriting | S/E | |
| Music | G | |
| Health | S/E | |
| P.E. | G | |
| Visual Arts | G | |
| Conduct | C | |

**School: ____    Grade: ____    Year 19 ____**

Days Absent: ____    Days Tardy: ____

| SUBJECT | | |
|---|---|---|

**School: ____    Grade: ____    Year 19 ____**

Days Absent: ____    Days Tardy: ____

| SUBJECT | | |
|---|---|---|

CUMULATIVE RECORD—ELEMENTARY PROGRAM (K-6)

MONTGOMERY PUBLIC SCHOOL SYSTEM
MONTGOMERY, ALABAMA

| GRADE SCALE | |
|---|---|
| A | 100-91 |
| B | 90-82 |
| C | 81-73 |
| D | 72-64 |
| F | 63-0 |

| PROGRESS CODE |
|---|
| G—Very Good Progress |
| S— Satisfactory Progress |
| H—Having Difficulty |

Lawson26

**ACHIEVEMENT TEST SERIES, NINTH EDITION**
**SELECT**
*with OTIS-LENNON SCHOOL ABILITY TEST, SEVENTH EDITION*

**STUDENT REPORT**
**FOR**
**TANESHA LAWSON**
Age: 14 Yrs  08 Mos
Student No: 304749943

SCHOOL:  MCINTYRE JUNIOR HIGH - 0510450          GRADE:     08
DISTRICT:  MONTGOMERY COUNTY - 051  2L 6          TEST DATE: 04/99
TEST TYPE: MULTIPLE CHOICE



| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE | AAC Range |
|---|---|---|---|---|---|---|
| Total Reading | 84 | 30 | 638 | 8–2 | 20.4 | HIGH |
| Vocabulary | 30 | 7 | 614 | 3–1 | 10.4 | MIDDLE |
| Reading Comp. | 54 | 23 | 666 | 15–3 | 28.2 | HIGH |
| Total Mathematics | 82 | 26 | 650 | 21–3 | 33.0 | HIGH |
| Problem Solving | 52 | 17 | 645 | 22–3 | 33.7 | HIGH |
| Procedures | 30 | 9 | 663 | 24–4 | 35.1 | MIDDLE |
| Language | 48 | 13 | 605 | 5–2 | 15.4 | MIDDLE |
| Lang Mechanics | 24 | 6 | 602 | 5–2 | 15.4 | MIDDLE |
| Lang Expression | 24 | 7 | 609 | 9–2 | 21.8 | MIDDLE |
| Science | 40 | 10 | 616 | 7–2 | 18.9 | MIDDLE |
| Social Science | 40 | 10 | 612 | 13–3 | 26.3 | MIDDLE |
| Total Battery | 294 | 89 | NA | 11–3 | 24.0 | MIDDLE |

| OTIS-LENNON SCHOOL ABILITY TEST | Raw Score | SAI | Age PR-S | Scaled Score | National Grade PR-S |
|---|---|---|---|---|---|
| Total | 72 | 12 | 58 | 1–1 | 556 | 1–1 |
| Verbal | 36 | 5 | 60 | 1–1 | 549 | 1–1 |
| Nonverbal | 36 | 7 | 66 | 2–1 | 563 | 2–1 |

| CONTENT CLUSTERS | RS/ NP/ NA | STANINE RANGES 1-3 | 4-6 | 7-9 |
|---|---|---|---|---|
| **Reading Vocabulary** | 7/ 30/ 30 | ✓ | | |
| Synonyms | 3/ 16/ 16 | ✓ | | |
| Context | 4/ 7/ 7 | ✓ | | |
| Multiple Meanings | 0/ 7/ 7 | ✓ | | |
| **Reading Comprehension** | 23/ 54/ 54 | ✓ | | |
| Recreational | 6/ 18/ 18 | ✓ | | |
| Textual | 6/ 18/ 18 | ✓ | | |
| Functional | 11/ 18/ 18 | | ✓ | |
| Initial Understanding | 7/ 10/ 10 | | ✓ | |
| Interpretation | 9/ 24/ 24 | ✓ | | |
| Critical Analysis | 3/ 10/ 10 | ✓ | | |
| Process Strategies | 4/ 10/ 10 | ✓ | | |
| **Mathematics: Problem Solving** | 17/ 52/ 52 | ✓ | | |
| Measurement | 1/ 5/ 5 | ✓ | | |
| Estimation | 3/ 6/ 6 | | ✓ | |
| Problem-Solving Strategies | 2/ 5/ 5 | | ✓ | |
| Number & No. Relationships | 0/ 6/ 6 | ✓ | | |
| Number Systems & No. Theory | 1/ 4/ 4 | ✓ | | |
| Patterns & Functions | 2/ 3/ 3 | | ✓ | |
| Algebra | 3/ 5/ 5 | | ✓ | |
| Statistics | 0/ 5/ 5 | ✓ | | |
| Probability | 2/ 4/ 4 | | ✓ | |
| Geometry | 3/ 9/ 9 | | ✓ | |
| **Mathematics: Procedures** | 9/ 30/ 30 | ✓ | | |
| Computation/Symbolic Notation | 1/ 8/ 8 | ✓ | | |
| Computation in Context | 7/ 18/ 18 | ✓ | | |
| Rounding | 1/ 4/ 4 | | ✓ | |
| **Language** | 13/ 48/ 48 | ✓ | | |
| Capitalization | 2/ 8/ 8 | ✓ | | |
| Punctuation | 1/ 8/ 8 | ✓ | | |
| Usage | 3/ 8/ 8 | | ✓ | |
| Sentence Structure | 3/ 12/ 12 | ✓ | | |
| Content and Organization | 4/ 12/ 12 | ✓ | | |

| CONTENT CLUSTERS | RS/ NP/ NA | STANINE RANGES 1-3 | 4-6 | 7-9 |
|---|---|---|---|---|
| **Science** | 10/ 40/ 40 | ✓ | | |
| Earth & Space Science | 2/ 12/ 12 | ✓ | | |
| Physical Science | 1/ 14/ 14 | ✓ | | |
| Life Science | 7/ 14/ 14 | | ✓ | |
| Science Process Skills | 8/ 30/ 30 | ✓ | | |
| **Social Science** | 10/ 40/ 40 | ✓ | | |
| History | 1/ 10/ 10 | ✓ | | |
| Geography | 4/ 9/ 9 | | ✓ | |
| Civics & Government | 2/ 8/ 8 | | ✓ | |
| Economics | 1/ 8/ 8 | ✓ | | |
| Culture | 2/ 5/ 5 | | ✓ | |

Lawson27

*ACHIEVEMENT TEST SERIES, NINTH EDITION*
SELECT
*with OTIS-LENNON SCHOOL ABILITY TEST, SEVENTH EDITION*

| STUDENT REPORT |
| FOR |
| TANESHA LAWSON |

SCHOOL: MCINTYRE JUNIOR HIGH - 0510450
DISTRICT: MONTGOMERY COUNTY - 051 2L 6
TEST TYPE: MULTIPLE CHOICE

GRADE: 08
TEST DATE: 04/99

Age: 14 Yrs 08 Mos
Student No: 304749943



| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE | | AAC Range |
|---|---|---|---|---|---|---|---|
| Total Reading | 84 | 30 | 635 | 8-2 | 20.4 | | HIGH |
| Vocabulary | 30 | 7 | 614 | 3-1 | 10.4 | | MIDDLE |
| Reading Comp. | 54 | 23 | 644 | 15-3 | 28.2 | | HIGH |
| Total Mathematics | 82 | 26 | 650 | 21-3 | 33.0 | | HIGH |
| Problem Solving | 52 | 17 | 643 | 22-3 | 33.7 | | HIGH |
| Procedures | 30 | 9 | 663 | 24-4 | 35.1 | | MIDDLE |
| Language | 48 | 13 | 605 | 5-2 | 15.4 | | MIDDLE |
| Lang Mechanics | 24 | 6 | 602 | 5-2 | 15.4 | | MIDDLE |
| Lang Expression | 24 | 7 | 609 | 9-2 | 21.8 | | MIDDLE |
| Science | 40 | 10 | 616 | 7-2 | 18.9 | | MIDDLE |
| Social Science | 40 | 10 | 612 | 13-3 | 26.3 | | MIDDLE |
| Total Battery | 294 | 89 | NA | 11-3 | 24.0 | | MIDDLE |

| OTIS-LENNON SCHOOL ABILITY TEST | Raw Score | SAI | Age PR-S | Scaled Score | National Grade PR-S |
|---|---|---|---|---|---|
| Total | 72 | 12 | 56 | 1-1 | 556 | 1-1 |
| Verbal | 36 | 5 | 60 | 1-1 | 549 | 1-1 |
| Nonverbal | 36 | 7 | 66 | 2-1 | 563 | 2-1 |

| CONTENT CLUSTERS | RS/ NP/ NA | STANINE RANGES 1-3 | 4-6 | 7-9 |
|---|---|---|---|---|
| **Reading Vocabulary** | 7/ 30/ 30 | ✓ | | |
| Synonyms | 3/ 16/ 16 | ✓ | | |
| Context | 4/ 7/ 7 | | ✓ | |
| Multiple Meanings | 0/ 7/ 7 | ✓ | | |
| | | | | |
| **Reading Comprehension** | 23/ 54/ 54 | ✓ | | |
| Recreational | 6/ 18/ 18 | ✓ | | |
| Textual | 6/ 18/ 18 | | ✓ | |
| Functional | 11/ 18/ 18 | | ✓ | |
| Initial Understanding | 7/ 10/ 10 | | ✓ | |
| Interpretation | 9/ 24/ 24 | ✓ | | |
| Critical Analysis | 3/ 10/ 10 | ✓ | | |
| Process Strategies | 4/ 10/ 10 | ✓ | | |
| | | | | |
| **Mathematics: Problem Solving** | 17/ 52/ 52 | ✓ | | |
| Measurement | 1/ 5/ 5 | ✓ | | |
| Estimation | 3/ 6/ 6 | | ✓ | |
| Problem-Solving Strategies | 2/ 5/ 5 | | ✓ | |
| Number & No. Relationships | 0/ 6/ 6 | ✓ | | |
| Number Systems & No. Theory | 1/ 4/ 4 | ✓ | | |
| Patterns & Functions | 2/ 3/ 3 | | ✓ | |
| Algebra | 3/ 5/ 5 | | ✓ | |
| Statistics | 0/ 5/ 5 | ✓ | | |
| Probability | 2/ 4/ 4 | | ✓ | |
| Geometry | 3/ 9/ 9 | | ✓ | |
| | | | | |
| **Mathematics: Procedures** | 9/ 30/ 30 | | ✓ | |
| Computation/Symbolic Notation | 1/ 8/ 8 | ✓ | | |
| Computation in Context | 7/ 18/ 18 | ✓ | | |
| Rounding | 1/ 4/ 4 | | ✓ | |
| | | | | |
| **Language** | 13/ 48/ 48 | ✓ | | |
| Capitalization | 2/ 8/ 8 | ✓ | | |
| Punctuation | 1/ 8/ 8 | ✓ | | |
| Usage | 3/ 8/ 8 | | ✓ | |
| Sentence Structure | 3/ 12/ 12 | ✓ | | |
| Content and Organization | 4/ 12/ 12 | ✓ | | |

| CONTENT CLUSTERS | RS/ NP/ NA | STANINE RANGES 1-3 | 4-6 | 7-9 |
|---|---|---|---|---|
| **Science** | 10/ 40/ 40 | ✓ | | |
| Earth & Space Science | 2/ 12/ 12 | ✓ | | |
| Physical Science | 1/ 14/ 14 | ✓ | | |
| Life Science | 7/ 14/ 14 | | ✓ | |
| Science Process Skills | 8/ 30/ 30 | ✓ | | |
| | | | | |
| **Social Science** | 10/ 40/ 40 | ✓ | | |
| History | 1/ 10/ 10 | ✓ | | |
| Geography | 4/ 9/ 9 | | ✓ | |
| Civics & Government | 2/ 8/ 8 | | ✓ | |
| Economics | 1/ 8/ 8 | ✓ | | |
| Culture | 2/ 5/ 5 | | ✓ | |

# STANFORD

**ACHIEVEMENT TEST SERIES, NINTH EDITION**
**SELECT**
with **OTIS-LENNON SCHOOL ABILITY TEST, SEVENTH EDITION**

| | | |
|---|---|---|
| **STUDENT REPORT** | | |
| **FOR** | | |
| **TANESHA M LAWSON** | | |

SCHOOL: MCINTYRE JR HS - 0510450   GRADE: 07
DISTRICT: MONTGOMERY COUNTY - 051   TEST DATE: 04/98
TEST TYPE: MULTIPLE CHOICE

Age: 13 Yrs 08 Mos
Student Nbr: 340749943

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE | AAC Range | NATIONAL GRADE PERCENTILE BANDS |
|---|---|---|---|---|---|---|---|
| Total Reading | 84 | 19 | 592 | 1-1 | 1.0 | LOW | |
| Vocabulary | 30 | 5 | 574 | 1-1 | 1.0 | LOW | |
| Reading Comp. | 54 | 14 | 603 | 3-2 | 10.4 | MIDDLE | |
| Total Mathematics | 80 | 25 | 637 | 18-3 | 30.7 | HIGH | |
| Problem Solving | 50 | 15 | 628 | 22-3 | 33.7 | MIDDLE | |
| Procedure | 30 | 10 | 657 | 27-4 | 37.1 | HIGH | |
| Language | 48 | 17 | 615 | 11-3 | 24.2 | MIDDLE | |
| Lang Mechanics | 24 | 8 | 608 | 9-2 | 21.8 | MIDDLE | |
| Lang Expression | 24 | 9 | 623 | 18-3 | 30.7 | HIGH | |
| Science | 40 | 14 | 624 | 16-3 | 29.1 | HIGH | |
| Social Science | 40 | 16 | 625 | 34-4 | 41.3 | HIGH | |
| Total Battery | 292 | 91 | NA | 11-3 | 24.3 | MIDDLE | |

| OTIS-LENNON SCHOOL ABILITY TEST | | Raw Score | SAI | Age PR-S | Scaled Score | National Grade PR-S |
|---|---|---|---|---|---|---|
| Total | 72 | 17 | 71 | 4-2 | 1576 | 2-1 |
| Verbal | 36 | 7 | 68 | 3-1 | 565 | 2-1 |
| Nonverbal | 36 | 10 | 75 | 6-2 | | 5-2 |

| CONTENT CLUSTERS | RS/ NP/ NA | STANINE RANGES 1-3 | 4-6 | 7-9 |
|---|---|---|---|---|
| **Reading Vocabulary** | 5/ 30/ 28 | ✓ | | |
| Synonyms | 2/ 16/ 16 | ✓ | | |
| Context | 2/ 7/ 7 | ✓ | | |
| Multiple Meanings | 1/ 7/ 5 | ✓ | | |
| **Reading Comprehension** | 14/ 54/ 54 | ✓ | | |
| Recreational | 4/ 18/ 18 | ✓ | | |
| Textual | 5/ 18/ 18 | ✓ | | |
| Functional | 5/ 18/ 18 | ✓ | | |
| Initial Understanding | 2/ 10/ 10 | ✓ | | |
| Interpretation | 5/ 24/ 24 | ✓ | | |
| Critical Analysis | 5/ 10/ 10 | ✓ | | |
| Process Strategies | 2/ 10/ 10 | ✓ | | |
| **Mathematics: Problem Solving** | 15/ 50/ 50 | ✓ | | |
| Measurement | 1/ 5/ 5 | ✓ | | |
| Estimation | 1/ 6/ 6 | ✓ | | |
| Problem-Solving Strategies | 3/ 5/ 5 | | ✓ | |
| Number & No. Relationships | 3/ 6/ 6 | | ✓ | |
| Number Systems & No. Theory | 0/ 4/ 4 | ✓ | | |
| Patterns & Functions | 0/ 3/ 3 | ✓ | | |
| Algebra | 0/ 4/ 4 | ✓ | | |
| Statistics | 2/ 5/ 5 | | ✓ | |
| Probability | 1/ 3/ 3 | | ✓ | |
| Geometry | 4/ 9/ 9 | | ✓ | |
| **Mathematics: Procedures** | 10/ 30/ 30 | | ✓ | |
| Computation/Symbolic Notation | 3/ 8/ 8 | | ✓ | |
| Computation in Context | 6/ 18/ 18 | | ✓ | |
| Rounding | 1/ 4/ 4 | | ✓ | |
| **Language** | 17/ 48/ 47 | ✓ | | |
| Capitalization | 3/ 8/ 8 | ✓ | | |
| Punctuation | 1/ 8/ 8 | ✓ | | |
| Usage | 4/ 8/ 8 | | ✓ | |
| Sentence Structure | 2/ 12/ 11 | ✓ | | |
| Content and Organization | 7/ 12/ 12 | | ✓ | |

| CONTENT CLUSTERS | RS/ NP/ NA | STANINE RANGES 1-3 | 4-6 | 7-9 |
|---|---|---|---|---|
| **Science** | 14/ 40/ 40 | ✓ | | |
| Earth & Space Science | 6/ 12/ 12 | | ✓ | |
| Physical Science | 6/ 14/ 14 | | ✓ | |
| Life Science | 2/ 14/ 14 | ✓ | | |
| Science Process Skills | 12/ 30/ 30 | ✓ | | |
| **Social Science** | 16/ 40/ 40 | | ✓ | |
| History | 4/ 10/ 10 | | ✓ | |
| Geography | 5/ 9/ 9 | | ✓ | |
| Civics & Government | 4/ 8/ 8 | | ✓ | |
| Economics | 3/ 8/ 8 | | ✓ | |
| Culture | 0/ 5/ 5 | ✓ | | |

Lawson29

Number of Other Children in Family:    Older _____    Younger _____

| Change in Address | | | Schools Attended | | Date | |
|---|---|---|---|---|---|---|
| Year | (Mailing Address) | | | | Entered | Left |
| | | | Mc Intyre Jr. High- 220 Hugh St. | | 8/24/97 | 5/28/98 |

## Extra-Curricular Activities

| | Year in School | | |
|---|---|---|---|
| (✓) SCHOOL ACTIVITIES | 7 | 8 | 9 |
| Baseball (Interscholastic) | | | |
| Basketball (Interscholastic) | | | |
| Football (Interscholastic) | | | |
| Golf (Interscholastic) | | | |
| Tennis (Interscholastic) | | | |
| Track (Interscholastic) | | | |
| Volleyball (Interscholastic) | | | |
| Wrestling (Interscholastic) | | | |
| Yearbook | | | |
| Band | | | |
| Cheerleader | | | |
| Chorus | | | |
| Dramatics | | | |
| National Honor Society | | | |
| School Paper | | | |
| Student Council | | | |

## Physical Fitness — Cumulative Record — State of Alabama

| TEST ITEM | Grade 7 | | Grade 8 | | Grade 9 | |
|---|---|---|---|---|---|---|
| | RAW SC. | %TILE SC. | RAW SC. | %TILE SC. | RAW SC. | %TILE SC. |
| V-SIT REACH | 31 | 55% | | | | |
| CURL-UPS | 35 | 40% | | | | |
| PULL-UPS | 0 | 0% | | | | |
| ONE MILE (WALK/RUN) | 12:40 | 25% | | | | |
| SHUTTLE RUN | :17 | 0% | | | | |

## STANDARDIZED TEST RECORD

STANFORD Achievement Test Series, Ninth Edition

ALABAMA STATEWIDE TESTING PROGRAM

LAWSON      TANESHA  M          SEX: F
            AGE:    14 YRS
SCHOOL: MCINTYRE JR HS      TEST DATE: 04/06/98
GROUP:   06 MOS
LEVEL:   ADVANCED 1    FORM: T
NORMS:   1995      NATIONAL

| SCORE TYPE | TOTAL READING | TOTAL MATH | LANGUAGE | SCIENCE | SOCIAL SCIENCE | TOTAL BATTERY |
|---|---|---|---|---|---|---|
| NATL PR | 1 | 1 | 1 | 1 | 34 | 1 |
| | 19 | 19 | 19 | 15 |  | 13 |

Receipt of Required Documents

Immunization Certificate _____
Date of Expiration _____

Documentation
of Parental
Understanding
of Graduation
Requirements _____

## Parental Review Record

| Review Requested By: | Date of Review | Attachments, If Any |
|---|---|---|
| | | |
| | | |

## Scoliosis Testing

| Grade | Date | Referred to Physician |
|---|---|---|
| 7 | 9/9/97 | ☑ Yes  ☐ No |
| 8 | | ☐ Yes  ☐ No |
| 9 | | ☐ Yes  ☐ No |

## OLSAT Otis-Lennon School Ability Test, Seventh Edition

| SCORE TYPE | | |
|---|---|---|
| SCHOOL ABILITY INDEX | | |
| NATIONAL GRADE PR-S | | |

| | TOTAL | VERBAL | NON-VERBAL |
|---|---|---|---|
| | 71 | 68 | 75 |
| | 3-4 | 3-4 | 5-5 |

Record Released To: _____    Date _____

Lawson30

Number of Other Children in Family:    Older: _____    Younger: _____

Change in Address
(Mailing Address)

| Year | Schools Attended | Date Entered | Left | Receipt of Required Documents |
|---|---|---|---|---|
| | Houston Hill Jr. High | 5/96 | 5/97 | Immunization Certificate ___ |
| | | | | Date of Expiration ___ |

**Extra-Curricular Activities**

| (✓) SCHOOL ACTIVITIES | Year in School | | |
|---|---|---|---|
| | 7 | 8 | 9 |
| Basketball (Interscholastic) | | | |
| Baseball (Interscholastic) | | | |
| Football (Interscholastic) | | | |
| Golf (Interscholastic) | | | |
| Tennis (Interscholastic) | | | |
| Track (Interscholastic) | | | |
| Volleyball (Interscholastic) | | | |
| Wrestling (Interscholastic) | | | |
| Band | | | |
| Yearbook | | | |
| Cheerleader | | | |
| Chorus | | | |
| Dramatics | | | |
| National Honor Society | | | |
| School Paper | | | |
| Student Council | | | |

Record Released To: _____    Date _____

**Physical Fitness — Cumulative Record — State of Alabama**

| TEST ITEM | Grade 7 | | Grade 8 | | Grade 9 | |
|---|---|---|---|---|---|---|
| | RAW SC. | %TILE SC. | RAW SC. | %TILE SC. | RAW SC. | %TILE SC. |
| V-SIT REACH | | | | | | |
| CURL-UPS | | | | | | |
| PULL-UPS | | | | | | |
| ONE MILE (WALK/RUN) | | | | | | |
| SHUTTLE RUN | | | | | | |

**Documentation of Parental Understanding of Graduation Requirements**

Date of Parental Review ___

**Parental Review Record**

| Review Requested By: | Date of Review | Attachments, if Any |
|---|---|---|

**Scoliosis Testing**

| Grade | Date | Referred to Physician |
|---|---|---|
| 7 | _____ | ☐ Yes  ☐ No |
| 8 | _____ | ☐ Yes  ☐ No |
| 9 | _____ | ☐ Yes  ☐ No |

**STANFORD**

**Achievement Test Series/Ninth Edition**

**ALABAMA STATEWIDE TESTING PROGRAM**

**STANDARDIZED TEST RECORD**

LAWSON    TANESHA    M
AGE: 14 YRS    8 MOS
SCHOOL: HOUSTON HILL JR HIGH
GRADE: 8
LEVEL: ADVANCED 1
1995 NORMS: SPRING    NATIONAL    SEX: F
TEST DATE: 04/01/97
TEST FORM: J

| SCORE TYPE | READING | TOTAL MATH | LAN-GUAGE | SCIENCE | SCIENCE BATTERY |
|---|---|---|---|---|---|
| SCORE | | | | | |
| NAT'L PR | 18 | DNA | 2 | 24 | DNA |
| NAT'L S | 3 | | 2 | | |

**OLSAT** The Lawson School Series Test, Seventh Edition

| SCORE TYPE | TOTAL | VERBAL | NON-VERBAL |
|---|---|---|---|
| SCHOOL ABILITY INDEX | | | |
| NATIONAL AGE PR-S | 8-1 | 8-2 | 80 |
| NATIONAL GRADE PR-S | 8-1 | 8-2 | 11-3 |
| | 3-1 | 7-2 | 5-2 |

Lawson31

Lawson32

*METROPOLITAN TEST SERIES, NINTH EDITION*
SELECT
*with OTIS-LENNON SCHOOL ABILITY TEST, SEVENTH EDITION*

**STUDENT REPORT**
**FOR**
**TANEASHA LAWSON**

SCHOOL : PATERSON ELEM - 0510480
DISTRICT : MONTGOMERY CO - 051 2L 6
TEST TYPE: MULTIPLE CHOICE

GRADE : 06
TEST DATE: 04/26

Age 11 Yrs, 06 Mos
Student No: 3403-02941

**NATIONAL GRADE PERCENTILE BANDS**

| SUBTESTS AND TOTALS | No. of Items | Raw Score | Scaled Score | National PR-S | National NCE | AAC Range | 1 | 10 | 30 | 50 | 70 | 90 | 99 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reading Comp. | 54 | 10 | 592 | 2-1 | 6.7 | LOW | | | | | | | |
| Total Mathematics | 78 | 13 | 582 | 3-1 | 10.4 | LOW | | | | | | | |
| Problem Solving | 48 | 8 | 580 | 3-1 | 10.4 | LOW | | | | | | | |
| Procedures | 30 | 5 | 535 | 3-1 | 10.4 | LOW | | | | | | | |
| Language | 48 | 36 | 602 | 19-2 | 23.0 | MIDDLE | | | | | | | |
| Lang Mechanics | 24 | 10 | 615 | 19-3 | 31.5 | MIDDLE | | | | | | | |
| Lang Expression | 24 | 6 | 588 | 7-2 | 18.9 | MIDDLE | | | | | | | |
| Science | 40 | 9 | 586 | 4-2 | 13.1 | LOW | | | | | | | |
| Social Science | 40 | 12 | 591 | 13-3 | 26.3 | MIDDLE | | | | | | | |
| Total Battery | 260 | 60 | NA | 5-2 | 15.0 | LOW | | | | | | | |

| OTIS-LENNON SCHOOL ABILITY TEST | Raw Score | SAI | Age PR-S | Scaled Score | National Grade PR-S |
|---|---|---|---|---|---|
| Total | 72 | 17 | 79 | 20-2 | 574 | 4-2 |
| Verbal | 36 | 7 | 76 | 7-2 | 565 | 4-2 |
| Nonverbal | 36 | 10 | 85 | 16-3 | 531 | 9-2 |

| CONTENT CLUSTERS | RS/ NP/ NA | STANINE RANGES 1-3 | 4-6 | 7-9 |
|---|---|---|---|---|
| Reading Comprehension | 10/ 54/ 54 | ✓ | | |
| Recreational | 4/ 18/ 18 | ✓ | | |
| Textual | 3/ 18/ 18 | ✓ | | |
| Functional | 3/ 18/ 18 | ✓ | | |
| Initial Understanding | 3/ 12/ 12 | ✓ | | |
| Interpretation | 4/ 24/ 24 | ✓ | | |
| Critical Analysis | 1/ 9/ 9 | ✓ | | |
| Process Strategies | 2/ 9/ 9 | ✓ | | |
| Mathematics Problem Solving | 8/ 48/ 47 | ✓ | | |
| Measurement | 1/ 6/ 6 | ✓ | | |
| Estimation | 2/ 6/ 6 | | ✓ | |
| Problem Solving Strategies | 1/ 5/ 5 | | ✓ | |
| Number & No. Relationships | 2/ 6/ 6 | ✓ | | |
| Number Systems & No. Theory | 0/ 5/ 5 | ✓ | | |
| Patterns & Functions | 1/ 3/ 3 | ✓ | | |
| Algebra | 0/ 3/ 3 | ✓ | | |
| Statistics | 0/ 6/ 5 | ✓ | | |
| Probability | 0/ 5/ 5 | ✓ | | |
| Geometry | 1/ 7/ 7 | ✓ | | |
| Mathematics Procedures | 5/ 30/ 29 | ✓ | | |
| Computation Symbols Notation | 3/ 10/ 10 | ✓ | | |
| Computation in Context | 0/ 16/ 15 | ✓ | | |
| Rounding | 0/ 4/ 4 | ✓ | | |
| Language | 16/ 48/ 48 | ✓ | | |
| Capitalization | 5/ 8/ 8 | | ✓ | |
| Punctuation | 2/ 8/ 8 | ✓ | | |
| Usage | 3/ 8/ 8 | ✓ | | |
| Sentence Structure | 1/ 12/ 12 | ✓ | | |
| Content and Organization | 5/ 12/ 12 | | ✓ | |
| Science | 9/ 40/ 40 | ✓ | | |
| Earth & Space Science | 4/ 12/ 12 | ✓ | | |
| Physical Science | 2/ 14/ 14 | ✓ | | |
| Life Science | 3/ 14/ 14 | ✓ | | |
| Science Process Skills | 6/ 30/ 30 | ✓ | | |

| CONTENT CLUSTERS | RS/ NP/ NA | STANINE RANGES 1-3 | 4-6 | 7-9 |
|---|---|---|---|---|
| Social Science | 12/ 40/ 40 | ✓ | | |
| History | 4/ 10/ 10 | | ✓ | |
| Geography | 4/ 9/ 9 | ✓ | | |
| Civics & Government | 1/ 8/ 8 | | ✓ | |
| Economics | 1/ 8/ 8 | ✓ | | |
| Culture | 2/ 5/ 5 | | ✓ | |

Lawson33

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO.  2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA MICHELLE LAWSON** | ) | |
| | ) | |

## United States' Proffer of and Notice of Intent to Use 404(b) Evidence

The United States gives notice to defendant Taneshia Lawson and to the Court that it intends to introduce Rule 404(b) character evidence. The evidence is as follows: that on or about Saturday, October 21, 2006, Lawson cashed a fraudulent check at a Sneakers store in Auburn, Alabama, which did not belong to her and had been stolen from a woman with the initials J.H.  Lawson also was present during the cashing of two other fraudulent checks at the same store on Sunday, October 22, 2006.

The Government first became aware of this evidence on Thursday, October 26, 2006, and has conducted an investigation since that time, which just concluded this afternoon at approximately 12:00 noon.

Fed.R.Evid. 404(b) permits the introduction of evidence of other crimes, wrongs or acts if the evidence is admissible to prove intent.  Lawson's attorney has indicated on numerous occasions that she intends to present a defense in which Lawson did not have the intent to steal or the intent to agree to steal the Social Security checks charged in the Indictment.  This evidence will negate such a defense.

The United States respectfully reserves the right to submit a motion or memorandum in support of this request, should the Court so require.

Respectfully submitted this 3rd day of November, 2006,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

## DEFENDANT TANESHIA M. LAWSON'S NOTICE OF OPPOSITION TO PROPOSED 404(b) EVIDENCE AND MOTION IN LIMINE WITH CITATIONS OF AUTHORITY

Comes now the Defendant, Taneshia M. Lawson, by counsel and pursuant to F.R.E. 402, 403 and 404(b), and respectfully moves this Court to prohibit the Government from introducing, in any opening statement, argument, evidence, opinion, exhibit, photograph, video, or testimony, any allegations concerning the subject of the below-described items.

In the alternative, Defendant requests a continuance to investigate these matters and asks that this Court require the Government to notify the Court of its intent to introduce such item before such introduction; that the Court rule on the admissibility of such item prior to it being presented before the jury; and that the Court provide appropriate limiting instructions at the time of the admission of such evidence and in closing instructions.

On Friday, November 3, 2006, at 1:41 p.m., the Government filed a document styled "United States' Proffer of and Notice of Intent to Use 404(b) Evidence." (D.E. 130).   Thereafter, at approximately 5:00 p.m. and after repeated phone calls by defense counsel's office, defense counsel received two CDs, and 29 pages of documents, which include affidavits, police reports, some unrelated photographs, and a cover letter from Government counsel. These documents are attached.

Government counsel's  letter stated "We intend to introduce these documents at trial."
The Government's Notice states:

The United States gives notice to defendant Taneshia Lawson and to the Court that it intends to introduce Rule 404(b) **character** evidence. The evidence is as follows: that on or about Saturday, October 21, 2006, Lawson cashed a fraudulent check at a Sneakers store in Auburn, Alabama, which did not belong to her and had been stolen from a woman with the initials J.H. Lawson also was **present during the cashing** of two other fraudulent checks at the same store on Sunday, October 22, 2006.

The Government first became aware of this evidence on **Thursday, October 26, 2006**, and has conducted an investigation since that time, which just concluded this afternoon at approximately 12:00 noon.

Fed.R.Evid. 404(b) permits the introduction of evidence of other crimes, wrongs or acts if the evidence is admissible to prove intent. Lawson's attorney has indicated on numerous occasions that she intends to present **a defense in which Lawson did not have the intent to steal or the intent to agree to steal the Social Security checks charged in the Indictment.** This evidence will negate such a defense.

(Emphasis added.)

This Notice should be stricken and the Government should be prohibited from introducing the proposed evidence, pursuant to F.R.E. 402, 403, and 404(b). As discussed below, the items described in the Government's Notice are not probative of the matters at issue in this trial, do not relate to any pending charge in this indictment, are irrelevant to the issues in this trial, would be introduced only for their prejudicial impact, and have not been provided with "reasonable notice in advance of trial," as required by F.R.E. 404 (b). Moreover, any probative value of such items would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury, and would cause unnecessary delay in the trial of this matter. Such items would create the risk that the jurors would reach their decision in this case on an improper basis.

1.      Whether or not Ms. Lawson has personally passed a stolen check on some other occasion does not negate and is not relevant to the defense which Ms. Lawson will present at this trial. The Government continues to misrepresent or misunderstand Ms. Lawson's defense.   Ms.

2

Lawson does not argue that she "did not have the intent to steal or the intent to agree to steal the Social Security checks charged in the Indictment," as argued by the Government (D.E. 130). Rather, Ms. Lawson, as a mentally retarded woman with an I.Q. of 66 or below, does not understand that she can be held criminally liable for checks which she did not steal, pass, or receive proceeds.  Ms. Lawson is not capable of the abstract thought process required to intentionally conspire to assist others in their stealing and cashing of checks.

This is a separate issue from Ms. Lawson's own personal liability for cashing one check.  Her liability for that one check **is not at issue in this trial**.  Ms. Lawson, through counsel, has repeatedly offered to plead guilty to the theft of the single Social Security check which she herself cashed on October 31, 2003.  However, that offer has been rejected and that offense is not charged in this Indictment.

2.     The "evidence" proffered by the Government concerns the use of two different individual's stolen personal checks to buy shoes at a Sneakers store in Auburn in October 2006, through the presentation of three different checks – one by a woman and two by a man who the employees believed to be accompanied by a woman.  The "evidence" includes **conflicting** accounts of what happened, identification of a woman **other than** Ms. Lawson, description of criminal behavior by a man who is not Ms. Lawson, and description of criminal behavior by "unknown others" who are not Ms. Lawson.  The "evidence" is inadmissible hearsay.  Such information is not relevant to the present case, which involves three women cashing one person's stolen Social Security checks at a pawn store in Montgomery in October 2003.  Moreover, any probative value of such evidence would be outweighed by the substantial danger of unfair prejudice, confusion of the issues, misleading of the jury, undue delay, waste of time, and needless presentation of collateral evidence.

3.	A.	The documents included with the Government's 404(b) letter include two narrative reports given to the Secret Service (Bates stamp numbers 108, 109). Both of these narratives describe a black male coming in to the Sneakers store on October 21 and 22, and presenting checks. Thus, these narratives do not implicate Ms. Lawson.

B.	The documents also include photo line-ups of six young African-American women. One of the line-ups (Bates stamp number 106) includes a circle around a picture of a woman who appears to be Ms. Lawson, with the notation "This is the female I saw on Sat 21. She also came in here one Sunday the 22 and stayed in here for about 2 hrs. Then got picked up. I saw **Simone** take her check on Sat the 21." (Emphasis added.) However, a second photo line-up (Bates stamp number 110) with a circled identification **made by Simone,** identifies someone who is **not** Ms. Lawson.

C.	A third photograph line-up (Bates stamp number 107) included in the documents provided by the Government has a circle drawn around a picture of a woman who appears to be Ms. Lawson, with the notation "I saw this lady in our store on Sunday October 22nd [sic] She entered the store **around the same time frame the transaction took place**. She was in the store for about an hour & a half on Sunday (using our store phone, etc.)" (Emphasis added.) Thus, this witness does not describe any criminal activity by the woman observed.

D.	The documents also include a suspect description, contained in the police reports made by the store manager concerning the woman who allegedly passed a forged check (Bates stamp numbers 117, 119). The description given is of a woman who is **forty-five years old** and 250 pounds – descriptions which simply don't come close to Ms. Lawson.

E.	The documents also include two statements by people (J.H. and E.C.) whose

4

checks were apparently stolen and/or passed without their permission.  (Bates stamp numbers 111,

114, 120 - 122).  These statements do not describe checks being passed at Sneakers; state that the

persons who took or passed the checks are unknown; refer to several other forgeries which are not

identified by date or location; and **do not include a single reference** to anyone who could or might

be Ms. Lawson.  Notably, the driver's license and police report provided by J.H. indicate that she

is 42 years old and 280 pounds, similar to the description given by the Sneakers employee.  Her

photo was not included in the photo line-ups shown to the Sneakers employees.

      F.     The videos are composites and do not represent continuous documentation.

Their total lengths vary (one is approximately 17 minutes and the other over 35 minutes); they are

of poor quality; they do not include any close-up views; and they do not contain time or date

indicators.  They are labeled with separate dates.  While the videos show several different customers,

the same female customers do not appear on each video.  Thus, they cannot both show Ms. Lawson.

One of the videos does not show any African American woman customer making any payments.  To

the extent the store employees report a woman in the company of a man who passed bad checks, the

videos show minimal interaction between the man who is apparently passing the bad checks and a

woman.

      G.     The documents include an affidavit from the store manager (Bates stamp

number 105), which states that he was contacted by Joe Tynan, the U.S. Postal Service agent who

is the  case agent in this case, on October 26, 2006, and on that same date he provided the items and

videos to another U.S. Postal Inspector.

      H.     Even a cursory investigation shows that the allegation of forged checks at

Sneakers is not as simple as the description given in the Government's Notice.  Since receiving the

<div align="center">5</div>

discovery on November 3, defense counsel's office has attempted to reach people referenced in the documents. Defense investigators reached one person: "J.H.," the person whose check was allegedly stolen and passed by a woman at Sneakers. The investigators found that J.H. strongly resembles the woman shown in the October 21, 2006 video, who is shown writing a check and displaying identification for the check. J.H.'s signature strongly resembles the signature on the check allegedly forged at Sneakers. One defense investigator knows one of the women shown on the photo line-up used by the U.S. Postal inspectors and is aware that this woman currently or recently lived in the same neighborhood as J.H.. However, J.H. denied knowing that woman or anyone else in the photo line-up. J.H. also denied knowing when her driver's license was stolen, when she reported it stolen, or that her checks had ever been stolen. She claimed that additional checks were ordered without her knowledge and then sent to some other address. During her meeting with the defense investigators, J.H. called her sister, who then called back and told the investigators that she was advising J.H. not to speak to the investigators, on the advice of her own personal attorney. J.H. then ended the interview.

4.      The Government's Notice is not timely. The Standing Order on Discovery, included in the Arraignment Order entered in this matter on July 26, 2006 (D.E. 12), required the Government to provide:

> (1) Disclosure by the Government: At arraignment, or on a date otherwise set by the court for good cause shown, the government shall tender to defendant the following . . . (H) Red. R. Evid. 404(b). The government shall advise the defendant of its intention to introduce in its case in chief at trial, pursuant to Rule 404(b) of the Federal Rules of Evidence.

(D.E. 12, pp. 5, 6). In addition, F.R.E. 404(b) requires such disclosure to be given with "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown,

of the general nature of any such evidence it intends to introduce at trial."  The Government, by its

own description, has been aware of such evidence since October 26, but did not disclose the possible

existence, the general nature, or the details of such evidence until eight days later, on the afternoon

of November 3, 2006.

"The policy behind the Rule 404(b) notice requirement is 'to reduce surprise and promote

early resolution on the issue of admissibility.' Fed.R.Evid. 404(b) advisory committee's note to 1991

amendments."  *United States v. Carrasco*, 381 F.3d 1237, 1241 (11th Cir. 2004) (introduction was

not harmless and required reversal).  There was simply no reason to keep such evidence from the

defendant for eight days, leaving defense counsel only two days on a weekend, to attempt to

investigate and prepare a response to such information.

Moreover, the notice and time frame given is inadequate to permit reasonable investigation

of these other offenses.  The documents reference at least seven potential witnesses, yet complete

addresses and phone numbers are not provided and defense counsel will be unable, in this short time

frame, to locate and interview  the seven people in Auburn and Montgomery whose statements are

included in the proffered documents.

5.	This evidence does not meet the requirements of Rule 404(b).  The Government has

characterized this evidence as "Rule 404(b) **character** evidence." (D.E. 130, second sentence,

emphasis added)  However, "(e)vidence of other crimes, wrongs, or acts is **not** admissible to prove

the **character** of a person in order to show action in conformity therewith."  F.R.E. 404(b).

To be admissible under Rule 404(b), the government must demonstrate compliance with all

of three requirements: (1) a proper purpose for the admission of the evidence; (2) the act described

occurred and the defendant was the actor; and (3) the probative value of the evidence introduction

outweighs its prejudicial effect. *United States v. Mills*, 138 F.3d 928, 935 (11th Cir. 1998); *United States v. Jones*, 28 F.3d 1574, 1579 (11th Cir. 1994), mod. on other grounds, 74 F.3d 275 (11th Cir. 1996). In this case, the government cannot meet any one of these requirements.

      A.    The Government's Notice suggests that this evidence is admissible to prove "intent." However, as discussed above, the Government misapprehends what intent is in dispute in this case. The issue is not whether Ms. Lawson intended to pass a stolen check and keep the proceeds. She did so and will not dispute that individual act or the intent to commit that act. However, the charged offenses and the contested issue is whether or not she intended to conspire with three other people and to assist them in stealing and passing three other stolen checks. The proffered evidence simply does not address that question.

Where other crimes evidence is offered to prove "intent," the extrinsic offense must require the same intent as the charged offense. *United States v. Pessefall*, 27 F.3d 511, 516 (11th Cir. 1994) (both extrinsic and charged offense involved protecting illicit drug activity); compare *United States v. Jones*, 28 F.3d 1574, 1580 - 1581 (11th Cir. 1994), mod. on other grounds, 74 F.3d 275 (11th Cir. 1996) ("To be admissible under Rule 404(b), Jones's 1987 and February 1991 gambling crimes must demonstrate a *modus operandi*, or signature trait, similar to that demonstrated by the July 1991 gambling crime committed by the occupant of the apartment involved in this case."); *United States v. Hill*, 953 F.2d 452, 456 (9th Cir. 1991).

In this case, the proposed extrinsic offense (which the Government describes as showing "intent to steal" (D.E. 130, p. 1, next to last line) involves different acts (purchase of shoes with two different stolen personal checks, versus cashing one person's stolen Social Security checks) and different participants (a man, versus the female codefendants) and requires a different intent (theft

8

for personal gain, versus conspiracy for others' gain) from the charged offenses of conspiracy and aiding and abetting.

   B. As described above, the evidence proffered by the Government is in conflict and does not establish that Ms. Lawson is the actor suspected of passing a stolen check.  See *United States v. Veltmann*, 6 F.3d 1483, 1499 (11th Cir. 1993) (no proof defendants were responsible for other crime) and *United States v. Utter*, 97 F.3d 509, 514 (11th Cir. 1996) (same).  As discussed above, the documents included with the Government's Notice describe one man and at least two women, other than Ms. Lawson, as the perpetrator of the collateral offense.  Any attempt to introduce this information must include opportunity for full investigation and presentation of these contrary identifications.  Significantly, the Government's discovery makes clear that evidence related to this collateral offense will involve a larger number of witnesses than proof relating to this Indictment.

   C. The probable prejudicial impact of such evidence is measured in part by the strength of the Government's case on the offenses charged in the Indictment.  *United States v. Jones*, 28 F.3d 1574 (11th Cir. 1994), mod. on other grounds, 74 F.3d 275 (11th Cir. 1996).  In the present case, Ms. Lawson will be shown on videotape being present when the stolen Social Security checks are passed.  The government will likely introduce her statement, admitting her knowledge of the checks.  The government has indicated that it intends to call her three codefendants, each of whom has pled guilty, to testify to Ms. Lawson's alleged role and knowledge of the conspiracy.

  In *United States v. Jones*, 28 F.3d 1574, 1581 (11th Cir. 1994), mod. on other grounds, 74 F.3d 275 (11th Cir. 1996), the Eleventh Circuit described the "balancing test" of the third requirement as being weighted <u>against</u> admission of 404(b) evidence where the government has an otherwise strong case: "In applying this prong, we are mindful that 'prior crime evidence has significant

9

potential for prejudicial effect, and therefore should not be employed unless really necessary. . . .' If the government has a strong case without the extrinsic offense, then the prejudice to the defendant will more likely outweigh the marginal probative value. . . . 'In other words, if the government can do without such evidence, fairness dictates that it should;  but if the evidence is essential to obtain a conviction, it may come in.  This may seem like a 'heads I win;  tails you lose' proposition, but it is presently the law.'" (citations omitted).   Thus, where, as here, the government's direct evidence is strong, the other crimes evidence should not be admitted.

6.      This Court has the authority to exclude evidence *in limine*.  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  A motion *in limine* to exclude evidence may also be granted if the evidence sought to be excluded is clearly inadmissible for any purpose.  *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994).

WHEREFORE, Defendant respectfully requests that the Motion be granted.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2006, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the following:

Christopher Snyder, Assistant United States Attorney, One Court Square, Suite 201, Montgomery,

Alabama 36104.

<div style="text-align: right;">

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

</div>

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

### NOTICE OF EXHIBIT

**COMES NOW** the undersigned counsel, Christine A. Freeman, and provides notice

to the Court and all parties of the attached "pdf" file, as an Exhibit to her Notice Opposition

to Proposed 404(b) Evidence and Motion in Limine.

This exhibit consists of the discovery provided to defense counsel by the Government

on November 3, 2006, in support of its Notice of 404(b) evidence. Photographs mentioned

in the cover letter from Government counsel are not included in this exhibit, since they do

not relate to the 404(b) Notice.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite

201, Montgomery, Alabama 36104.

> **s/Christine A. Freeman**
> **CHRISTINE A. FREEMAN**
> **TN BAR NO.: 11892**
> Attorney for Taneshia M. Lawson
> Federal Defenders
> Middle District of Alabama
> 201 Monroe Street, Suite 407
> Montgomery, AL 36104
> TEL:  (334) 834-2099
> FAX:  (334) 834-0353
> E-Mail: Christine_Freeman@fd.org

**U.S. Department of Justice**

*United States Attorney*
*Middle District of Alabama*

One Court Square, Suite 201
Post Office Box 197
Montgomery, Alabama 36101-0197

Telephone: 334/223-7280
Fax: 334/223-7560
Fin Lit Fax: 334/223-7201
Civil Fax 334/223-7418
Criminal Fax: 334/223-7135

November 3, 2006

**VIA HAND DELIVERY**

Ms. Christine Freeman
Executive Director
Federal Defender Program, Inc.
201 Monroe Street, Suite 407
Middle District of Alabama
Montgomery, Alabama 36104

      Re:    <u>United States v. Taneshia Lawson</u>
              Discovery Letter No. 3

Dear Ms. Freeman:

      Enclosed please find the several photos of Ms. Brown's apartment complex and of the Quik Pawn Shop, which we plan to introduce at trial. They are Bates numbered sequentially from 98 to 104. Additional please find a number of 404(b) documents and 2 CD, which are the subject of the Notice of Intent to Use 404(b) Evidence which was served on the Court and on you this afternoon. We intend to introduce these documents at trial. The documents are Bates numbered sequentially from 105 to 124 and the CDs are Bates numbered sequentially from 125 to 126.

      Finally, there are some additional bank records, relating to this new conduct, which we have not received. As soon as we have these documents, I will e-mail or fax them to you. Please notify me promptly in writing if you are missing any of these materials. Otherwise, the United States considers this material to have been received in its entirety.

      This is the available discovery and disclosures for this case. The only materials that have not been provided to you are either privileged under the work product doctrine or otherwise prohibited from disclosure under federal law or court rules. If additional materials should come to my attention, I will provide them to you as soon as practicable in compliance with Fed. R. Crim P. 16(c) and the Standing Order.

      Please feel free to contact me to discuss this case or if you have any questions

about the discovery and disclosures provided.

Respectfully submitted,

LEURA G. CANARY
United States Attorney

by:

CHRISTOPHER A. SNYDER
Assistant United States Attorney



Photo Line up

USSS/MON

I _Leah Ephur__ have identified the above circled photograph as the suspect in this case.

Signature: _Leah Ep___   Date: _11/2/06_

Location: _Sneakers   Auburn AL_____

Witness: _____   Date: _11/2/06_

_Fenwick, USSS_
_AOSAII_.

This is the female I saw on Sat 21. She also came in here one Sunday the 22 and stayed in here for about 2 hrs. Then got picked up. I saw Simone ~~take~~ her check on Sat the 21.

106



Photo Line up                                                                USSS/MON

I _Nikki Turbnville_ have identified the above circled photograph as the suspect in this case.

Signature: _____ Date: _11/2/06_

Location:

_Sneakers #6  Auburn AL_

Witness: _____ Date: _11/02/06._

_Fennwick USSS_
_AC 5411_

"I saw this lady in our store on Sunday" October 22nd. She enlarged the glue around the same time frame the transaction took place. She was in the store for about an hour & a half on Sunday (using our store phone, etc.)

UNITED STATES SECRET SERVICE

CITY OF: AUBURN

COUNTY OF: LEE

STATE OF: ALABAMA

I, Leah Nicole Epling , MAKE THE
FOLLOWING STATEMENT FREELY AND VOLUNTARILY TO
SA FENWICK , WHO HAS IDENTIFIED HIMSELF
TO ME AS A SPECIAL AGENT WITH THE UNITED STATES SECRET
SERVICE:

Oct 21, 22 Black Male came in Bought several
Jordan's. He stood back wrote a check then gave it to
me already filled out. I still checked the id it matched.
Ran it and it went though. Then he walked out and they
were Parked down the right side near the dumpsters
about 30-45 min later he came back with another
check ran it and didn't go through. He acted like he
didn't know what was going on. left and then came and got
his check Sunday he came back said he talked to the
bank that he can only spend $1400 a day. So ran the check
went trough again. Looked suspicious so Simone went
to the mall to get his tag # She actually took the check that day.
                                                    He didn't
I HAVE READ OVER THIS VOLUNTARY STATEMENT CONSISTING OF    Have his
___1___ PAGES, AND I HAVE BEEN GIVEN AN OPPORTUNITY TO MAKE   id.
CORRECTIONS. ALL FACTS CONTAINED HEREIN ARE TRUE TO THE
BEST OF MY KNOWLEDGE.

/s/ Leah EP

SWORN BEFORE ME THIS 2nd DATE OF ~~Oct~~ November, 20 06.
AT 3:15 AM/PM.

/s/ FENWICK, AO5411
SPECIAL AGENT, U. S. SECRET SERVICE
AUTHORITY TO ISSUE OATH: 5 USC 303

WITNESSED: _____

108

UNITED STATES SECRET SERVICE

CITY OF: AUBURN
COUNTY OF: LEE
STATE OF: ALABAMA

I, Ryan Gregory Lackey _____, MAKE THE
FOLLOWING STATEMENT FREELY AND VOLUNTARILY TO
_____ SA FENWICK _____, WHO HAS IDENTIFIED HIMSELF
TO ME AS A SPECIAL AGENT WITH THE UNITED STATES SECRET
SERVICE:

I was at the counter when this man was paying. The
check did not go through. He said that it should go through,
he had just deposited $2,500.00 (not positive on amount, but it
was close to that) then he left the store. I was then informed
that he was the man who had get all of the Jordans a day before
So I walked outside to get his licence plate #. Martin Doorman
(owner of the building) was outside, had seen what happed earlier
and wrote down the licence number.

I HAVE READ OVER THIS VOLUNTARY STATEMENT CONSISTING OF
___1___ PAGES, AND I HAVE BEEN GIVEN AN OPPORTUNITY TO MAKE
CORRECTIONS.   ALL FACTS CONTAINED HEREIN ARE TRUE TO THE
BEST OF MY KNOWLEDGE.

/S/ Ryan G. Lackey

SWORN BEFORE ME THIS ___2nd___ DATE OF __November__, 20_06_
AT, 3:20 AM/PM

/S/ ___FENWICK   A05411___
SPECIAL AGENT, U. S. SECRET SERVICE
AUTHORITY TO ISSUE OATH:  5 USC 303

WITNESSED: _____



Photo Line up                                                    USSS/MON

I _Simone Hicks_ have identified the above circled photograph as the suspect in this case.

Signature: _Simone Hicks_   Date: _10-2-06_

Location: _SNEAKERS , 1775 OPELIKA RD., AUBURN , AL 36830_

Witness: _____ Date: _11/02/06_

USSS/MON
A05441

JACQUELINE M HUBBARD
PH. 334-277-9169
668 N PASS RD
MONTGOMERY, AL 36110-2926

1150
61-7595/2622 1S

10-21-06
Date

Pay to the
Order of _____ Sneakers _____ $ 237 58

Two hunred thirty Saven dollars 58/100 _____ Dollars

Your Community
CREDIT UNION!
myMAX.com

For _____ Shoes _____ Jacqueline Hubbard

⑆ 262275958 ⑆ 11000002738 ⑈ ??? ⑆ 1150

---

I, Jacqueline M. Hubbard (do) / do not recognize the above Max Credit Union check

The name, address and phone number all appear to be (correct) / not correct.

The check was written by me / (someone else.)

I know / (do not know who tendered this check.)

Signature: Jacqueline M. Hubbard  Name: Jacqueline M. Hubbard  Date: 11-3-06

Location: United States Secret Service, Montgomery, Alabama

Witness: _____ FENWICK, A0541  Date: 11/03/06

111

DRIVER LICENSE

# ALABAMA

NO. 6528193          CLASS D

D.O.B. 10-27-1964      EXP 05-26-2007

JACQUELINE MARIE
HUBBARD
668 NORTH PASS ROAD
MONTGOMERY AL 36110-0000
ISS 10-16-2006

ENDORSEMENTS          RESTRICTIONS

| SEX | HT | WT | EYES | HAIR | RACE |
|-----|-----|-----|------|------|------|
| F | 5-08 | 240 | BRO | BRO | B |

112

## ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

☑ INCIDENT ☐ OFFENSE    ☐ CASE #
☐ SUPPLEMENT

AGENCY NAME: Montgomery Police Dept.

VICTIM (LAST, FIRST, MIDDLE, V, VICTIM #): Hubbard, Jacqueline (600 North Pass Rd Monty. Al 36110)  PHONE (334) 917...

EMPLOYER/SCHOOL: State of Alabama    OCCUPATION: Nurse Keeping    ADDRESS: 11 S. Union St Monty. Al 36104    PHONE 834 1559

TYPE INCIDENT OR OFFENSE: Theft of Property

PLACE OF OCCURRENCE: 6008 North Pass Rd Monty. Al 36110    SECTOR: 04

### PROPERTY DESCRIPTION

| QUANTITY | STOLEN, RECOVERED... (INCLUDE MAKE, MODEL, SIZE, TYPE, SERIAL NUMBER, COLOR, ETC.) | DOLLAR VALUE STOLEN | DAMAGED | RECOVERED DATE | VALUE |
|---|---|---|---|---|---|
| 1 | Alabama Driver's license | 25°° | | | |
| | Max Federal CU checks | | | | |

☐ CONTINUED IN NARRATIVE

TYPE OR PRINT IN BLACK INK

ACJIC—32 REV 7-06

025357

## INCIDENT/OFFENSE REPORT CONTINUED

DATE AND TIME OF REPORT: 10/27/06 1440

NARRATIVE:

The victim stated that some unknown subject(s) stole the property listed from location the victim further advised that some unknown subject(s) stole, forged then cashed several checks throughout the Montgomery area. The victim further advised the unknown subject(s) called and order more checks and had them sent to an unknown address

SIGNATURE: *[signature]*

REPORTING OFFICER: Cadet T.L. Dane 1495

06016 544

JACQUELINE M HUBBARD
PH. 334-277-9189
555 N PASS RD
MONTGOMERY, AL 36110-2826

166  1150

91-7552/2822  15

Pay to the
Order of       Sneakers                          $ 237.58

Two hundred thirty Seven dollars 58/100          Dollars

Your Community
CREDIT UNION

For    Shoes                      Jacqueline Hubbard

⑆127575⑆ ⑈100000273877⑆ 150

(166)

CHECK SALE

SNEAKERS
1715 OPELIKA RD STE 14
AUBURN, AL 36830
334-502-7831

Date: 10/21/2006          Time: 03:14PM

MERCHANT ID    : 941-682201-807
REF NUMBER     : 802
CHECK AMOUNT   : $237.58
MICR
CHECK NUMBER   : 11000002738
ID NUMBER      : AL-XXXX8193

AUTH NUM 405-972

I authorize the merchant to convert my
check to an electronic funds transfer or
paper draft, and to debit my account for
the amount of the transaction. In the
event that my draft or EFT is unpaid,
I agree that a fee of $30.00
or as allowed by law may be charged to
my account via draft or EFT.

Phone Number: _____

Printed Name: _____

Jacqueline Hubbard
SIGNATURE

CHECK CONVERSION BY
GLOBAL ETELECOM
1-888-461-3757

S

115

1728

# AUBURN POLICE DIVISION

## INCIDENT/OFFENSE REPORT
## SIGNATURE SHEET

Agency Case #: 06016332 / 06016349

On 10-26-06 the crime of Forgery
      (date);                                 (offense)

and _____ was reported to the Auburn Police Division
                (offense)

by Adam S. Cook
              (complainant/victim)

I have reported the above crime and all information given by me is correct to the best of

knowledge. I will assume full responsibility for notifying the Auburn Police Division if

any stolen property or missing person hereby reported is located.

X _____
(complainant/victim signature)

_____
(reporting officer)

116

Victim/Complainant SSN: 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    Phone #: 706-594-6995

Victim/Complainant Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Employer/School/Occup: _____

Address: 1775 Opelika Rd 14    Phone #: 334-502-7631

City: Auburn    State: _____ Zip: 36830

Race: _____ Sex: _____ DOB: _____ Hgt: _____ Wgt: _____

Place of Occurrence: Snackers

Date(s): 10-21-06  3:14p - 3:23p  Time(s): 2:21p  10-22-06

Property Stolen/Recovered/Lost/Found/Destroyed

| Qty | Description | Value |
|-----|-------------|-------|
| 5Kids 4 3 Crates | 8 pair of Air Jordan's | |
| | Postal Insp Jim Tynan 385-244-7644 | |
| | Secret Trevor Fennick 334-223 | |

Tag: 3BS89M  State: AL  Year: _____  VIN: 2GCEC19T3Y115_____

VYR: 00  Make: Chevy 1500  Model: Truck  Color: Maroon

Description/Insurance: _____

Witness/Suspect

Name: _____

Address: _____

DOB: 25  SSN: _____  Phone #: _____

Race: B  Sex: M  Hgt: 60  Wgt: 280  Eye/Hair: B/B

Clothing/Employer: _____

Witness/Suspect

Name: _____

Address: _____

DOB: 45  SSN: _____  Phone #: _____

Race: B  Sex: F  Hgt: 59  Wgt: 250  Eye/Hair: _____

Clothing/Employer: _____

Yashira Morris
2317 Skella St
Alexander

1032741

## ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

*Buckner*

| | |
|---|---|
| VICTIM SSN | COMPLAINT SSN | 1 ☐ INCIDENT ☑ OFFENSE | 2 CASE J | 3 SFX |
| | 2 5 0 3 7 - 7 8 5 8 | ☐ SUPPLEMENT | 0 6 0 1 6 3 4 9 | |

| 4 ORI J | 5 DATE AND TIME OF THIS REPORT | AGENCY NAME | 6 REPORT DATE | 7 SUPPLEMENT/ORIGINAL OFFENSE DATE |
|---|---|---|---|---|
| 0 4 3 0 1 0 0 | 1 0 2 6 0 6  17:29 | AUBURN POLICE DEPART | | |

**VICTIM / BUSINESS**

| 8 REPORT BY | 9 ADDRESS (STREET, CITY, STATE, ZIP) | 10 PHONE |
|---|---|---|
| COOK, ADAM S | 1775 OPELIKA RD #14   AUBURN, AL  36830 | (706) 594-6995 |
| 12 VICTIM (LAST, FIRST, MIDDLE NAME) | 13 ADDRESS (STREET, CITY, STATE, ZIP) | 11 PHONE |
| SNEAKERS, | 1775 OPELIKA RD #14   AUBURN, AL  36830 | (334) 502-7631 |
| 15 EMPLOYER/SCHOOL | 16 OCCUPATION | 17 ADDRESS (STREET, CITY, STATE, ZIP) | 11 PHONE |

| 30 TYPE INCIDENT OR OFFENSE | 31 DEGREE (CIRCLE) | 32 UCR CODE | 33 STATE CODE/LOCAL ORDINANCE |
|---|---|---|---|
| FORGERY 3RD | 1  2 | 2 5 8 8 | 013A-09-0004 |
| 35 TYPE INCIDENT OR OFFENSE | 36 DEGREE (CIRCLE) | 35 UCR CODE | 37 STATE CODE/LOCAL ORDINANCE |
| THEFT 3-FROM PUBLIC BUILDING | 1  2 | 2 3 0 8 | 013A-08-0005 |

**EVENT**

| 38 PLACE OF OCCURRENCE | | 39 SECTOR |
|---|---|---|
| SNEAKERS  1775 OPELIKA RD A   AUBURN, AL  36830 | | 8 5 2 1 6 |

| 40 POINT OF ENTRY | 41 METHOD OF ENTRY | 42 ASSAULT | 43 TREATMENT FOR ASSAULT INJURY |
|---|---|---|---|
| ☐ DOOR ☐ ROOF / ☐ WINDOW ☐ OTHER | ☐ FORCIBLE ☐ ATT. FORCIBLE / ☐ NO FORCE | ☐ SIMPLE ☐ AGGR. | ☐ Y ☐ N |

| OCCURRED ON OR BETWEEN | 45 TIME | 47 LIGHTING | 48 WEATHER | 49 PREMISE | 50 CODE |
|---|---|---|---|---|---|
| 1 0 2 1 0 6  15:14 | | ☐ NATURAL ☐ MOON ☐ ART. EXT. ☐ ART. INT. | ☐ CLEAR ☐ CLOUDY ☐ RAIN ☐ FOG ☐ SNOW ☐ HAIL ☐ UNK. | ☐ HWY.-ST.-ALLEY ☐ BANK ☐ RAILROAD ☐ DRUG STORE ☐ RESIDENCE ☐ APT./TWN. HSE ☐ CHURCH ☐ SHOPPING CENTER ☐ SCHOOL ☐ PARKING LOT ☐ CONVENIENCE ☐ OTHER COMMER. ☐ INDUSTRIAL ☐ OTHER ☐ SERVICE STA. | |
| 54 VERIFY FOR ☐ Y | 55 TREAT. FOR ☐ Y | 56 CIRCUMSTANCES HOMICIDE & ASSAULT | 57 CODE | | |
| RAPE EXAM ☐ Y  RAPE INJURY ☐ Y | LOCATION RAPE | | | | |

| 58 WEAPON USED | 59 DESCRIPTION OF WEAPONS/FIREARMS/TOOLS USED IN OFFENSE |
|---|---|
| ☐ FIREARM ☐ HANDS, FISTS, VOICE, ETC. / ☐ KNIFE ☐ OTHER DANGEROUS | DESCRIBE:   ☐ HANDGUN ☐ RIFLE ☐ SHOTGUN ☐ UNKNOWN |

**PROPERTY DESCRIPTION**

| 60 QUANTITY | 61 STOLEN, RECOVERED, LOST, FOUND OR DESTROYED  INCLUDE MAKE, MODEL, SIZE, TYPE, SERIAL NUMBER, COLOR, ETC. | 62 DOLLAR VALUE | | 63 RECOVERED | |
|---|---|---|---|---|---|
| | | STOLEN | DAMAGED | DATE | VALUE |
| 5 | PAIR OF CHILDREN'S SIZE AIR JORDAN SNEAKERS | 238 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | ☐ CONTINUED IN NARRATIVE | | | |

**DOLLAR VALUE**

| 66 MOTOR VEHICLE | 67 CURRENCY, NOTES | 68 JEWELRY | 67 CLOTHING/FURS | 68 FIREARMS | 69 OFFICE EQUIPMENT |
|---|---|---|---|---|---|
| S / D / O / C | S / D / O / C | S / D / O / C | 238 | S / D / O / C | S / D / O / C |
| 70 ELECTRONICS | 71 HOUSEHOLD | 72 CONSUMABLE GOODS | 73 LIVESTOCK | 74 MISCELLANEOUS | |
| S / D / O / C | S / D / O / C | S / D / O / C | S / D / O / C | S / D / O / C | |

**VEHICLES**

| 75 CHECK CATEGORIES | | | | | | |
|---|---|---|---|---|---|---|
| ☐ STOLEN ☐ RECOVERED ☐ SUSPECTS VEH. ☐ VICTIMS VEH. ☐ UNAUTH. USE ☐ ABANDONED | | | | | | |
| 76 STOLEN | 77 LIC. | 78 LIS. | 79 LIY. | 80 TAG COLOR | 81 VIN | |
| | 3B8889M | AL | 2007 | WHITE | 2 G C E C 1 9 T 3 Y 1 1 5 9 3 5 3 | |
| 82 VYR | 83 VMA | 84 VMO | 85 VST | 86 VCO:  TOP: MAROON  BOTTOM: MAROON | 88 ADDITIONAL DESCRIPTION | |
| 2000 | CHEV | 150 | NA | | | |
| STOLEN MTR. | 96 AREA STOLEN | | 88 OWNERSHIP | 87 TAG RECEIPT | 99 WARRANT SIGNED | |
| VEH. ONLY | ☐ BUS. ☐ RES. | | VERIFIED BY: | ☐ BILL OF SALE ☐ TITLE ☐ OTHER | ☐ Y ☐ N | |
| 91 AUTO INSURER NAME (COMPANY)  ADDRESS (STREET, CITY, STATE, ZIP) | | | | | 92 PHONE | |
| 90 TCA VEH. | 93 STOLEN IN YOUR JURISDICTION? | | 94 RECOVERED IN YOUR JURISDICTION? | | | |

TYPE OR PRINT IN BLACK INK

ACJIC-32 REV. 8-84

INCHES    |    1    |    2    |    3    |    4    |    5    |    6

118

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| INCIDENT/OFFENSE REPORT CONTINUED | 95 DATE AND TIME OF REPORT 1 1 0 2 6 0 6 | 17:28 | AM PM MIL | 96 CASE # 0 6 0 1 6 3 4 9 | | 97 SEX | OFFENDER SUSPECT MISSING PERSON | CHECK IF MULTIPLE |

| 99 NAME (LAST, FIRST, MIDDLE) UNKNOWN, | | 100 NICENAME/ALIAS | | | 101 RACE W A I B O | 102 SEX MALE FEMALE | 102 DOB M Y | 104 AGE 045 |

| 105 ADDRESS (STREET, CITY, STATE, ZIP) | | | | 106 HGT 5 09 | 107 WGT 250 | 108 EYE | 109 HAIR | 110 COMPLEXION MED BROWN |

| 111 PROBABLE DESTINATION | | | | | | 112 ARMED Y N UNK. | | 113 WEAPON |

| 114 CLOTHING | | | SCARS | MARKS | TATOOS | | 115 ARRESTED WANTED |

| 116 NAME (LAST, FIRST, MIDDLE) | | 117 NICENAME/ALIAS | | 118 RACE W A I B O | 119 SEX MALE FEMALE | 120 DOB M Y | 121 AGE |

| 122 ADDRESS (STREET, CITY, STATE, ZIP) | | | 123 HGT | 124 WGT | 125 EYE | 126 HAIR | 127 COMPLEXION |

| 128 PROBABLE DESTINATION | | | | | 129 ARMED Y N UNK. | | 130 WEAPON |

| 131 CLOTHING | | | SCARS | MARKS | TATOOS | | 132 ARRESTED WANTED |

| W I T N E S S E S | 133 NAME (LAST, FIRST, MIDDLE) SEX, RACE, DOB | | 134 ADDRESS (STREET, CITY, STATE, ZIP) | | 135 RES. PHONE | 136 BUS. PHONE |
| | 71 NONE, | SEX M F | | | | |
| | 72 | SEX M F | | | | |
| | 73 | SEX M F | | | | |
| | 74 | SEX M F | | | | |

| WITNESS #1 SSN | WITNESS #2 SSN | WITNESS #3 SSN | WITNESS #4 SSN |

137

N A R R A T I V E

ADAM COOK, SNEAKER'S MANAGER, REPORTED AN UNKNOWN SUSPECT PURCHASING THE LISTED ITEMS WITH WHAT IS BELIEVED TO BE A

FORGED INSTRUMENT. COOK STATED THAT ON THE LISTED DATE AND TIME THE SUSPECT ENTERED THE STORE AND PURCHASED 5 PAIR OF

CHILDREN'S AIR JORDAN SNEAKERS. THE SUSPECT WAS SEEN LEAVING IN THE LISTED VEHICLE. THE SUSPECT VEHICLE COMES BACK TO TASHINA

MORRIS OF 2317 STELLA ST. MONTGOMERY AL 36108. COOK ADVISED ME THAT HE WAS CONTACTED BY SECRET SERVICE AGENT TREVOR

FENWICK WHO ADVISED HIM THAT THE ACCOUNT ON THE CHECKS WERE FRAUDULANT.

CONTINUED ON SUPPLEMENT

| | ASSISTING AGENCY ORI | ASSISTING AGENCY CASE # | |

I hereby affirm that I have read this report and that all information given by me is correct to the best of my knowledge. I will assume full responsibility for notifying this agency if any stolen property or missing person hereby reported is returned.

SIGNATURE _____

138 LOCAL USE

139 TIME USE

| MULTIPLE CASES CLOSED | 140 CASE # | 141 SFX | 142 CASE # | 143 SFX | 144 CASE # | | 145 SFX | 146 ADDITIONAL CASES CLOSED Y N |

| A C T I V I T Y | 147 CASE STATUS PENDING INACTIVE CLOSED UNFOUNDED EXCEPTIONAL CLEARANCE DATE | 148 CASE DISPOSITION CLEARED BY ARREST (JUV.) CLEARED BY ARREST (ADULT) UNFOUNDED ADJ. CLEARED | EXCEPTIONAL CLEARANCE SUSPECT/OFFENDER DEAD OTHER PROSECUTION EXTRADITION DENIED LACK OF PROSECUTION JUVENILE, NO REFERRAL DEATH OF VICTIM | 149 REPORTING OFFICER PERKINS, DENTRY C | 06622 | ID # |
| | | | | 151 SUPERVISOR OFFICER VICKERS | 06634 | 152 WATCH CMDR. THEE | 02138 |



United States Secret Service
Montgomery RA

CITY OF: MONTGOMERY
COUNTY OF: —"—
STATE OF: ALABAMA

I, _Elaine P. Cooper_____, MAKE THE FOLLOWING
STATEMENT FREELY AND VOLUNTARILY TO ___SA FENWICK___,
WHO HAS IDENTIFIED HIMSELF TO ME AS A SPECIAL AGENT WITH THE
UNITED STATES SECRET SERVICE.

I first discovered my checking account
had been compromised on Oct. 20 when
I went online (Regions) & saw where a
debit to Nextel had been drawn from
my acct. in the amt. of $22.00. Upon
further investigation I noticed a check
for $25.00 had been written to Kwik
Stop for on Oct 17. The check number
was a series of new checks, that I
never rec'd. I had ordered checks
earlier but since I don't write more
than 2 or 3 checks per month, I didn't
realize that I never rec'd the checks
until investigating my acct. further.
I immediately contacted Regions bank
on or about Oct. 20. I also filed a
report w/ the Montgomery Police Dept. on
or about Oct. 20.
Regions bank has supplied me w/
numerous checks & I have signed
affidavits for each of these rec'd
this far.
I have reason to believe the checks

PAGE 2 OF 3 PAGES

were taken by drug users & frequent
visitors to Bill Deal's (located next door)
Condo which is adjacent to ours &
is only a few feet from our front
door.

What puzzles me is that the
checks were mailed in ~~this~~ August
but were not passed until October.

With regard to officials I have
spoken with concerning the checks
was the officer who filed the original
report.

With regard to the drug situation I
have spoken w/.
Cpl R.A. Bentley - 241-4728 (narcotics)
Lt. Scott                        (narcotics)
Agent Dennis Merritt - DA's Office - 832-1677
& several police in patrol car
Checks sent to me from Regions

| | |
|---|---|
| #1762 - Southern Family (Tallassee) $130.32 | 10/21 |
| 1752 - Union (Gay Meadows) $45.26 | 10/24 |
| 1753 - B&R Towing    $85.00 | 10/19 |
| 1782 - Citgo #10     $25.00 | 10/23 |
| 1755 - Murphy USA #6728 $32.12 | 10/19 |
| Kwik Shop (Fairground Rd) 25.00 | 10/17 |

PAGE 3 OF 3 PAGES

I have called Betsy @ B&R Towing three times to ask for a description of the vehicle that was towed. She has not yet provided it.

Carol Mills @ Regions Bank has the police report (if I remember correctly). I believe she needed it to prepare the affidavits. I failed to keep a copy.

I HAVE READ OVER THIS VOLUNTARY STATEMENT CONSISTING OF _____ PAGES, AND I HAVE BEEN GIVEN AN OPPORTUNITY TO MAKE CORRECTIONS. ALL FACTS CONTAINED HERIN ARE TRUE TO THE BEST OF MY KNOWLEDGE.

/S/ _Elaine P Cowper_

SWORN BEFORE ME THIS _3d_ DAY OF _Nov_, 20_06_, AT _2:45_ AM/PM

/S/ _____ FENWICK A05411
SPECIAL AGENT, US SECRET SERVICE
AUTHORITY TO ISSUE OATH: 5USC303

WITNESSED: _____

I _Elaine P Cooper_ I / do not recognize the above Regions Bank check.

The name, address and phone number all appear to be correct / not correct.

The check was written by me / someone else.

I know / do not know who tendered this check.

Signature: _Elaine P Cooper_ Name: _Elaine P Cooper_ Date: _11/3/06_

Location: United States Secret Service, Montgomery, Alabama

Witness: _____ FENWICK, A05411 Date: 11/03/06
United States Secret Service, Montgomery, AL

123

**LABARON COOPER
OR ELAINE P COOPER**
2916 Canterbury Dr
Montgomery, AL 36111
Ph (334) 356-7611

AA 356 29 KG
Exp 4-26-04
DOB 8-8-85

10-22-06

166    **1765**
61-589/820

DATE

PAY TO THE
ORDER OF    Sneakers    $ 183-50

One hundred eighty three / 50    DOLLARS

**REGIONS** △
BANK

FOR    Shoes    Labaron Cooper

⑆06200569⑆ 02 0642 2 5⑈ 1765

---

I _Elaine P Cooper_ do / (do not) recognize the above Regions Bank check.

The name, address and phone number all appear to be (correct) / not correct.

The check was written by me / (someone else).

I know / (do not know) who tendered this check.

Signature: _Elaine P Cooper_ Name: _Elaine P Cooper_ Date: _11/3/06_

Location: United States Secret Service, Montgomery, Alabama

Witness: _____ FENWICK, A05411    Date: _11/03/06_
United States Secret Service, Montgomery, AL

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

## DEFENDANT'S RESPONSE TO UNITED STATES' MOTION IN LIMINE REGARDING SCHOOL RECORDS

**COMES NOW** the Defendant, Taneshia Lawson, by and through undersigned counsel, and pursuant to the Court's Order of November 3, 2006 (D.E. 132) and makes the following response in opposition to the Government's Motion in Limine (D.E. 129).

The Government seeks to exclude both (1) Ms. Lawson's school records and (2) "any lay testimony about [Ms.] Lawson's mental capacity, other than testimony about [Ms.] Lawson's mental state at the time of the offense." (D.E. 130). The Government argues that both are "irrelevant," and the school records are "too remote in time" and should be excluded. The Government misunderstands evidence of intellectual functioning and the issue in this case, and its motion should be denied.

**1.** **School records are relevant to establishing mental retardation, which explains Ms. Lawson's limitations in intellectual functioning and inability to comprehend abstract concepts such as conspiracy and aiding and abetting.**

The Government's objection misrepresents or misunderstands the issue in this case. Ms. Lawson's school records and lay testimony about her mental capacity are not intended to show that Ms. Lawson "did not have the intent to steal or the intent to agree to steal on the

dates alleged in the Indictment," as argued by the Government (D.E. 129, p. 3). Rather, these items will help establish that Ms. Lawson was, and is, mentally retarded.

As a mentally retarded woman with an I.Q. of 66 or below, Ms. Lawson does not understand that she can be held criminally liable for checks which she did not steal, pass, or receive proceeds. Ms. Lawson is not capable of the abstract thought process required to intentionally criminally conspire to assist others in their stealing and cashing checks. Ms. Larson is also vulnerable to exploitation and use by others. This will be shown by establishing Ms. Lawson's subaverage intellectual functioning, limited adaptive functioning, and inability to understand abstract concepts.

This is a separate issue from Ms. Lawson's understanding of her personal liability for her own action in cashing one check, **which is not at issue in this trial**.

In *Atkins v. Virginia*, 536 U.S. 304, 318 (2002), the Supreme Court considered mental retardation in the context of criminal liability and eligibility for the death penalty. The Court found:

> Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others. There is no evidence that they are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan, and that in group settings they are followers rather than leaders. Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability.

2

*Atkins v. Virginia*, 536 U.S. at 318.

The Supreme Court accepted a three-part test for establishing mental retardation. That test requires: (1) subaverage intellectual functioning, (2) "significant limitations in adaptive skills," and (3) both of the first two must have manifested before the age of 18. *Atkins*, 536 U.S. at 318. As the school records will assist in showing, Ms. Lawson meets all of these requirements. "Because of their impairments, [such persons] by definition ... have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." 536 U.S. at 318. They do not act on a "premeditated plan" and are "followers rather than leaders." 536 U.S. at 318.

While the Supreme Court declined to adopt a specific definition of mental retardation in *Atkins*, it cited extensively to the two most widely-accepted definitions: the definition developed by the American Association on Mental Retardation (AAMR) and that developed by the American Psychiatric Association (APA). *See Atkins*, 536 U.S. at 308, n.3. At the time *Atkins* was decided, both definitions required that a person demonstrate "significantly subaverage intellectual functioning" prior to turning eighteen, as well as significant deficits in two of ten areas of adaptive functioning (communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academics, work, leisure, and heath and safety).

Just after *Atkins* was decided, in late June of 2002, the AAMR published the tenth

3

edition of its manual *Mental Retardation: Definition, Classification, and Systems of Support* (AAMR Manual). This edition again defines mental retardation as "a disability characterized by significant limitations both in intellectual functioning and in adaptive behavior as expressed in conceptual, social and practical adaptive skills. This disability originates before age 18." AAMR Manual at 1. The *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition (2000) (DSM IV), published by the American Psychiatric Association (APA), states that "the cognitive IQ . . . tends to remain a more stable attribute." (DSM IV, p. 42). See also, *In re Holladay*, 331 F.3d 1169, 1174 - 1175 (n. 3, quoting standards adopted in *Atkins* at length) (11th Cir. 2003); *Holladay v. Campbell*, Case. No. CV-03-PT-1323-M, Document 103, (N.D. Ala., October 12, 2006) (Findings of Fact and Conclusions of Law) (concluding that "the Petitioner has been prior to age 18, and is now, mentally retarded.")

Thus, the AAMR, the APA, and the Supreme Court all require proof of intellectual functioning before the age of 18, to determine mental retardation. Ms. Lawson's school records are not "too remote in time," since they meet the required pre-18 criteria, and are necessary to establish that she meets the clinical definition of mental retardation.

**2.     The school records establish Ms. Lawson's mental retardation.**

The school academic, achievement and test records of Ms. Lawson, which show consistent significant limitations in academic achievement and subaverage intellectual functioning prior to the age of 18 years, are therefore directly relevant evidence of Ms. Lawson's mental retardation. These records are not "marginally relevant," as argued by the

Government (D.E. 129, p. 4), but are indicators recognized by the Supreme Court as evidence establishing mental retardation. These records prove that Ms. Lawson was and is mentally retarded.

The records show that Ms. Lawson demonstrated significant deficits in adaptive behavior, prior to age 18. One of the important assumptions underlying the AAMR definition of mental retardation is the concept of comparing the functioning of the person to be diagnosed with that of his or her "age peers." AAMR Manual at 8. As the school records show, Ms. Lawson's adaptive behavior consistently lagged behind that of her age peers. Ms. Lawson's school records indicate that she consistently achieved below grade level scores on standardized tests, including the Otis Lennon School Ability Test and the Stanford Achievement Test.

For instance, when Ms. Lawson was in the fifth grade at Patterson Elementary School, at age ten years and eight months, her scores on the Stanford Achievement Test were no higher than the seventh percentile relative to her peers and she was in the lowest nationwide group in math and science and the next to lowest group in reading, language and social science. (Government exhibit, page 04). When Ms. Lawson was in the seventh grade, and age thirteen years and eight months, she achieved scores which placed her at the lowest percentile (1%) compared to same age children in the areas of total reading and vocabulary, with achievement comparable to children in the second grade. Her total School Ability Index ("SAI") was 71. (Government exhibit, pages 29, 30). When Ms. Lawson was fourteen years

and eight months old, and in the eighth grade, on an administration of the Otis Lennon, which measures a student's abstract thinking and reasoning ability, she achieved SAI scores of 60 and 68 respectively on the verbal and non-verbal sections of the test, and a total score of 58. (Government's exhibit, page 27). Like the standard I.Q. test, the SAI has an average score of 100 and is an indicator of a student's abilities relative to her age peers.

Ms. Lawson's school grades were consistent with these achievement tests. At Patterson Elementary, her grades in third, fourth, fifth and sixth grade were majority Ds and Fs. (Government exhibit, page 26). When she was in the seventh grade at Houston Hills Junior High, her final grades for the year included six Fs and two Ds. (Government exhibit, page 20).

Lags in academic achievement are indicative of adaptive functioning deficits. Specifically, Ms. Lawson's school records show deficits in functional academics (inability to read, write and construct sentences, poor performance in school and on standardized tests). All of Ms. Lawson's school records indicate that she consistently achieved **failing** or below average grades. This evidence is directly relevant to establishing Ms. Lawson's intellectual functioning throughout her life, including at the time of the indicted offenses.

**3.      Lay testimony is admissible to establish intellectual functioning.**

Lay witness testimony from Ms. Lawson's age peers and contemporaries is relevant and important because such testimony would establish that, consistent with the criteria for establishing mental retardation, Ms. Lawson's adaptive functioning deficits are marked and

6

debilitating compared to other individuals her age.  Ms. Lawson demonstrates deficits in at least three areas of adaptive behavior skills: (1) Conceptual skills (inability to read, write and construct sentences; inability to understand money concepts); (2) Social skills (gullibility; being a follower; victimization) and (3) Practical skills (inability to manage money; inability to obtain a drivers license; inability to fill out employment applications; inability to protect herself).

The Government contends that "lay testimony regarding [Ms.] Lawson's alleged mental condition, which was not during or related to the relevant period of the Indictment, should be excluded."  (D.E. 129, p. 7).  Under Rule 701 of the Federal Rules of Evidence, lay witnesses are permitted to testify to opinions or inferences which are "(1) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Jurors are permitted to "make deductions and reach conclusions which reason and common sense lead [them] to make."  *Eleventh Circuit Pattern  Jury Instructions Criminal,* Basic Instructions, No.  4.2  (2003).

The law makes no distinction between direct or circumstantial evidence. *Id.* Evidence of Ms. Lawson's consistent intellectual limitations at various times in her life is both direct and circumstantial evidence of her intellectual limitations on the dates charged in the Indictment.  *Vasquez-Ortiz v. Apfel*, 48 F.Supp.2d 250, 257 (W.D. N.Y. 1999) ("legal authority permits circumstantial evidence to establish the 'developmental' element of this

7

listed impairment. Mental retardation is defined as a life long condition. . . . Absent any evidence of a change in plaintiff's intellectual functioning, it is appropriate to assume that plaintiff's IQ has not changed since his twenty-second birthday."); *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006) (same); *Moore v. Dretke*, 2005 WL 1606437, *15 (E.D.Tex.) (citing testimony by family members and acquaintances as evidence of defendant's adaptive deficiencies as a child and adolescent, relevant to appropriate penalty for the offense committed as an adult).

### 4.    Ms. Lawson will not submit irrelevant administrative records.

The Government also objects that some of the records produced to the Government by Ms. Lawson are not Ms. Lawson's actual records, or are identical, or concern enrollment, attendance, class schedules, immunization, school lunch eligibility, or physical fitness. (D.E. 129, pp. 2, 3, 5).  Defense counsel produced all school records to the Government as they were produced to defense counsel.  Obviously, documents which do not relate to Ms. Lawson's intellectual or adaptive functioning will not be introduced by Ms. Lawson into evidence.

### 5.    Appropriate testimony is available to support the school records.

The Government argues that school records custodians are not able to describe the tests contained in school records.  (D.E. 129, p. 6)   Whether the Government's fear is accurate or not depends on the particular individual records custodian, and defense counsel is confident that at least some of the records custodians will understand the records they

maintain and use in the course of their profession.  The identity of these custodians is not known to defense counsel, which subpoenaed these witnesses as "records custodians." In addition, Dr. Theron Covin is a certified school psychometrist and will testify concerning the tests given to Ms. Lawson and the methods of assessing intellectual functioning.  Dr. Covin received the school records after the Government received them.

School records and their custodians have been equally available to the Government and to the defendant.  These records were obtained by subpoena, a method available to the Government.  Dr. Covin's identity, address, and phone number have been known to the Government since at least October 13.  To the best of defense counsel's knowledge, Government counsel has not contacted Dr. Covin, has not requested an evaluation of Ms. Lawson, and has not consulted with any alternative experts.

## Conclusion

The Government wants the jury to convict Ms. Lawson for these offenses, but does not want the jury to know the person they are potentially convicting.  The evidence challenged by the Government is directly relevant to the central issue of this case: Ms. Lawson does not have the intellectual ability to form the specific intent required as an element of each of the charged offenses.  The jury should be permitted to know of Ms. Lawson's intellectual limitations when it considers both direct and circumstantial evidence of specific intent.  Without knowledge of this basic fact, the jury will not be able to accurately weigh and consider the evidence before it.  The Government's motion should be

denied.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite

201, Montgomery, Alabama 36104.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

## DEFENDANT'S MOTION TO RECONSIDER

**NOW COMES** the defendant, Taneshia Lawson, by and through undersigned counsel, and respectfully moves the Court to reconsider its Order (D.E. 110), granting the Government's Motion in Limine to exclude psychiatric testimony concerning Ms. Lawson's mental retardation. (D.E. 87).

### 1.    The Court's opinion misapprehends the contested issue.

On review of the Court's opinion, it appears that Ms. Lawson has not stated her theory of defense, and the admissibility of evidence of her mental retardation, with sufficient clarity. The Court's opinion characterizes Ms. Lawson's argument as "that, because of her mental retardation and other attendant mental difficulties, she did not at the time of the offense, have the specific intent required to steal government property or conspire to do so . . . ." or to "agree with others to steal a Social Security check, and then doing so." (D.E. 110, pp. 2, 14 - 15, 16, 19); 2006 WL 3075797, *4, 5.

However, this is not a proper description of either the charged offenses or Ms. Lawson's defense. Ms. Lawson is charged with conspiring with others to steal in excess of $1000 in government property, and with aiding and abetting others in multiple thefts of

government property in the total amount of $2,193.  As separately stated in other pleadings, Ms. Lawson will not dispute that she personally cashed one Social Security check in the amount of $552 and that she was wrong to do so.

Rather, Ms. Lawson will argue that because of her mental retardation, she does not have the ability to understand abstract concepts, and therefore does not understand her own conduct as criminally conspiring or aiding and abetting others in other thefts, when she did not steal, pass, or receive proceeds from what the others took.   Ms. Lawson will argue that Ms. Lawson is vulnerable to exploitation and mis-use by others.  This will be shown by establishing Ms. Lawson's subaverage intellectual functioning, limited adaptive functioning, and inability to understand abstract concepts.

Because of her intellectual deficits, Ms. Lawson does not understand the abstract implication of actions that do not directly involve or reward her.  She does not understand that riding with others to a pawn shop, watching others cash stolen checks at the pawn shop, and/or watching others divide up the proceeds from the cashed checks may evidence a conspiracy that she has joined with the others to steal four Social Security checks, or that she is aiding and abetting the others in stealing four Social Security checks.

Thus, because the Court's opinion and order may be based on a misapprehension of the defense raised by Ms. Lawson, defendant respectfully requests that it be reconsidered.

2. **The expert proffered by Ms. Lawson will directly and specifically address the issue in dispute.**

The Government has argued, and this Court has found, that the psychological report prepared by Dr. Covin does "not support a legally acceptable theory of lack of *mens rea*." (D.E. 110, p. 15); 2006 WL 3075707 *4. The Court notes that the report "is all the parties have submitted as evidence" and is not "'adequately keyed'" to the specific intent issue in this case.

Defendant therefore offers this proffer of Dr. Covin's testimony: Dr. Covin's testimony will address the conclusion identified within his report, that (1) Ms. Lawson has limited intellectual functioning as demonstrated by her I.Q. and adaptive functioning; (2) this limited intellectual functioning restricts Ms. Lawson's ability to handle abstract concepts such as vicarious liability for the actions of others; and (3) this limited intellectual functioning restricts Ms. Lawson's perceptions and thinking to concrete facts, which prevent her from understanding or viewing herself as liable for the improper conduct of others.

Because the Court's opinion and order may be based on a misapprehension of the testimony proposed by Ms. Lawson, defendant respectfully requests that it be reconsidered.

3. **Dr. Covin's report need not itself be admissible.**

Dr. Covin's report was prepared as an overall psychological evaluation of Ms. Lawson, and not as a statement of Ms. Lawson's defense theory. Rule 12.2(b) does not require that a defendant who intends to introduce expert testimony relating to a mental defect

bearing on guilty do anything more than provide notice of the intent to introduce such testimony. The Rule does not require disclosure of any report, until after an examination of the defendant by the government's expert. Rule 12.2(c). Even then, Rule 12.2(c) only requires that a defendant disclose "the results and reports of any examination on mental condition conducted by the defendant's expert's about which the defendant intends to introduce expert evidence." Defendant, by providing advance notice of the existing report of Dr. Covin, has given more information than the Rules required. Nothing under the Rules requires the defendant to be held to argue that the entire report is relevant.

Thus, even though his report went beyond this question, Dr. Covin's testimony will address the narrow and specific conclusion at issue in this case: whether Ms. Lawson's mental retardation and its attendant limitations prevented her from having the specific intent to commit the crimes of conspiracy and aiding and abetting charged in the indictment.

The Court cites a quotation by Dr. Covin of a statement by Ms. Lawson, as "completely defeat[ing] [Ms. Lawson's] *mens rea* defense theory." (D.E. 110, p. 16); 2006 WL 3075707 *4. Rule 12.2(c)(4) prohibits statements by a defendant in the course of an examination from being admitted into evidence against the defendant except on an issue regarding mental condition. Even if this statement was related to mental condition, the Court has misunderstood it: "The need for money was the cause of her cashing the **check**." As argued elsewhere in Ms. Lawson's pleadings, Ms. Lawson does not contest her intent and liability for cashing a single Social Security check. But she is charged with conspiring and

4

aiding and abetting others to cash multiple Social Security checks.  Her statement did not

admit an intent to cash <u>multiple</u> checks and does not refute the specific intent required for

the offenses charged.

Because the Court's opinion and order may be based on a misapprehension of the

significance of the report provided to the Government by Ms. Lawson, defendant respectfully

requests that it be reconsidered.

### 4.     Dr. Covin's testimony is relevant to the jury's consideration and weighing of the direct and circumstantial evidence on several different issues.

As described in other pleadings filed by Ms. Lawson, Ms. Lawson's mental

retardation is relevant to (1) the jury's determination of what inferences of intent may be

drawn from Ms. Lawson's participation in any overt act; (2) the jury's assessment of whether

a defendant charged with conspiracy has the charged "conspiratorial understanding and

purpose. . . ." *United States v. Childress*, 58 F.3d 693, 728 - 730 (D.C. Cir. 1995); and to (3)

the jury's determination of the accuracy and weight to be given to evidence of  inculpatory

statements alleged to have been made by Ms. Lawson.

Counsel is attempting to insure that Ms. Lawson's  rights are fully protected and that

the government, the Court, and the jurors are fully aware of the circumstances of the

defendant.

**WHEREFORE**, the Defendant respectfully prays that this Court reconsider its earlier

decision and permit Ms. Lawson to  introduce of evidence of her long-standing mental

retardation and its impact on her intent to join the charged conspiracy or to commit and/or

aid and abet the charged substantive offense.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite

201, Montgomery, Alabama 36104.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

6

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA    )
                            )    CRIMINAL ACTION NO.
        v.                  )      2:06cr173-MHT
                            )         (WO)
TANESHIA MICHELLE LAWSON    )

OPINION AND ORDER

The question posed to the court is whether a
defendant, without invoking the insanity defense and thus
without being subject to the restrictions that defense
would place on her, may use expert testimony that she is
mentally retarded to challenge at trial her alleged
confession.  The court holds here that she may be able to
do so, but not in the form she seeks.  For that reason,
as explained below, the court will grant the government's
motion in limine to exclude the defendant's expert
testimony that she is mentally retarded.

I.

Defendant Taneshia Michelle Lawson was indicted on two counts, one for conspiracy to commit theft of government property and the other for theft of government property, for having allegedly cashed someone else's Social Security check as her own in 2003. On October 30, 2006, this court granted the government's motion <u>in limine</u> to prevent Lawson from introducing, for the purpose of challenging the <u>mens rea</u> elements of the offenses with which she is charged, psychiatric testimony that she is "within the upper limits of the mild range of mental retardation." <u>United States v. Lawson</u>, ___ F.Supp.2d ____, 2006 WL 3075707 (M.D. Ala. 2006) (Thompson, J.) (quoting Psych. Report at 5).

With the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4247, Congress imposed twin mandates. First, it established that, "It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the

2

offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. Second, it declared, "Mental disease or defect does not otherwise constitute a defense." Id. With the second mandate, Congress "intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a 'diminished responsibility' or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony." S. Rep. No. 98-225, 98th Cong., 2d Sess. 229 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3411.

In addressing whether these twin mandates preclude a defendant from introducing expert psychiatric testimony that the defendant lacked, at the time of the offense, the specific intent to carry out the crime charged, courts had, at least, two options. First, they could

have banned all expert testimony at trial regarding a defendant's mental state except that which was introduced pursuant to an insanity defense and all its restrictions. Cf. Clark v. Arizona, 548 U.S. ___, 126 S.Ct. 2709, 2731-32 (2006) (upholding Arizona's categorical rule precluding psychiatric testimony, outside of an insanity defense, to negate the mens rea element of an offense).

In Lawson, ___ F.Supp.2d ___, 2006 WL 3075707, this court, drawing on law from several courts of appeals including the Eleventh Circuit, rejected this first option.  Instead, the court concluded that, despite these twin mandates, the Insanity Defense Reform Act did not preclude a defendant from introducing expert psychiatric testimony that the defendant lacked, at the time of the offense, the specific intent necessary to carry out the crime charged.  See, e.g., United States v. Cameron, 907 F.2d 1051, 1066 (11th Cir. 1990); United States v. Pohlot, 827 F.2d 889, 890 (3d Cir. 1987).  The court recognized that, theoretically speaking and in the "rare

4

case," <u>Cameron</u>, 907 F.2d at 1066; <u>Pohlot</u>, 827 F.2d at 900, a defendant's mental disease or defect could negate <u>mens rea</u> where the defendant's acts meet the physical elements of the crime charged. <u>Lawson</u>, ___ F.Supp.2d at ____, 2006 WL 3075707 at *2.

However, this court concluded that, "[b]ecause psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of <u>mens rea</u>, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, ... district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of mens rea," <u>Lawson</u>, ___ F.Supp.2d at ____, 2006 WL 3075707 at *4 (quoting <u>Cameron</u>, 907 F.2d at 1067 (internal quotation marks omitted)). More specifically, a district court must be sure that a defendant's psychiatric expert testimony is

"adequately keyed" to the issue of whether she lacked specific intent at the time of the offense.  <u>Id</u>. at *5 (quoting <u>United States v. Childress</u>, 58 F.3d 693, 729 (D.C. Cir. 1995) (per curiam)).  If the defendant were permitted to introduce evidence of general mental-health maladies in an attempt to negate the <u>mens rea</u> element of a specific intent crime, this would be little more than a backdoor entrance for a form of insanity defense expressly excluded by the twin mandates of the Insanity Defense Reform Act.  <u>Id</u>. at *3 (citing <u>Cameron</u>, 907 F.2d at 1066).

There is an additional important reason, not mentioned in the court's earlier opinion, why the court, in scrutinizing expert psychiatric evidence outside the presence of the jury, must require a defendant's expert testimony to be keyed to the specific issue to be addressed.  By requiring such, the court, in carrying out its evidentiary gatekeeping function, is better able to ensure that there is a real and true foundation in the

6

expert testimony for the specific inference the defendant wishes the jury to draw and, thus, that the defendant is not introducing psychiatric testimony under the guise of a legitimate defense theory when in fact the defense strategy is simply to inform the jury generally that the defendant is mentally retarded.  See Fed. R. Evid. 702 (to be admissible, the expert testimony must be able to "assist the trier of fact to understand the evidence or to determine a fact in issue").

This court held that Lawson's psychiatric evidence of mental retardation, which was nothing more than a general report reflecting that she is mildly mentally retarded, was not "adequately keyed" to the issue of whether she lacked specific intent at the time of the offense, and thus was not admissible to negate mens rea.  Lawson, ____ F.Supp.2d at _____, 2006 WL 3075707 at *5.  The report did not address the specific circumstances of the alleged crime and why Lawson's specific level of mental retardation (that is, her range of mental retardation and

her limit within that range) and her other attendant mental-health difficulties would have limited her from forming the required _mens rea_ in those specific circumstances. (It goes without saying that not all the mentally retarded are the same, nor do they suffer from the same degree of disability in all circumstances; as stated, Lawson is only "within the upper limits of the mild range of mental retardation." Psych. Report at 5.) Instead, the report was just an open invitation to the attorneys to speculate before the jury as to the effect, if any, of Lawson's particular level of mental retardation on her ability to form the required _mens rea_ to commit the crimes charged--the very type of free-wheeling trial on a defendant's mental health that the Insanity Defense Reform Act was designed to rein in.

## II.

Now, Lawson wishes to introduce the same evidence, albeit for a different general purpose. This time,

8

Lawson wants to challenge the weight the jury should accord the inculpatory statements she made to the police. According to Lawson, the jury will be unable to appreciate fully the unreliability of her confession unless it hears testimony that she is mentally retarded. Therefore, the psychiatric testimony of Lawson's mental disability should be admitted, not for the purpose of negating mens rea, but to assist the jury in assessing the weight and credibility of her confession.

Unfortunately, Lawson's general psychiatric evidence of mental retardation is no more "keyed to the issue," Childress, 58 F.3d at 729, of whether the jury should believe her confession than it was to the issue of whether she had the requisite mens rea at the time of the offense. Just as the court would require some expert evidence that Lawson's mental retardation caused her to lack mens rea at the time of the offense, here the court requires some expert evidence that Lawson's specific

level of mental retardation caused her confession to be false, involuntary, or both.

Admittedly, it appears that mentally retarded defendants tend to be more susceptible to giving false confessions when placed under stressful conditions of interrogation.  See Atkins v. Virginia, 536 U.S. 304, 320 & n.25 (2002); Ellis & Luckasson, Mentally Retarded Criminal Defendants, 53 Geo. Wash. L. Rev. 414, 445-52 (1985).  These authorities do not say, however, that the mentally retarded, regardless as to their level of mental retardation, are incapable of giving a truthful confession, regardless as to the circumstances.  Here, Lawson does not propose that her psychiatrist will testify one way or another on this issue, as he is not an expert on false confessions.  More importantly, Lawson's psychological report, which is all the parties have submitted as evidence, offers, first, no background facts or expert opinion on the conditions of Lawson's own interrogation in this particular case and, second, no

10

testimony on why her specific level of mental retardation and its attendant difficulties made her, in particular, more susceptible to giving a false confession under the circumstances in which she allegedly confessed.  Indeed, the court has yet to learn from any source the conditions under which Lawson allegedly confessed.

Instead, because there is absolutely nothing in the report that addresses or even mentions what effect, if any, different ranges of mental retardation (including the limits within those levels) have a person's ability to confess truthfully and voluntarily in the specific circumstances in which Lawson confessed, the attorneys could do no more than speculate, through arguments before the jury, on the effect, if any, of Lawson's level of mental retardation on her ability to confess in the circumstance under which she confessed.

To extend the "key" metaphor previously quoted from Childress, the court requires that Lawson provide both a 'lock' and a 'key.'   The lock consists of the

11

circumstances surrounding the event in question--the crime or the confession.  The key (the expert testimony) then unlocks, that is, explains, how the defendant's mental disability played itself out in the these specific circumstances.   That is, the testimony should explain why, because of her specific mental disability, the defendant said or did something, or failed to say or do something, in these specific circumstances or why, because of her specific mental disability, the defendant intended, or could not have intended, the result in these circumstances.   Without such restrictions on the evidence, the court has no effective way to make sure the psychiatric expert testimony is kept within the confines Congress so carefully crafted in the Insanity Defense Reform Act.  Lawson's expert report gave us no lock, and, more importantly, no key.

12

III.

Lawson argues that this court must admit her expert psychiatric testimony because, under <u>Crane v. Kentucky</u>, 476 U.S. 683 (1986), it is part of her constitutional right to present a defense.  Indeed, the Supreme Court has forcefully expressed that a defendant's constitutional right to present a defense includes the "traditional prerogative to challenge the confession's reliability during the course of the trial." <u>Crane</u>, 476 U.S. at 688.  Accordingly, the defendant cannot be prevented from introducing "competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence." <u>Id</u>. at 691.  <u>See also</u> 18 U.S.C. § 3501(a) (permitting jury to hear evidence on voluntariness after threshold ruling by the court), <u>limited by</u> <u>Dickerson v. United States</u>, 530 U.S. 428 (2000).

However, the <u>Crane</u> court also recognized that the right to present a defense was not absolute, and is

13

circumscribed by the rules of evidence. The <u>Crane</u>
decision did not "question the power ... to exclude
evidence through the application of evidentiary rules
that themselves serve the interests of fairness and
reliability--even if the defendant would prefer to
that evidence admitted." <u>Crane</u>, 476 U.S. at 690.
Recently, the Supreme Court reaffirmed <u>Crane</u>'s guarantee
of the right to present a defense while also emphasizing
that "well-established rules of evidence permit trial
judges to exclude evidence if its probative value is
outweighed by certain other factors such as unfair
prejudice, confusion of the issues, or potential to
mislead the jury." <u>Holmes v. South Carolina</u>, 548 U.S.
___, 126 S.Ct. 1727, 1728 (2006).


IV.

Therefore, Lawson's right to present expert evidence
to challenge the credibility of her confession is not
absolute. A psychiatrist's expert testimony that Lawson

14

is mentally retarded must first be probative, Fed. R. Evid. 702, and then, even if probative, must be weighed against the danger that such testimony will confuse the issues or mislead the jury. Fed. R. Evid. 403. If the probative value of the evidence is substantially outweighed by that danger, then it may be excluded without violating Lawson's constitutional right to present a defense.

Here, the court believes that, because Lawson's expert evidence is general and unkeyed, its probative value is slight-to-none, see Fed. R. Evid. 702, and the danger of confusing the issues or misleading the jury is serious and real. See Fed. R. Evid. 403. As discussed above, psychiatric testimony of Lawson's mental disability, standing alone, gives the jury little, if any, insight into the likelihood that Lawson's confession was involuntary or false. Without analyzing, say, the conditions of Lawson's interrogation and without evidence on how a person with her specific level of retardation

15

would react in such conditions, the expert evidence is not tailored at all to the credibility of the confession in this particular case.

Meanwhile, there is substantial danger that expert testimony of Lawson's mental retardation, not tailored to the particular circumstances of her confession, will confuse or mislead the jury, should they believe her confession itself to be voluntary and accurate. First, as discussed in the court's previous opinion, the jury could be misled into _excusing_ criminal conduct based on evidence that the defendant suffered from mental abnormalities _not_ excused by the Insanity Defense Reform Act.

Second, now that the court has granted the government's motion _in limine_ excluding psychiatric evidence on the issue of _mens rea_, there is a substantial danger that the jury could be misled into acquitting Lawson because they believe her mental retardation negates the _mens rea_ element of the crime--the very

16

defense theory this court has already ordered excluded. In other words, just as the court previously recognized the danger that Lawson could slip in a backdoor insanity defense by presenting a legally untenable lack-of-<u>mens-rea</u> defense, the court is now equally concerned that Lawson could slip in a backdoor lack-of-<u>mens-rea</u> defense by arguing a legally untenable theory of involuntary or false confession.

It is, of course, the confession itself that Lawson challenges, not the government's evidence of her mental state at the time of the offense. But this is precisely why expert testimony of psychiatric infirmities must be "adequately keyed to the issue" for which it is offered, <u>Childress</u>, 58 F.3d at 729, not merely laid out in the open for the jury to mull over in the context of the case as a whole, and, perhaps more importantly, not merely laid out in the open for the attorneys to speculate on what effect those infirmities may, or may not, have had on the defendant's confession in this case specifically.

17

The admission of such expert testimony, not adequately
tailored, has no probative value as to the issue for
which it is offered, and presents a substantial danger of
being misleading or confusing.

Lawson suggests that the court give the jury a
limiting instruction.  Indeed, limiting instructions are
common when the court finds evidence probative of a
certain issue but not relevant to another.  However,
limiting instructions should not be deployed to make up
for glaring deficiencies in the evidence itself.  In this
case, <u>if</u> the psychiatric testimony were adequately keyed
to the conditions and circumstances of Lawson's
confession and <u>if</u> the court were then to determine that
the evidence is relevant, then a limiting instruction
would be appropriate to remind jurors that the expert
evidence goes to the weight of the confession only.
Given that the expert testimony is not tailored in this
way, a limiting instruction would be of no use--for the
expert testimony, as it now stands, has no probative

value.  A limiting instruction cannot make non-probative

evidence probative.


                              V.

     In   sum,   the   court   requires   that   any   expert

psychiatric   testimony   Lawson   wishes   to   introduce

specifically address how the conditions of interrogation

or other circumstances of the confession could cause her

confession  in  this  case  to  be  involuntary  or  false.

Here,  Lawson's  expert  testimony  does  not  even  mention

that her specific level of mental retardation (that is,

the fact that she is "within the upper limits of the mild

range of mental retardation," Psych. Report at 5) had an

effect   on   the   voluntariness   or   reliability   of   her

confession.   The  court  therefore  holds  that  she  should

not  be  permitted  to  introduce  expert  evidence  of  her

mental  retardation  for  the  purpose  of  challenging  the

weight and credibility of her confession.


                              19

Again, the court emphasizes that it is not holding that, under the Insanity Defense Reform Act, expert mental-health evidence is not admissible outside the insanity defense. And, more specifically, this court is not even saying that such evidence is not admissible in this case. All the court is saying is that the evidence, to be admissible in light of the statute's twin mandates, must first be keyed to the specific issue for which it is offered--here, Lawson's confession. Lawson's expert testimony fails to meet this threshold of admissibility.

Accordingly, it is ORDERED that the government's second motion in limine (doc. no. 104) is granted.

DONE, this the 6th day of November, 2006.


____/s/ Myron H. Thompson____
UNITED STATES DISTRICT JUDGE

## **MINUTES**

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

HON. __MYRON H. THOMPSON,__ JUDGE      AT __MONTGOMERY,__ ALABAMA

DATE COMMENCED __October 30, 2006__      AT __10:35__ A.M./P.M.

DATE COMPLETED __November 6, 2006__      AT __9:58__ A.M./P.M.

UNITED STATES OF AMERICA          )
                                  )
        v                         )      CR NO 2:06cr173-MHT
                                  )
TANESHIA MICHELLE LAWSON          )

| PLAINTIFF(S)/GOVERNMENT | APPEARANCES | DEFENDANT(S) |
|---|---|---|
| AUSA Christopher Synder | X | Atty Christine A. Freeman |
| | X | Atty Pamela V. Kemp |
| | X | |
| | X | |

COURT OFFICIALS PRESENT:

Daniel Korobkin,          Anthony Green,          Mitchell Reisner,
  Law Clerk              Courtroom Deputy          Court Reporter

### JURORS

1. __Charles L. Huey__          7. __David Arnold Hooks__
2. __Corrine Kay Dreyfus__          8. __Colon Harris Leatherwood__
3. __Christopher E. Thompson__          9. __John Thomas Tracy__
4. __Clif Shaylon Miller__          10. __Mary Prater Wood__
5. __Elizabeth Murdock__          11. __Katherine Hart Rainey__
6. __Tracy L. Hatcher__          12. __Johnny J. Frazier, III__

### ALTERNATES

13. __Thomas M. McLaney__          14. __Brandi Leigh Wilkerson__

## **JURY SELECTION**

10:20a.m.      Court convened.
               Multiple voir dire begun (Cr Nos. 2:06cr218-MHT, USA v
               Morris; 1:06cr101-MHT, USA v Okonkwo; **2:06cr173-MHT, USA v
               Lawson**)
12:50 p.m.     Jury seated and excused; trial scheduled for Monday November
               6, 2006, 9:00 a.m.

**MINUTES**
**JURY TRIAL COMMENCING ON 11/6/06 BEFORE JUDGE MYRON H. THOMPSON**
**CR. 2:06cr173-MHT, USA v TANESHIA MICHELLE LAWSON**


**11/6/06**

| | |
|---|---|
| 9:00 a.m. | Hearing commenced out of jury's presence regarding [134] Motion in Limine and [138] Motion to Continue trial.  Oral arguments heard. **Oral Order** granting [134] Motion in Limine. Trial to proceed. |
| 9:25 a.m. | Recess. |
| 9:39 a.m. | Court reconvenes regarding [139] Motion for Reconsideration. Oral arguments heard.  **Oral Order** rescinding Oral Order granting [134] Motion in Limine. Defendant's **Oral Motion** to Continue trial; trial continued. |
| 9:55 a.m. | Jury seated and excused. |
| 9:58 a.m. | Court adjourned. |

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:06cr173-MHT |
| TANESHIA MICHELLE LAWSON | ) | (WO) |


ORDER

At a pretrial hearing on defendant Taneshia Michelle

Lawson's motion for the court to reconsider its orders

granting the government's motions in limine to exclude

expert psychiatric testimony on Lawson's mental

retardation, the court offered Lawson an opportunity to

develop further her proposed expert testimony so that it

would be adequately keyed to the purposes for which it

was offered.  To that end, defense counsel made an oral

motion for a continuance.  For the reasons set forth

below, the court finds that a continuance is proper

pursuant to 18 U.S.C. § 3161(h)(8).

While the granting of a continuance is left to the sound discretion of the trial judge, <u>United States v. Stitzer</u>, 785 F.2d 1506, 1516 (11th Cir. 1986), the court is limited by the requirements of the Speedy Trial Act, 18 U.S.C. § 3161.  The Act provides in part:

> "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."

<u>Id</u>. § 3161(c)(1).  The Act excludes from the 70-day period any continuance based on "findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  <u>Id</u>. § 3161(h)(8)(A).  In granting such a continuance, the court may consider, among other factors, whether the failure to grant the continuance "would deny counsel for the defendant ... reasonable time necessary

for effective preparation, taking into account the exercise of due diligence." Id. § 3161(h)(8)(B)(iv).

The court concludes that, in this case, the ends of justice served by granting a continuance outweigh the interest of the public and Lawson in a speedy trial. Based on this court's recent rulings on the narrow scope of expert psychiatric evidence that is admissible in this case, counsel for Lawson is attempting to prepare such evidence so as to meet the court's specifications. The United States will then require additional time to conduct its own psychological examination of Lawson.

Accordingly, the court having found that a continuance of this case conforms with 18 U.S.C. § 3161(h)(8), it is ORDERED that:

(1) Defendant Taneshia Michelle Lawson's oral motion to continue is granted.

(2) Jury selection and trial are reset for February 5, 2007, at 10:00 a.m., in Courtroom 2FMJ of the Frank M.

3

Johnson Jr. United States Courthouse Complex, One Church

Street, Montgomery, Alabama.

DONE, this the 6th day of November, 2006.

___/s/ Myron H. Thompson___
**UNITED STATES DISTRICT JUDGE**

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA    )
                            )
        v.                  )    CRIMINAL ACTION NO.
                            )      2:06cr173-MHT
TANESHIA MICHELLE LAWSON    )


ORDER

Based on the representations made in open court today, it is ORDERED as follows:

(1) Defendant Taneshia Michelle Lawson's motion <u>in limine</u> as to proposed Rule 404(b) evidence (doc. no. 134) is set for hearing on January 5, 2007, at 10:00 a.m., in Courtroom 2FMJ of the Frank M. Johnson Jr. United States Courthouse Complex, One Church Street, Montgomery, Alabama.

(2) The government is allowed until November 20, 2006, to submit to the court any supplementary Rule 404(b) evidence if it has such.

(3) Defendant Lawson is allowed until December 11, 2006, to submit to the court her evidentiary response.

(4) Defendant Lawson is allowed until December 11, 2006, to file any motions challenging the admissibility of the government's Rule 404(b) evidence, on a basis other than Rule 404(b)--for example, a motion challenging the photo line-up.  Any such motions must be accompanied by a brief.

(5) The government is allowed until December 15, 2006, to submit a supplemental brief on the motion _in limine_ and any subsequent related motions, and defendant Lawson is allowed until December 28, 2006, to do the same.

DONE, this the 6th day of November, 2006.


    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA      )
                              )
        v.                    )    CRIMINAL ACTION NO.
                              )      2:06cr173-MHT
TANESHIA MICHELLE LAWSON      )

ORDER

Based on the representations made in open court today, it is ORDERED as follows:

(1) Defendant Taneshia Michelle Lawson's motion for reconsideration (doc. no. 139) is treated as a motion to reconsider both orders and opinions entered on October 30, 2006 (doc. no. 110), and November 6, 2006 (doc. no. 141).

(2) Defendant Lawson is allowed until November 20, 2006, to submit to the court her new, "keyed" expert psychiatric testimony.

(3) The government is allowed until December 11,

2006, to submit to the court its own expert psychiatric testimony.

(4) Defendant Lawson is allowed until December 15, 2006, to submit a supplemental brief, and the government is allowed until December 28, 2006, to do the same.

(5) Defendant Lawson's motion for reconsideration (doc. no. 139) is set for hearing on January 5, 2007, at 10:00 a.m., in Courtroom 2FMJ of the Frank M. Johnson Jr. United States Courthouse Complex, One Church Street, Montgomery, Alabama.

DONE, this the 6th day of November, 2006.


    /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA     )
                             )
        v.                   )     CRIMINAL ACTION NO.
                             )        2:06cr173-MHT
TANESHIA MICHELLE LAWSON     )


ORDER

It is ORDERED as follows:

(1) The government's motion in limine to exclude
school records and lay testimony (doc. no. 129) is set
for hearing on January 5, 2007, at 10:00 a.m. in
Courtroom 2FMJ of the Frank M. Johnson Jr. United States
Courthouse Complex, One Church Street, Montgomery,
Alabama.

(2) Any supplemental briefs are due December 28,
2006.

DONE, this the 6th day of November, 2006.


        /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

### DEFENDANT TANESHIA M. LAWSON'S MOTION TO EXCLUDE GOVERNMENT'S PROPOSED CROSS-RACIAL IDENTIFICATION, AND CITATIONS OF AUTHORITY

Comes now the Defendant, Taneshia M. Lawson ("Ms. Lawson"), by counsel and pursuant to Federal Rules of Evidence 104, 401, 402, 403,  404, and 701, and respectfully moves this Court to (1) prohibit  the Government from introducing, in any opening or closing statement, argument, evidence, opinion, exhibit, photograph, video, or testimony, cross-racial identification of Ms. Lawson as the alleged perpetrator of the offense of passing a "bad check" at Sneakers in Auburn, Alabama, in October 2006; (2) to prohibit the Government from introducing any in-court witness identification of Ms. Lawson   as the alleged perpetrator of the offense of passing a "bad check" at Sneakers in Auburn, Alabama, in October 2006; (3) to rule on this Motion prior to any opportunity for reference to such matters before a jury; and (4) if such matters are nonetheless held to be admissible over the Defendant's objection,  provide appropriate limiting instructions at the time of the admission of such matters, and in closing instructions.

As grounds for this Motion, Defendant notes that admission of such evidence would violate Ms. Lawson's rights to due process and a fundamentally fair trial, in violation of the Fifth Amendment to the U.S. Constitution.

1

### Facts

At a hearing on this motion, the Defendant would show the following:

1.    On Friday, November 3, 2006, at 1:41 p.m., the Government filed a document styled "United States' Proffer of and Notice of Intent to Use 404(b) Evidence." (D.E. 130).

2.    Sometime thereafter, defense counsel received two DVDs, and several documents, which included affidavits, police reports, some unrelated photographs, and a cover letter from Government counsel. These documents have previously been filed with this Court by defense counsel as attachments to "Defendant Taneshia M. Lawson's Notice of Opposition to Proposed 404(b) Evidence and Motion in Limine With Citations of Authority." (D.E. 134).

3.    Government counsel's letter to defense counsel stated in pertinent part that "The United States gives notice to defendant Taneshia Lawson and to the Court that it intends to introduce Rule 404(b) character evidence. The evidence is as follows: that on or about Saturday, October 21, 2006, Lawson cashed a fraudulent check at a Sneakers store in Auburn, Alabama, which did not belong to her and had been stolen from a woman with the initials J.H. Lawson also was present during the cashing of two other fraudulent checks at the same store on Sunday, October 22, 2006."

4.    The information proffered by the Government concerned the use of two different individual's stolen personal checks to buy shoes at a Sneakers store in Auburn, Alabama in October 2006.

5.    There appears to have been a presentation of three checks– one by a woman and two by a man who the employees believed to be accompanied by a woman.

6.    The information includes conflicting accounts of what happened, a description of criminal behavior by a man who is obviously not Ms. Lawson, a description of criminal behavior by

2

"unknown others" who are not Ms. Lawson, and conflicting cross-racial eyewitness identifications made by Sneakers employees of a woman **other than** Ms. Lawson.

7.     As it specifically relates to the cross-racial eye-witness identifications, the evidence provided by the government includes:

A.     A photo line-up of six young, African-American women marked with bates stamp number 106:  This photo line up contains a circle around a picture of a woman who the government contends is Ms. Lawson, with the notation, "This is the female I saw on Sat 21.  She also came in here one Sunday the 22 and stayed in here for about 2 hrs.  Then got picked up.  I saw **Simone** take her check on Sat the 21."  (Emphasis added.) This photo identification indicates that it was made by Leah Epling ("Ms. Epling") on November 2, 2006, at a Sneakers store located in Auburn, Alabama. Defense investigators have determined that Ms. Epling is a Caucasian female employee at the Sneakers store.  In addition, based on the dates referenced in this cross-racial identification, it is clear that this identification was made eleven (11) days after Ms. Epling saw the individual she attempted to identify.

B.     A second photo line-up of six young, African-American women marked with bates stamp number 107:  This photo line up contains a circle around a picture of a woman who the government contends is Ms. Lawson, with the notation, "I saw this lady in our store on Sunday October 22nd [sic] She entered the store **around the same time frame the transaction took place**. She was in the store for about an hour & a half on Sunday (using our store phone, etc.)" (Emphasis added.). This photo identification indicates that it was made by Nicki Thrailkill ("Ms. Thrailkill") on November 2, 2006, at a Sneakers store located in Auburn, Alabama. Defense investigators have determined that Ms. Thrailkill is a Caucasian female employee at the Sneakers store.  In addition,

based on the dates referenced in this cross-racial identification, it is clear that this identification was made eleven (11) days after Ms. Thrailkill saw the individual she attempted to identify.

C.      A third photo line-up of six young, African-American women marked with bates stamp number 110: This photo line up contains a circle around a picture of a woman who **does not** appear to be Ms. Lawson and who the government apparently concedes is not Ms. Lawson. This photo identification indicates that it was made by Simone Hicks ("Ms. Hicks") on November 2, 2006, at a Sneakers store located in Auburn, Alabama. Defense investigators have determined that Ms. Hicks is an African-American female employee at the Sneakers store.  In addition, based on the dates referenced in this cross-racial identification, it is clear that this identification was made eleven (11) days after Ms. Hicks had direct contact with the individual she identified.

D.      An Auburn Police Division Incident/Offense Report containing a suspect description of the woman who allegedly passed a forged check at the Sneakers store: This suspect description is provided by Adam Cook ("Mr. Cook"), identified in the report as the Sneakers store manager.(Bates stamp numbers 117, 119).  Mr. Cook describes the woman as **a forty-five year old**, black female **weighing about 250 pounds and being almost six feet tall, specifically 5 foot and 9 inches.** This description which does describe Ms. Lawson, who is shorter, weighs less than 200 pounds, and is in her 20s.

E.      Two statements by people (J.H. and E.C.) whose checks were apparently stolen and/or passed without their permission.  (Bates stamp numbers 111, 114, 120 - 122).  These statements do not describe checks being passed at Sneakers; state that the persons who took or passed the checks are unknown; refer to several other forgeries which are not identified by date or location; and do not include a single reference to anyone who could or might be Ms. Lawson.  Notably, the driver's

4

license and police report provided by J.H. indicate that she is **42 years old, 240 pounds, and 5 feet and eight inches tall, almost identical to the description given by the Sneakers store manager**. Her photo was not included in the photo line-ups shown to the Sneakers employees.

8.      On information and belief, the person who made identification A would state that she believes she saw the person she was asked to identify on two consecutive days. However, she would also state that she had no direct contact with the person on either date; that her observations of that person did not note anything extraordinary, to cause her to "think about" the person at the time of either observation; and that she personally concluded the person overheard a conversation of the employees on the second day, which caused the person to leave the store.

9.      On information and belief, the person who made identification C would state that she believes the police officers who displayed the photo line-up to her were attempting to influence her identification and pressured her to make an identification. However, she would also state that while she observed the same man in the store on two consecutive days, she did not see any woman come to the store on both of the same two days. In particular, on the second day, she did not believe the man was in the store "with" or in the company of any woman, although he later spoke to another, female, customer. She would also state that the woman who gave her a check for shoes on one of the two days was not pictured within the photo line-up given to her.

10.     Substantial data and research supports the conclusion that individuals are less accurate when identifying people of another race, and more accurate when identifying a stranger who is of the same race as the identifier. This phenomenon has been labeled by researchers and social scientists as "own-race effect" or "own-race bias." Christian A. Messner, John C. Brigham, *Thirty Years of Investigating the Own-Race Bias in Memory for Faces A Meta-Analytical Review*, 7

5

PSYPPL 3 (2001); John P. Rutledge, *They All Look Alike: The Accuracy of Cross-Racial Identifications*, 28 Am. J. Crim. L. 207 (2001); Sheri Lynn Johnson, *Cross-Racial Identification Errors in Criminal Cases*, 69 CNLLR 934 (1984); *United States v. Telfaire*, 469 F.2d 552, 559 (C. A. D.C. 1972)("The available data, while not exhaustive unanimously supports the widely held commonsense view that members of one race have greater difficulty in accurately identifying members of a different race. The problem is by no means insubstantial.")(Bazelon, Chief Judge., concurring).

11.     There are several different bases for the "own-race bias."  Some studies have shown that having a prejudicial attitude toward a certain racial group makes it more difficult to accurately identify people of that racial group. *See* Johnson, *supra* at 943-944. Some studies indicate that a lack of contact with or exposure to other ethnic groups makes accurate identification of people within those ethnic groups more difficult. *Id. See* Rutledge *supra* at 213-215. Other studies indicate that a person's ability to accurately identify faces is linked to the number and kinds of faces processed by the person beginning in childhood. *See* Johnson, *supra* at 944-945.

12.     Substantial data and research supports the conclusion that white Americans are more often mistaken when identifying a black American than are black Americans identifying white Americans or other black people:

> The 'own-race effect' is strongest when white witnesses attempt to recognize black subjects," and apparently less influential to black witnesses. In fact, four separate studies found that black eye witnesses do not experience any cross-racial impairment. And another found that blacks make better witnesses in general. But five other studies found that white eye witnesses simply experience the impairment more often than blacks. *See* Rutledge *supra* at 211.

"Ten studies document a significant difference in the ability of white American subjects to recognize

white and black faces. The impairment in ability to recognize black faces is substantial." *See* Johnson, *supra* at 938. Thus, the "the own-race effect is strongest and most consistent where white subjects attempt to identify faces." *Id*., at 949.

13.     On information and belief, an expert in eye witness identification would present testimony that cross-racial identifications are unreliable; that identifications by a white person of a black suspect are even more likely to be inaccurate; that the identification procedures used in the present case were suggestive; and that, based on the facts and circumstances of the present case, the identifications made by the white Sneakers employees of a black suspect are unreliable and are more likely to be inaccurate than accurate.

## Law

The admission of an out-of-court identification violates due process if there is a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). If an identification procedure was unduly suggestive, and if under the totality of the circumstances, the identification was not otherwise reliable, due process is violated by its admission. *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir.2001). "(T)he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199 (1972).

Due process is also violated by a later in-court identification if the pretrial identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" at the later in-court identification. *Simmons v. United States*, 390 U.S.

377, 384 (1968).

Although the admission of such evidence is within the trial court's discretion, the Eleventh Circuit has held that lay opinion identification testimony is admissible under Federal Rule of Evidence 702 only if it "may be helpful to the jury where . . . 'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *United States v. Pierce*, 136 F.3d 770, 774 (11th Cir. 1998). "(M)ost critical to this determination is the witness's level of familiarity with the defendant's appearance." *Id.* Rule 701 limits the admission of lay opinion testimony on any topic to circumstances where the witness's opinions are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE Rule 701.

The courts have recognized that "[c]ross-racial identifications are much less likely to be accurate than same race identifications." *Arizona v. Youngblood*, 488 U.S. 51, 72 n.8 (1988)(Blackmum, J.dissenting).

"Trial courts are free to exclude, sua sponte, inadmissible evidence. *Noel Shows, Inc. v. United States*, 721 F.2d 327, 330 (11th Cir.1983) (citing *C.B. Wright v. Hartford Accident & Indemnity Co.*, 580 F.2d 809, 810 (5th Cir.1978)); see also Charles Alan Wright & Kenneth W. Graham, Jr., 22 *Federal Practice and Procedure* § 5224 (1978 & Supp. 2002) (reasoning that trial courts may exclude evidence under Federal Rule of Evidence 403 without request). *Pickett v. Lindsay,* 56 Fed.Appx. 718, 723 (7th Cir. 2002).

## **Argument**

These standards support prohibition of presentation of the cross-racial identifications at issue.

1.      **Admission of the identifications would violate due process.**

A.      **The cross-racial identifications were not reliable.**

The identifications made by the white employees do not meet the criteria of *Neil v. Biggers*, *supra,* for reliable identifications.  The employees did not deal directly with the person they were later asked to identify.  They never focused on that person.  The employees' own descriptions to the store manager contradicted their later photo identifications.    Moreover, almost two weeks had passed since the actual contact with the person they were being asked to identify.  *Neil v. Biggers,* 409 U.S. 188, 199 (1972).   These factors alone make the identifications inherently unreliable.

Moreover, the cross-racial factor has a substantial impact.  As noted above, cross-racial identifications, especially by white witnesses, are likely to be inaccurate.  The white employees had no prior familiarity with the African American woman they were being asked to identify.

B.      **The photo line-up was unduly suggestive.**

In this case, the photo identification procedure was unduly suggestive because of what the photo spread did not include. A portion of the 404(b) evidence provided to defense counsel by the government is the description of the female who passed the stolen check. (Bates stamped 116-119). That description, according to its date, shows that it was provided to law enforcement on October 26, 2006. The description of the woman passing the stolen check provides that the woman was about forty-five years old, a black female weighing about 250 pounds and that she was 5 feet  and 9 inches tall.  As noted above, this description does not come close to describing Ms. Lawson.

Yet, on November 2, 2006, Sneaker's store employees were presented a photo spread in which Ms. Lawson's picture was prominently displayed in the top center of a few other photographs of young African-American women, none of whom appear to be in her mid to late forties in age. The

9

lack of photographs fitting the description of the suspect as provided by eye witnesses made the photo spread identification unduly suggestive and unreliable. *See Manson v. Brathwaite*, 432 U.S. 98, 117 (1977) (other individuals in photo spread should ideally resemble the suspect). *See also* John P. Rutledge, *They All Look Alike: The Accuracy of Cross-Racial Identifications*, 28 Am. J. Crim. L. 207, 209 (2001) ("[S]taged 'identifications of individuals seen briefly in non-stressful conditions and after only short delays' have found that witnesses often failed to identify the target (i.e., the actual perpetrator) when the target was present in the photo array, and even more alarmingly, identified innocent persons when the target was not present.").

Moreover, it can not be overlooked that the Sneaker's manager's description does appear to be identical to the description of the African-American female who reported her checks stolen, Jaqueline Hubbard ("Ms. Hubbard"). A copy of Ms. Hubbard's allegedly stolen check, a signed statement from Ms. Hubbard verifying to law enforcement that the check was stolen, and a copy of Ms. Hubbard's driver's license were included as part of the government's proffer of 404(b) evidence. (Bates numbers 111-112). Ms. Hubbard's license indicates that she is 42 years old, 240 pounds, and 5 feet, 8 inches tall, almost identical to the description given by the Sneakers store manager. (Bates number 112). In addition, the signature on the allegedly stolen check appears strikingly similar to Ms. Hubbard's signature on her statement to law enforcement.

Yet, despite these obvious similarities, nothing in the 404(b) evidence provided to defense counsel indicates that law enforcement presented the Sneaker's employee's with any photo-spread containing Ms. Hubbard's picture. Nothing provided to defense counsel by the government indicates that law enforcement conducted any additional follow-up investigation regarding whether the black female the Sneakers employees actually saw was Ms. Hubbard.

10

In addition, on information and belief, the officers presenting the photo identification procedure pressured the witnesses to make an identification, even if none was possible.

### C.    The photo identification procedure was not reliable.

Under the totality of the circumstances in this case, the identification was unreliable, because of the "own-race effect" present in this case; because suspects matching the actual description of the perpetrator were not included within the possible identifications; and also because the employees were not provided an opportunity to identify the person they saw until after the passage of eleven days. "Perception and memory are not purely deductive, but have substantial inductive components. . . . In addition, the construction of memory is greatly influenced by post-experience suggestions." John P. Rutledge, *They All Look Alike: The Accuracy of Cross-Racial Identifications*, 28 Am. J. Crim. L. 207, 208 (2001). After, the passage of such a significant period of time, eleven days, the Sneaker's employees' memories of the physical characteristics of who they saw in October surely had dulled. In addition, it is highly likely that the contact these employees may have had with other African-American women shopping inside the Sneakers store since their initial observations may have muddled their memory and perceptions of the characteristics of the woman they saw in October of 2006.

> Time is a very important factor in memory retrieval. As a rule, the longer the time period . . . the more difficulty we have retrieving the memory. In addition to the passage of time, it has been repeatedly demonstrated that retrieval of memories can be affected by a process known as unconscious transference.  In this phenomenon, different memory images may become combined or confused with one another.  This can manifest itself when an eyewitness, accurately recalling an innocent bystander at the scene of a crime, incorrectly identifies that bystander as the perpetrator. Henry F. Fradella, J.D., Ph.D., *Why Judges Should Admit Expert Testimony on the Unreliability of Eyewitness Testimony*, 2006 Fed. Cts L. Rev. 3, 14-15 (2006).

## 2.    The identifications are not sufficiently reliable under FRE Rule 701.

The essential requirement of Rule 701 is that lay opinion testimony be helpful to the jury and not simply invade the role of the jury.  "Thus, such testimony is improper when it involves only 'meaningless assertions which amount to little more than choosing up sides.'  Fed.R.Evid. 701, Advisory Committee Note. Where, however, 'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury,' the testimony is helpful and should be admitted."   United States v. Allen, 787 F.2d 933, 936 (4th Cir. 1986) (quoting *United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir.1984) and holding admission of lay identification testimony was proper where the witness knew the defendant over time and in a variety of circumstances, such that the witness's lay identification testimony offered to the jury "a perspective it could not acquire in its limited exposure" to the defendant.)

Lay "(i)dentification testimony is helpful to the jury 'when the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also possess, and when the photographs [of the defendant] are not either so unmistakably clear or so hopelessly obscure that the witness is no better suited than the jury to make the identification.'" *United States  v. Kornegay*, 410 F.3d 89, 95 (1st Cir. 2005) (quoting *United States v. Jackman*, 48 F.3d 1 (1st Cir. 1995) and holding that witness' multiple encounters with defendant were sufficient basis for in-court identification.)

A "number of factors" are relevant to the determination of whether a lay witness is more likely than the jury to identify the defendant correctly, including (1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph; (3) whether the defendant had

disguised his appearance at the time of the offense; and (4) whether the defendant had altered his appearance prior to trial. *United States v. Pierce*, 136 F.3d 770, 774 - 775 (11th Cir.1998).  See also, *United States  v. Dixon*,  413 F.3d 540, 545 (6th Cir. 2005).

In *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir.1993), the Ninth Circuit  held that the district court erred in admitting the lay opinion identification testimony of a police officer who identified the defendant in robbery surveillance photographs. The police officer had never met the defendant before the robbery and his knowledge was based on review of photographs of the defendant and the description of witnesses who knew the defendant.   The Court held the police officer's level of familiarity with the defendant's appearance was insufficient under FRE Rule 701's requirement of helpfulness.

In the present case, the Sneakers employees had no prior interactions with Ms. Lawson, had no familiarity with Ms. Lawson, and had no direct contact with the woman they were attempting to identify during their original observation of her.  These employees made these alleged identifications under suggestive circumstances eleven days after the observation which they were attempting to duplicate.   There will be no contention that the perpetrator of the check-writing was disguised or that Ms. Lawson has changed her appearance since October 2006.  There is no basis for any finding that  these Sneakers employees are more likely to correctly identify the defendant from the photograph line-up  than is the jury from the Sneakers surveillance video.

These facts   weigh against the reliability and admissibility of the employees' photo identifications under Rule 701.  *Pierce*, 136 F.3d at 774.  See also *United States v. Middlebrook*, 141 Fed. Appx. 834 (11th Cir. 2005) (admission of lay testimony identifying defendant as bank robber was error, but harmless under the circumstances of the case).

### 3. The identifications are not sufficiently reliable under FRE Rule 404(b).

As set out in Defendant's Motion in Limine (D.E. 134), these unreliable identifications also mean that the Government's proposed "404(b) evidence" does not meet the admissibility criteria of Rule 404(b). See *United States v. Veltmann*, 6 F.3d 1483, 1499 (11th Cir. 1993) (evidence of other crime was improperly admitted where there was no proof defendants were responsible for other crime) and *United States v. Utter*, 97 F.3d 509, 514 (11th Cir. 1996) (same).

### 4. The identifications are not admissible under FRE Rules 401, 402 and 403.

Evidence which does not assist the trier of fact or which would confuse or prejudice the trier of fact, is irrelevant and inadmissible. *Federal Rules of Evidence 401, 402, 403.* Even if the Court determines separately that the Government may present evidence under Rule 404(b) of the passing of bad checks at Sneakers three years after the offense charged in this indictment, these unreliable identifications should also not be permitted because they are not a necessary part of that evidence.

As part of its 404(b) evidence, the government has provided defense counsel with composite video surveillance showing the individuals alleged to have been passing stolen checks at the Sneakers store on October 21 and 22, 2006. The government has already indicated that it intends to introduce this evidence at trial. As there is no evidence that Ms. Lawson has done anything to alter her appearance at any time and no individual shown on the video surveillance appears to be in disguise, a jury can make its own identifications from viewing the video surveillance at trial. *Pierce,* 136 F.3d at 775. Thus, any offer of lay witness identification testimony by the Sneaker's employees would be of no assistance to the jury, *Pierce,* 136 F.3d at 773, and its prejudicial effect would substantially outweigh its usefulness, in violation of Rule 403.

14

### 5.     The identification testimony will be unduly prejudicial.

"[D]espite its inherent unreliability, much eyewitness identification evidence has a powerful impact on juries. Juries seem most receptive to and not inclined to discredit, testimony of a witness who states that he saw the defendant commit the crime."*Watkins v. Sowders*, 449 U.S. 341, 352 (1981).(Brennan, J., with whom Marshall, J., joined, dissenting).  Thus, the unreliable cross-racial identifications that the government seeks to admit at trial in this case must be excluded to avoid any improper influence of a jury.

"(B)ecause there are no known and commonly understood correlates for the own-race effect, ordinary cross-examination will never elicit facts from which the jury can infer the impairment." Sheri Lynn Johnson, *Cross-Racial Identification Errors in Criminal Cases*, 69 CNLLR 934, 953 (1984).

> Thus, "if the witness honestly believes that he has a good memory for other-race faces, when in fact he does not, the best cross-examination will be to no avail. Because accuracy of other-race recognition appears to be wholly unrelated to confidence many witnesses who suffer from cross-racial recognition impairment will deny it and the jury will perceive only certainty and sincerity." *Id.*

Further, a jury can not weigh the problems of cross-racial eyewitness identification through common-sense analysis. "[L]aypersons dramatically 'overestimate the accuracy of memory in general.'" John P. Rutledge, *They All Look Alike: The Accuracy of Cross-Racial Identifications*, 28 Am. J. Crim. L. 207, 220 (2001).

> "Jurors tend to believe eyewitness accounts even in extremely doubtful circumstances.  Moreover, at least one study found jurors generally unable to differentiate between accurate and inaccurate eyewitness testimony, even after cross-examination.  This inability is partially attributable to the commonly held assumption that a witness's confidence is an important indicator of the accuracy of his testimony." *See* Johnson, *supra* at 946.

"In reality, 'the correlation between confidence and accuracy in eyewitness identifications is far lower than people probably would expect." John P. Rutledge, *They All Look Alike: The Accuracy of Cross-Racial Identifications*, 28 Am. J. Crim. L. 207, 223 (2001). Additionally, the phenomenon of "own-race effect" or "own-race bias" is one that surpasses common sense evaluations, by questioning it. *See United States v. Smith*, 736 F.2d 1103,1107 (6th Cir. 1984).

Thus, the mere confidence in which the government's witness's present their cross-racial identification opinion testimony could improperly influence a jury despite the unreliability of the evidence being offered.

**6.      The evidence does not meet the criteria for admissibility under FRE 404(b).**

As separately argued in Ms. Lawson's prior Motion in Limine (D.E. 134), the Government's proposed evidence does not meet the requirements for admission of "other crimes" evidence under FRE 404(b).

**WHEREFORE**, the Defendant respectfully requests that this Motion be granted.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2006, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the following:

Christopher Snyder, Assistant United States Attorney, One Court Square, Suite 201, Montgomery,

Alabama 36104.

<div style="margin-left:40%">

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

</div>

17

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CR. NO. 2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA MICHELLE LAWSON** | ) | |
| | ) | |

---

### United States' Notice of Expert Testimony

---

In compliance with the Court's prior orders, DEs 146 and 163, the United States

gives notice of the filing of the attached proffered expert testimony.

Respectfully submitted this 19th day of December, 2006,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2006, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to the following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney



# CLINICAL & FORENSIC INSTITUTE, INC.

JOHN A. SPENCER, PH.D.                                                                    LORI J. BUTTS, J.D., PH.D.
CLINICAL DIRECTOR                                                                        TREATMENT DIRECTOR
LICENSE: # PY0003204                                                                   LICENSE: # PY0006490

December 19, 2006

Christopher A. Snyder, Esq.
Assistant United States Attorney
United States Attorney's Office
Middle District of Alabama
One Court Square, Suite 201
Post Office Box 197
Montgomery, Alabama 36101-0197

Re:         **United States of America v. Taneshia M. Lawson**
Case #:     **2:06-cr-173-MHT**

Dear Mr. Snyder:

Pursuant to your request, I conducted a psychological evaluation of Ms. Lawson, on December 9, 2006 in a conference room at your offices. Ms. Lawson was accompanied to the evaluation by her attorney, Ms. Christine Freeman, Esq. The purpose of the evaluation was to render a determination of the defendant's intellectual functioning and the possible impact of her intellectual functioning on her ability to form the specific intent for the crimes for which she has been accused and the possible impact of her intellectual functioning on her confession. My evaluation consisted of a review of various documents that are delineated below, an administration of the Computer Test of Nonverbal Intelligence (CTONI), an administration of the nonverbal subtest of the Validity Indicator Profile, a mental status examination, and an extended clinical interview.

## Materials Reviewed:

- Corvin, Theron M., Curriculum Vitae
- Corvin, Theron M., Psychological Testing
- Corvin, Theron M., Ed.D., LPC, LMFT, Addendum Report, not dated
- Corvin, Theron M., Ed.D., LPC, LMFT, Neurobehavioral Health Evaluation dated October 6, 2006
- Carver High School Records of Taneshia Lawson
- Government's Proposed Jury Instructions
- Houston Hill Junior High School Records of Taneshia Lawson
- Lawson, Taneshia, response to Motion to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony

4801 S. UNIVERSITY DRIVE, SUITE 301-EAST
DAVIE, FLORIDA 33328
PH. (954) 434-8006 · FAX (954) 434-0147

3767 LAKE WORTH ROAD, SUITE 100
LAKE WORTH, FLORIDA 33461
PH. (561) 968-1212 · FAX (561) 968-1207

**Lawson, Taneshia**                                                     **Page 2**

- Lawson, Taneshia, response to Motion in Limine to Exclude Defendant's Newly Identified Expert Testimony Regarding Lawson's Mental Capacity
- Lawson, Taneshia, response to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity
- McIntyre Junior High School Records of Taneshia Lawson
- Patterson Elementary School Records of Taneshia Lawson
- United States v. Lawson, Court Order dated October 30, 2006, Honorable Myron H. Thompson
- United States v. Lawson, Court Order dated November 6, 2006, Honorable Myron H. Thompson
- United States v. Lawson discovery letter dated July 25, 2006
- United States v. Lawson discovery letter dated October 26, 2006
- United States v. Lawson discovery letter dated November 2, 2006
- United States v. Lawson discovery letter dated November 3, 2006
- United States v. Lawson Indictment dated July 25, 2006
- United States v. Lawson Motion to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony
- United States v. Lawson Motion in Limine to Exclude Defendant's Newly Identified Expert Testimony Regarding Lawson's Mental Capacity
- United States v. Lawson Motion to in Limine to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity

## Relevant Historical Data:

Ms. Lawson is a 22 year old (DOB: 08/03/1984), single African American female who is facing conspiracy and theft charges subsequent to the allegations that she and three codefendants participated in the stealing and cashing of four social security checks from a neighbor. Ms. Lawson's prior legal history involves citations for driving without a license and for having an improper license tag.

Ms. Lawson reported that she ceased attending high school when she was in the tenth grade due to her pregnancy. Ms. Lawson's school records indicate a history of poor academic performance. Nevertheless, Ms. Lawson was not referred to a special educational program.

Ms. Lawson has a 4 year old son and she is currently 7 months pregnant. Ms. Lawson has never been married and she is not currently dating the father of her unborn child. Ms. Lawson also reported that she currently lives in her mother's home but that she is in the process of applying for subsidized housing. Ms. Lawson indicated that she receives medical care pursuant to her application for Medicaid.

Ms. Lawson reported that she has held three jobs in the past where she has been employed as a janitor, as a cashier at McDonalds, and as a food runner at Sonic. Ms. Lawson reported that she ceased working as a janitor and at

**Lawson, Taneshia**                                                    **Page 3**

McDonalds due to transportation difficulties. She indicated that she quit her job at Sonic because she reported that she had difficulties in delivering the correct orders. Ms. Lawson reported that she is currently unemployed but she indicated that she is actively attempting to seek employment. Ms. Lawson stated that she would consider a position as a cashier or assist in stocking at a grocery store, a clothing store, or a restaurant.

<u>**Assessment Results:**</u>

The Comprehensive Test of Nonverbal Intelligence (CTONI) is an instrument intended to measure abilities that exist independent of language. The CTONI was given to Ms. Lawson by computer administration. Ms. Lawson received the following overall scores:

| | |
|---|---|
| Pictorial Standard Score | 66 |
| Geometric Standard Score | 59 |
| Nonverbal Intelligence | 60 |

Below is a summary of the individual subtest scores in the order of administration.

| | Standard Score | Percentile | Description |
|---|---|---|---|
| Pictorial Analogies | 1 | <1 | Very Poor |
| Geometric Analogies | 1 | <1 | Very Poor |
| Pictorial Analogies | 7 | 16 | Below Average |
| Geometric Categories | 6 | 9 | Below Average |
| Pictorial Sequences | 6 | 9 | Below Average |
| Geometric Sequences | 4 | 2 | Poor |

Ms. Lawson had difficulty adjusting to the computerized format of the test administration on the first two subtests. In this regard, her performance on these subtests may not reflect her actual nonverbal abilities. The pictorial analogies subtest measures the ability to recognize the relationship of two objects to each other and to find the same relationship between two different objects. The geometric analogies subtest measures the ability to recognize the relationship of two geometric designs to each other and to find the same relationship between two different geometric designs. The first subtests are components of the overall scores presented above and therefore underestimate her performance on the overall nonverbal measure scores and on each overall composite score.

On the last four subtests within the CTONI, Ms. Lawson's performance was more consistent to her performance on other tests and with her school records. Her performance on the four subtests indicate that her nonverbal intellectual ability falls between the below average to poor range. Amongst these subtests, her relative strengths were in her ability to select from a set of different pictures the one that is the most similar to two other related pictures as measured by the

**Lawson, Taneshia**                            **Page 4**

pictorial analogies subtest. Relative to these four subtests, her weakness was her ability to select from a set of geometric designs the one that completes a sequence of action shown in the three designs. The geometric categories subtest measures the ability to select from a set of different geometric designs the one that is most similar to two other related geometric designs and the pictorial sequences subtest measures the ability to select from a set of pictures the one that completes a sequence of actions shown in the three pictures.

The Validity Indicator Profile is an instrument utilized to assess response style. This instrument was designed to evaluate the test taking behavior of the respondent. The instrument provides an indication as to whether the respondent is putting forth his or her best effort on measures of cognitive ability. The nonverbal portion of the instrument was administered to Ms. Lawson. The resultant profile indicated that it was an invalid administration and that she responded in an inconsistent manner. The resultant profile indicated that Ms. Lawson failed items that were within her range of abilities because she correctly responded to more difficult items. The results suggest that Ms. Lawson may have been too tired to do her best, that she may not have been sufficiently invested in the testing process, or that mild intellectual limitations impacted her performance on the instrument.

## Mental Status Exam:

Ms. Lawson entered the evaluation room with her attorney. She was dressed in casual clothing and appeared to be pregnant. She was well groomed and her personal hygiene appeared to be good. Throughout the interview, Ms. Lawson was pleasant and accommodating, and she participated appropriately in the interview and in the psychological assessment process. Ms. Lawson's orientation to person, place, and time was intact. She was aware of, and responsive to, her situation and surroundings. Although her affective responses showed mild blunting, her affect was appropriate to the situation and to the content of speech. At one point during the interview Ms. Lawson became tearful and she requested a short break. After a period of time she was able to modulate her emotions and resume the evaluation process. She was able to follow the flow of conversation. Her responses were generally relevant and congruent with the contextual theme. Ms. Lawson's attention and concentration also appeared to be generally intact. Consonantly, Ms. Lawson was able to communicate recent and remote events indicating gross memory functioning within normal limits. Ms. Lawson reported no present perceptual disturbances, bizarre or peculiar beliefs, nor other indicia of grossly impaired perceptions. Nothing in her clinical presentation or subjective report was suggestive of psychotic symptomatology or of other major disturbances of reality testing other than the cognitive concreteness that is characteristic of individuals who have mild intellectual deficits.

**Lawson, Taneshia**                                                 **Page 5**

### Ms. Lawson's Account of the Instant Offense:

Ms. Lawson described that at the time of the alleged offenses she was residing at the home of one of her friend's, Monica Woodall. Ms. Lawson indicated that while she resided with a friend, Ms. Lawson's son was being cared for by Ms. Lawson's mother. She also indicated that another female, Unique Muskelly, was living in the same residence. Ms. Lawson stated that Ms. Woodall was displeased with both Ms. Lawson and Ms. Muskelly for their failure to contribute to the household expenses. Ms. Lawson stated that Ms. Muskelly became aware that another woman in the apartment complex received social security checks at the beginning of each month. Ms. Lawson reported that Ms. Muskelly retrieved the first two checks from the neighbor's mailbox. Ms. Lawson stated that on the occasion of the cashing of the first two checks she had just returned home from the previous evening and that she was tired. Ms. Lawson reported that despite being tired she agreed to join both Ms. Woodall and Ms. Muskelly on their outing to the pawn shop. Ms. Lawson stated that she was aware that the checks belonged to someone else and that she was made aware of the arrangement made with the employee of the pawn shop whereby he would receive a portion of the checks in exchange for cashing the checks. After Ms. Muskelly cashed the first two checks, Ms. Lawson reported that she was given a portion of the checks in the amount of twenty-five dollars.

Ms. Lawson stated that on the second check cashing occasion Ms. Muskelly again retrieved the neighbor's checks from the mailbox. Ms. Lawson discussed that Ms. Woodall was at work at the time that Ms. Muskelly brought the checks into the apartment. Upon Ms. Woodall's return from work the three women then proceeded to the same pawn shop to cash the checks. Ms. Lawson stated that Ms. Muskelly and Ms. Woodall entered the pawn shop first with one of the checks while Ms. Lawson waited in the car. Ms. Lawson reported that when the two women exited the pawn shop and returned to the vehicle she then exited the vehicle and entered the pawn shop. Ms. Lawson stated that she knew which man to approach in the pawn shop because she had seen him the previous month. Ms. Lawson indicated that this man did not ask her for identification and that he gave her the money for the check minus the portion that he kept for himself.

Ms. Lawson stated that she knew that the checks did not belong to her and that she was violating the law by engaging in this behavior. Ms. Lawson discussed that she was in need of money and used a portion of the money that she received to pay Ms. Woodall for household expenses. Ms. Lawson reported that she did not believe that anyone would discover the unlawful behavior.

Additionally when queried about the circumstances surrounding her sworn statement to law enforcement after some prompting Ms. Lawson recalled that the

**Lawson, Taneshia**                                                    **Page 6**

agent came to her home and that he had instructed her about her rights and that
he read the rights waiver statement to her. Ms. Lawson indicated that she
understood the rights that were enumerated by the law enforcement agent. Ms.
Lawson stated that she cooperated with the investigators because she believed
that doing so was in her best interest. Ms. Lawson read her sworn statement
aloud to the evaluator. Ms. Lawson acknowledged that her statement was
accurate and that no one instructed her on what information to convey and that
no one assisted her in formulating her statement. Consonantly, Ms. Lawson
reported that at no time did she feel threatened or forced to make a statement by
any law enforcement official.

**Conclusions:**

**It is my advisory opinion that Ms. Lawson had the capacity to formulate the
requisite intent at the time of the alleged offenses.**

At this time, Ms. Lawson appears to be well reality-grounded and situationally
aware. Further, the information available to me indicates that her basal mental
status during the period of the alleged offenses was substantially similar to her
current clinical presentation. In this respect, although Ms. Lawson certainly has
mild intellectual deficits that undoubtedly affect her judgment and her ability to
form accurate assessments of the probability of certain outcomes, her cognitive
abilities would not prevent her from knowing and appreciating the ramifications of
her behavior in relation to the allegations. Specifically, a review of the relevant
documents made available and Ms. Lawson's recollection of her life
circumstances argue that at the time of the alleged incident Ms. Lawson suffered
from no mental disease, defect, or infirmity that would have impaired her reality
testing to the extent that she would not have had the ability to know that she was
engaged in unlawful activity and that she was participating with other people in
the commission of a crime. Moreover, Ms. Lawson has the intellectual capacity
to formulate an understanding and she possesses an awareness that she and
her associates were illegally depriving another person of her social security
benefits. Furthermore, Ms. Lawson has the capacity to understand that she can
be held responsible for other people's behavior by either in aiding or abetting
stealing or by participating in behaviors in furtherance of a conspiracy.

**It is also my advisory opinion that Ms. Lawson was capable of providing a
knowing, intelligent, and voluntary waiver of her Miranda rights.**

At the time that Ms. Lawson provided law enforcement with her sworn statement,
she was not suffering from any mental disease or defect that substantially
impacted her ability to knowingly or intelligently waive her Miranda rights.
Despite Ms. Lawson's mild cognitive deficits, Ms. Lawson was capable of
understanding the information provided by law enforcement and was capable of
formulating decisions based upon the information provided to her. Ms. Lawson
discussed that she believed that it was in her best interest to cooperate with the

**Lawson, Taneshia**                                                    **Page 7**

investigators and to provide an accurate statement to law enforcement. Ms. Lawson also reported that at no time did she feel threatened or coerced by law enforcement agents.

Thank you for this interesting referral, if I can be of further assistance in this matter, please do not hesitate to contact me.


Respectfully Submitted,

Lori J. Butts, J.D., Ph.D.
Licensed Psychologist

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO.  2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA MICHELLE LAWSON** | ) | |
| | ) | |

---

### United States' Response to Motions In Limine Regarding 404(b) Evidence

---

Both of Defendant Teneshia Michelle Lawson's Motions in Limine to exclude 404(b) evidence should be denied.  First, the Government's proffered evidence meets the requirements of Rule 404(b) evidence.  It is relevant to negate Lawson's specific intent defense, sufficient to demonstrate Lawson committed the act, and probative.  Because these requirements have been met and because Rule 404(b) is a rule of inclusion, not exclusion, the evidence therefore should be admitted at trial.

Furthermore, the photo array used was permissible.  It was neither unnecessarily suggestive, nor unreliable.  The evidence should therefore be admitted.

## I. **Background**

At a hearing on the matter, the evidence would demonstrate:

1.      On October 21, 2006, at a Sneakers store in Auburn, a woman presented a stolen check to purchase $237.58 in shoes at the store.  On the same day, in the same time frame at the store, a man also presented a stolen check to purchase shoes–again in the

-1-

amount of $237.58.  On the next day, October 22, 2006, at the same store, the man

presented another stolen check for $183.58 to purchase shoes.  A woman, matching the

description of the woman who cashed the stolen check from the day before, was again

present with the man when he cashed the third stolen check.

2.      Approximately eleven days later, two employees of the store, Leah Epling

and Nicki Thrailkill, identified Lawson from a photo lineup as being in the store.  Epling

stated that she observed Lawson in the store on both days.  Epling first observed Lawson

in the store on October 21, 2006.  On that day, Epling was not working the cash register

during the Lawson transaction, but did observe Lawson present a check to another

employee.  That check was later determined to be stolen.  Epling also observed Lawson in

the store on October 22, 2006.  Epling stated that she was able to observe her for

approximately two hours on that day.

3.      Thrailkill observed Lawson in the store on October 22, 2006.  Thrailkill said

she was able to observe her in the store for approximately one and one half hours.

Thrailkill also noted that Lawson came in around the same time as the man, who cashed

the stolen check that day.

4.      Video and authenticating testimony from store employees will show that

security video was taken inside the Sneakers store on both October 21, 2006, and October

22, 2006.  On October 21, 2006,  the video, while slightly grainy, shows a pregnant

African-American woman, wearing a bulky dark-colored sweatshirt/large jacket and a

white winter stocking cap, which appears to be containing a large amount of hair

underneath it.

5.     The video from October 22, 2006, is of better quality.  It will demonstrate that a pregnant woman in blue jeans and a white t-shirt with the same, hair color, hair style, and facial features as Lawson was in the store at the same time.  The video shows Lawson in the store at the same times as the man who was presenting the fraudulent checks.

6.     The Auburn Sneakers store is over 50 miles away from Lawson's residence in Montgomery.  Lawson is not currently employed.  Lawson was approximately six months pregnant when these stolen checks were fraudulently presented at Sneakers.  Neither of the victims, whose checks were stolen, however, are pregnant.

7.     One employee of the store, Simone Hicks, who was working in the Sneakers store on October 21, 2006, and running the cash register, did not identify Lawson from the same photo lineup.  Hicks, however, is a high school student, who is between the age of 16 and 18 years old.

8.     On information and belief, the store manager, Adam Cook, will state either that he was not present at the store on the dates when the checks were cashed, or that he does not have a clear recollection of the suspects because he was not involved in storefront transactions.

## II.   Arguments

### A.   The Proffered Evidence Meets Each of the Requirements Under Rule 404(b); It Should Be Admitted.

The proffered evidence should be admitted under Fed. R. Evid. 404(b).  Rule 404(b) permits "evidence of other crimes, wrongs, or acts" not otherwise admissible to be admissible to prove–among other things–intent.  To determine whether extrinsic evidence is admissible under Rule 404(b), Eleventh Circuit applies a three-part test.[1]  "First, the evidence must be relevant to an issue other than the defendant's character."[2]  Second, the government must show, by a preponderance of the evidence, that the defendant actually committed the extrinsic act.[3]  Finally, "the probative value of the evidence must not be substantially outweighed by unfair prejudice."[4]  The proffered evidence meets each of these requirements.

First, the proffered evidence is relevant to prove both Lawson's specific intent to steal each of the four Social Security checks in issue as well as her conspiring with others with the specific intent to steal.  A "defendant who enters a not guilty plea makes intent a material issue," which is sufficient to prove the first element of the three-part test.[5]

---

[1]  *United States v. Calderon,* 127 F.3d 1314, 1330 (11th Cir. 1997).

[2]  *Id.*

[3]  *United States v. Bowe,* 221 F.3d 1183, 1192 (11th Cir. 2000).

[4]  *Calderon,* 127 F.3d at 1330.

[5]  *United States v. Delgado,* 56 F.3d 1357, 1365 (11th Cir. 1995); *United States v. Matthews,* 431 F.3d 1296, 1311 (11th Cir. 2005) (quotations omitted) (noting in the context of a conspiracy charge, when

-4-

Lawson argues that the Government cannot meet this element, arguing that the intent of the proffered 404(b) evidence is not the same as the intent as the charged offense.[6] This is just not so. Lawson has been charged with (1) conspiracy to steal Social Security checks and (2) theft of the Social Security checks.[7] The substantive offense requires an intent to steal; the conspiracy charge requires an agreement with the intent to steal. The proffered evidence and its corresponding intent are virtually identical, consisting of at least one person stealing checks (the substantive offense) and two or more persons in concert cashing the stolen checks (the conspiracy). The proof for the extrinsic evidence and their charged conduct is the same.

Second, the proffered evidence shows, by a preponderance of the evidence, that Lawson committed the extrinsic act. Video evidence shows a young, pregnant African-American female, matching Lawson's description, at the Sneakers store, which was over 50 miles from her house, at the exact time that stolen checks were cashed. No fewer than two employees, who observed Lawson for at least an hour and a half on one day, picked her out of a photo array, conducted approximately a week and a half later. One employee observed Lawson passing the stolen check. While reasonable minds may disagree as to whether the proffered evidence establishes Lawson's involvement beyond a reasonable

---

the defendant pleads not guilty, he has made his intent a material issue).

[6] For this basic proposition underlying the argument, see *United States v. Dickerson,* 248 F.3d 1036, 1047 (11th Cir. 2001) (internal quotation marks omitted). While the proposition is correct, Lawson cites to *United States v. Jones,* 28 F.3d 1575 (11th Cir. 1574 (11th Cir. 1994) *overruled on other grounds*, 516 U.S. 1022 (1995), which deals with the requirements to prove 404(b) <u>identity</u> evidence.

[7] Along with aiding and abetting.

doubt, beyond a reasonable doubt is not the standard.  The standard of proof is preponderance of the evidence.  Here the proffered evidence establishes by no less than clear and convincing evidence that Lawson committed the extrinsic act.

Finally, the probative value of the proffered evidence outweighs any unfair prejudice.  In determining this issue, the question is not whether the proffered evidence is prejudicial; "[t]he nature of the government's evidence against a defendant is meant to be prejudicial."[8] Instead, the inquiry is "not whether the evidence itself is prejudicial, but rather whether its probative value is outweighed by its prejudicial effect."[9]  In this vein, the Supreme Court–and consequently the Eleventh Circuit–have noted that Rule 404(b) "is a rule of inclusion, and accordingly 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case."[10]  As the Supreme Court has noted, "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence."[11]

In this case, the proffered evidence is directly relevant to the Government's proof of intent.  Throughout the last three months of this case, Lawson has made clear that she

---

[8] *United States v. Wright,* 392 F.3d 1269, 1276 (11th Cir.2004)

[9] *Id.* (holding that "the balancing test prescribed by Rule 403 militates in favor of admissibility").

[10] *United States v. Jernigan,* 341 F.3d 1273, 1280 (11th Cir.2003) (internal quotation marks omitted); *see also Huddleston v. United States,* 485 U.S. 681, 689-90 (1988) (reflecting an inclusive approach to Rule 404(b) evidence, observing that Rules 404-412 seek only to limit the uses, rather than to prohibit the introduction, of problematic evidence).

[11] *Huddleston,*  485 U.S. at 689-90.

-6-

intends to present a defense that she lacked the specific intent necessary: (1) to steal more than the one check she signed; and (2) to enter into an agreement with the intent to steal.

Because Lawson put her intent squarely in issue with her defense, the Government's need to have evidence challenging Lawson's defense is strong.[12]  As the Supreme Court has noted, "[e]xtrinsic acts evidence [can] be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."[13]  Without this evidence, the Government would be required to rely on testimony from Lawson's co-conspirators.  While this testimony would no doubt be helpful to the government to prove Lawson's intent, the credibility of these co-conspirators is obviously vulnerable to attack.[14]  Thus, because of Lawson's defense, the probative value of this evidence outweighs its prejudicial effect.[15]

### B.    The Secret Service's Photo Array Was Proper.

The photo array in this case was proper.  An identification procedure, like a photo array, is considered valid unless it is both (1) unnecessarily suggestive and (2) creates a

---

[12] *United States v. Dorta*, 157 Fed.Appx. 197, 199-01 (11th Cir. 2005) (holding same for extrinsic acts which negated a "mere presence" defense.); *see also United States v. Capo*, 693 F.2d 1330, 1336 -37 (11th Cir. 1982).

[13] *Huddleston*,  485 U.S. at 685 ("may" in original redacted portion).

[14] *Dorta*, 157 Fed.Appx. at 201 (affirming district court judge holding same).

[15] *See United States v. Delgado,* 56 F.3d 1357, 1366 (11th Cir.1995) (citation omitted) ("The greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice .").

substantial risk of misidentification violating due process.[16]  Neither can be met here; thus, the photo array was valid properly administered.

First, there was no unnecessary suggestiveness in the photo array. Singling out, a show-up, or "indicating to the witness that the man in custody is the man the police believe to have committed the crime, [are the] classic example[s] of impermissible suggestiveness."[17]  No such circumstances exist here.  The Secret Service used a photo array with photos of woman who were of the same race, hair color, and approximately the same age.

Lawson's claims that her row placement was suggestive are unsupported by case law.[18]  Moreover, Lawson's chief complaint–that there were no 40 year-old women included in the photo array–is without merit.  That description was, however, given by a manager, who either was not present or has no recollection of these transactions.  Further, the Secret Service created the array after it had an opportunity to review video of the incident.  Based upon the appearance of the person who is plainly viewable in the video, a photo array was created.  In sum, Lawson bears the burden of showing impermissible

---

[16] *Manson v. Brathwaite,* 432 U.S. 98, 107 (1977).

[17] *Crume v. Beto*, 383 F.2d 36, 39 (5th Cir. 1967), *see also  Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987); *Bloodworth v. Hopper*, 539 F.2d 1382 (5th Cir. 1976); *Hudson v. Blackburn*, 601 F.2d 785, 788 (5th Cir. 1979).

[18] *Cf. Cikora v. Dugger,* 840 F.2d 893, 896 -897 (11th Cir. 1988) ("[W]e do not agree that the height markings in Cikora's photograph waved a red flag in front of Hernandez and Hudson."); *see also Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir.1987) ("[S]imply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where, as here, the other individuals in the lineup had roughly the same characteristics and features of the accused.")

suggestiveness, and she has failed to do so.[19]

Moreover, even if this were not the case, Lawson's claim must fail because she cannot show that the photo array was unreliable. In examining whether the an identification procedure is unreliable, courts consider five factors, but look to the totality of the circumstances.[20] The factors include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation.[21]

The totality of the circumstances in this case demonstrates the identification based upon photo array is reliable. Both witnesses who identified Lawson had seen her for a one and a half to a two hour period while the crime was taking place inside a well-lit store and on two sunny days. On the other hand, the person who did not identify her, was ringing up sales transactions and conceivably could have been distracted. Additionally, both witnesses who identified Lawson were unequivocal in her identity, using words such as "this is the female I saw" and "I saw this lady."

Lawson argues the eleven day gap between the crime and the identification makes the identification unreliable. This is not correct. While it is preferable to have an

---

[19] *United States v. Hill,* 967 F.2d 226, 230 (6th Cir.1992).

[20] *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

[21] *Id.* at 199.

immediate identification, eleven days is completely acceptable.[22] The passage of time has been found to be a relevant factor when the recalled event occurred forty years prior,[23] but not when the time lapse was a "routine" one of "merely" six years.[24]

Finally, Lawson goes to great lengths in questioning the reliability of the identification because "cross-racial" identification issues. Lawson's argument, while not explicitly noting it, however, requires expert testimony. If Lawson plans to rely on this sort of testimony, then she will need to designate an expert. Lawson, however, has neither identified an expert, nor provided to the Government any expert report on the issue of cross-racial identification, as is required under Fed. R. Crim. P. 16. Citations to law review articles are insufficient. In order to evaluate properly Lawson's argument on this issue–and consequently evaluate what defenses to raise (for example, a *Daubert* defense)–the Government and the Court needs an expert report.

The United States understands that the defendant was presented the proffered evidence only on the eve of trial at the beginning of November. But, by the date of the hearing on this issue, Lawson will have known about the issue for nearly two months. She should not be permitted to designate an expert at the last minute on complicated issues.

Furthermore, under existing Eleventh Circuit case law, even if the Court were to

---

[22] *Compare Biggers*, 409 U.S. at 201(holding seven month delay acceptable under the totality of the circumstances).

[23] *See Krist v. Eli Lilly and Co.*, 897 F.2d 293, 297-98 (7th Cir.1990)

[24] *See Curry,* 977 F.2d at 1052.

-10-

permit her to designate an expert, that expert would not be permitted to testify.  While the Eleventh Circuit has recognized that other Circuits have admitted expert eyewitness identification testimony in limited circumstances, (including "cross-racial identification"),[25] it has not wavered from its long-held position that expert eyewitness identification testimony is per se inadmissible.[26]  In fact, in two recent Eleventh Circuit cases, defendants have requested that the Circuit revisit this position in light of *Daubert* and other recent Supreme Court evidentiary cases.[27]  The Eleventh Circuit has rejected that request and maintained its per se rule.[28]

### C.    Rule 701 Is Not Applicable on This Issue.

There is no reason to exclude identification witnesses under Fed. R. Evid. 701.  Under Rule 701, lay opinion testimony may be introduced in certain circumstances.  As relates to identification, lay opinion testimony issues usually arise when a party would like to have a witness identify the defendant from a photograph or video.  That witness, however, will have no personal knowledge of the events that took place in the photograph or video.  Such testimony is usually only permissible if there is some basis for concluding that the witness will be more helpful in identifying the defendant than the jury would, like

---

[25] *United States v. Smith*, 122 F.3d 1355, 1357 (11th Cir. 1997).

[26] *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992); *United States v. Thevis*, 665 F.2d 616, 641 (5th Cir. Unit B 1982).

[27] *Smith*, 122 F.3d at 1359; *United States v. Smith*, 148 Fed.Appx. 867, 872 (11th Cir. 2005).

[28] *Id.*; *see also United States v. Culotta*, __ F.Supp.2d ___, 2006 WL 1669796 (M.D. Ala. 2006) (Fuller, C.J.), *aff'd*, 99 Fed.Appx. 881 (11th Cir. 2006) (table).

if the defendant was wearing a disguise in the photo.

In this case, however, the Government does not intend to introduce any lay opinion testimony from any of the Sneakers employees. Instead those witnesses will testify from their own memory. Thus, Lawson's argument and citations on this issue are inapposite.

## III.    Conclusion

The proffered 404(b) evidence should be admitted. It is probative of Lawson's intent to steal and her conspiring with the intent to steal–an issue that Lawson herself has noted is the cornerstone of her defense. There is no legal or factual reason that should prevent the evidence's admission.

Respectfully submitted this 20th day of December, 2006,

<div style="margin-left:40%">

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christine Freeman.

<div align="right">

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

</div>

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN  DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | |
| V.                                    ) | **CASE NO: 2:06-cr-173-MHT** |
| ) | |
| TANESHIA M. LAWSON          ) | |

### DEFENDANT TANESHIA M. LAWSON'S RESPONSE TO UNITED STATES' RESPONSE TO MOTIONS IN LIMINE REGARDING 404(b) EVIDENCE

**COMES NOW** the Defendant, Taneshia M. Lawson ("Ms. Lawson"), by undersigned counsel and respectfully makes this reply to the Government's Response to her Motion to prohibit the Government from introducing, in any opening or closing statement, argument, evidence, opinion, exhibit, photograph, video, or testimony, the proffered 404(b) evidence and/or any cross-racial identification of Ms. Lawson as the alleged perpetrator of the offense of passing a "bad check" at Sneakers in Auburn, Alabama, in October 2006.

### The Government Mis-characterizes the Challenged 404(b) Evidence

In the portion of the Government's Response entitled "Background," the Government mis-characterizes the 404(b) evidence being challenged in this case, and appears to confuse the two separate events shown in the Sneakers store video surveillance which it wishes to introduce.

The video surveillance shows a portion of the activity in the store on <u>two separate days</u>: October 21 and October 22.  On October 21, the video shows an African-American woman buying shoes.  On October 22, an African-American woman is visible shopping but not buying anything; other customers are visible; and a man purchases shoes.  On information and belief, the government contends that the man present on October 22 paid for his shoes with a stolen check and that the

1

woman shown on October 21 paid for her shoes with a separate stolen check. The accounts on which the two checks were drawn are unrelated to each other in any way.

The women shown on October 21 and 22 are dissimilar in appearance. Moreover, on information and belief, one of the accounts on which a purportedly stolen check was drawn, is owned by a woman who is a heavy set African American woman who looks similar to the woman presenting a check at the Sneaker store on the October 22, 2006 video surveillance. In addition, this woman matches the description of the woman on the October 22, 2006 video surveillance that was provided to the Auburn Police Department by the Sneaker's store manager, Adam Cook . (See documents Bates stamp numbers 117, 119).

The Government asserts in paragraph three (3) of its Response (D.E. 169), that Sneakers' employee Nicki Thrailkill ("Ms. Trailkill") "said she was able to observe her [referring to Ms. Lawson] in the store for approximately one and one half hours. Thrailkill also noted that Lawson came in around the same time as the man, who cashed the stolen check that day." (D.E. 169, p. 2). However, the only statement by Ms. Thrailkill produced by the Government is a handwritten notation on a photo line-up, in which Ms. Thrailkill states "I saw this lady in our store on Sunday October 22nd [sic] She entered the store **around the same time frame the transaction took place**. She was in the store for about an hour & a half on Sunday (using our store phone, etc.)" (Bates stamped 107)(emphasis added.). This statement thus does not assert that Ms. Thrailkill observed Ms. Lawson for ninety minutes or that Ms. Lawson entered the Sneakers store at the same time as the entry by a man who later passed a stolen check. Ms. Thrailkill's only observations are consistent with innocent and lawful behavior - shopping in a shoe store for about an hour and a half on a Sunday. Ms. Thrailkill did not state that she observed the man and woman together.

2

In paragraph four (4) of the Government's Response, the Government asserts that a security video, "while slightly grainy" from Sneakers on October 21, 2006 "shows a pregnant African-American woman, wearing a bulky dark colored sweatshirt/large jacket." (D.E. 169, p. 2). However, the security video being referenced by the Government actually shows a heavy set African-American woman wearing a bulky dark colored sweatshirt and large jacket. The woman's weight, the bulky clothing she is wearing, and the grainy quality of the video prevents the viewer from determining if the woman in the video is pregnant. Moreover, as government counsel noted in open court, the image is not a "match" with Ms. Lawson.

In paragraph five (5) of the Government's Response, the Government asserts that the October 22, 2006 video surveillance "shows Lawson in the store at the same times as the man who was presenting the fraudulent checks." (D.E. 169, p.3). Whether or not Ms. Lawson was in the Sneakers store on October 22, 2006, is a matter still in dispute. There is no question that several people are shown in the store at a time frame which the government has identified as coinciding with the presence of a man who passed a stolen check. Mere presence at the time of a crime is not a sufficient nexus to justify presentation of the collateral act under F.R.E. 404(b).

In paragraph six (6) of the Government's Response, the Government asserts " The Auburn sneakers store is over 50 miles away from Lawson's residence in Montgomery. . . . Lawson was approximately six months pregnant when these stolen checks were fraudulently presented at Sneakers. Neither of the victims, whose checks were stolen, however, are pregnant."(D.E. 169, p.3). Stating these facts within one paragraph does not make them connected, or relevant to the 404(b) determination to be made by the Court. Neither of the surveillance videos provided by the Government show footage of how any one shown in either video view leaves the Sneakers store

3

premises, other than by walking out the front door of the store.

In paragraph seven (7) of the Government's Response, the Government asserts " One employee of the store, Simone Hicks, who was working in the Sneakers store on October 21, 2006, and running the cash register, did not identify Lawson from the same photo line up. Hicks, however, is a high school student, which is between the age of 16 and 18 years old."(D.E. 169, p.3). What the Government fails to mention is that Ms. Hicks is the **only** Sneakers store employee who had any direct contact with the woman who made a purchase with an allegedly stolen check. Further, neither her age nor her status as a high school student makes her identification less reliable.  As Ms. Hick was the only person to take the check from the woman and match the woman's face to the driver's license photo identification presented to Ms. Hicks at the time that the check was presented, Ms. Hicks' identification is more likely to be the most reliable of all of the other Sneaker's store employees identifications.  Moreover, Ms. Hicks' identification is not a cross-racial identification, since both Ms. Hicks and the suspects being viewed are African-American.

### The Prejudicial Nature of the Proffered 404(b) Evidence Outweighs Its Probative Value

Evidence of an extrinsic, uncharged offense is "admissible provided that the government (1) has sufficient proof that the defendant committed the prior act, and (2) can show that the probative value of the evidence is not substantially outweighed by it undue prejudice." *United States v. Baker*, 432 F.3d 1189, 1205 (11th Cir. 2005) (holding that a district court had erred when it allowed the admission of evidence that two of eleven defendants charged with participating in a drug distribution conspiracy had committed an unrelated homicide and an act of domestic violence).

Contrary to the Government's assertion, there is  not sufficient proof that Ms. Lawson committed the offenses forming the basis of the challenged evidence. The Government asserts that

its video evidence shows a woman matching Lawson's description at the exact time that stolen checks were cashed. (D.E. 169, p.5). To the contrary, the Government's video evidence shows a woman who does not fit Ms. Lawson's description paying for shoes with a check on October 21, 2006, and a man paying for shoes with a check on October 22, 2006. The only similarity between Ms. Lawson and the woman passing a check on October 22, 2006, is that both are African American women. The eyewitness' reported description of the woman who passed the stolen check is substantially different from Ms. Lawson in height, weight and age. Indeed, the woman was described as being around age 45 years old – ver twenty years older than Ms. Lawson.

Additionally, at least one of the African-American women, who the Government contends fits Ms. Lawson's description and was inside of the Sneakers store at the same time as a man passing stolen checks, is herself doing nothing illegal. This woman merely looks at shoes, tries on a pair of shoes, uses the store telephone and then leaves the store. She neither enters the store nor leaves the store with the man passing the stolen check.

Further, on information and belief, at least one Sneaker's store employee would testify that while she observed this man in the store on two consecutive days, she did not see any woman come to the store on those same two days. In particular, on the second day, she did not believe that the man in the store was "with" or in the company of any woman, although he later spoke to another female customer.

Any probative value of this evidence would be outweighed by the substantial danger of unfair prejudice. "Extrinsic evidence of other crimes, wrongs, or acts is inherently prejudicial to the defendant." *United States v. Baker*, 432 F.3d 1189, 1205 (11th Cir. 2005) (citing *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir, 1978)). "One of the dangers inherent in the admission of

5

extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense." *Id*.

The prejudicial impact of allowing a jury to infer that Ms. Lawson was somehow involved in the passing of stolen checks at a Sneakers store, from the Government's evidence that an African-American woman fitting Ms. Lawson's description was inside a store at the same time as a man who was passing stolen checks, far outweighs the probative value of the Government's evidence. *Compare United States v. Shavers*, 615 F.2d 266 (11th Cir. 1980)(finding that where a defendant was convicted of assault with deadly weapon, evidence of a previous incident in which the defendant threatened a co-worker while using a knife had a prejudicial impact which outweighed any probative value, because the evidence permitted a jury to infer that the defendant was violent person with a propensity to use knives against people). "Additionally, extrinsic evidence 'may lead the jury to conclude that, having committed a crime of the type charged, the defendant is likely to repeat it.' Either inference may be inimical to the long-standing rule that propensity to commit crimes should not be the basis of a conviction." *Id.*

The Eleventh Circuit has "generally held that if the extrinsic act requires the same intent as the charged offenses *and if* these acts are proximate in time to the charged offense, then the extrinsic act is highly probative." *Id.* (emphasis in original). However, those circumstances are not met here.

Ms. Lawson's pending charge involves an alleged conspiracy between three women cashing one person's stolen Social Security checks at a pawn store in Montgomery, Alabama in October 2003. The Government's 404(b) evidence refers to one woman using a stolen check to buy shoes at a Sneakers shoe store in Auburn, Alabama on October 21, 2006 and one man using a different stolen check to buy shoes at the same Sneakers shoe store in Auburn, Alabama on October 22, 2006.

6

The Government's 404(b) evidence does not appear to involve a conspiracy between two or more people to cash stolen checks. The Government's evidence does not establish any connection between the man and woman cashing the checks at the Sneakers store on the two separate dates. Further, the Government does not contend that its 404(b) evidence is evidence of a continuing conspiracy between Ms. Lawson and the co-defendants charged in this case.

In addition, the events of the 404(b) evidence are not proximate in time to the charged offenses; the conduct charged in this indictment occurred in October of 2003 and the offenses of the 404(b) evidence occurred in October of 2006.

The lack of similarity in the charged offense in this case and the extrinsic offense evidence being offered by the Government makes the 404(b) evidence wholly irrelevant.

> The relevancy of extrinsic evidence under *Beechum* is a function of the degree of similarity between the extrinsic act and the offense charged. In this regard, the extrinsic and the charged offense must have more than a mere characteristic in common; the common characteristic must be "the significant one for the purpose of the inquiry at hand." 582 F.2d at 911. Thus, where the issue for which the extrinsic evidence is admitted is the defendant's intent to commit the offense charged, the relevancy of the "other act" evidence derives from the defendant's having possessed the same state of mind in the commission of both the extrinsic act and the charged offense. *Guerrero*, 650 F.2d at 733; *Beechum*, 582 F.2d at 911. *United States v. Dothard*, 666 F.2d 498, 501-502 (11th Cir. 1982).

The other act evidence being offered by the Government here is so dissimilar from the charged offenses, that the Government has failed to demonstrate how Ms. Lawson could have possessed the same state of mind in the commission of both the extrinsic act and the charged offense.

If the woman on the October 22, 2006 video surveillance could be shown to be Ms. Lawson, then the Government would have only proved that Ms. Lawson went inside the Sneakers store, looked at shoes, tried on shoes, used the store phone, and then left the store without making any

purchases in October of 2006.  This in no way shows that  Ms. Lawson had the intent to <u>conspire</u>

<u>with others</u> to steal government checks from a mail box and then cash those checks at a pawn shop

in October of 2003.  Similarly, if the different woman in the October 21, 2006 video surveillance

could be shown to be Ms. Lawson, then the Government will have only shown that Ms. Lawson, on

her own, intended to buy shoes with a stolen personal check in October of 2006. This evidence

would not show that Ms. Lawson had the intent to <u>conspire with others</u> to steal government checks

from a mail box and then cash those checks at a pawn shop in October of 2003.

The only characteristic in common between the offense of the current charges and the offense

involved in the challenged 404(b) evidence is that checks were stolen and, in one way or another,

used.  This single characteristic is not sufficiently significant for the purpose of the inquiry at hand.

*Dothard*, 666 F.2d at 501-502. Therefore, the extrinsic offense evidence being challenged here is

irrelevant, highly prejudicial, and as such is inadmissible.

**The Secret Service Photo Array Procedure was Unnecessarily Suggestive**

As previously argued, on information and belief, at least one of the Sneakers store employees

will state that she felt that the police officers who displayed the photo line-up to her were attempting

to influence her identification and to pressure her to make an identification.

> In examining the procedures used by law enforcement officials, the courts consider
> not only the officer's comments in presenting the array, but also the manner of
> presentation. *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2nd Cir. 1990),
> including whether the witness's initial identification was positive or tentative,
> whether there were repeated showings of the selected photograph in isolation,
> **whether the officer's conduct influenced the identification by conducting a show**
> **up or pressuring the witness** to take additional looks at the suspect, see *Jarrett v.*
> *Headley*, 802 F.2d 34, 41-42 (2nd Cir. 1986) (citing cases), and whether the officer
> made suggestive comments prior to the identification. *United v. James* , 415 F. Supp.
> 2d 132, 166 (E.D. N.Y. 2006)(emphasis added).

8

In response to the Defendant's motion entitled "Defendant Taneshia M. Lawson's Motion to Exclude Government's Proposed Cross-racial Identification, and Citations of Authority" ("Motion to Exclude")(D.E. 164), the Government asserts,

> Finally, Lawson goes to great lengths in questioning the reliability of the identification because 'cross racial' identification issues. Lawson's argument, while not explicitly noting it, however, requires expert testimony. If Lawson plan to rely on this sort of testimony, then she will need to designate an expert. Lawson, however, has neither identified an expert, nor provided to the Government any expert report on the issue of cross racial identification, as is required under Fed. R. Crim. P. 16.

Ms. Lawson's Motion to Exclude was filed on December 11, 2006. In paragraph thirteen (13) of that motion, undersigned counsel stated:

> On information and belief, an expert in eye witness identification would present testimony that cross-racial identifications are unreliable; that identifications by a white person of a black suspect are even more likely to be inaccurate; that the identification procedures used in the present case were suggestive; and that, based on the facts and circumstances of the present case, the identifications made by the white Sneakers employees of a black suspect are unreliable and are more likely to be inaccurate than accurate. (D.E. 164, p.7).

Thus, defense counsel provided notice that an expert on cross-racial identifications would be presented and described the expert's testimony. As acknowledged by the Government, "the defendant was presented the proffered evidence [regarding the cross-racial identifications] only on the eve of trial at the beginning of November." (D.E. 169, P. 10). Ms. Lawson's Motion to Exclude was timely filed on December 11, 2006, in compliance with the deadlines set by this Court in its Order entered on November 6, 2006. (D.E. 145).

### Cross-Racial Identification Testimony Should Not Be Admitted At Trial

The Government asserts that Federal Rule of Evidence 701 is not applicable to the issue of the exclusion of lay witness testimony concerning cross-racial identifications because the

Government's "witnesses will testify from their own memory." (D.E. 169, p. 12). However, Fed. R. Evid. 701 provides,

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) **helpful to a clear understanding of** the witness' testimony **or the determination of a fact in issue**, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. (emphasis added).

The 404(b) testimony that the Government intends to introduce in this case would be impermissible under Rule 701 as it would not be helpful to a clear understanding of either whether Ms. Lawson had the requisite intent to participate in the conspiracy currently charged in this case or whether Ms. Lawson passed stolen checks at a Sneakers store in October of 2006. The testimony should be excluded as irrelevant under Federal Rules of Evidence 401, 402, 403.

Additionally, the testimony will concern a cross-racial identification in which the white Sneakers employees did not deal directly with the African-American person they are attempting to identify and there is a contradictory identification by an African-American Sneaker's employee. These factors alone make the identification testimony unreliable, unhelpful to a jury, and inadmissible under Fed. R. Evid. 701.

Defense counsel will provide the Court with a copy of the security video at issue, as an Exhibit to this pleading.

**WHEREFORE**, the Defendant respectfully requests that this Motion be granted.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson

10

Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2006, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the following:

Christopher Snyder, Assistant United States Attorney, One Court Square, Suite 201, Montgomery,

Alabama 36104.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN  DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **CASE NO: 2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA M. LAWSON_____** | ) | |

## DEFENDANT'S MOTION IN LIMINE REGARDING SYLVAN LEARNING CENTER RECORDS AND CITATIONS OF AUTHORITY

**COMES NOW** the defendant, Taneshia Lawson ("Ms. Lawson"), pursuant to Federal Rule of Criminal Procedure 16 and Federal rule of Civil Procedure 26, by and through undersigned counsel, and moves this Court to enter an Order prohibiting the introduction, at trial, of testimony of an expert at Sylvan Learning Center consulted by the defendant.

This motion is based on the following:

## Facts

1.      In preparation for the trial of this matter, defense counsel retained the services of Sylvan Learning Center ("Sylvan"), to test Ms. Lawson's reading comprehension. As a result, Sylvan administered reading tests, and some additional tests not requested by defense counsel, to Ms. Lawson. The results from these tests were provided to defense counsel.

2.      Prior to receipt of the results, defense counsel disclosed to Government counsel that Sylvan had been retained. Following the receipt of the results of Sylvan's tests, defense counsel disclosed to the Government that the tests showed a particular elementary school reading level for Ms. Lawson.

3.     It is defense counsel's recollection that defense counsel specifically informed Government counsel that the defense did not intend to call Sylvan personnel as witnesses at Ms. Lawson's trial.  It is defense counsel's further belief that this occurred in the context of a request by the Government for the documents prepared by Sylvan.

4.     Because the defense does not intend to call Sylvan personnel as witnesses, documents prepared by them have not been provided to the Government.

5.     On the day on which evidence in this matter was scheduled to be presented before a jury, defense counsel encountered an employee of Sylvan in the court room where Ms. Lawson's trial was set to be heard.  The employee stated that she and the documents she had regarding Ms. Lawson had been subpoenaed to trial.

6.     Although the employee's statements indicated that she assumed defense counsel had subpoenaed her, the defendant, as noted above, had not subpoenaed any Sylvan employees.  On information and belief, the employee appeared at trial in response to a subpoena from the Government.

7.     On information and belief, the materials and information subpoenaed by the Government contain personal information about Ms. Lawson, accounts of confidential communications between Ms. Lawson and Sylvan personnel, and the materials were created at the request of Ms. Lawson's counsel in preparation for trial. Pursuant to Federal Rule of Criminal Procedure 16 and the attorney-client privilege,  these materials are neither discoverable by the Government, nor subject to presentation in evidence by the Government.

2

## The Materials Prepared by the Sylvan Learning Center
## Are Protected by the Work Product Privilege

8.      "The attorney work product doctrine protects from disclosure materials prepared by an attorney acting for his client in anticipation of litigation." *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir. 1979)(citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). "This doctrine is distinct from and broader than the attorney-client privilege."*Id.* (citing *United States v. Nobles*, 422 U.S. 225, 238 n11(1975); *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)).

9.      The attorney work product doctrine has been codified in Fed. R. Civ. P. 26(b)(3) and  Fed. R. Crim. P. 16(b)(2).  Fed. R. Civ. P. 26(b)(3) provides:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

10.     Fed. R. Crim. P. 16(b)(2) provides:

> Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of:
> (A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or

3

(B) a statement made to the defendant, or the defendant's attorney or agent, by:

  (i) the defendant;
  (ii) a government or defense witness; or
  (iii) a prospective government or defense witness.

"In the context of a pending criminal prosecution, the [attorney work product] doctrine is even stricter, precluding discovery of documents made by a defendant's attorney or the attorney's agents except with respect to 'scientific or medical reports.'" *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 383 (2nd Cir. 2003).

11. "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *United States v. Nobles*, 422 U.S. 225, 238 (1975):

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. **One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney** as well as those prepared by the attorney himself.

*Id.*, at 238-39.(emphasis added).

12. In this case, undersigned counsel relied on the assistance of the personnel at

4

Sylvan for assessments and compilation of materials that undersigned counsel needed in preparation for Ms. Lawson's trial. Thus, Sylvan was acting as an agent of undersigned defense counsel. Statements made by Ms. Lawson to Sylvan employees are protected by the work product privilege. Opinions of Sylvan employees, based on these statements, are also protected work product of undersigned counsel.

13.     The Eleventh Circuit in *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir. 1979) addressed whether financial analyses prepared by an accountant were protected by the attorney work product doctrine, where the analyses were sought for the specific purpose of assisting defense counsel with his assessment of his client's potential criminal liability. In finding that the analyses were protected by the work product doctrine, the Court explained:

> It was merely a circumstance that Sussman, as an accountant, was employed to prepare financial analyses to assist the lawyer in assessing [the client's] potential criminal liability. The work was needed by [the client's] lawyer, and it might have been done by the lawyer himself or by an employee in his office if either had the necessary skill and time. The information was evidentially material to [the client's] defense. Under these circumstances, the financial analyses prepared by [the accountant] were protected by the attorney work product. *Id.*, at 171.

Likewise, in the instant case, the work completed by Sylvan might have been done by defense counsel or by an employee of defense counsel if the necessary skill and time had been available. However, in the absence of both, Sylvan was employed to complete the work needed by defense counsel. Just as in *In re Grand Jury Proceedings*, this Court should find that the reports, information, and materials compiled by Sylvan at the request of defense

5

counsel is undiscoverable pursuant to the work product privilege.

**The Materials Prepared by the Sylvan Learning Center**
**Are Protected by the Attorney-Client Privilege**

14.    On information and belief, the materials the government intends to use contain both verbatim reports and interpretations of confidential communications made by Ms. Lawson to the Sylvan personnel for the purposes of Ms. Lawson's defense. These communications were made to Sylvan by Ms. Lawson at the behest of defense counsel after defense counsel employed the expertise of Sylvan in anticipation of the current litigation. As such, these communications are protected by the attorney-client privilege.

15.    In *In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*, 265 F.Supp.2d 321 (S.D.N.Y.2003), a district court held that communications between an attorney and public relations consultants for the purpose of assisting the attorney in providing advice to the client on the handling of the client's legal problems were protected by the attorney client privilege.  In reaching that holding, the Second Circuit, in reliance on it previous precedent in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), explained that the protection afforded by the attorney-client privilege extended to "communications that involve persons assisting the lawyer in the rendition of legal services."  265 F.Supp.2d at 325.

16.    The court explained that the lawyers were in a situation in which they needed to seek outside help which,  while not needed to help the lawyers understand and explain to the client the technicalities of the requirements of the law, was needed to assist the lawyers

6

in providing overall advice to the client. *Id.*, at 326.  In such a situation, the court found that it was "common ground that the [attorney-client] privilege extend[ed] to communications involving consultants used by [the] lawyers to assist in performing tasks that [went] beyond advising [the] client as to the law." *Id.*

17.    "An attorney's duties do not begin inside the courtroom door.  He or she cannot ignore the practical implications of a legal proceeding for the client." *Id.*  *"*If the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an [individual] engaged by the lawyer, who is then to interpret it so that the lawyer may give better legal advice, communications by the client reasonably related to that purpose ought fall within the privilege." *Id.,* at 331.

18.    Defense counsel hired Sylvan and directed Ms. Lawson to communicate with and provide personal information about herself to the personnel at Sylvan. In doing so, defense counsel was seeking interpretations of the information Sylvan received from Ms. Lawson for the purpose of assisting defense counsel defend Ms. Lawson at trial. This purpose further included how defense counsel would continue to advise Ms. Lawson throughout her case. Therefore, the materials compiled by Sylvan are confidential communications between a client and an agent of the client's attorney. Thus, these materials are undiscoverable to the Government and may not be used by the Government.

**WHEREFORE**, the Defendant respectfully prays that this Motion be granted and respectfully moves this Court to prohibit the Government from obtaining this information or

using it at trial, whether through subpoena or otherwise.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2006, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following: Christopher Snyder, Assistant United States Attorney, One Court Square,

Suite 201, Montgomery, Alabama 36104.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

UNITED STATES OF AMERICA        )
                                )         2006 DEC 29  A 9 00
                V.              )
                                )   CASE NO: 2:06-cr-173-MHT
                                )              DEBRA P. HACKETT, CLK
TANESHIA M. LAWSON              )              U.S. DISTRICT COURT
                                              MIDDLE DISTRICT ALA

## NOTICE OF FILING OF EXHIBIT

**COMES NOW** the undersigned counsel, and provides notice of the filing of the

attached exhibits:

- One CD titled, "Sneaker #6 Auburn, AL Bad Check (2) 10/21/06" Originally
  Bates Stamped 125

- One CD titled, "Sneaker Auburn, AL Bad Check (2) 10/21/06 & 10/22/06
  Video Footage" Originally Bates Stamped 126

- One CD titled, "Qwik Pawn Shop Relev. Seg Disc # 1" Originally Bates
  Stamped 127

- One CD titled, "Qwik Pawn Shop Relev. Seg Disc # 1" Originally Bates
  Stamped 128

These CD's were produced by the Government as a part of discovery. The CD's

originally bates stamped 125 and 126 are alleged to contain video surveillance footage of bad

checks being passed by an unidentified woman and by a man at a Sneakers store in Auburn,

Alabama on October 21 and 22, 2006. The CD's originally bates stamped 127 and 128 are

alleged to contain video surveillance of Ms. Lawson and the other co-defendants in this case

inside of the Qwik Pawn Shop On October 3 and October 31, 2003.

Dated this the 29th day of December, 2006.

Respectfully submitted,

*Patricia Kemp*
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Taneshia Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: patricia_kemp@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2006, I filed the foregoing with the Clerk of the Court. I will send notification of such filing to the following via the United States Postal Service: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

*Patricia Kemp*
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Taneshia Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: patricia_kemp@fd.org

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO. 2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA MICHELLE LAWSON** | ) | |
| | ) | |

---

**United States's Supplemental Brief to Exclude Defendant's Expert Testimony**

---

As permitted under the Court's prior orders,[1] the United States supplements its

prior pleadings[2] with two additional reasons why the testimony of defendant's expert, Dr.

Theron Covin, must be excluded.  First, Covin's testimony is not admissible under Fed.

R. Evid. 702 and *Daubert.*  Not only is Covin not qualified to render an opinion on the

issues on which he wishes to opine, but also Covin's conclusions are invalid because he

did not properly administer the tests on which he relies.

Second, even if *Daubert* were not an issue (which it is) Covin's testimony must be

excluded because it is not adequately keyed to Lawson's specific intent at the time of the

crime.  In fact, Covin never even conducted a follow up interview of Lawson before he

submitted his amended report.  Covin's testimony must not be permitted at trial.

## I.    Covin's Testimony Must Be Excluded Under *Daubert.*

Covin's proffered testimony must be excluded because it does not meet the basic

---

[1] DEs  146 and 163.

[2] *Eg.*, DEs 87, 104.

1

requirements of Fed. R. Evid. 702 and *Daubert*.[3]

## A. Covin is Unqualified.

First, Covin is not qualified to render an opinion on the issues about which he would like to testify. To determine the admissibility of expert testimony, trial courts must first consider if "the expert is qualified to testify competently regarding the matters he intends to address."[4] Covin would like to give expert testimony relating to Lawson's specific intent at the time crime and her subsequent confession. Covin, however, is not competent to do so. Covin is neither a forensic psychologist or even a psychologist.

Instead, he is a licensed professional counselor in the state of Alabama. According to the Alabama state statute that regulates that profession,[5] while Covin is permitted to administer and interpret instruments designed to assess an individual's aptitudes, he is primarily trained to give counseling services.[6] Covin does not have the requisite knowledge and training to properly apply these tests to legal concepts like specific intent and *Miranda* waivers. In fact, a search of Westlaw reveals only one very old case in which he testified.[7] Likewise, his report itself gives the distinct impression that because of his lack of forensic experience, he has greatly oversimplified the complexities and intricacies of psychological and psychiatric evaluations. Because of his lack of experience

---

[3] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[4] *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004).

[5] See Ala. Code § 34-8A-2(5)(b) (2002).

[6] *Id.* § 34-8A-2(5)(a).

[7] *Potts v. State*, 426 So.2d 886, 892 (Ala. Crim. App. 1982) (in that case Covin is identified as a "a staff psychologist")

in this area, Covin's testimony should not be admitted.

## B. Covin's Methodology Is Unsound.

Moreover, even if Covin were competent and qualified to render an opinion,

Covin's testimony still must be excluded. His methodology is completely improper and

unreliable. To be admissible"the methodology by which the expert reaches his

conclusions [must also be] sufficiently reliable . . ."[8] Psychology is a discipline that relies

heavily on "instruments whose validity and reliability have been established for use with

members of the population tested."[9] The validity of these tests is based upon established

norms, which have been developed through testing the principles in a standardized

manner on a population.[10] As a result, it is imperative for a test-giver to follow the

established norms for test procedure in order to ensure the validity of the test results.[11]

Covin administered five tests to Lawson.[12] The majority of these tests, however,

were conducted improperly. For example, the Instructions for the Use of the Bender

Motor Gesalt Test clearly state that "sheets of plain white <u>unlined</u> paper 8 1/2" by 11" are

used."[13] Covin, however, used ruled lined paper to administer the test,[14] which skews the

---

[8] *Frazier,* 387 F.3d at 1260.

[9] American Psychological Association, *Ethical Principles of Psychologists and Code of Conduct,* at §9.02(b), available at http://www.apa.org/ethics/code2002.html#9 (June 1, 2003).

[10] *See, e.g., See* Ex. B at 11 (explaining the importance of standardized procedures for the WAIS-III test).

[11] *Id.*

[12] The raw data for all of the tests that Covin administered is located collectively at Exhibit A (attached).

[13] *See* Ex. B at 5-7.

[14] *See* Ex. A at 9.

results of the test.

Likewise, the Minnesota Multiphasic Personality Inventory-2 (MMPI) Manual advises that for uniform testing results, a standardized audio tape should be used, especially for persons who are confused or unable to follow normal instructions.[15] Because Covin, however, administered the test himself and Lawson would have benefitted from such audio instructions, it is likely that Lawson's actual MMPI score is not accurately reflected.

Finally, on the Wechsler Adult Intelligence Scale, Third Edition, which is an I.Q. test, the test clearly instructs the test-giver on how to administer and record responses to the vocabulary portion of the test.[16] Covin, however, failed to properly record Lawson's responses to the vocabulary section, thereby making it impossible to evaluate whether the test was accurately scored.[17] Because of these errors, the results for these tests cannot be considered sufficiently reliable, as *Daubert* requires. Covin's testimony must therefore be excluded.

## II.    Covin's Testimony Is Unkeyed and Therefore Inadmissible.

Finally, even if Covin were somehow able to get over his *Daubert* hurdles, his testimony should still be excluded because it is not sufficiently keyed to Lawson's specific intent at the time of the offense or to her confession. In its prior orders, the Court was quite clear that in order to be admissible at trial Covin's testimony must be

---

[15] *See* Ex. B at 3.

[16] See Ex. B at 12-16.

[17] *See* Ex. A at 11.

4

"adequately keyed to the issue of whether [s]he entertained the mens rea required for proof of the crime."[18] Similarly, regarding the confession issue, the Court ordered the parties to present keyed to testimony relating to the confession and the circumstances surrounding the confession.[19]

In his amended report, however, Covin provides nothing more than additional vague generalities, similar to the ones that the Court was originally concerned with. Most notably, Covin never met with Lawson. Thus, it was virtually impossible for Covin to have properly inquired as to the specific circumstances surrounding Lawson's criminal conduct and subsequent confession. Covin's testimony should be excluded.

## III.  Conclusion

Covin is unqualified and his testimony is unreliable. Moreover, Covin's testimony does not in any way suggest that at the time of the crime Lawson lacked the specific intent necessary to commit the crimes charged because of some mental disease. Covin's testimony should be excluded from trial.

Respectfully submitted this 3rd day of January, 2006,

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/ Christopher Snyder
> CHRISTOPHER A. SNYDER
> Assistant United States Attorney
> One Court Square, Suite 201
> Montgomery, AL 36104
> Phone: (334) 223-7280
> Fax: (334) 223-7135
> E-mail: christopher.a.snyder@usdoj.gov

---

[18] DE 110 at 18 (citing *United States v. Childress*, 58 F.3d 693, 729 (D.C. Cir. 1995) (per curiam)).

[19] DE 141 at 12.

5

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

6

# FEDERAL DEFENDERS

## MIDDLE DISTRICT OF ALABAMA
### FEDERAL DEFENDER PROGRAM, INC.
### 201 MONROE STREET, SUITE 407
### MONTGOMERY, AL 36104
TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

December 17, 2006

**VIA FACSIMILE**

Chris Snyder, Esquire
Assistant U. S. Attorney
One Court Square, Suite 201
Montgomery, AL  36104

**Re:   Dr. Covin's Raw Data**

Mr. Snyder:

Per your request, we have obtained the raw data generated from our expert's evaluation of Taneshia Lawson. Please find attached to this letter, the raw data that we received today, Sunday, December 17, 2006, from our expert, Dr. Covin.

If you do not receive this fax in its entirety or if you have any questions or concerns, please contact me at (334) 834-2099.

Sincerely,

Patricia Kemp
Attorney for Taneshia Lawson

Case 2:07-cr-00010-MHT-WC    Document 13-50    Filed 01/26/2007    Page 8 of 44
DEC-17-2006  16:34    FEDERAL DEFENDERS    3348340353    P.03
Case 2:06-cr-00173-MHT-WC    Document 181-2    Filed 01/03/2007    Page 2 of 22

Softcover Answer Sheet
Hand Scoring



# MMPI-2 ™

### Minnesota Multiphasic
### Personality Inventory-2™



RECEIVED
DEC 1 7 2006
By _PVIC_

---

**DIRECTIONS:**

Please follow these directions when completing the identification areas on this page and responding to the MMPI-2 items on page 3.

1. Print your name, birth date, age, sex, and test date in the area to the right.

2. Use a pencil only and fill in the circles on page 3 with heavy, dark marks.

3. If you make a mistake or change your mind, erase your first response completely and then fill in the correct circle.

4. Do not make any marks outside the circles.

*Mrs Tomichz Lowa*

Last Name    First    Middle

*Cep 3, 86 22 E*

Birth Date    Age    Sex

*Oct 6 /2006*

Test Date

**DO NOT SEND TO PEARSON ASSESSMENTS
USE ONLY FOR HAND SCORING**

Pearson Assessments P. O. Box 1416 Minneapolis MN 55440
800-627-7271  www.pearsonassessments.com
Minnesota Multiphasic Personality Inventory-2 (MMPI-2)
Copyright © 1942, 1943 (renewed 1970), 1989 by the Regents of the
University of Minnesota. All rights reserved.  Distributed exclusively
by NCS Pearson, Inc. under license from the University of Minnesota.
Printed in the United States of America.
"Minnesota Multiphasic Personality Inventory-2" and "MMPI-2" are
trademarks of the University of Minnesota.
A B C D 2000

Product Number
24018

Case 2:07-cr-00010-MHT-WC    Document 13-50    Filed 01/26/2007    Page 9 of 44
DEC-17-2006  16:35    FEDERAL DEFENDERS    3348340353    P.04
Case 2:06-cr-00173-MHT-WC    Document 181-2    Filed 01/03/2007    Page 3 of 22



Case 2:07-cr-00010-MHT-WC    Document 13-50    Filed 01/26/2007    Page 10 of 44

DEC-17-2006  16:35    FEDERAL DEFENDERS    3348340353 P.05
Case 2:06-cr-00173-MHT-WC    Document 181-2    Filed 01/03/2007    Page 4 of 22

# TOMM: Score Sheet

### *by Tom Tombaugh, Ph.D.*

Name: _Timothy Lawson_   Date: _10_ / _8_ / _2006_

Age: _22_   Gender: Male ☐   Female ☑

Name of Administrator: _Pavies_

## Instructions:

Each trial lists both correct (**bold, <u>underlined</u>**) and incorrect (regular text) responses. While running the test, *circle the name of the item* that the respondent chooses. After administering the test, put a checkmark in the box beside each number that has a circled **bold** and <u>underlined</u> response. Add up the number of checkmarks in both columns to obtain the total number of correct responses and record it at the bottom of each trial.

 **MHS**

Copyright © 1996, Multi-Health Systems Inc. All rights reserved. In the U.S.A., 908 Niagara Falls Blvd., North Tonawanda, NY 14120-2060, 1-800-456-3003. In Canada, 3770 Victoria Park Avenue, Toronto, ON M2H 3M6. 1-800-268-6011, 1-416-424-1700, Fax 1-416-424-1726

Case 2:07-cr-00010-MHT-WC    Document 13-50    Filed 01/26/2007    Page 11 of 44
DEC-17-2006  16:35    FEDERAL DEFENDERS    3348340353    P.06
Case 2:06-cr-00173-MHT-WC    Document 181-2    Filed 01/03/2007    Page 5 of 22

# TOMM Score Sheet: Trial 1

| | A | B | | | A | B | |
|---|---|---|---|---|---|---|---|
| 1. | spinning wheel | cookie | | 26. | T.V. | light bulb | |
| 2. | tent | kleenex box | | 27. | maple leaf | boat | |
| 3. | dustpan | statue | | 28. | crutch | wrench | |
| 4. | mailbox | teepee | | 29. | bow | cake | |
| 5. | birdbath | can | | 30. | key | sock | |
| 6. | suitcase | comb | | 31. | cloud | rose | |
| 7. | pennant | boat | | 32. | rocket | pencil | |
| 8. | gas pump | musical notes | | 33. | corn | ladder | |
| 9. | ring | apron | | 34. | wheelbarrow | fire hydrant | |
| 10. | hat | Christmas tree | | 35. | whistle | grapes | |
| 11. | muffin pan | train | | 36. | toilet paper | birdhouse | |
| 12. | mailbox | brush | | 37. | shopping cart | teddy bear | |
| 13. | wheat | axe | | 38. | cigarettes | ice cream | |
| 14. | jack o' lantern | coat hanger | | 39. | roller skate | glue | |
| 15. | wallet | scissors | | 40. | cherries | umbrella | |
| 16. | safety pin | manhole | | 41. | life preserver | mountains | |
| 17. | saw | door | | 42. | wheelchair | stapler | |
| 18. | butterfly net | lawn mower | | 43. | swing set | bunk bed | |
| 19. | pullout bed | candle | | 44. | soup ladle | shovel | |
| 20. | motorcycle | knife | | 45. | dice | bag | |
| 21. | fishing pole | sewing machine | | 46. | carrot | book | |
| 22. | jack-in-the-box | rocking chair | | 47. | drum | saw | |
| 23. | bugle | fence | | 48. | paper clip | bird cage | |
| 24. | screw | stool | | 49. | vest | telescope | |
| 25. | stroller | bow & arrow | | 50. | end table | mask | |

## TOTAL Correct for Trial 1 = [ 48 ]

Case 2:07-cr-00010-MHT-WC   Document 13-50   Filed 01/26/2007   Page 12 of 44
DEC-17-2006  16:35      FEDERAL DEFENDERS             3348340353    P.07
Dbt f !3;17.ds.11284.NI U.X D!!!!!Epdvn f ou292.3!!!!!Grfne!120!403118!!!!!Qbhf !7!pg33

# TOMM Score Sheet: Trial 2

| | A | B | | | A | B | |
|---|---|---|---|---|---|---|---|
| 1. | scissors | clock | ☑ | 26. | vest | baseball bat | ☑ |
| 2. | banana | musical notes | ☑ | 27. | string of pearls | stapler | ☑ |
| 3. | hobbyhorse | tin can | ☑ | 28. | window | steering wheel | ☐ |
| 4. | ice cream cone | lock & key | ☑ | 29. | iron | lipstick | ☐ |
| 5. | sewing machine | bird feeder | ☑ | 30. | shoe | butterfly net | ☑ |
| 6. | chair | toaster | ☑ | 31. | notebook | roller skate | ☑ |
| 7. | light bulb | eggs | ☑ | 32. | mouse | pine cone | ☐ |
| 8. | elephant | batteries | ☑ | 33. | basketball net | tennis ball | ☑ |
| 9. | ceiling fan | jack o' lantern | ☑ | 34. | stepladder | filing cabinet | ☑ |
| 10. | wreath | ashtray | ☑ | 35. | felt marker | candle | ☑ |
| 11. | suitcase | spray bottle | ☑ | 36. | wishing well | rolling pin | ☑ |
| 12. | container | saw | ☑ | 37. | hat | mustard bottle | ☐ |
| 13. | carrot | chair & table | ☐ | 38. | guitar | hot dog on fork | ☑ |
| 14. | saltshaker | birdhouse | ☑ | 39. | telephone pole | key | ☑ |
| 15. | eyeglasses | ring | ☑ | 40. | remnant | bell | ☑ |
| 16. | clothespin | motorcycle | ☑ | 41. | hairbrush | jack-in-the-box | ☑ |
| 17. | swing set | needle & thread | ☑ | 42. | playing card | life preserver | ☑ |
| 18. | racket | light switch | ☐ | 43. | kleenex box | stump | ☑ |
| 19. | knife | pail & shovel | ☐ | 44. | picnic basket | dart | ☑ |
| 20. | onion | bench | ☑ | 45. | axe | anchor | ☐ |
| 21. | lighter | umbrella | ☐ | 46. | fishhook | paintbrush | ☐ |
| 22. | mail man | mirror | ☑ | 47. | shopping cart | sock | ☑ |
| 23. | cake | purse | ☑ | 48. | wheelbarrow | thermos | ☑ |
| 24. | fan | paper clip | ☑ | 49. | mask | cross | ☐ |
| 25. | whistle | bricks | ☐ | 50. | oven mitts | flag | ☐ |

## TOTAL Correct for Trial 2 = 50

DEC-17-2006  16:35      FEDERAL DEFENDERS           3348340353    P.08
Dbtf !3;17.ds.11284.NI U.X D!!!!!Epdvn f ou292.3!!!!!Gjmhe!120140!3118!!!!!Qbhf !8!pg33

# TOMM Score Sheet: Retention Trial

| | A | B | | | A | B | |
|---|---|---|---|---|---|---|---|
| 1. | light socket | ~~wrench~~ | ☐ | 26. | ~~kleenex box~~ | wagon | ☐ |
| 2. | ~~scissors~~ | fridge | ☐ | 27. | cheese | ~~chair~~ | ☐ |
| 3. | ~~light in the box~~ | gondola | ☐ | 28. | ~~robe~~ | shoe | ☐ |
| 4. | ~~tree~~ | ~~mask~~ | ☐ | 29. | coat | ~~shopping cart~~ | ☐ |
| 5. | ~~sombrero~~ | peanuts | ☐ | 30. | ~~bench~~ | fence | ☐ |
| 6. | ~~jack o' lantern~~ | carton | ☐ | 31. | extension cord | ~~midnight~~ | ☐ |
| 7. | mailbox | ~~carrot~~ | ☐ | 32. | milk | ~~wheelbarrow~~ | ☐ |
| 8. | skip rope | ~~light bulb~~ | ☐ | 33. | ~~egg~~ | snowman | ☐ |
| 9. | ~~toothbrush~~ | candy | ☐ | 34. | zipper | ~~ice cream cone~~ | ☐ |
| 10. | ~~life preserver~~ | bird | ☐ | 35. | package | ~~typewriter~~ | ☐ |
| 11. | ~~elephant~~ | lamp | ☐ | 36. | ~~muffin pan~~ | trophy | ☐ |
| 12. | water faucet | ~~musical notes~~ | ☐ | 37. | ~~swing set~~ | pipe | ☐ |
| 13. | loaf of bread | ~~scissors~~ | ☐ | 38. | diving board | ~~whistle~~ | ☐ |
| 14. | ~~stool~~ | cup | ☐ | 39. | ~~sewing machine~~ | necktie | ☐ |
| 15. | slingshot | ~~birdhouse~~ | ☐ | 40. | can | ~~lantern~~ | ☐ |
| 16. | ~~battery jack~~ | lighthouse | ☐ | 41. | ~~saw~~ | sign | ☐ |
| 17. | clown | ~~rocket~~ | ☐ | 42. | ~~roller skates~~ | scales | ☐ |
| 18. | wagon | ~~ball & glove~~ | ☐ | 43. | drill | ~~spinning wheel~~ | ☐ |
| 19. | ~~grill gas~~ | footstool | ☐ | 44. | ~~tent~~ | plant | ☐ |
| 20. | ~~cake~~ | dinner bell | ☐ | 45. | electric fan | ~~key~~ | ☐ |
| 21. | ~~anchor~~ | church | ☐ | 46. | ~~magnet~~ | rolling pin | ☐ |
| 22. | windmill | ~~vest~~ | ☐ | 47. | phone | ~~mouse~~ | ☐ |
| 23. | ~~cat~~ | kite | ☐ | 48. | ~~suitcase~~ | needle | ☐ |
| 24. | airplane | ~~guitar~~ | ☐ | 49. | clipboard | ~~axe~~ | ☐ |
| 25. | ~~step ladder~~ | water fountain | ☐ | 50. | ~~paper clip~~ | scarf | ☐ |

## TOTAL Correct for Retention Trial = 50

DEC-12-2006  16:45    Dot 13.17. ds 1284.NI  UXDEAL  Epdwnepu292.3!!!!!Gjme!120!40!3118!!!!!Qbhf !9!pg33
3348340353    P.09

WEST TO

And
In
Him
Make
Cook
Must
Enter
Light
Reach
Circle
Expalin
Corret
R

DEC-17-2006  16:35        FEDERAL DEFENDERS                3348340353      P.10
Dbt f !3;17 ds 11284 N! U X D!!!!!Epdvn f ou292.3!!!!!Gjme!120140118!!!!!Qbhf !: !pg33

DEC-17-2006 13:36    FEDERAL DEFENDERS    3348340353    P.11

# WAIS-III

WECHSLER ADULT INTELLIGENCE SCALE – THIRD EDITION

Name _Taneshia Lawson_

Examiner _aviw_

Age _22_  Date of Testing _10-1-2008_

## 1. Picture Completion



**Examinee Response to Item**
Names object pictured rather than missing part
Mentions part of the picture that is off the page
(e.g., the legs of the man in item 14)
Mentions an unessential missing part

**Examiner Query**
(Say each query only once for the entire administration)
**Yes, but what is missing?**
**Something is missing in the picture. What is it that is missing?**
**Yes, but what is the most important part that is missing?**

If the examinee responds correctly after any of the above queries, score 1 point for the response

| Item | Response | Score (0 or 1) |
|---|---|---|
| | Comb | 1 |
| | Table | 1 |
| | Face | 1 |
| | Briefcase | 1 |
| | Train | 1 |
| 6. | Door | 1 |
| 7. | Glasses | 1 |
| 8. | Pitcher | _green?_ | 0 |
| 9. | Pliers | 1 |

| Item | Response | Score (0 or 1) |
|---|---|---|
| 10. | Leaf | DK | 0 |
| 11. | Pie | DK | 0 |
| 12. | Jogging | 1 |
| 13. | Fireplace | 1 |
| 14. | Mirror | 0 |
| 15. | Chair | 0 |
| 16. | Roses | 0 |
| 17. | Knife | 0 |
| 18. | Boat | 0 |

| Item | Response | Score (0 or 1) |
|---|---|---|
| 19. | Basket | |
| 20. | Clothing | |
| 21. | Lockers | |
| 22. | Cow | |
| 23. | Tennis Shoes | |
| 24. | Woman | |
| 25. | Barn | |
| | Total Raw Score (Maximum = 25) | |

## 2. Vocabulary



| Item | Response | Score (0, 1 or 2) |
|---|---|---|
| | Bed | 2 |
| | Ship | 2 |
| | Penny | 2 |
| 4. | Winter | 2 |
| 5. | Breakfast | 2 |
| 6. | Repair | 2 |
| 7. | Assemble | 1 |

DEC-17-2006 f 185176ds 11284.NEPORX DEFFGIDERS     3348340353    P.12

# 2. Vocabulary (continued)

| Item | Response | Score (0, 1, or 2) |
|------|----------|-------|
| 8. Yesterday | 1 | |
| 9. Terminate | 0 | |
| 10. Consume | 0 | |
| 11. Sentence | 0 | |
| 12. Confide | 0 | |
| 13. Remorse | 0 | |
| 14. Ponder | 0 | |
| 15. Compassion | | |
| 16. Tranquil | | |
| 17. Sanctuary | | |
| 18. Designate | | |
| 19. Reluctant | | |
| 20. Colony | | |
| 21. Generate | | |
| 22. Ballad | | |
| 23. Pout | | |
| 24. Plagiarize | | |
| 25. Diverse | | |
| 26. Evolve | | |
| 27. Tangible | | |
| 28. Fortitude | | |
| 29. Epic | | |
| 30. Audacious | | |
| 31. Ominous | | |
| 32. Encumber | | |
| 33. Tirade | | |

Total Raw Score
(Maximum = 66)
(Include credit for items on previous page.)

DEC-17-2006  16:36    DbtⅠ3.17.ds 11284.NI  FEDERAL DEFENDERS  ou292.3!!!!!Gme!120140.118!!!!!@one=34pg33  P.13





## 3. Digit Symbol—
Coding
(previous page) ⏱

## Digit Symbol—
Incidental Learning (Optional)
(Response Booklet)

## Digit Symbol—
Copy (Optional)
(Response Booklet)

| Time Limit | 120" |
|---|---|
| Completion Time | |
| Total Raw Score | Maximum=133 |

| Pairing | Total Score Maximum=18 |
|---|---|
| Free Recall | Maximum=9 |

| Time Limit | 90" |
|---|---|
| Completion Time | |
| Total Raw Score | Maximum=133 |

## 4. Similarities



| Item | Response | Score (0 or 1) |
|---|---|---|
| Fork–Spoon | | |
| Socks–Shoes | | |
| Yellow–Green | | |
| Dog–Lion | | |
| Coat–Suit | | |
| 6. Piano–Drum | | 0, 1, or 2 |
| 7. Orange–Banana | | |
| 8. Eye–Ear | | |
| 9. Boat–Automobile | | |
| 10. Table–Chair | | |
| 11. Work–Play | | |
| 12. Steam–Fog | | |
| 13. Egg–Seed | | |
| 14. Democracy–Monarchy | | |
| 15. Poem–Statue | | |
| 16. Praise–Punishment | | |
| 17. Fly–Tree | | |
| 18. Hibernation–Migration | | |
| 19. Enemy–Friend | | |

Total Raw Score
(Maximum = 33)

DEC-17-2006  16:36        FEDERAL DEFENDERS

Dbt f l3;17.ds.11284.NI  U.X D!!!!!Epdvn f ou292.3!!!!!Gjme!120140 3118!!!!Qbhf!25!pg33°. 15

## 5. Block Design ●



EXAMINEE

| Design | Time Limit | Incorrect Design | | Completion Time in Seconds | Correct Design | | Score (Circle the appropriate score for each design.) |
|---|---|---|---|---|---|---|---|
| ■ | 30" | Trial 1 ☐ | Trial 2 ☐ | | Y | N | 0   Trial 2 1   Trial 1 (2) |
| □■ | 30" | Trial 1 ☐ | Trial 2 ☐ | | Y | N | 0   Trial 2 1   (2) |
| ▦ | 30" | Trial 1 ⊞ | Trial 2 ⊞ | | Y | N | 0   Trial 2 1   Trial 1 |
| ◪ | 30" | Trial 1 ⊞ | Trial 2 ⊞ | | Y | N | 0   Trial 2 1   (2) |
| 5. ◸ | 60" | Trial 1 ⊞ | Trial 2 ⊞ | | Y | N | 0   Trial 2 1   (2) |
| 6. ▼ | 60" | Trial 1 ⊞ | Trial 2 ⊞ | | Y | N | 0   Trial 2 1   (2) |
| 7. ◩ | 60" | ⊞ | | | Y | N | 0   16"-60" (5) 11"-15" 6 6"-10" 6 1"-5" 7 |
| 8. ▨ | 60" | ⊞ | | | Y | N | 0   16"-60" 11"-15" (5) 6"-10" 6 1"-5" 7 |
| 9. ▨ | 60" | ⊞ | | | Y | N | ⊘   21"-40" 4 16"-20" 6 11"-15" 6 1"-10" 7 |
| 10. ▦ | 120" | ⊞ | | | Y | N | 0   36"-120" 4 26"-36" (5) 21"-26" 6 1"-20" 7 |
| 11. ▧ | 120" | ⊞ | | | Y | N | X   66"-120" 4 46"-45" 5 31"-45" 6 1"-30" 7 |
| 12. ▨ | 120" | ⊞ | | | Y | N | ✓   76"-120" 4 56"-76" 5 41"-56" 6 1"-40" 7 |
| 13. ◈ | 120" | ◇ | | | Y | N | ✓   76"-120" 4 56"-76" 5 41"-66" 6 1"-40" 7 |
| 14. ◈ | 120" | ◇ | | | Y | N | 0   64"-120" 4 46"-66" 5 36"-46" 6 1"-36" 7 |

EXAMINER

Total Raw Score
(Maximum = 68) ████

DEC-17-2006  16:36        FEDERAL DEFENDERS            3348340353    P.16
Dbt13,17,ds 11284.NT U.X D!!!!Epdvn f ou292.3!!!!!Gjme!120!403118!!!!!Qbhf !26!pg33

## 6. Arithmetic



| Problem | Time Limit | Completion Time in Seconds | Correct Response | Response | Score (0 or 1) | Problem | Time Limit | Completion Time in Seconds | Correct Response | Response | Score (0 or 1) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 15" | | 3 | | | 11. | 30" | | $10.50 | TC | 0 | | |
| | 15" | | 0 | | | 12. | 60" | | 30¢ | | | | |
| | 15" | | 0 | | | 13. | 60" | | $186.00 | | | | |
| | 15" | | 2 | | | 14. | 60" | | 10 | | | | |
| 5. | 15" | | 9.00 | | | 15. | 60" | | $600.00 | | | | |
| 6. | 15" | | 4.00 | | | 16. | 60" | | 43 | | | | |
| 7. | 30" | | 5 | | | 17. | 60" | | $51.00 | | | | |
| 8. | 30" | | $1.50 | IC | 0 | 18. | 60" | | $49.50 | | | | |
| 9. | 30" | | 8 | IC | 0 | 19. | 60" | | 1 of 4 or 5 of 20 | | | 0 | 11"-60" 1 | 1'-10' 2 |
| 10. | 30" | | $3.60 | TC | 0 | 20. | 120" | | 96 | | | 0 | 11"-120" 1 | 1'-10' 2 |

Total Raw Score (Maximum = 22)

## 7. Matrix Reasoning



| Item | Response Options (Circle one) | | | | | | Score (0 or 1) |
|---|---|---|---|---|---|---|---|
| A. | 1 | 2 | 3 | 4 | 5 | DK | |
| B. | 1 | 2 | 3 | 4 | 5 | DK | |
| C. | 1 | 2 | 3 | 4 | 5 | DK | |
| 1 | 1 | 2 | 3 | 4 | 5 | DK | |
| 2 | 1 | 2 | 3 | 4 | 5 | DK | 1 |
| 3 | 1 | 2 | 3 | 4 | 5 | DK | 1 |
| 4 | 1 | 2 | 3 | 4 | 5 | DK | 1 |
| 5. | 1 | 2 | 3 | 4 | 5 | DK | 1 |
| 6. | 1 | 2 | 3 | 4 | 5 | DK | 0 |
| 7. | 1 | 2 | 3 | 4 | 5 | DK | 0 |
| 8. | 1 | 2 | 3 | 4 | 5 | DK | 0 |
| 9. | 1 | 2 | 3 | 4 | 5 | DK | 0 |
| 10. | 1 | 2 | 3 | 4 | 5 | DK | 0 |
| 11. | 1 | 2 | 3 | 4 | 5 | DK | 0 |
| 12. | 1 | 2 | 3 | 4 | 5 | DK | |

| Item | Response Options (Circle one) | | | | | | Score (0 or 1) |
|---|---|---|---|---|---|---|---|
| 13. | 1 | 2 | 3 | 4 | 5 | DK | |
| 14. | 1 | 2 | 3 | 4 | 5 | DK | |
| 15. | 1 | 2 | 3 | 4 | 5 | DK | |
| 16. | 1 | 2 | 3 | 4 | 5 | DK | |
| 17. | 1 | 2 | 3 | 4 | 5 | DK | |
| 18. | 1 | 2 | 3 | 4 | 5 | DK | |
| 19. | 1 | 2 | 3 | 4 | 5 | DK | |
| 20. | 1 | 2 | 3 | 4 | 5 | DK | |
| 21. | 1 | 2 | 3 | 4 | 5 | DK | |
| 22. | 1 | 2 | 3 | 4 | 5 | DK | |
| 23. | 1 | 2 | 3 | 4 | 5 | DK | |
| 24. | 1 | 2 | 3 | 4 | 5 | DK | |
| 25. | 1 | 2 | 3 | 4 | 5 | DK | |
| 26. | 1 | 2 | 3 | 4 | 5 | DK | |

Total Raw Score (Maximum = 26)

DEC-17-2006  16:36        FEDERAL DEFENDERS            334B340353    P.17
Dbt f !3;17 ds 11284.N I  U.X D!!!!!Epdvn f ou292.3!!!!!Gjrhe!120!40!3118!!!!!Qbhf !27!pg33

## 8. Digit Span




| Digits Forward | Trial Score | Item Score (0, 1, or 2) |
|---|---|---|
| Trial  Item/Response | | |
| 1.  1  1-7 | | 2 |
|     2  6-3 | | |
| 2.  1  6-4-2 | | 2 |
|     2  6-9-4 | | |
| 3.  1  6-4-3-9 | | 2 |
|     2  7-2-8-6 | | |
| 4.  1  4-2-7-3-1 | | 0 |
|     2  7-8-8-3-6 | | |
| 5.  1  6-1-9-4-7-3 | | 0 |
|     2  3-9-2-4-8-7 | | |
| 6.  1  5-9-1-7-4-2-8 | | |
|     2  4-1-7-9-3-8-6 | | |
| 7.  1  5-8-1-9-2-6-4-7 | | |
|     2  3-8-2-9-8-1-7-4 | | |
| 8.  1  2-7-5-8-6-2-8-4-4 | | |
|     2  7-1-3-9-4-2-5-6-8 | | |

Digits Forward Total Score
(Maximum = 16)

| Digits Backward | Trial Score | Item Score (0, 1, or 2) |
|---|---|---|
| Trial  Item/Response | | |
| 1.  1  2-4 | | 2 |
|     2  5-7 | | |
| 2.  1  6-2-9 | | 2 |
|     2  4-1-5 | | |
| 3.  1  3-2-7-9 | | 0 |
|     2  4-9-6-8 | | |
| 4.  1  1-6-2-8-6 | | 0 |
|     2  6-1-8-4-3 | | |
| 5.  1  6-3-9-4-1-8 | | |
|     2  7-3-4-6-8-4 | | |
| 6.  1  8-1-2-9-3-6-8 | | |
|     2  4-7-3-9-1-2-8 | | |
| 7   1  9-4-3-7-6-2-8-8 | | |
|     2  7-2-8-1-9-4-4-3 | | |

Digits Backward Total Score
(Maximum = 14)

| Forward | Backward | | (Maximum = 30) |
|---|---|---|---|

## 9. Information

| Item | Response | Score (0 or 1) | Item | Response | Score (0 or 1) |
|---|---|---|---|---|---|
| 1 | Saturday | 1 | 8.  Hamlet | | |
| 2 | Age | 2 | 9.  Brazil | | |
| 3 | Ball | 3 | 10  MLK, Jr. | | 1 |
| 4 | Months | 4 | 11  Civil War President | | |
| 5. | Thermometer | 5 | 12  Cleopatra | | |
| 6. | Sunrise | 0 | 13  Italy | | 0 |
| 7. | Weeks | 0 | 14  Relativity | | 0 |

DEC-17-2006  16:36      FEDERAL DEFENDERS                    334B340353    P.18
Dbt f !3;17.ds.11284.N l  U.X D!!!!!Epdvn f ou292.3!!!!!Grfne!120!403118!!!!!Qbnf!28!pg33

## 9. Information (continued)

| Item | Response | Score (0 or 1) | Item | Response | Score (0 or 1) |
|---|---|---|---|---|---|
| 15. | Olympics | 0 | 22. | Vessels | |
| 16. | Sahara Desert | | 23. | Catherine | |
| 17. | Genesis | | 24. | Continents | |
| 18. | Sistine Chapel | | 25. | Curie | |
| 19. | Gandhi | | 26. | World Population | |
| 20. | Koran | | 27. | Speed of Light | |
| 21. | Water | | 28. | Faust | |

Total Raw Score
(Maximum = 28)
(Include credit for items on previous page.)

## 10. Picture Arrangement



| Item (2 pt.) | Item (1 pt.) | Time Limit | Response Order | Completion Time in Seconds | Score (Circle One) |
|---|---|---|---|---|---|
| 1. CAP     Trial 1 | | 30" | | | 0  1  2 |
| | Trial 2 | 30" | | | 0  1  2 |
| 2. BAKE | | 45" | | | 0     2 |
| 3. OPENS | | 60" | | | 0     2 |
| 4. CHASE | | 60" | | | 0     2 |
| 5. CLEAN | | 90" | | | 0  1  2 |
| 6. HUNT | NOLPA  THUN | 90" | | | 1  2 |
| 7. SAMUEL/AMUELS | SALMUE | 120" | | | 1  2 |
| 8. LUNCH | LUCNH | 120" | | | 1  2 |
| 9. CHOIR | HOOIR | 120" | | | 0  1  2 |
| 10. DREAM | | 120" | | | 0     2 |
| 11. SHARK | | 120" | | | 0     2 |

Total Raw Score
(Maximum = 22)

DEC-17-2006 16:32   FEDERAL DEFENDERS                         3343420353   P.19

## II. Comprehension



| Item | Response | Score (0 or 1) |
|---|---|---|
| Money | 1 | |
| Watches | 1 | |
| Clothes | 1 | (0, 1, or 2) |
| 4. Envelope | 2 | |
| 5. Food* | 1 | |
| 6. Parole* | 0 | |
| 7. Child labor* | 0 | |
| 8. Professional service | 1 | |
| 9. Taxes | 0 | |
| 10. History* | 0 | |
| 11. Deaf | 0 | |
| 12. Forest | 0 | |
| 13. Jury* | | |
| 14. City land | | |
| 15. Marriage license | | |
| 16. Free press | | |
| 17. Swallow | | |
| 18. Shallow brooks | | |

\* If the examinee replies with one idea, ask for a second response.
Rephrase the test item saying, "Tell me another reason."

Total Raw Score
Maximum = 33

## 12. Symbol Search



| | |
|---|---|
| Time Limit | 120" |
| Completion Time in Seconds | |
| Number Correct | |
| Number Incorrect | |
| Total Raw Score | Maximum = 60 |

## 13. Letter–Number Sequencing



| Trial | Item/Response | Trial Score (0 or 1) | Item Score (0, 1, 2, or 3) |
|---|---|---|---|
| 1 | L-2 (2-L) | | |
| | 6-P (6-P) | | |
| | B-6 (5-B) | | |
| 2 | 7-7-(7-F-L) | | |
| | B-4-D (4-D-R) | | |
| | H-1-8 (1-8-H) | | |
| 3. | 7-9-A-3 (3-9-A-7) | | |
| | V-1-J-6 (1-5-J-V) | | |
| | 7-N-4-L (4-7-L-N) | | |
| 4 | 8-D-6-G-1 (1-6-8-D-G) | | |
| | K-2-C-7-8 (2-7-C-K-5) | | |
| | 6-P-3-Y-9 (3-6-9-P-Y) | | |
| 5 | M-4-E-7-Q-2 (2-4-7-E-M-Q) | | |
| | W-6-H-5-F-3 (3-5-6-F-H-W) | | |
| | 6-9-W-A-2-8 (2-6-9-A-G-5) | | |
| 6 | R-3-8-4-Z-1-C (1-3-4-8-C-R-Z) | | |
| | 6-T-9-J-2-X-7 (2-5-7-9-J-T-X) | | |
| | E-1-H-8-4-6-D (1-4-6-8-D-E-H-R) | | |
| 7. | 6-K-9-3-2-N-6-A (2-5-6-9-A-H-N-5) | | |
| | P-1-8-9-6-K-3 (1-3-4-9-B-D-K-R) | | |
| | 7-M-2-T-6-F-1-Z (1-2-6-7-F-M-T-Z) | | |

Total Raw Score (Maximum = 21)

## 14. Object Assembly
(Optional)



| Item | Time Limit | Completion Time in Seconds | Number of Correct Junctures | Display | Score (Circle the appropriate score for each object. Completion time in seconds.) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Man | 120" | | (0-5) | 1 | 0 | 1 | 2 | 3 | 4 | | | | |
| 2. Profile | 120" | | (0-9) | 1 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 3. Elephant | 180" | | (0-8) | 1 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | |
| 4. House | 180" | | (0-14) | 1 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | | |
| 5. Butterfly | 180" | | (0-8) | 1 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | |

Total Raw Score (Maximum = 52)

• Round half scores up.

Copyright © 1997 by The Psychological Corporation
All rights reserved. No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording or any information storage and retrieval system, without permission in writing from the publisher.
The Psychological Corporation and the PSI logo are registered trademarks of The Psychological Corporation.
Wechsler Adult Intelligence Scale and WAIS are registered trademarks of The Psychological Corporation.
Printed in the United States of America.

DEC-21-2006  16:34    FEDERAL DEFENDERS
Dbt1 3;17.ds.11284.NI U.X D!!!!!Epdvn f ou292.3!!!!!Gjme!120!4!3118!!!!!Gbn!131!pg35
P.03

*Center for Counseling & Human Development, Inc*
*191 Katherine Avenue*
*Ozark, AL 36360*
*334-774-7704*

December 20, 2006

VIA FACSIMILE AND U.S. Mail

Christine Freeman, Esq.
Federal Defenders, Middle District of Alabama
Federal Defender Program, Inc.
201 Monroe Street, Suite 407
Montgomery, AL 36104

RE: Release of Raw Data in the Taneshia Lawson Case

Dear Ms. Freeman:

Per your request, on Sunday, December 17, 2006, I faxed to your office
a copy of all of the raw data in my possession that was generated as a
result of my evaluations of your client, Taneshia Lawson. Also on
December 17th, I spoke with Attorney Patricia Kemp. She
acknowledged receipt of the raw data and relayed that the data had been
faxed to United States Attorney Chris Snyder. In addition, I received a
follow up call from Ms. Kemp in which she indicated that Mr. Snyder
wanted additional verification that the raw data that he had received was
in fact inclusive of all of the raw data in my possession and that he did
not have any data on the WRAT-III nor Bender. In addition, she relayed
that he wanted to know whether or nor I had written an additional report
in the Lawson case which he did not have in reference to this case. I
verified with Ms. Kemp that the raw data that I had faxed represented all
the raw data in my possession and that I had faxed the raw data on the

WRAT-III and Bender Furthermore, I stated that her that I had written
no other report on Taneshia, if I had, I would have already provided such
a report to the Federal Defenders which would already be a matter of
record. She verified with me that she had received the WRAT-III and
Bender raw data and that I had not written an additional report in the
Lawson case.

It has come to my attention that Mr. Snyder, again, wants additional
verification that he has all of the relevant raw data. The only item from
the list which he does not have which is specified would be the scoring
and profiling of the MMPI-2 from the raw data. I am providing this as an
attachment, see MMPI-2 Profile for Validity and Clinical Scales.

Please let this letter serve as a final verification that all of the materials
faxed to your office on December 17, 2006 and under this cover,
represents all of the notes, raw data, and/or reports relating to the
administration of the five tests given to Ms. Lawson by me on October 6,
2006, including, but not limited to the Wechsler Adult Intelligence
Scale-III, the Minnesota Multiphasic Personality Inventory-2, the Wide
Range Achievement Test-III, the Test of Memory Malingering; and the
Bender Motor Gestalt Test.

Theron M. Covin, Ed.D., LPC, LMFT
Fellow and Diplomate, American Board of Medical Psychotherapists
and Psychodiagnosticians

Sworn before me this 21 day of December, 2006.

Notary

My commission expires_____

My Commission Expires October 23, 2010

DEC-31-2006  16:34  FEDERAL DEFENDERS                                                    P.05



# MMPI-2™

## Minnesota Multiphasic Personality Inventory-2™

### Profile for Validity and Clinical Scales

**FEMALE**

# MMPI-2

## Assessing Personality and Psychopathology

THIRD EDITION

*John R. Graham*

Kent State University

New York    Oxford
OXFORD UNIVERSITY PRESS
2000



# 2

# Administration and Scoring

## QUALIFICATIONS OF TEST USERS

The MMPI-2 is easily administered and scored by hand or by using computerized procedures. Although these procedures can be completed by a clerk or secretary, the MMPI-2 is a sophisticated psychological test. Its use is restricted to qualified professionals who have adequate training in test theory, personality structure and dynamics, and psychopathology and psychodiagnosis. Additionally, users of MMPI-2 should have detailed knowledge of the inventory itself. Familiarity with all material included in the MMPI-2 manual is essential. Additionally, users should be familiar with MMPI-2 interpretive procedures presented in books such as this one.

## WHO CAN TAKE THE MMPI-2?

The MMPI-2 is intended for use with persons who are 18 years of age or older. The MMPI-A (Butcher et al., 1992) should be used with persons who are younger than 18. Because both the MMPI-A and MMPI-2 were normed on 18 year olds, either test can be used with persons of this age. The clinician should decide for each individual case whether to use the MMPI-A or MMPI-2 with 18 year olds. Ordinarily, the MMPI-A would probably be selected for 18 year olds who are still in high school and the MMPI-2 for 18 year olds who are in college, working, or otherwise living a more independent life-style. Obviously, there will be some cases where it is not clear which form should be used (e.g., an 18-year-old woman raising her young child but living in her parents' home). Shaevel and Archer (1996) demonstrated that the same test responses lead to lower validity scale scores and higher clinical scale scores when the MMPI-2 norms are used than when the MMPI-A norms are used. However, data are not available to permit conclusions about which norms (MMPI-2 or MMPI-A) most accurately reflect what 18 year olds are really like. Shaevel and Archer recommended that in such cases raw scores should be plotted using both sets of norms so that interpretive

14    *MMPI-2· Assessing Personality and Psychopathology*

statements can be evaluated in the context of developmental differences and influences. As long as visual disabilities or other physical problems do not interfere, there is no upper age limit to who can take the test.

The clinical condition of potential examinees is an important consideration in deciding who can take the MMPI-2. Completion of the test is a lengthy and tedious task for many individuals. Persons who are very anxious or agitated often find the task almost unbearable. Frequently it is possible to break the testing session into several shorter periods for such individuals. Also, persons who are confused may not be able to understand or to follow the standard instructions. Such persons sometimes can complete the test if the items are presented by means of a standardized audio tape. Edwards, Holmes, and Carvajal (1998) found that for college students the standard booklet administration and administration in which the examiner read items aloud and recorded responses yielded comparable MMPI-2 scores.

## ADMINISTERING THE MMPI-2

For most persons the test can be administered either individually or in groups, using the forms of the test and answer sheets most convenient for the examiner. For persons of average or above-average intelligence, without complicating factors, the testing time typically is between 1 and 1½ hours. For less intelligent individuals, or those with other complicating factors, the testing time may exceed 2 hours. Although it might at times seem more convenient to send the MMPI-2 home to be completed, this procedure is unacceptable. The test should always be completed in a professional setting with adequate supervision. This increases the likelihood that the test will be taken seriously and that the results will be valid and useful.

Before the MMPI-2 is administered, the examiner should establish rapport with the person to be tested. The best way to ensure cooperation is to explain why the MMPI-2 is being administered, who will have access to the results, and why it is in the best interest of the test taker to cooperate with the testing.

The test should be administered in a quiet, comfortable place. The examiner or a proctor should be readily available to monitor the test taking and to answer questions that may arise. Care should be taken to make sure that the test taker carefully reads the instructions and understands them. Questions that arise during the course of testing should be handled promptly and confidentially. Most questions can be handled by referring the test taker back to the standardized test instructions.

National Computer Systems (NCS) offers computer software that permits administration of the MMPI-2 by means of a personal computer. Test takers follow directions on the computer monitor, where test items are displayed, and record their responses using several identified keys on the computer keyboard. Although the results of research studies concerning the equivalence of computerized and conventional administrations of the orig-

Raymond P. Schoentock

# Instructions

## FOR THE USE OF

## Visual Motor Gestalt Test

LAURETTA BENDER, M.A., M.D.

PSYCHIATRIC DIVISION, BELLEVUE HOSPITAL

NEW YORK

Raymond P. Schoentock

PUBLISHED BY

THE AMERICAN ORTHOPSYCHIATRIC ASSOCIATION, INC.



PLATE I. Test figures adapted from Wertheimer.



ing pattern is a sensory motor pattern. Every sensory pattern has its background and orientation in relation to spatial gestalt function. A series of sensory motor experiences involves temporal patterning. Any deviation in the total organism will be reflected in the final sensory motor pattern in response to the given stimulus pattern.

Nine of Wertheimer's (10) (see Plate I) original patterns used by him for research in visual gestalt psychology have been selected and are offered to the individual to be examined, for copying. Figure A which is readily experienced as a closed figure on a background is made up of contingent circle and diagonally placed square on a horizontal plane. This is used as an introductory figure. The figures 1 to 8 are then given in sequence. Sheets of

4

PLATE II. Summary of responses for each year of age in developing children. It may be used for evaluating maturational norms and levels of retardation and regression.

'n has
func-
al pat-
ed in
nulus

used
ected
ying.
hack-
laced
ctory
ts of

plain white unlined paper 8½″ by 11″ are used. One sheet is often enough but more may be necessary especially for individuals of the lower intellectual levels or those who are confused or disturbed. A pencil with an eraser should be used. There should be no mechanical aids such as a rule or coins, etc.

The cards may be presented one at a time laid on the table at the top of the sheet of paper correctly oriented and the individual to be tested should be told simply "Here are some figures (or designs) for you to copy; Just copy them the way you see them." It may be necessary to discourage the turning of the test card to some new position. If it is not easily discouraged, it should be permitted and noted. It is well to encourage the placing of the first figure near the upper left hand corner of the paper although if the suggestion is not readily accepted, it should not be insisted upon. The orientation of the figure on the background and in the series is also a part of the gestalt function. All other instructions should be non-committal. For example, if the question is asked if the dots should be counted, the answer should be, "It is not necessary but do as you like." Several attempts at any one figure may be permitted by leaving all trials on the record. Erasures to improve lines may be permitted but not encouraged.

There is no time limit on the test and the figures should not be removed until they are reproduced. Memory does not play a role in the test. Many individuals prefer to have all of the cards before them in a pile and look at them all and orient the whole test to the sheet of paper. This can be permitted but the test should start with figure A and run through series in order. Many succeed in orienting the whole test situation to its background on the sheet of paper without this initial exploration.

This is a clinical test and it should not be so rigidly formalized as to destroy its function which is to determine the individual's capacity to experience visual motor gestalten in a spatial and temporal relationship. Deviate behavior in the course of the test should be observed and noted. It never represents a test failure. Notes may be made on the test paper of anything unusual in the way the test is organized, in the manner and behavior of the individual being tested and his reaction to the test situation.

6

Case 2:07-cr-00010-MHT-WC     Document 13-50     Filed 01/26/2007     Page 36 of 44
12/19/2008 2:06 Case 2:06-cr-00173-MHT-WC     Document 181-3     Filed 01/03/2007     Page 8 of 16
CFT     PAGE   12

# waIs-III

## WECHSLER ADULT INTELLIGENCE SCALE – THIRD EDITION

# ADMINISTRATION
# AND SCORING MANUAL

### DAVID WECHSLER

Ⓦ THE PSYCHOLOGICAL CORPORATION®
*Harcourt Brace & Company*
SAN ANTONIO
Orlando • Boston • New York • Chicago • San Francisco • Atlanta • Dallas
San Diego • Philadelphia • Austin • Fort Worth • Toronto • London • Sydney



battery. Many practicing neuropsychologists find qualitative interpretation of test performance and analysis of test errors clinically informative (Kaplan, 1988). This approach to the Wechsler scales is best exemplified by the *WAIS–R as a Neuropsychological Instrument* (Kaplan, Fein, Morris, & Delis, 1991).

## Diagnosing Giftedness

Superior intelligence is a component of "giftedness," but most definitions of giftedness also include exceptional performance in other fields such as artistic, psychomotor, and creative aptitudes; musical ability; and leadership skills. Therefore, evaluations of giftedness typically involve assessments of intellectual ability as well as other skills and talents. Furthermore, because definitions of giftedness vary from one setting to another, the examiner may need to tailor assessment procedures to fit the needs of the particular program.

The WAIS–III is suitable for identifying individuals of high intellectual ability. The ceiling for WAIS–III IQ scores has been raised to 155 (approximately 3.67 SDs above the mean). For gifted individuals, no other single measure predicts future accomplishment as well as intelligence tests do (Brody & Brody, 1976).

## → User Qualifications

Because of the complexities of test administration, diagnosis, and assessment, examiners who use the WAIS–III should have training and experience in the administration and interpretation of standardized, clinical instruments, such as the WAIS–R or other Wechsler intelligence scales. They should also have experience in testing individuals whose ages, linguistic backgrounds, and clinical, cultural, or educational histories are similar to those of the individuals they will be testing.

In most cases, examiners who use the WAIS–III will have completed some formal graduate- or professional-level training in psychological assessment. Although a trained technician can administer the subtests and score the responses under supervision, the test results should always be interpreted only by individuals with appropriate graduate or professional training in assessment. Furthermore, examiners should be familiar with the *Standards for Educational and Psychological Testing* (American Psychological Association, 1985).

It is also the responsibility of the test user to ensure that the test materials, including protocols, remain secure and are released only to professionals who will safeguard their proper use. Although review of test results with clients is appropriate and encouraged as proper clinical practice, this review

**Introduction**

should not include any disclosure or copying of test items, protocols, or other test materials that would compromise their security and validity or the value of the test as a measurement tool. Because all test items, norms, and other testing materials are copyrighted, the Rights and Permissions Department of The Psychological Corporation must approve, in writing, the copying or reproduction of any test materials. The only exception to this requirement is the copying of a completed Record Form for the purpose of conveying a client's records to another qualified professional. These user qualifications, copyright restrictions, and test security issues are consistent with the guidelines set forth in the *Standards for Educational and Psychological Testing* (American Psychological Association, 1985).

10

General Testing Considerations

## →Standard Procedures

The norms on the WAIS–III were established on the basis of standard administration and scoring procedures under uniform testing conditions. So that an individual's test results are interpretable according to national norms, the WAIS–III should be administered according to the administration and scoring procedures as well as the recommended testing conditions. This chapter describes the general guidelines, and Chapter 4 provides detailed administration and scoring procedures. Deviation from the standard procedures, such as changes in the phrasing or presentation of a test item or modifications of time limits, could reduce the validity and reliability of test results (American Psychological Association, 1985).

Although the overall format of the WAIS–III has not changed from that of the WAIS–R, specific administration procedures within several subtests were modified significantly, and three new subtests (Matrix Reasoning, Symbol Search, and Letter–Number Sequencing) have been added.

Adherence to the standardized procedures does not mean that the battery must be administered in a rigid or unnatural manner. Using a natural conversational tone, encouraging interest in the tasks, and reinforcing the examinee's efforts all contribute to a structured, pleasant, and professional testing situation.

## Administration Time

As described in Chapter 1 (see Figure 1.1), which subtests are administered varies according to the type of scores needed—traditional IQ scores, Index scores, or both. Administration of the 11 WAIS–III subtests that yield the three IQ scores requires approximately 75 minutes, with a range of 60–90 minutes. Administration of the 11 WAIS–III subtests that yield the four Index scores requires about 60 minutes, with a range of 45–75 minutes. Administration of the 13 subtests to obtain both IQ scores and Index scores requires about 80 minutes, with a range of about 65–95 minutes. These times do not include administration of Object Assembly, which requires an additional 10–15 minutes. Most important, however, the examinees' levels of ability and test-taking styles and your own test-administration techniques may result in longer or shorter testing times than those indicated.

Make every effort to give the entire test in one session. However, if the examinee becomes fatigued, stop testing and allow him or her to rest. Try to complete testing after a short break. Stopping, if necessary, should take place at the end of a subtest. If a single testing session is not possible due to the clinical condition, inadequate motivation, or fatigue of the

28

**General Testing Considerations**

In the example in Figure 3.3, the examinee obtained a perfect score on Item 6 but failed Item 7. The examiner began to administer the preceding items in reverse sequence, beginning with Item 5, which the examinee failed. The examiner continued to administer the reversal items in reverse sequence, and the examinee obtained perfect scores on Items 4 and 3, two consecutive items, thereby meeting the criterion for proceeding with the subtest. The examinee is awarded perfect scores for all unadministered reversal items (Items 1 and 2), and the examiner proceeds with Item 8.

### 4. Similarities



**Figure 3.3.**    Example of Reverse-Sequence Procedure: Starting Item Is Passed But Adjacent Reversal Item Is Failed

40

General Testing Considerations

- If the examinee replies with a string of responses that vary widely in quality, with no response spoiling the response, score the examinee's best response. For example, if the examinee responds to Similarities Item 2 with *They are both sweet, they are both fruits, and they both have skin,* the best response, *They are both fruits,* is scored. Two points are awarded, even though the other responses are 0 points and 1 point, respectively. For the two-concept Comprehension items, if the examinee gives several responses, the two best responses are scored.

# Completing the Record Form

The WAIS–III Record Form is designed to facilitate administration and scoring of the test. It also includes optional procedures that can assist in the interpretation of test results. Its format deviates significantly from that of the WAIS–R Record Form. For each subtest, the WAIS–III Record Form provides space to record and score the examinee's responses to the test items and also provides information such as starting points and discontinue rules, time limits, and other prompts to help facilitate proper test administration. It also includes a stopwatch icon near the subtest name for any subtest with timing requirements. The Record Form also allows you to record extra information that can be helpful in interpreting scores, both at the item level and at the composite level. For example, the page for Block Design includes grids for recording the final designs constructed by the examinee; this information can provide insight into the errors that the examinee has made. In addition, the WAIS–III Record Form includes the Digit Symbol—Coding Response Sheet (which should be handed to the examinee). For the optional procedures, Digit Symbol—Incidental Learning and Digit Symbol—Copy, separate pages are provided in the WAIS–III Response Booklet.

The last four pages of the Record Form compose the summary section. The summary section is printed on a single long sheet that folds out and that can be detached from the rest of the Record Form and filed.

The Demographics Page provides space for calculating the examinee's age, for recording pertinent demographic information, and for recording your observations of the examinee's test-taking behaviors.

When the pages of the summary section are folded out, the Score Conversion Page is on the right and the Profile Page is on the left. This layout makes it convenient for transcribing subtest raw scores from the subtest pages to the Score Conversion Page. The Score Conversion Page provides space for recording subtest raw scores, subtest scaled scores, and the optional reference-group subtest scaled scores and for calculating the sums of

50

Case 2:07-cr-00010-MHT-WC    Document 13-50    Filed 01/26/2007    Page 42 of 44
12/15/2002 Case 2:06-cr-00173-MHT-WC    Document 181-3    Filed 01/03/2007    Page 14 of 16
CF1
PAGE    18



Administration and Scoring

**Completing the Record Form**

t vary widely in
e the examinee's
s to Similarities
nd they both have
. Two points are
ts and 1 point,
ms, if the examinee
cored.

listration and scor-
an assist in the
ntly from that of the
ord Form provides
e test items and also
inue rules, time
ministration. It also
subtest with timing
extra information
n level and at the
ncludes grids for
this information
made. In addition,
ding Response
optional proce-
ol—Copy, separate

mary section. The
ds out and that can

e examinee's age,
r recording your

ne Score Conver-
. This layout makes
subtest pages to
ovides space for
ne optional
the sums of

subtest scaled scores for the various scales. On this page, you can also deter-
mine the examinee's strengths and weaknesses at the subtest level.

The Profile Page provides the spaces for recording the IQ scores and Index
scores and the percentile ranks and confidence levels for those scores. On
the graphs of the Profile Page, you can plot the subtest scaled scores, IQ
scores, and Index scores to create a visual representation of the examinee's
performance.

Finally, the Discrepancy Analysis Page provides space for calculating and
recording significant differences between the examinee's Verbal and
Performance IQ scores and between the various Index scores and the
frequency of those differences (cumulative percentages). On this page,
you may also record the difference between the examinee's longest Digits
Forward and longest Digits Backward on Digit Span.

# Calculating the Examinee's Chronological Age

The examinee's age is needed to locate the correct norms tables. To obtain
the examinee's exact age on the date of testing, enter the date of testing and
the examinee's birth date in the appropriate spaces on the Record Form, as
illustrated in Figure 3.6. (If the examinee was tested in two sessions, use only
the first testing date in the calculation.) Subtract the date of birth from the
date of testing.

For these computations, all months are assumed to have 30 days. Also, days
of age are not rounded up to the nearest month. For example, the age of 16
years 1 month 26 days is not rounded up to 16 years 2 months. Likewise, a
computed age of 19 years 11 months 29 days is not rounded up to 20 years 0
months, even though the examinee is nearly that age.

|  | Year | Month | Day |
|---|---|---|---|
| Date Tested | 97 | 6̶ 5 | 2̶3̶ 53 |
| Date of Birth | 52 | 4 | 27 |
| Age | 45 | 1 | 26 |

**Figure 3.6.**   Example of Calculating the Examinee's Chronological Age

General Testing Considerations

# Recording Responses and Scores

It is recommended that when administering the WAIS–III, you make an entry on the Record Form for all items the examinee attempts, thereby distinguishing them from omitted or unadministered items. The entry can be a score, an indication of whether the item is passed or failed, or the examinee's actual response. When uncertain about the scoring of a response, record enough information about the response to permit later evaluation. For the Verbal subtests, you may prefer to record the examinee's response verbatim because the examinee's responses often must be evaluated after the testing session for in-depth, accurate scoring. Also, later qualitative evaluation of responses may provide useful clinical information (e.g., recurrent instances of distorted thinking) or may reveal that the examinee was rarely able to improve on responses that were queried.

The following standard abbreviations may be useful in recording responses:

P (Pass)—The examinee responded or performed correctly.

F (Fail)—The examinee responded or performed incorrectly.

Q (Question/Query)—A query or question was asked to clarify the examinee's response.

DK (Don't know)—The examinee indicated by shaking his or her head or by saying, "I don't know."

NR (No response)—The examinee made no response to an item, either verbal or gestural.

INC (Incomplete)—The examinee did not complete an item within the time limit.

PC (Points correctly)—The examinee pointed to the missing part or correct choice on Picture Completion or Matrix Reasoning subtest.

PX (Points incorrectly)—The examinee pointed to an incorrect missing part or choice on the Picture Completion or Matrix Reasoning subtest.

For timed subtests for which the examinee can receive partial credit or bonus points, the Record Form includes a Completion Time column. Recording the examinee's completion time of items or subtests is especially important for determining bonus points and, for many subtests, for determining whether the examinee passes or fails an item.

52

Case 2:07-cr-00010-MHT-WC    Document 13-50    Filed 01/26/2007    Page 44 of 44
12/19/2006 Case 2:06-cr-00173-MHT-WC    Document 181-3    Filed 01/03/2007    Page 16 of 16
PAGE   20

make an
, thereby
he entry can
d, or the
g of a response,
t evaluation.
e's response
luated after
qualitative eval-
e.g., recurrent
ee was rarely

ing responses:
ly.
ctly.
clarify the

is or her head or

an item, either

tem within the

ssing part or
ng subtest.

icorrect missing
oning subtest.

al credit or
column.
sts is especially
ests, for deter-

For all of the subtests, the possible range of points for each item is given at the top of the Score column in the Record Form; simply enter the number of points for each response in the appropriate space. For some subtests, such as Block Design, every possible score according to the completion-time range is shown for an item. Circle the appropriate score for each response and calculate the total raw score for the subtest by summing the circled item scores.

# Obtaining Scaled Scores, IQ Scores, and Index Scores

After the responses for each WAIS–III subtest have been scored, use the following steps to determine the examinee's raw and scaled subtest scores. The scaled scores are then used to derive the Verbal, Performance, and Full Scale IQ scores and the four Index scores.

## Converting Raw Scores to Scaled Scores

Figures 3.7–3.10 are examples of reduced, completed Score Conversion, Profile, and Discrepancy Analysis pages of the Record Form summary section, with pertinent sections labeled. For example, in Figure 3.7, a completed Score Conversion Page, the raw score conversion table is labeled A. The following discussion refers to these labeled sections. The examples are based on the performance of a 45-year-old examinee.

To convert subtest raw scores to scaled scores, use the following steps and Table A.1 and Table A.2 in Appendix A. Scaled scores are based on the examinee's age (as calculated on the Demographics Page of the Record Form). The examinee's age in years determines which page of the table should be used. Each page of Table A.1 provides the scaled scores for one of the 13 age groups; each age group includes a span of 2–10 years. In a large box at the top of each page of the table, the age span is clearly marked.

1. After you have obtained the raw scores for each subtest by summing the item scores, transfer the raw scores to the Raw Score column of the raw score conversion table on the Score Conversion Page of the Record Form (labeled A in Figure 3.7). The subtests are listed according to administration order.

2. Turn to the appropriate page of Table A.1. The subtests are ordered according to Verbal or Performance scale and administration order. The Verbal subtests appear at the top of the page. For each subtest, find the raw score under the subtest name. Then, reading across from this raw score to the extreme left or extreme right column (printed in color), find the equivalent scaled score for the subtest.

53

# <u>MINUTES</u>

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

HON. ___MYRON H. THOMPSON,___ JUDGE          AT MONTGOMERY  ALABAMA

DATE COMMENCED  <u>January 4, 2007</u>          AT  11:35  A.M./P.M.

DATE COMPLETED  <u>January 4, 2007</u>          AT  11:40  A.M./P.M.

UNITED STATES OF AMERICA                     Criminal Action
                                             2:06cr173-MHT
        VS.

TANESHIA MICHELLE LAWSON

---

| <u>PLAINTIFF/GOVERNMENT</u> | APPEARANCES | <u>DEFENDANT(S)</u> |
|---|---|---|
| AUSA Christopher Synder | X | Atty Christine A. Freeman |
| | X | Atty Pamela V. Kemp |
| | X | |
| | X | |
| | X | |

<u>COURT OFFICIALS PRESENT:</u>

| Anthony Green, | Daniel Korobkin, | Mitchell Reisner, |
|---|---|---|
| Courtroom Clerk | Law Clerk | Court Reporter |

---

<u>PROCEEDINGS:</u>

( )  NONJURY TRIAL
(x)  OTHER PROCEEDING:        TELEPHONE CONFERENCE CALL


11:35 a.m.                    Telephone conference call commenced to
                              disclose potential conflict regarding Dr.
                              Theron Covin. Court directs parties to
                              research, and for defense counsel to discuss
                              with client and notify court on Monday
                              1/8/07, of any issues of conflict regarding
                              court's representation of Dr. Theron Covin in
                              the past.
11:40 a.m.                    Conference call concluded.

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **CR. NO. 2:06-cr-173-MHT** |
| | **)** | |
| **TANESHIA MICHELLE LAWSON** | **)** | |

---

### United States's Response to Defendant's
### Motion in Limine to Exclude Sylvan Learning Center Records

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and hereby responds to Defendant Taneshia Michelle Lawson's motion in limine as follows.

In her motion, Lawson seeks to bar the Government from introducing any evidence concerning Lawson's examination at Sylvan. The Government does not intend to introduce any such evidence in its case in chief. Therefore, the Court should deny the motion.

Respectfully submitted this 5th day of January, 2006,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: christopher.a.snyder@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2006, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the

following: Christine Freeman.

<div align="right">

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

</div>

# MINUTES

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

HON. ___MYRON H. THOMPSON,___ JUDGE        AT MONTGOMERY  ALABAMA

DATE COMMENCED  _January 5, 2007_          AT  10:05  A.M./P.M.

DATE COMPLETED  _January 5, 2007_          AT  4:50   A.M./P.M.

UNITED STATES OF AMERICA                   Criminal Action
                                           2:06cr173-MHT
          VS.

TANESHIA MICHELLE LAWSON

| PLAINTIFF/GOVERNMENT | APPEARANCES | DEFENDANT(S) |
|---|---|---|
| AUSA Christopher Snyder | X | Atty Christine A. Freeman |
|  | X | Atty Pamela V. Kemp |
|  | X |  |
|  | X |  |
|  | X |  |

COURT OFFICIALS PRESENT:

| Anthony Green, | Daniel Korobkin, | Mitchell Reisner, |
|---|---|---|
| Courtroom Clerk | Law Clerk | Court Reporter |

PROCEEDINGS:

( )  NONJURY TRIAL
(x)  OTHER PROCEEDING:        MOTIONS IN LIMINE HEARING

| | |
|---|---|
| 10:05 a.m. | Court commenced regarding [129] Motion in Limine to exclude school records and lay testimony, [134] Motion in Limine in opposition to 404(b), [139] Motion in Limine for reconsideration of Court's order [110 & 141], [164] Motion on Limine to exclude proposed cross-racial identification and [178] Motion in Limine. Counsels' statements as to how to proceed as stated on the record. Government states they do not intend to use Sylvan Learning Center records. Court will deny as moot [178] Motion in Limine regarding Sylvan Learning Center Records. Defendant's evidence commenced.  Defendant's Exhibits 1 & 2 offered and admitted by Court. |
| 11:28 a.m. | Break. |
| 11:45 a.m. | Defendant's evidence continues. |
| 12:35 p.m. | Break. |

page 2
2:06cr173-MHT USA v Lawson

| | |
|---|---|
| 1:35 p.m. | Defendant's evidence continues. |
| 3:16 p.m. | Break. |
| 3:32 p.m. | Defendant's evidence continues. |
| 3:50 p.m. | Break. |
| 4:15 p.m. | Defendant's evidence continues. |
| 4:28 p.m. | Break. |
| 4:36 p.m. | Defendant's evidence continues. Defendant's **ORAL MOTION** to continue hearing to 1/29/07 **ORAL MOTION** to continue trial from 2/5/07 term. Order to issue continuing hearing and continuing trial. Court directs that [139] Motion to Reconsider and [129] Motion in Limine to Exclude School Records and Lay Testimony are under submission, [134] Motion in Limine to Exclude 404(b) Evidence and [164] Motion in Limine to Exclude Cross-Racial Identification are continued until hearing reset date. |
| 4:50 p.m. | Hearing concluded. |

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA

     v                                    2:06cr173-MHT

TANESHIA MICHELLE LAWSON

_____

   GOVERNMENT                                    DEFENDANT

<u>WITNESS LIST</u>

<u>1. LORI BUTTS</u> _____        <u>2. THERON COVIN</u> _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

| | GOVERNMENT'S EXHIBITS | | | | | UNITED STATES OF AMERICA |
| | | | | | | v |
| | MOTIONS IN LIMINE HEARING | | | | | TANESHIA MICHELLE LAWSON<br>2:06cr173-MHT |

| | | | | | | JUDGE MYRON H. THOMPSON<br>MITHCELL REISNER, COURT REPORTER |
| ADMITTED | DATE OFFERED | DATE IDENTIFIED | NO | WITNESS | OBJ | DESCRIPTION |
| --- | --- | --- | --- | --- | --- | --- |
| * | 1/5/2007 | 1/5/2007 | 1 | | X | Final Order re Theron Michael Covin License No. 115 before the Alabama Board of Examiners in Counseling |
| * | 1/5/2007 | 1/5/2007 | 2 | | X | Various Letters concerning Theron M. Covin |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | *Ruling Reserved |

| | | | | | | UNITED STATES OF AMERICA |
|---|---|---|---|---|---|---|
| DEFENDANT'S EXHIBITS | | | | | | v |
| MOTIONS IN LIMINE HEARING | | | | | | TANESHIA MICHELLE LAWSON 2:06cr173-MHT |

| | | | | | | JUDGE MYRON H. THOMPSON MITCHELL REISNER, COURT REPORTER |
|---|---|---|---|---|---|---|
| ADMITTED | DATE OFFERED | DATE IDENTIFIED | NO | WITNESS | OBJ | DESCRIPTION |
| 1/5/2007 | 1/5/2007 | 1/5/2007 | 1 | Butts | | Miranda Waiver |
| 1/5/2007 | 1/5/2007 | 1/5/2007 | 2 | | | Lori Butts' Resume |
| 1/5/2007 | 1/5/2007 | 1/5/2007 | 3 | | | Theron Covin's Resume |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | *exhibits located in brown binder with case file |

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA     )
                             )
        v.                   )    CRIMINAL ACTION NO.
                             )      2:06cr173-MHT
TANESHIA MICHELLE LAWSON     )


                          ORDER

     It is ORDERED as follows:

     (1) Defendant Taneshia Michelle Lawson's motion in
limine to exclude Sylvan Learning Center records (doc.
no. 178) is denied as moot.

     (2) Defendant Lawson's motion to reconsider (doc. no.
139) and the government's motion in limine to exclude
school records and lay testimony regarding mental
capacity (doc. no. 129) are under submission.

     (3) Defendant Lawson's unopposed motion to continue
the hearing on 404(b) evidence (doc. no. 185) is granted.

     (4) Defendant Lawson's motions in limine to exclude

Rule 404(b) evidence (doc. no. 134) and to exclude cross-racial identification (doc. no. 164) are reset for hearing on February 2, 2007, at 10:30 a.m., in Courtroom 2FMJ of the Frank M. Johnson, Jr. United States Courthouse Complex, One Church Street, Montgomery, Alabama.

DONE, this the 8th day of January, 2007.


　　　　　　　　　　　　/s/ Myron H. Thompson
　　　　　　　　　　UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA     )
                             )
        v.                   )    CRIMINAL ACTION NO.
                             )      2:06cr173-MHT
TANESHIA MICHELLE LAWSON     )


### ORDER

At a pretrial hearing on various motions in limine filed by both parties, defense counsel made an oral motion for a continuance, followed by an unopposed written motion.  For the reasons set forth below, the court finds that jury selection and trial, now set for February 5, 2007, should be continued pursuant to 18 U.S.C. § 3161(h)(8).

While the granting of a continuance is left to the sound discretion of the trial judge, <u>United States v. Stitzer</u>, 785 F.2d 1506, 1516 (11th Cir. 1986), the court

is limited by the requirements of the Speedy Trial Act,
18 U.S.C. § 3161.  The Act provides in part:

> "In any case in which a plea of not
> guilty is entered, the trial of a
> defendant charged in an information or
> indictment with the commission of an
> offense shall commence within seventy
> days from the filing date (and making
> public) of the information or
> indictment, or from the date the
> defendant has appeared before a judicial
> officer of the court in which such
> charge is pending, whichever date last
> occurs."

Id. § 3161(c)(1).  The Act excludes from the 70-day
period any continuance based on "findings that the ends
of justice served by taking such action outweigh the best
interest of the public and the defendant in a speedy
trial."  Id. § 3161(h)(8)(A).  In granting such a
continuance, the court may consider, among other factors,
whether the failure to grant the continuance "would be
likely to make a continuation of such proceeding
impossible, or result in a miscarriage of justice," id.
§ 3161(h)(8)(B)(i), and whether the failure to grant the
continuance "would deny counsel for the defendant ... the

2

reasonable time necessary for effective preparation, taking into account the exercise of due diligence," id. § 3161(h)(8)(B)(iv).

The court concludes that, in this case, the ends of justice served by granting a continuance outweigh the interest of the public and the defendant in a speedy trial. Defense counsel has represented to the court that Lawson is due to give birth just before her trial is set to begin. In that event, Lawson's appearance at her own trial might be impossible for health reasons, which would impact her Sixth Amendment right to be present at her own trial. Even if Lawson's physical presence were not impossible, a medical event as significant as childbirth would make it unduly burdensome, if not impossible, for Lawson to assist counsel in the preparation of her defense to the extent contemplated by the Sixth Amendment.

Accordingly, the court having found that a continuance of this case conforms with 18 U.S.C. § 3161(h)(8), it is ORDERED as follows:

(1) Defendant Taneshia Michelle Lawson's motion to continue trial (doc. no. 184) is granted.

(2) Jury selection is reset for March 12, 2007, at 10:00 a.m., before the Hon. Mark E. Fuller, in Courtroom 2A of the Frank M. Johnson Jr. United States Courthouse Complex, One Church Street, Montgomery, Alabama, followed by trial on March 19, 2007, at 9:00 a.m., before the Hon. Myron H. Thompson, in Courtroom 2FMJ.

DONE, this the 8th day of January, 2006.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **V.** | **)** | **CASE NO: 2:06-cr-173-MHT** |
| | **)** | |
| **TANESHIA M. LAWSON** | **)** | |

## DEFENDANT'S POSITION STATEMENT
## REGARDING  POTENTIAL CONFLICT

**COMES NOW** Taneshia Lawson, the defendant, and states, through undersigned

counsel, that she believes no conflict or requirement of recusal is posed by the  Court's past

representation, as a private attorney, of defense expert Mr. Theron Covin ("Mr. Covin") in

a civil matter approximately thirty years ago.  In addition, Ms. Lawson waives any concern

regarding alleged bias due to these circumstances.

In support of this position, defendant would state that the circumstances of the

representation have been fully disclosed to all counsel, all parties and the witness, as required

by 28 U.S.C. § 455 (e).[1]  These circumstances do not present any basis in which the Court's

impartiality might reasonably be questioned.  See 28 U.S.C. § 455(a).  Further, these

---

[1]On January 4, 2007, this Court, undersigned counsel, and government counsel
participated in a conference call in which it was disclosed to all that the Court had recently
recalled representing the defense witness Theron Covin in either 1975 or 1976 and that, on
questioning by defense counsel, Dr. Covin had confirmed the representation and had recalled a
second representation at the same time, which consisted of a letter written on his behalf, which
the Judge had not recalled.  On January 5, 2007, in open court, counsel confirmed that all details
of the matter had been discussed with Ms. Lawson and Ms. Lawson has no objection to the case
proceeding in this Court.

1

circumstances do not encompass any of the enumerated grounds for alleged bias identified in 28 U.S.C. § 455(b). Nor is there any appearance of impropriety or reliance on an improper basis for any decision-making by the Court.

**WHEREFORE**, the Defendant respectfully prays that this position be adopted.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

2

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2007, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following:

> Christopher A. Snyder, Esquire
> Assistant United States Attorney
> One Court Square, Suite 201
> Montgomery, Alabama 36104

> Respectfully submitted,

> **s/Christine A. Freeman**
> **CHRISTINE A. FREEMAN**
> **TN BAR NO.: 11892**
> Attorney for Taneshia Lawson
> Federal Defenders
> Middle District of Alabama
> 201 Monroe Street, Suite 407
> Montgomery, AL 36104
> TEL: (334) 834-2099
> FAX: (334) 834-0353
> E-Mail: Christine_Freeman@fd.org

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO.  2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA MICHELLE LAWSON** | ) | |
| | ) | |

---

### United States' Position Statement Regarding Potential Conflict

The United States  believes no conflict or requirement of recusal is posed by the Court's past representation, as a private attorney, of defense expert Dr. Theron Covin in a civil matter approximately thirty years ago.

The relationship between the Court and Covin is too remote and too innocuous to warrant disqualification under 28 U.S.C. § 455(a). *Chittimacha Tribe of Louisiana v. Harry L. Laws Company, Inc.,* 690 F.2d 1157, 1166 (5th Cir.1982) (recusal not warranted where judge had represented the defendant in unrelated matters at least six years earlier); *Jenkins v. Bordenkircher,* 611 F.2d 162, 165-67 (6th Cir.1979) (recusal not required where trial judge had prosecuted defendant for several unrelated crimes during the period four to thirteen years prior to the time of trial); *Gravenmier v. United States,* 469 F.2d 66, 67 (9th Cir.1972) (where trial judge was of counsel in prior prosecution six years before present unrelated prosecution, recusal not required); *Darlington v. Studebaker-Packard Corp.,* 261 F.2d 903, 906 (7th Cir. 1959) (recusal not warranted where trial judge had represented defendant in unrelated matters for a period of four to five years which ended three to four years before judge's decision); *Royal Air Maroc v.*

*Servair, Inc.,* 603 F.Supp. 836 (S.D.N.Y.1985) (prior representation by trial judge of defendant's parent corporation in unrelated matter twelve years earlier no basis for recusal).

Moreover nothing in the Code of Conduct for United States Judges prohibits the Court from deciding this issue. *See* Code of Conduct for United States Judges, *available at* http://www.uscourts.gov/guide/vol2/ch1.html#intro, (2000). Thus, the United States does not object to the Court's continuing to oversee of this case.

Respectfully submitted this 9th day of January, 2007,

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/ Christopher Snyder
> CHRISTOPHER A. SNYDER
> Assistant United States Attorney
> One Court Square, Suite 201
> Montgomery, AL 36104
> Phone: (334) 223-7280
> Fax: (334) 223-7135
> E-mail: christopher.a.snyder@usdoj.gov

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO. 2:06-cr-173-MHT** |
| | ) | |
| **TANESHIA MICHELLE LAWSON** | ) | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2007, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA       )
                               )    CRIMINAL ACTION NO.
        v.                     )      2:06cr173-MHT
                               )         (WO)
TANESHIA MICHELLE LAWSON       )

OPINION

This _sua sponte_ memorandum is issued to explain my

decision against recusal based on my private

representation, approximately 30 years ago, of a client

who has now become an expert witness in the criminal case

at bar, in which defendant Taneshia Michelle Lawson is

charged with theft of government property and conspiracy

to commit theft of government property.

In preparing for a hearing on Lawson's motion to

reconsider this court's earlier orders granting the

government's motions to exclude psychiatric testimony

regarding Lawson's diminished mental capacity, _United_

States v. Lawson, ___ F.Supp.2d ____, 2006 WL 3206268
(M.D. Ala. 2006) (Thompson, J.); United States v. Lawson,
___ F.Supp.2d ____, 2006 WL 3075707 (M.D. Ala. 2006)
(Thompson, J.), I realized that the defense's expert
witness on Lawson's mental condition, Theron Covin, was
my client in employment-related litigation sometime
before I took the bench in 1980.  Further inquiry
directed to defense counsel revealed that Covin remembers
my representing him on two occasions: once in a lawsuit
he filed against Troy State University in 1975 or 1976,
and once again shortly thereafter in a matter concerning
a contract dispute that did not reach the litigation
stage.  I immediately disclosed these facts in an on-the-
record conference call on January 4, 2007, and neither
party objected to my continuing to preside over the case.
Nonetheless, I asked the parties to look into the matter
and provide further briefing, if appropriate, by January
8.  Having received said briefings (doc. nos. 189 & 190),
wherein the parties remain in agreement that there is no

2

basis for recusal, and having conducted my own research regarding the issue, I conclude that recusal is not warranted.

Two federal statutes govern judicial disqualification due to conflicts of interest, bias, and the like. One statute, 28 U.S.C. § 144, operates only when "a party ... makes and files a timely and sufficient affidavit" alleging personal bias or prejudice. Since no such affidavit has been filed in this case, § 144 does not apply.

The second statute, 28 U.S.C. § 455, "places a judge under a self-enforcement obligation to recuse himself where the proper legal grounds exist." United States v. Alabama, 828 F.2d 1532, 1540 (11th Cir. 1987). That statute enumerates several specific bright-line grounds for disqualification, 28 U.S.C. § 455(b),[1] and also

---

1. A judge shall recuse himself in the following circumstances:

"(1) Where he has a personal bias or prejudice concerning a party, or
(continued...)

3

1.    (...continued)
      personal    knowledge    of    disputed
      evidentiary   facts    concerning    the
      proceeding;

          "(2) Where in private practice he
      served  as  lawyer  in  the  matter  in
      controversy, or a lawyer with whom he
      previously practiced law served during
      such association as a lawyer concerning
      the matter, or the judge or such lawyer
      has been a material witness concerning
      it;

          "(3)  Where  he  has  served  in
      governmental  employment  and  in  such
      capacity   participated   as   counsel,
      adviser or material witness concerning
      the proceeding or expressed an opinion
      concerning the merits of the particular
      case in controversy;

          "(4) He knows that he, individually
      or as a fiduciary, or his spouse or
      minor child residing in his household,
      has a financial interest in the subject
      matter in controversy or in a party to
      the proceeding, or any other interest
      that could be substantially affected by
      the outcome of the proceeding;

          "(5) He or his spouse, or a person
      within the third degree of relationship
                                  (continued...)

4

contains a more general catch-all provision requiring a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," id. § 455(a).  This case does not involve any of the specific circumstances enumerated in § 455(b), so I must answer the more general question, under § 455(a), of whether my attorney-client relationship with Covin, which ended

---

1.   (...continued)
     to either of them, or the spouse of such
     a person:

          (i) Is a party to the proceeding,
     or an officer, director, or trustee of
     a party;

          (ii) Is acting as a lawyer in the
     proceeding;

          (iii) Is known by the judge to have
     an interest that could be substantially
     affected by the outcome of the
     proceeding;

          (iv) Is to the judge's knowledge
     likely to be a material witness in the
     proceeding."

28 U.S.C. § 455(b).

approximately 30 years ago, might cause my partiality in this proceeding to be reasonably questioned.

The standard under § 455(a) is an objective reasonableness test, specifically, "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal [would be based] would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988). The purpose of § 455 is to "foster impartiality by requiring even its appearance." Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1165 (5th Cir. 1982).

The case law surrounding 455(a) is generally in agreement that a judge's impartiality would not be reasonably questioned simply because the judge's former client now appears as a witness in an unrelated matter over which the judge is presiding. See David v. City and County of Denver, 101 F.3d 1344, 1350-51 (10th Cir. 1996) (recusal not required based on trial judge's

representation of police chief more than 20 years before he appeared before judge as witness in unrelated lawsuit); <u>Alexander v. Chicago Park District</u>, 773 F.2d 850, 856-57 (7th Cir. 1985) (judge represented witness 25 years ago); <u>M.K. Metals, Inc. v. National Steel Corp.</u>, 593 F.Supp. 991, 994 (N.D. Ill. 1984) (Shadur, J.) (principal of company judge represented over four years ago called as witness); <u>see also</u> <u>Chitimacha Tribe</u>, 690 F.2d at 1166 (judge represented party in unrelated matter at least six years ago).  Based on these cases, plus the fact that approximately 30 years have elapsed since I represented Covin, I am confident that my prior association with Covin would not lead an objective, disinterested, lay observer to entertain a significant doubt about my impartiality.

In addition to the federal disqualification statutes, I have also consulted ethics rules on recusal.  According to the Judicial Conference Committee on Codes of Conduct:

> "If a former client of the judge is a <u>party</u>, but the litigation is totally

7

> unrelated to the earlier representation,
> whether recusal is required depends upon
> such factors as the length of time since
> the earlier representation ended; the
> nature, duration, and intensity of the
> earlier representation; the presence or
> absence of ongoing personal
> relationships; etc."

Judicial Conference Committee on Codes of Conduct, Compendium of Selected Opinions § 3.6-5(b) (2005) (emphasis added).[2]

Although Covin is a witness in this case, and not a party, I must assume that similar factors should be considered. Here, the litigation is of course totally unrelated to my representation of Covin before I assumed the bench; it has been approximately 30 years since I represented him; my representation of Covin was relatively brief and routine; and I do not have, nor have I ever had, any personal association with Covin outside of our lawyer-client relationship which ended decades

_____

2. The Compendium of Selected Opinions is volume II, chapter 5 of the Administrative Office of the United States Courts' Guide to Judiciary Policies and Procedures.

8

ago.  Therefore, I conclude that I am not prohibited by

the Code of Conduct for United States Judges from hearing

a case in which Covin is an expert witness.[3]

Accordingly, despite my having once represented a

witness, my recusal is not warranted in this case.

DONE, this the 9th day of January, 2007.

                        /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE

---

3.  Defense counsel agreed for Lawson to waive the
so-called conflict on the record.  Because the so-called
conflict is clearly meritless, I no longer think that is
necessary.

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06cr173-MHT |
| | ) | |
| TANESHIA MICHELLE LAWSON | ) | |
| | ) | |

### Motion for Leave to Dismiss Indictment

The United States requests leave to dismiss the Indictment filed against Taneshia Michelle

Lawson on July 11, 2006.  A new indictment was returned against Lawson on January 17, 2007.

United States requests, however, that the July 11, 2006 Indictment remain in effect against all of

Lawson's other co-defendants in this case.

Respectfully submitted this the 24th day of January, 2007.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Christopher A. Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

|                                  |     |                          |
|----------------------------------|-----|--------------------------|
| **UNITED STATES OF AMERÍCA**     | )   |                          |
|                                  | )   |                          |
| v.                               | )   | **CR. NO. 2:06cr173-MHT** |
|                                  | )   |                          |
| **TANESHIA MICHELLE LAWSON**     | )   |                          |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2007, I filed the foregoing with the Clerk of the Court

and will mail copies of such filing to all attorneys of record.

Respectfully submitted,
LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher A. Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334.223.7280
334.223.7135 fax
christopher.a.snyder@usdoj.gov

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06cr173-MHT |
| | ) | |
| TANESHIA MICHELLE LAWSON | ) | |

## O R D E R

Upon consideration of the Motion for Leave to Dismiss the Indictment filed on July 11, 2006, heretofore filed in the above styled cause as to Taneshia Michelle Lawson, and for good cause shown, the Court is of the opinion that the motion should be and the same hereby is granted. It is, therefore, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that said motion be and the same is hereby granted.

DONE this ____ day of January, 2007.

_____
UNITED STATES DISTRICT JUDGE

## DISMISSAL OF INDICTMENT

Comes now the United States of America with leave of the Court first had and obtained and dismisses the Indictment heretofore filed on July 11, 2006, in the above styled cause as to Taneshia Michelle Lawson.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Christopher A. Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135

# <u>MINUTES</u>

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

HON.   <u>MYRON H. THOMPSON,</u>   JUDGE          AT MONTGOMERY  ALABAMA

DATE COMMENCED <u>January 25, 2007</u>          AT  8:31  A.M./P.M.

DATE COMPLETED <u>January 25, 2007</u>          AT  8:50  A.M./P.M.

UNITED STATES OF AMERICA                 Criminal Action
                                         2:06cr173-MHT
            VS.                          2:06cr7-MHT

TANESHIA MICHELLE LAWSON

---

|       <u>PLAINTIFF/GOVERNMENT</u>       | APPEARANCES |          <u>DEFENDANT(S)</u>          |
|-------------------------------------|-------------|-------------------------------------|
| AUSA Christopher Synder             |      X      | Atty Christine A. Freeman           |
|                                     |      X      |                                     |
|                                     |      X      |                                     |
|                                     |      X      |                                     |
|                                     |      X      |                                     |

<u>COURT OFFICIALS PRESENT:</u>

| Anthony Green,    | Daniel Korobkin, | Mitchell Reisner, |
|-------------------|------------------|-------------------|
| Courtroom Clerk   | Law Clerk        | Court Reporter    |

---

<u>PROCEEDINGS:</u>

( )  NONJURY TRIAL
(x)  OTHER PROCEEDING:          TELEPHONE STATUS CONFERENCE CALL


8:31 a.m.                       Telephone conference call commenced. Court
                                wants to know reasoning why a superseding
                                indictment was not filed in lieu a new case
                                against the defendant. Atty Synder's
                                statements as to the filing of a new case
                                against the defendant. Parties statements as
                                to how to include 06cr173 into new case
                                07cr10 as stated on the record. Court will
                                dismiss all pending motions in 06cr173
                                without prejudice with leave to renew in
                                07cr10, with the exception of the
                                government's motion to dismiss and cancel all
                                scheduled motions hearing in 06cr173.
8:50 a.m.                       Conference call concluded.

# __MINUTES__

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

HON. __MYRON H. THOMPSON,__ JUDGE          AT MONTGOMERY  ALABAMA

DATE COMMENCED  __January 25, 2007__          AT  10:50  A.M./P.M.

DATE COMPLETED  __January 25, 2007__          AT  11:02  A.M./P.M.

UNITED STATES OF AMERICA                    Criminal Action
                                            2:06cr173-MHT
          VS.                               2:06cr7-MHT

TANESHIA MICHELLE LAWSON

---

| PLAINTIFF/GOVERNMENT | APPEARANCES | DEFENDANT(S) |
|---|---|---|
| AUSA Christopher Synder | X | Atty Christine A. Freeman |
| AUSA Louis Franklin | X | |
| | X | |
| | X | |
| | X | |

COURT OFFICIALS PRESENT:

| Anthony Green, | Daniel Korobkin, | Mitchell Reisner, |
|---|---|---|
| Courtroom Clerk | Law Clerk | Court Reporter |

---

PROCEEDINGS:

( )  NONJURY TRIAL
(x)  OTHER PROCEEDING:          TELEPHONE STATUS CONFERENCE CALL


10:50 a.m.                     Continuation of Telephone conference call
                               with Debbie Hackett, Clerk of Court and
                               Sheila Carnes, Senior Courtroom Deputy. Court
                               wants clarification from earlier
                               representation from Atty Synder about
                               instructions received from the clerk's office
                               as to how to handle the filing of the new
                               case against the defendant. Ms. Carnes
                               statements regarding the procedure of filing
                               new cases and statements regarding the filing
                               of the new case against the defendant as
                               stated on the record. Atty Synder's and Atty
                               Franklin's statements as to how they decided
                               to proceed with the filing of the new case.
                               Court will proceed according to the prior
                               conference call.
11:02 a.m.                     Conference call concluded.

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA   )
                           )
     v.                    )   CRIMINAL ACTION NO.
                           )     2:06cr173-MHT
TANESHIA MICHELLE LAWSON   )


ORDER

Based on the representations made during today's on-the-record status conference, and by agreement of the parties, it is ORDERED as follows:

(1) All pending motions in this criminal action, with the exception of the government's motion to dismiss the indictment, are denied without prejudice and with leave to renew in Criminal Action No. 2:07cr10-MHT.

(2) The motions hearing currently scheduled for February 2, 2007, is canceled.

DONE, this the 25th day of January, 2007.


    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA      )
                              )
        v.                    )      CRIMINAL ACTION NO.
                              )         2:06cr173-MHT
TANESHIA MICHELLE LAWSON      )


ORDER

Upon consideration of the motion for leave to dismiss the indictment as to defendant Taneshia Michelle Lawson (doc. no. 198), and for good cause shown, the court is of the opinion that the motion should be and the same hereby is granted.  It is, therefore, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the court that said motion be and the same is hereby granted.

DONE, this the 25th day of January, 2007.


                    /s/ Myron H. Thompson
                UNITED STATES DISTRICT JUDGE

## DISMISSAL OF INDICTMENT

Comes now the United States of America with leave of the Court first had and obtained and dismisses the Indictment heretofore filed on July 11, 2006, in the above styled cause as to Taneshia Michelle Lawson.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Christopher A. Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

### UNOPPOSED MOTION TO EXTEND TIME FOR FILING

**COMES NOW** the Defendant, by undersigned counsel, and respectfully requests an additional three weeks to file the Memorandum directed to be filed by January 19, 2007, by Order entered January 12, 2007 (Doc. 194).

In support of this Motion, the Defendant would show:

1.      The Government does not oppose this request.

2.      Government counsel has informed defense counsel that a new or superseding indictment will shortly be unsealed against the defendant.

3.      It is possible that the new indictment will result in further continuance of the March 12, 2007 trial date in this matter.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099

FAX: (334) 834-0353

E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite

201, Montgomery, Alabama 36104.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CR. NO.  2:06-cr- 00173-MHT |
| | ) | |
| TANESHIA MICHELLE LAWSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION

The defendant has filed an Unopposed Motion to Extend Time for Filing (Doc. #195) on January 19, 2007.  Upon consideration of the motion, it is

ORDERED that the motion is GRANTED.  On or before February 9, 2007, counsel for Defendant, Ms. Christine A. Freeman, Federal Defenders Office, shall file a supplemental brief to her client's Motion to Dismiss and Objection to Venire (Doc. #106).  Thereafter, on or before February 20, 2007, Plaintiff shall file a response to the new challenges raised in Defendant's supplemental brief.

DONE this 22nd day of January, 2007.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE